## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DARRYL ANDERSON, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **1:06-cv-01000-MEF-WC** |
| | § | |
| **PERDUE FARMS, LLC.** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFFS' MOTION FOR AN ORDER PERMITTING COURT SUPERVISED NOTICE TO EMPLOYEES OF THEIR OPT-IN RIGHTS AND <u>INCORPORATED MEMORANDUM OF LAW</u>

Plaintiff, DARRYL ANDERSON, et al., ("Plaintiffs"), requests the entry of an Order permitting under court supervision, notice to all Defendant PERDUE FARMS, LLC'S ("Perdue" or "Defendant") Dothan Plant hourly 1st and 2nd processing employees, as defined in Plaintiffs' Amended Complaint. As a result of Defendant's illegal pay practices, under the "continuous workday rule" employees did not receive full payment for required pre-production and post-production activities that are necessary, integral, and indispensable to their overall employment responsibilities. In support of these individuals' opt-in rights, Plaintiffs state as follows:

### MOTION FOR AN ORDER PERMITTING COURT SUPERVISED
### NOTICE TO EMPLOYEES OF THEIR OPT-IN RIGHTS

1.      Section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA") provides, among other things, that an action to recover unpaid minimum wages or unpaid overtime compensation may be maintained against any employer in any federal or state court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. See 29 U.S.C. § 216(b).

2.      As stated in Plaintiffs' Amended Complaint, Plaintiffs are current or former 1st and 2nd processing employees authorized by the FLSA to sue in their own names on behalf of themselves individually and other employees similarly situated.  Unlike most poultry companies, Defendant does not pay its production employees under a theory of master-time. Instead, Defendant requires production employees to individually clock in and out at time-clocks located at or near the production lines.  As such, Plaintiffs are current and former 1st and 2nd processing employees of Defendant who have brought this action on behalf of all similarly situated employees, employed at the Dothan Alabama Slaughter Plant, whose hours worked within the last two (2) years were recorded under a wage compensation system that ignores the "continuous workday rule", as affirmed by the United States Supreme Court, in which Plaintiffs are

required to perform compensable work before individually clocking in and after individually clocking out, at the beginning and end of the day as well as on breaks. As a result, Plaintiffs did not receive full payment for all activities that are integral, and indispensable to their overall employment responsibilities, such as donning and doffing protective and sanitary equipment i.e. hair nets and ear plugs, walking to and from the production line time-clocks from the production entrance after already performing compensable activities, cleaning and sanitizing equipment as well as themselves, wait time associated with cleaning and sanitizing equipment as well as themselves, and time deducted as unpaid breaks that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable.

3. Plaintiffs know that their claims are typical of the claims of other former and current 1st and 2nd processing employees employed by Defendant, and typical of the claims of all members of the representative class described below. *See* Affidavits of Plaintiffs at ¶¶ 5-9 attached as Exhibit 1; *See* Affidavits of Plaintiffs at ¶¶ 5-9 attached as Exhibit 2.

4. The representative class consists of all current and former non-exempt 1st and 2nd processing employees who worked for Defendant at any time within the last two (2) years and who were subjected to Defendant's

practice and policy of not paying for work described above and any overtime compensation for hours worked in excess of forty (40) as a result of this practice.

5.    As a result of such compensation practices, potential class members did not receive payment in full for the time set forth in ¶ 2.

6.    The twenty nine (29) named plaintiffs as well as two hundred and ten (210) opt-in plaintiffs have filed Notices of Consent to Join.[1]

7.    Simply put, all other 1st and 2nd processing employees falling within the class described herein have the right to participate in this litigation.  And, although the class of current and former 1st and 2nd processing employees is identified and certain, the individual members of the class cannot be completely identified absent access to Defendant's books and records.

WHEREFORE, Plaintiffs respectfully request that the Court permit and supervise notice to all current and former 1st and 2nd processing employees.

## **MEMORANDUM OF LAW**

---

[1]  United States Magistrate Judge Frank Lynch, Jr., permitted notice to proceed stating that: "…the Affidavit of [a single opt-in Plaintiff] shows that at least one other co-worker desires to join the suit, thereby raising the Plaintiff's contention beyond one of pure speculation."  Order on Plaintiff's Motion for an Order Permitting Court Supervised Notice to Employees of Their Opt-in Rights, *Larry Guerra v. Big Johnson Concrete Pumping, Inc.*, CASE NO.: 05-14237 (S.D. Fla. May 17, 2006).

A.    **<u>Introduction</u>**

The FLSA authorizes employees to bring an action individually and on behalf of others similarly situated. *See* 29 U.S.C. § 216(b).  The FLSA provides, in part, that:

> An action to recover the liability [for unpaid wages and overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other similarly situated. ***No employee shall be a party Plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.***

*See id.* (emphasis added).

As part of its processing operation, Perdue employs hourly non-exempt processing employees to provide labor to assist in the processing of live chickens.  *See* Affidavits at ¶4, attached as Exhibits 1-2.

Hourly processing employees primarily work in 1st processing where chickens are placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled or 2nd processing where chickens after completing 1st processing are placed or hung on lines and are further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc. for delivery to plant customers.  *See* Affidavits at ¶5, attached as Exhibits 1-2.

Because the work performed is unskilled or at best in some instances semi-skilled, all work is similar in nature regardless of hourly employees' titles, supervisor or department. *Id*.   All hourly employees are interchangeable and they are required to work open positions throughout the plant as production requirements dictate. *See id*.  Therefore, employees do not have set job responsibilities and all employees within 1st or 2nd processing perform similar tasks and thus are alike.

Plaintiffs are current and former employees of Defendant.   During their employment with Defendant, Plaintiffs were paid on an hourly basis. *See* Affidavits at ¶4, attached as Exhibits 1-2.

While employed by Defendant, Plaintiffs and other similarly situated 1st and 2nd processing employees regularly were not paid for all hours worked and those unpaid hours in excess of forty (40) hours per workweek during their employment with Defendant. *See* Affidavits of **1st processing employees,** at ¶8, attached as Exhibit 1; *See* Affidavits of **2nd processing employees,** at ¶8, attached as Exhibit 2.

Plaintiffs observed that Defendant paid all of their co-employees/1st and 2nd processing employees in the same regard. *See* Exhibits 1-2 at ¶7, ¶9.   Thus, as a result, Plaintiffs and other similarly situated 1st and 2nd processing employees did not receive compensation for all hours worked

and overtime for unpaid hours worked over forty (40) each workweek. *See id.*

Plaintiffs assert that Defendant's above compensation policies violate the FLSA's overtime provisions requiring the payment for all hours worked and of time and one half overtime compensation for each hour worked over forty (40) in a workweek. That is, because Defendant failed to pay all hours worked and time and one half for each hour of overtime worked, Plaintiffs maintain that such compensation practices have adversely affected the rights of each member of this collective action. Therefore, Plaintiffs seek authorization to facilitate notice to each of Defendant's 1st and 2nd processing employees who were subjected to the illegal pay practices described above at any time within the last two (2) years.

Plaintiffs further request that they be permitted to give such notice as approved by this Court to all such class members of their rights to opt-in to this case by executing an appropriate consent as required by Section 216(b) of the FLSA. Plaintiffs' affidavits, and the affidavits of additional "opt-in Plaintiffs"[2] who have joined this action since the time it was filed, attest that Defendant's other 1st and 2nd processing employees were subject to the same pay policy, plan and practice, had similar duties, were paid in the same

---

[2] Since the inception of this litigation, numerous Plaintiffs have filed Opt-in Consents. See Court Document Numbers 17, 18, 25, 27, 29, 33, 34, 36, 37, 38, 39, 43, 46, and 47.

manner, and thus, are similarly situated for purposes of facilitating notice under the FLSA. Plaintiffs furthermore attest that should this Court grant notice, additional Plaintiffs will come forward to participate. *See* Affidavits at ¶9, attached as Exhibits 1-2.

**B.    Applicable Standards For Collective Actions**

FLSA Rule 216(b) collective actions operate much differently than typical class action suits under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to a similarly situated class of Plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case. Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id.* This is the exact opposite of traditional Rule 23 class actions in which a Plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

Because of this requirement to affirmatively opt-in and because the statute of limitation does not toll for the individual until he files his opts-in consent with the court, a delay in conditional certification, i.e. court supervised notice, prejudices putative class members and benefits Defendant. Plaintiffs respectfully submit, the longer it takes for the Court to

issue notice the more likely large numbers of putative class members potentially will lose their right to join this litigation, or at best, retain their right to participate but suffer a reduction in back-pay damages. Case law, recognizing a fundamental difference between Rule 23 class actions and Rule 216(b) collective actions, has also interpreted the statutory sections as requiring all plaintiffs in a collective action under the FLSA to file written consents for statute of limitations purposes. Signed consents filed after the filing of the complaint do not relate back to the date the complaint was filed. *Grayson v. K Mart Corp.*, 79 F.3d 1086 at 1106 (11th Cir. 1996); *O'Connell v. Champion Int'l Corp.*, 812 F.2nd 393 at 394 (8th Cir. 1987); *La Chapelle v. Owens Illinois, Inc.*, 513 F.2nd 286, 288, 289 (5th Cir. 1975).

## C.    The 11th Circuit and the Two – Tiered *Hipp* Analysis

The Eleventh Circuit utilizes a two-tiered approach to certification of an opt-in class pursuant to 29 U.S.C. § 216(b). *See Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F .3d 1208, 1219 (11th Cir. 2001 ) (stating that the two-tiered approach "appears to be an effective tool for district courts to adopt in future cases"). Under this two-tiered approach, the court makes an initial determination, based solely upon the pleadings and any affidavits, whether notice of the action should be given to potential class members. *See id.* at 1218. Because the court has minimal evidence at this stage of the

proceedings, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. *See id.* Thereafter, a second, more rigorous factual determination is made as to whether the potential opt-in Plaintiffs are similarly situated.[3] *See id.*

---

[3] Plaintiffs anticipate that Defendant will argue that Plaintiffs and their co-employees are somehow dissimilar or individual defenses apply and that conditional class certification would therefore be inappropriate. However, the fact remains that such an argument regarding the factual nature of Plaintiffs' claims and Defendant's defenses thereto is irrelevant at this stage of the notification process. Specifically, a factual analysis regarding the "individualized" nature of Plaintiffs' claims and Defendant's defenses is more appropriate *via* a Motion to Decertify at the conclusion of discovery, not at Stage I. *See Pendlebury v. Starbucks Coffee Co.,* 2005 WL 84500 * 3 (S.D. Fla. Jan. 3, 2005) (Marra, J.) (Judge Marra did not consider individualized defenses in permitting Stage I notification); *Cameron-Grant v. Maxim Healthcare Services., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003) ("The first determination is made at the so-called "notice stage"….Because the Court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in a conditional certification of a representative class. The action proceeds as a representative action throughout discovery."); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) ("We hold that section 216(b)'s "similarly situated" requirement is less stringent than that for joinder under Rule 20(a) or for separate trials under rule 42(b)."); *Felix De Asencio v. Tyson Foods, Inc.,*130 F.Supp.2d 660, 663 (E.D. Pa. 2001) ("While this information [submitted by Defendant] may play a more significant role after discovery and during an analysis of the second and final similarly situated tier, Plaintiffs have advanced sufficient evidence to meet their low burden at this first tier of the similarly situated question."); *see also Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court will

examine the individual Plaintiffs' disparate factual and employment settings, as well as the various defenses available to the Defendant which appear to be individual to each Plaintiff, during the 'second stage' analysis after the close of discovery."); *Leuthold v. Destination America,* 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class."); *Goldman v. Radioshack Corp.*, No. Civ.A. 2:03-CV-032, 2003 WL 21250571, at *8 (E.D.Pa. Apr. 16, 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the Defendant."); *Aguilar v. Pilgrim's Pride Corporation*, CASE NO.: CV-06-J-1673-NE (N.D. Ala. January 31, 2007). *See* Exhibit 3 (Within 30 days of Defendant answering Plaintiffs' complaint, Judge Johnson conditionally certifying the class of poultry works found, "… at this stage of the proceedings, the plaintiffs do not necessarily need to show a "unified

This two-tiered approach was utilized by the Middle District of Alabama in *Harper v. Lovett's Buffet Inc.,* 185 F.R.D 358 (M.D. Ala. 1999). The Court found it appropriate to conditionally certify a class of all hourly restaurant employees working at a Dothan restaurant after Plaintiffs presented fifteen (15) affidavits, twelve (12) signed by servers, one (1) signed by a cook, one (1) signed by a hostess and one (1) signed by a food preparation worker, where the affidavits showed they had all been subject to the practice of managers clocking them out before work was completed resulting in possible violations of minimum wage and maximum hour provisions of the FLSA. *See id. at 363, 364, 365.* Citing *Grayson v. K Mart Corp.*, 79 F.3d at 1086, 1096, (11th Cir. 1996), the Court stated Plaintiffs bear the burden to establish that they are similarly situated. This burden, which is not heavy, may be met by detailed allegations supported by affidavits. *Id at 1097.* More recently three judges, Judge Johnson, Judge Coogler and Judge Proctor, in the Northern District of Alabama as well as Magistrate Judge Bert Millings, Jr., in the Southern District of Alabama,

---

policy, plan or scheme of discrimination to establish that the proposed class members are similarly situated"). Thus, setting Defendant's anticipated factual arguments aside for purposes of Plaintiff's Stage I Motion, Plaintiffs clearly have met their burden of proof on the "similarly situated" prong under *Hipp.*

have granted conditional certification utilizing the *Hipp* Analysis.  *See* Exh. 4 - 8.

Furthermore, the *Hipp* analysis has been used outside the 11th Circuit recently in the 4th Circuit where Judge Seymour granted notice in a national collective action against poultry giant, Gold Kist, Inc. *See* Exhibit 9.

**D.     Court's Authority to Issue Notice**

To that affect, in *Hoffman-La Roche, Inc. v. Sealing*, 110 S. Ct. 482 (1989), the Court ruled that not only did trial courts have authority to compel Defendant-employers to provide names and addresses of potential Plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential Plaintiffs.  *See id.* There, the Court addressed the issue of whether the district court may play any role on prescribing the terms and conditions of communication from the named Plaintiffs to the potential members of the class on whose behalf the collective action has been brought. *See id.*  The Court determined that district courts have discretion in appropriate cases to implement 29 U.S.C. §216(b), by facilitating notice to potential Plaintiffs. *See id* at 486.  This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *See id.*

**E.     Discovery as it Relates to Conditional Certification**

In addition to individual defenses Defendants may raise, Plaintiffs anticipate Defendant may ask for an extensive period of time to conduct discovery in order to respond to this motion. Plaintiffs respectfully oppose such a period for discovery because as stated above, at this initial stage, the conditional certification stage, the Court should base its decision <u>solely</u> on the pleadings and attached affidavits. If Defendant wishes to engage in prolonged discovery, it will be an attempt to draft a response that will decertify the class before the class even exists. Defendant's response to this motion would essentially be a motion to decertify. If unsuccessful they will attempt a second time to decertify the class after notice is given, discovery is complete and the class is certain. This second bite at the apple is fundamentally unfair and it is not consistent with the two tiered certification process utilized by the 11th Circuit when addressing collective actions. Defendants should not be allowed to decertify the class before the class exists. In the Western District of Arkansas, Judge Barnes, overseeing consolidation of numerous Pilgrims' Pride poultry cases under Multi-District Litigation Docket 1832, issued a case management order recognizing that discovery at this stage, the initial stage, is not necessary, noting the Court should make its decision based solely on the pleadings and submitted affidavits. *See* Exhibit 10.

There are questions of law or fact common to Defendant's other 1st and 2nd processing employees and the claims of the named Plaintiffs in the instant matter.   Indeed, Plaintiffs' claims are typical of the claims of the other individuals in their positions. For purposes of defining the "similarly situated class" pursuant to 29 U.S.C. § 216(b), Plaintiff need only demonstrate that the defined class is comprised of representatives who are similarly situated to Plaintiffs with regard to Defendant's <u>payroll practices and record keeping requirements</u>. *See* 29 U.S.C. § 216(b); *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991). There is no requirement of "strict symmetry" or "absolute identity"; rather potential class members must meet only a "sufficiently similar" standard. *Glass v. IDS Financial Services, Inc.,* 778 F. Supp. 1029, 1081 (D. Minn. 1991) (an allegation that a single decision, policy or plan precipitated the challenged action was sufficient to define the class).

Here, Defendant employed numerous 1st and 2nd processing employees in Dothan Alabama.  At some point during the last two (2) years, each of these 1st and 2nd processing employees performed labor for Defendant which included assisting in the processing of chickens.    These 1st and 2nd processing employees were paid on an hourly basis, and regularly were not paid for all hours worked and worked more than forty

(40) hours per workweek.  As a result of this practice, Defendant regularly failed to pay their 1st and 2nd processing employees proper compensation owed as required by the FLSA.

Based upon the Amended Complaint allegations, the existence of numerous opt-in plaintiffs and the above-referenced affidavits, Plaintiffs have satisfied the applicable burden of persuasion that a colorable basis exists for determining that others similarly situated to Plaintiff exist.

## **CONCLUSION**

Here, a collective action is sought as the Defendant has acted or refused to act on grounds generally applicable to the class (Defendant's current and former 1st and 2nd processing employees who were subjected to Defendant's practice and policy of not paying all hours worked and overtime compensation for hours worked over forty (40) in a workweek), thereby making appropriate the same relief with respect to the class as a whole. Additionally, questions of law or fact common to all 1st and 2nd processing employees as described in the class definition predominate over any questions affecting only individual members. Thus, a collective action is superior to other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs seek authorization to provide: (1) the proposed "Notification" letter, attached as Exhibit A, to be sent to all similarly

situated employees; along with the (2) the proposed "Notice of Consent to Join" form, attached as Exhibit B, which similarly situated employees can complete, sign, and file in this matter.

Plaintiffs have met their burden to facilitate notice to potential class members under Eleventh Circuit precedent. Accordingly, Plaintiffs respectfully request that notice be permitted and supervised and that notice be sent to all current and former 1st and 2nd processing as described in the class definition.

Dated: November 5, 2007                    Respectfully submitted,

                                           **/s ROBERT CAMP**
                                           ROBERT CAMP
                                           BERNARD NOMBERG
                                           LANCE SWANNER
                                           SAMUEL A. CHERRY, JR.
                                           **THE COCHRAN FIRM**
                                           505 North 20th Street, Suite 825
                                           Birmingham, AL  35203
                                           Tel: 205-244-1115
                                           Fax: 205-244-1171
                                           Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on <u>November 5, 2007</u>, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to:

**Richard B. Celler**
**Attorney for Plaintiffs**
**Richard@cellarlegal.com**

**Samuel A. Cherry**
**Attorney for Plaintiffs**
**scherry@cochranfirm.com**

**Robert J.Camp**
**Attorney for Plaintiffs**
**rcamp@cochranfirm.com**

**Brian Z. Liss**
**Attorney for Defendant**
**bliss@morganlewis.com**

**Sandra B. Reiss**
**Attorney for Defendant**
**Sandra.reiss@odnss.com**

**Lance H. Swanner**
**Attorney for Plaintiffs**
**lanceswanner@cochranfirm.com**

**Bernard D. Nomberg**
**Attorney for Plaintiffs**
**bnomberg@cochranfirm.com**

Robert J. Camp
**ROBERT J. CAMP**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DARRYL ANDERSON, et. al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 1:06-cv-01000-MEF-WC |
| | § | |
| PERDUE FARMS INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
SOUTHERN DIVISION**

*This is a Court-Authorized Notice and is not a Solicitation from a Lawyer.
The Court Has Made No Finding as to the Merits of the Case at this Time*

*IF YOU ARE OR WERE, AT ANY TIME DURING THE PAST TWO (2) YEARS
AN HOURLY PAID 1ˢᵗ or 2ⁿᵈ PROCESSING PRODUCTION EMPLOYEE, AT
THE PERDUE DOTHAN ALABAMA PLANT, WHO WAS NOT FULLY PAID
REGULAR TIME OR OVERTIME FOR REQUIRED PRE-PRODUCTION AND
POST-PRODUCTION WORK OCURRING BEFORE CLOCKING IN OR AFTER
CLOCKING OUT, SUCH AS:*

- *THE TIME IT TAKES TO CLEAR SECURITY AND THE WALKTIME
  THEREAFTER,*
- *DONNING AND DOFFING PROTECTIVE AND SANITARY EQUIPMENT,
  I.E. HAIRNETS AND EAR PLUGS,*
- *CLEANING AND SANITIZING EQUIPMENT AS WELL AS YOURSELF*
- *WAIT TIME ASSOCIATED WITH CLEANING AND SANITIZING
  EQUIPMENT AS WELL AS YOURSELF,*
- *WALKING TO AND FROM THE PRODUCTION TIME CLOCKS FROM
  YOUR PRODUCTION AREA ENTRANCE,*
- *TIME DEDUCTED AS UNPAID BREAKS THAT DUE TO WALKTIME
  AND OTHER ACTIVITIES ARE OTHERWISE COMPENSABLE, TIME
  SPENT WAITING IN LINE TO RETURN REQUIRED SUPPLIES, TOOLS,
  AND OTHER EQUIPMENT, AND*
- *TIME SPENT WALKING TO AND CLEARING SECURITY AT THE END
  OF THE DAY,*

*A COLLECTIVE ACTION LAWSUIT MAY AFFECT YOUR RIGHTS*

- DARRYL ANDERSON, et al., ("Plaintiffs"), former hourly paid production
  employees who were employed with PERDUE FARMS, LLC ("Perude" or
  "Defendant"), have sued Defendant in federal court alleging that Defendant
  improperly failed to pay them for all hours worked and overtime hours worked in
  excess of forty (40) during their employment with Defendant. As a result of these
  alleged practices, Plaintiffs maintain that they were unlawfully deprived of full
  and proper regular time and overtime compensation due to them under the FLSA.
  The case name is, DARRYL ANDERSON, et al., v. PERDUE FARMS, LLC:
  CIVIL ACTION NUMBER: **1:06-cv-01000-MEF-WC**.

- To date, Two hundred and thirty eight (238) other hourly paid 1ˢᵗ or 2ⁿᵈ
  processing production employees have consented to join the lawsuit as plaintiffs.

2

- The Court has permitted Plaintiffs to send Notice to all similarly situated current and former hourly paid 1st and 2nd processing production employees of Defendant, employed at any time during the past two years, so that they may be permitted to "opt-in" to, or join, this lawsuit to assert their similar legal rights.

- The Court has not yet decided whether Defendant has done anything wrong or whether this case will proceed to trial. There is no money available now and no guarantee that there will be. However, you have a choice to assert your legal rights in this case.

| YOUR LEGAL RIGHTS & OPTIONS | |
| --- | --- |
| **Do Nothing** | **Do Nothing. Lose Nothing (except resulting from the passage of time).** By doing nothing, you retain your legal rights to bring a separate suit against PERDUE (within the applicable statute of limitations period) for allegedly unpaid regular and overtime compensation. If money or benefits are later awarded in this case, you will not share in them. |
| **Ask to Be Included** | **Complete Opt-in Consent Form.** By "opting in," you gain the possibility of receiving money or benefits that may result from a trial or settlement, but you give up your right to separately sue PERDUE for the same legal claims brought in this lawsuit. If you choose to "opt-in" to this lawsuit, you may be required to participate in depositions and/or provide written responses in support of your claims. |

Your options are included in this Notice to Opt-in, you must complete the Opt-in Consent Form and forward it to the attorneys designated in the Notice on or before _____, 2007. If you have any questions or concerns, please contact:

**ROBERT J. CAMP, Esquire**
**THE COCHRAN FIRM**
**505 North 20th Street, Suite 825**
**Birmingham, AL 35203**
**Tel: 1-800-THE-FIRM**
**Fax: 205-244-1171**
*Counsel for Plaintiffs*

**The law prohibits anyone from discriminating or retaliating against you for taking part in this case. If you believe that you have been penalized, disciplined, punished, threatened, intimidated, or discriminated against in any way as a result of your receiving this notification, your considering whether to complete and submit the Notice of Consent, or your having submitted the Notice of Consent, you may contact THE COCHRAN FIRM at the number provided above.**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

DARRYL ANDERSON, et. al.,           §
                                    §
    Plaintiffs,               §
                                    §          CIVIL ACTION NO.
v.                                  §          1:06-cv-01000-MEF-WC
                                    §
PERDUE FARMS INC.,                  §
                                    §
    Defendant.                §
                                    §

# <u>EXHIBIT B</u>

## CONSENT TO JOIN SUIT AS PARTY PLAINTIFF

TO:    CLERK OF THE COURT AND COUNSEL OF RECORD

_____ states the following:
[Print Name]

1.    I am over 18 years of age and competant to give the following consent in this matter.

2.    I am currently, or was formerly, employed by _____
[Employer]

at the facility located in Dothan Alabama.  I worked at this

location from _____ to _____.
[Date]                                    [Date, or if still working write "present"]

3.    I understand that this suit is being brought against Perdue Farms, LLC to recover unpaid compensation and overtime for violations of the Fair Labor Standards Act. I understand that the suit is brought pursuant to both federal law and applicable state statutes, if any.

4.    I believe I have not been paid for all compensable time which I have worked, including overtime.

5.    I hereby consent and agree to be a plaintiff in this lawsuit and to be bound by any decision in this lawsuit or by any settlement of this case.

I understand that this suit may be brought as a collective action covering employees of Defendant.  If brought as a collective action under either federal or state law, I consent to join as a plaintiff in such suit.

I swear or affirm that the foregoing Statements are true to the best of my knowledge.

DATED the _____ day of _____, 2007

_____          _____
[PRINT NAME]                              [SIGN NAME]

_____          _____
[PRINT STREET ADDRESS]                 [PRINT CITY, STATE, ZIP CODE]

_____          _____
[PRINT CELL PHONE NUMBER]              [PRINT HOME PHONE NUMBER]

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DARRYL ANDERSON, et. al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 1:06-cv-01000-MEF-WC |
| | § | |
| PERDUE FARMS INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

# **EXHIBIT 1**

## DECLARATION:

1.    My name is Richard Smith.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately May 2005 until Sept 2006. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above).  To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.  I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10th___ day of ___May___, 2007.


___Richard Smith Jr___
PLAINTIFF'S NAME

___Richard Smith Jr.___
PLAINTIFF'S SIGNATURE


STATE OF __Alabama__,
COUNTY OF __Houston__.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___10th___ day of May, 2007

[SEAL] 

___Fatima R. Lloyd___
NOTARY PUBLIC
My Commission Expires: _____

3

## DECLARATION:

1.    My name is _Carlos Simpson_

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _Dec. 09 2003_ until _present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___08___ day of ___May___, 2007.


___Carlos Simpson___
PLAINTIFF'S NAME

___Carlos Simpson___
PLAINTIFF'S SIGNATURE


STATE OF ___Alabama___,
COUNTY OF ___Houston___.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___08___ day of May, 2007

[SEAL]

*(Notary seal: FATIMA R. LLOYD, NOTARY PUBLIC, ALABAMA STATE AT LARGE, EXPIRES: 01-17-11)*

___Fatima R. Lloyd___
NOTARY PUBLIC
My Commission Expires: ___01-17-11___

3

## DECLARATION:

1.    My name is Jonas Sol.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately June 04 2005 until present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___08___ day of ___May___, 2007.


___Jonas  Sol___
PLAINTIFF'S NAME

___Jonas  Sol___
PLAINTIFF'S SIGNATURE


STATE OF __Alabama__,
COUNTY OF __Houston__.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___08th___ day of May, 2007

[SEAL]

___Fatima R. Lloyd___
NOTARY PUBLIC
My Commission Expires: __01-17-11__

3

# DECLARATION:

1.    My name is __Latasha Miller__.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately __Sept 08, 2003__ until __present__.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ____10th____ day of ____May____, 2007.


Latasha Miller
**PLAINTIFF'S NAME**

Latasha Miller
**PLAINTIFF'S SIGNATURE**


STATE OF Alabama,
COUNTY OF Houston.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ____10th____ day of May, 2007

[SEAL]

Fatima R. Lloyd
NOTARY PUBLIC
My Commission Expires: 01-17-11

3

## DECLARATION:

1.     My name is _Kizzy Reed_.

2.     I am a Plaintiff in this action.

3.     I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.     I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _10|26|98_ until _Present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.     During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.     During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the __10th__ day of __May__, 2007.

__Kizzy Reed__
PLAINTIFF'S NAME

__Kizzy Reed__
PLAINTIFF'S SIGNATURE

STATE OF __Alabama__
COUNTY OF __Houston__.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the __10th__ day of May, 2007

[SEAL]



__Fatima R. Lloyd__
NOTARY PUBLIC
My Commission Expires: __01-17-11__

3

## DECLARATION:

1.    My name is *Kelvin Walker*.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately *Aug 4, 2003* until *Sept 2005*. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.   I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___12th___ day of ___May___, 2007.

___Kelvin Walker___
**PLAINTIFF'S NAME**

___Kelvin Walker___
**PLAINTIFF'S SIGNATURE**

STATE OF ___Alabama___,
COUNTY OF ___Houston___.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___12th___ day of May, 2007

[SEAL]



___Fatima R. Floyd___
NOTARY PUBLIC
My Commission Expires: ___01-17-11___

3

# DECLARATION:

1.  My name is _Tonya Ford_ .

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _Nov 2003_ until _Jan 2007_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___12th___ day of ___May___, 2007.

___Tom Fox___
PLAINTIFF'S NAME

___Tom Fox___
PLAINTIFF'S SIGNATURE

STATE OF _Alabama_,
COUNTY OF _Houston_.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___12th___ day of May, 2007



[SEAL]

___Fatima R. Lloyd___
NOTARY PUBLIC
My Commission Expires: 01-17-11

3

## DECLARATION:

1.    My name is *Marsha Dixon*              .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately *12-9-1987*              until    *Present*              .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the __10__ day of __May__, 2007.


_Marsha Dixon_
**PLAINTIFF'S NAME**

_Marsha Dixon_
**PLAINTIFF'S SIGNATURE**


STATE OF _Alabama_,
COUNTY OF _Houston_.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the __10__ day of May, 2007

[SEAL]

_Jennifer SeAnn Dean_
NOTARY PUBLIC
My Commission Expires: 4/20/2010

3

## DECLARATION:

1.    My name is *Betty L. Olivier*.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately *8-4-2003* until *Present*. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of _May_____, 2007.


_Betty L. Oliver_____          _Betty L. Oliver_____
PLAINTIFF'S NAME                 PLAINTIFF'S SIGNATURE


STATE OF _Alabama____,
COUNTY OF _Houston____.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___10_____ day of May, 2007


[SEAL]                           _Jennata Dear_____
                                 NOTARY PUBLIC
                                 My Commission Expires: 4/20/2010

3

## DECLARATION:

1.  My name is _Gloria J Brown_.

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _9-30-92_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ____10____ day of ____May_____, 2007.


GlOYia J Brown
**PLAINTIFF'S NAME**

Gloria J Brown
**PLAINTIFF'S SIGNATURE**


STATE OF Alabama,
COUNTY OF Houston.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ____10____ day of May, 2007

[SEAL]

Jennifer Sahn Lea
NOTARY PUBLIC
My Commission Expires: 4/20/10

3

# DECLARATION:

1.    My name is _Kenyerta Smith_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _June 29 98_ until _July 2000_ As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of ___May_____, 2007.


Kenketu Smith
**PLAINTIFF'S NAME**

_Kenneth Smith_ (signature)
**PLAINTIFF'S SIGNATURE**


STATE OF _Alabama_,
COUNTY OF _Houston_.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___11_____day of May, 2007

[SEAL]

_Jennifer Salm Lee_ (signature)
NOTARY PUBLIC
My Commission Expires: _4/20/10_

3

# **DECLARATION:**

1.  My name is _Annie Thomas_ .

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _June 1 05_ until _Present_ .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.   As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.   As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.   During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of ___May_____, 2007.


___Annie Thomas___
**PLAINTIFF'S NAME**

_____
**PLAINTIFF'S SIGNATURE**


STATE OF _Alabama_____,
COUNTY OF _Houston_____.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___11_____ day of May, 2007

[SEAL]

_____
NOTARY PUBLIC
My Commission Expires: 4/20/10

3

## DECLARATION:

1.    My name is Angela B. Carlisle.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately Oct. 29, 04 __ until Aug. 2, 06 __. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of ___May_____, 2007.

Angela Burks Carlisle
**PLAINTIFF'S NAME**

*Angela Burks Carlisle*
**PLAINTIFF'S SIGNATURE**

STATE OF _Alabama_____,
COUNTY OF _Houston_____.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___11_____ day of May, 2007

[SEAL]

NOTARY PUBLIC
My Commission Expires: _4/20/16_

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DARRYL ANDERSON, et. al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **1:06-cv-01000-MEF-WC** |
| | § | |
| **PERDUE FARMS INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

# EXHIBIT 2

# DECLARATION:

1.    My name is _Cornelia Thornton_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _Aug 23, 2002_ until _the Presently_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of __May_____, 2007.


Cornelia Thornton
PLAINTIFF'S NAME

_Cornelia Thornton (signature)_
PLAINTIFF'S SIGNATURE


STATE OF __Alabama__.
COUNTY OF __Houston__.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___11_____ day of May, 2007

[SEAL]

_Jennifer LeAnn Doe (signature)_
NOTARY PUBLIC
My Commission Expires: __4/20/10__

3

## DECLARATION:

1.    My name is _Gwendolyn Lee_

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _Aug. 9, 2004_ until _present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___12th___ day of ___May___, 2007.

___Gwendolyn Lee___
**PLAINTIFF'S NAME**

___Gwendolyn M. Lee___
**PLAINTIFF'S SIGNATURE**

STATE OF ___Alabama___,
COUNTY OF ___Houston___.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___12th___ day of May, 2007



[SEAL]

___Fatima R. Lloyd___
NOTARY PUBLIC
My Commission Expires: ___01-17-11___

3

## DECLARATION:

1.    My name is *Dionne Neal*.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately *July 22, 2005* until *present*.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___12th___ day of ___May___, 2007.


___Dionne Neal___
PLAINTIFF'S NAME

___Dionne Neal___
PLAINTIFF'S SIGNATURE


STATE OF ___Alabama___,
COUNTY OF ___Houston___.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___12th___ day of May, 2007

[SEAL]

___Fatima R. Lloyd___
NOTARY PUBLIC
My Commission Expires: ___01-17-11___

3

## DECLARATION:

1. My name is *Regina Whitfield*.

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately *08|08|04* until *Present*. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6. During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___15th___ day of ___May___, 2007.


___Regina Whitfield___            ___Regina Whitfield___
PLAINTIFF'S NAME                   PLAINTIFF'S SIGNATURE


STATE OF ___Alabama___,
COUNTY OF ___Houston___.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___15th___ day of May, 2007

[SEAL] 

___Fatima R. Lloyd___
NOTARY PUBLIC
My Commission Expires: ___01-17-11___

3

## DECLARATION:

1.    My name is _Thaya Smith_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _Oct. 07, 1997_ until _present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.   I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the __12th__ day of __May__, 2007.


__Thaya Smith__
**PLAINTIFF'S NAME**

__Thaya Smith__
**PLAINTIFF'S SIGNATURE**


STATE OF __Alabama__,
COUNTY OF __Houston__.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the __12th__ day of May, 2007.

[SEAL]

__Fatima R. Lloyd__
NOTARY PUBLIC
My Commission Expires: __01-17-11__

3

## DECLARATION:

1.    My name is *Willie C Mc Priff*

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately *11-12-96* until *present*. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___8___ day of ___May___, 2007.


___WILLIE C MC GRIFF___          ___Willie C mc Griff___
PLAINTIFF'S NAME                          PLAINTIFF'S SIGNATURE


STATE OF Alabama,
COUNTY OF Houston.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___8___ day of May, 2007

[SEAL]

___Jennifer S Ann Dean___
NOTARY PUBLIC
My Commission Expires: 4/20/2010

3

## DECLARATION:

1.    My name is _[signature]_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _08/25/03_ until _present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____8_____ day of _____May_____, 2007.


_____James Jsow_____
PLAINTIFF'S NAME

_____
PLAINTIFF'S SIGNATURE


STATE OF _Alabama_,
COUNTY OF _Houston_.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____8_____ day of May, 2007

[SEAL]

_____Jennifer Seanndean_____
NOTARY PUBLIC
My Commission Expires: 4/20/2010

3

# DECLARATION:

1.    My name is *Tammie Henderson* .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately *July - 23 - 2001* until *Prsent* .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___May___, 2007.


_Tammie Henderson_
**PLAINTIFF'S NAME**

_Tammi Henderson_
**PLAINTIFF'S SIGNATURE**


STATE OF _Alabama_,
COUNTY OF _Houston_.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___10___ day of May, 2007

[SEAL]

_Jennifer Ann Dea_
NOTARY PUBLIC
My Commission Expires: 4/20/2010

3

# DECLARATION:

1.    My name is _Diane     Wiggins_

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _May 10, 02_ until _present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___May___, 2007.


___Diane Wiggins___
**PLAINTIFF'S NAME**

___Diane Wiggins___
**PLAINTIFF'S SIGNATURE**


STATE OF ___Alabama___,
COUNTY OF ___Houston___.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___10___ day of May, 2007

[SEAL]

___Jennifer Selmes Dee___
NOTARY PUBLIC
My Commission Expires: 4/20/2010

3

# DECLARATION:

1.    My name is _Shaneka L Free005_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _May 18 - 2005_ until _Present_ .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___May___, 2007.

_____
PLAINTIFF'S NAME

_____
PLAINTIFF'S SIGNATURE

STATE OF _Alabama_,
COUNTY OF _Houston_.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___10___ day of May, 2007

[SEAL]

_____
NOTARY PUBLIC
My Commission Expires: _4/20/2010_

3

## DECLARATION:

1.    My name is _Norva Baxter_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _July 28, 2003_ until _present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___May___, 2007.


___Nova Baxter___          ___Nova Baxter___
PLAINTIFF'S NAME           PLAINTIFF'S SIGNATURE


STATE OF ___Alabama___,
COUNTY OF ___Houston___.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___10___ day of May, 2007

[SEAL]

_____
NOTARY PUBLIC
My Commission Expires: 4/20/10

3

# DECLARATION:

1.    My name is _Elisha A. Jackson_

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _April 12, 2004_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____10_____ day of _____May_____, 2007.


_Elisha A. Jackson_
**PLAINTIFF'S NAME**

_Elisha A. Jackson_
**PLAINTIFF'S SIGNATURE**


STATE OF _Alabama_,
COUNTY OF _Houston_.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____10_____ day of May, 2007

[SEAL]

_____
NOTARY PUBLIC
My Commission Expires: _4/26/10_

3

## DECLARATION:

1.    My name is _Gloria    Allen_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _12- 9-    8 7_ until _present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___May___, 2007.


_Gloria  Allen_
**PLAINTIFF'S NAME**

_Gloria allen_
**PLAINTIFF'S SIGNATURE**


STATE OF _Alabama_,
COUNTY OF _Houston_.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___10___ day of May, 2007

[SEAL]

_Jennifer Sann llea_
NOTARY PUBLIC
My Commission Expires: 4/20/10

3

## DECLARATION:

1.    My name is _Carolyn Cochran_

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _Nov. 3 -2003_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___May___, 2007.

CAROLYN Cochran                    Cawly Cochran

__PLAINTIFF'S NAME__                __PLAINTIFF'S SIGNATURE__


STATE OF Alabama ,
COUNTY OF Houston .


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___10___ day of May, 2007

[SEAL]

Jennifer Samda

NOTARY PUBLIC
My Commission Expires: 4/20/10

3

# DECLARATION:

1.     My name is _Latronia N. Love_

2.     I am a Plaintiff in this action.

3.     I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.     I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _9-7-99_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.     During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.     During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7. As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8. As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9. During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____11_____ day of ___May_____, 2007.


_Petronia D. Love_
PLAINTIFF'S NAME

_Petronia D. Love_
PLAINTIFF'S SIGNATURE


STATE OF _Alabama_,
COUNTY OF _Houston_.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____11_____ day of May, 2007

[SEAL]

_Jennifer Salmon_
NOTARY PUBLIC
My Commission Expires: 4/20/10

3

# DECLARATION:

1. My name is _Don Marry_ .

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _01-04-96_ until _present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6. During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.  I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of ___May___, 2007.


___Don Murry___
**PLAINTIFF'S NAME**

___Don Murry___
**PLAINTIFF'S SIGNATURE**


STATE OF _Alabama_,
COUNTY OF _Houston_.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___11___ day of May, 2007

[SEAL]

___Jannues Seann Lea___
NOTARY PUBLIC
My Commission Expires: _4|20|10_

3

# DECLARATION:

1.    My name is _Unperson Collins_____.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _6-6-90_____ until _Present_____.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ____11____ day of _____May_____, 2007.


_Napolean Collins_____          _Napolean Collins_____
PLAINTIFF'S NAME                    PLAINTIFF'S SIGNATURE


STATE OF Alabama ,
COUNTY OF Houston .

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ____11____ day of May, 2007

[SEAL]

_____
NOTARY PUBLIC
My Commission Expires: _4/20/10_

3

# DECLARATION:

1.  My name is *Patricia Pollock*.

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately *Mar 27, 96* until *Present*. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of ___May___, 2007.


___Patricia Pollock___
PLAINTIFF'S NAME

___Patricia Pollock___
PLAINTIFF'S SIGNATURE


STATE OF ___Alabama___,
COUNTY OF ___Houston___.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___11___ day of May, 2007

[SEAL]

___Jennifer LeAnn Dean___
NOTARY PUBLIC
My Commission Expires: 4/20/10

3

# DECLARATION:

1.    My name is _Stephanie Lampley_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _9-8-03_ until _present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.   I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of ___May___, 2007.


___Stephanie Lampley___
**PLAINTIFF'S NAME**

___Stephanie Lampley___
**PLAINTIFF'S SIGNATURE**


STATE OF _Alabama_ ,
COUNTY OF _Houston_ .

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___11___ day of May, 2007

[SEAL]

___Jennifer S. McPhee___
NOTARY PUBLIC
My Commission Expires: _4/20/10_

3

## DECLARATION:

1.    My name is *Calvin Williams* .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately *5-11-01* until *present* . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___11___ day of __May_____, 2007.


___Calvin Williams___
**PLAINTIFF'S NAME**

___Calvin Williams___
**PLAINTIFF'S SIGNATURE**


STATE OF __Alabama__,
COUNTY OF __Houston__.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___11_____ day of May, 2007

[SEAL]

___Jennette Seay Dec___
NOTARY PUBLIC
My Commission Expires: __4/20/10__

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

DARRYL ANDERSON, et. al.,              §
                                        §
    Plaintiffs,                       §
                                        §          CIVIL ACTION NO.
v.                                      §          1:06-cv-01000-MEF-WC
                                        §
PERDUE FARMS INC.,                      §
                                        §
    Defendant.                        §
                                        §

# <u>EXHIBIT 3</u>

FILED
2007 Jan-31 PM 01:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

SALVADOR AGUILAR, et al.,

      Plaintiffs,

vs.                                     CASE NO. CV-06-J-1673-NE

PILGRIM'S PRIDE CORPORATION,

      Defendant.

## ORDER

This case came on to be heard on the plaintiffs' motion to conditionally certify class and facilitate notice (doc. 15), plaintiffs' memorandum in support of motion (doc. 16), defendant's opposition to plaintiffs' motion (doc. 20), and plaintiffs' reply (doc. 23). The court held a hearing on January 30, 2007, at which both parties were present by and through their respective counsel of record and the court heard arguments. Having considered the foregoing, the court finds as follows:

The plaintiffs brought this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, on behalf of themselves and other similarly situated individuals. More specifically, the plaintiffs allege that their employer, defendant Pilgrim's Pride Corporation, violated the FLSA by failing to pay employees for donning and doffing protective gear and "line time" employees are not paid in accordance with the amount of time they actually perform work.

The defendant asserts several reasons why this case is not appropriate for class action treatment, including that different lines have different ways of calculating "line time" and that the Athens and Enterprise plants have different customs regarding what protective gear employees may put on at home.

The Eleventh Circuit Court of Appeals has established a two tiered approach for a district court's consideration of whether to allow a FLSA claim to proceed as a collective action:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are

2

dismissed without prejudice. The class representatives-
i.e. the original plaintiffs-proceed to trial on their
individual claims.

[*Hipp v. Liberty National Life Insurance Company*, 252 F.3d 1208,
1218 (11th Cir.2001)] (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d
1207, 1213-14 (5th Cir.1995) (internal footnote omitted)). Since *Hipp*,
the district courts in our circuit have utilized the two-tiered approach
described above. *See, e.g., Reed v. Mobile County Sch. Sys.*, 246
F.Supp.2d 1227, 1230 (S.D.Ala.2003); *Barron v. Henry County Sch.
Sys.*, 242 F.Supp.2d 1096, 1102 (M.D.Ala.2003); *Stone v. First Union
Corp.*, 216 F.R.D. 540, 544-46 (S.D.Fla.2003).

*Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1243 (11th

Cir.2003).

During the notice stage, the court may facilitate the notice process to

prospective class members. However, before intervening in the process, the

district court must be satisfied that there are other employees of the employer who

(1) desire to opt-in and (2) who are similarly situated with respect to their job

requirements and their pay provisions. *Cameron-Grant*, 347 F.3d at 1244; *Dybach

v. Florida Dept. of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir.1991).

In *IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288

(U.S.2005), the United States Supreme Court directly addressed several of the

issues presented by the plaintiffs here. The Court wrote that:

under *Steiner [v. Mitchell*, 350 U.S. 247, 248, 76 S.Ct. 330, 100 L.Ed.
267 (1956)], activities, such as the donning and doffing of specialized
protective gear, that are "performed either before or after the regular

3

work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1)." *[Steiner]*, at 256, 76 S.Ct. 330.

*Alvarez,* 126 S.Ct. at 521 (U.S.2005).

Applying the standards stated above, the court finds that the plaintiffs have proposed a class of all "line time" employees.[1] Such employees assert that defendant has violated the FLSA by (1) failing to pay them for donning and doffing protective gear, and (2) failing to pay them for all time actually worked, rather than "line time." The defendant responds that this in not an appropriate class because the Athens and Enterprise plants have different customs as to what the employees may don at home, and that different positions within one plant have different requirements as to what gear must be donned and how line time is calculated. However, at this stage of the proceedings, the plaintiffs do not necessarily need to show a "unified policy, plan, or scheme of discrimination" to establish that the proposed class members are similarly situated. *Hipp v. Liberty*

---

[1]The parties both mentioned non-line time employees at the hearing. The plaintiffs conceded that if the information provided by the defendant was, in fact, true, then the non-line time employees probably did not belong in the proposed class. The court therefore does not at this time include non-line time employees within the plaintiffs' proposed class. Should the plaintiffs determine that the non-line time employees do belong within the proposed class, the court will entertain a motion to that effect. Should the plaintiffs determine that the non-line time employees do not belong within the class proposed by this litigation, the court expects a motion to dismiss those particular plaintiffs, as well as the one feed plant employee plaintiff, to be forthcoming.

*National Life Insurance Co.*, 252 F.3d 1208, 1217 (11th Cir.2001)(quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir.1996). Here, through consents to join this case filed to date, the plaintiffs have established that at least 93 employees exist who allege they do not get paid for time spent donning and doffing protective gear or for other time they are engaged in "work."[2]

Having considered the foregoing, and being of the opinion the motion to conditionally certify the class and facilitate notice is due to be granted;

It is therefore **ORDERED** by the court that the plaintiffs' motion to facilitate 29 U.S.C. § 216(b) notice be and hereby is **GRANTED**.

It is further **ORDERED** by the court that the following Notice of Right to Opt-In to Collective Action be sent to all present and former employees of defendant who were paid on a "line time" basis, from August 23, 2003, to the present. It is further Ordered that said Notice be sent in English as well as accurately translated and sent in Spanish.

**DONE** and **ORDERED** this the 31st day of January, 2007.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[2]The defendant alleges that the amount of time spent donning and doffing gear is de minimus and often accomplished by employees as they are walking to their work stations. However, this goes to the merits of the plaintiffs' claim and is not relevant to the issue of whether other similarly situated individuals are subject to the same "unified policy, plan or scheme of discrimination." *Hipp*, 252 F.3d at 1217.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

SALVADOR AGUILAR, et al.,

       Plaintiffs,

vs.                              CASE NO. CV-06-J-1673-NE

PILGRIM'S PRIDE CORPORATION,

       Defendant.

### NOTICE OF PENDING FAIR LABOR STANDARDS ACT LAWSUIT

**To**: Present and Former Employees of Pilgrim's Pride Corporation who were paid on a "line time" basis from August 23, 2003, to the present.

**Re**: Overtime claims against Pilgrim's Pride Corporation.

## I. INTRODUCTION

The purpose of this Notice is to inform you of the existence of a collective action lawsuit alleging unpaid overtime, to advise you of how your rights may be affected by this suit, and to instruct you on the procedure for participated in this suit, should you decide that you wish to do so.

## II. DESCRIPTION OF THE LAWSUIT

On August 23, 2006, a lawsuit was filed in the United States District Court for the Northern District of Alabama against Pilgrim's Pride Corporation ("Pilgrim's Pride") by Salvador Aguilar, on behalf of himself and other production line  employees of Pilgrim's Pride employed at the facilities in Athens, Alabama OR Enterprise, Alabama.

This lawsuit alleges that Pilgrim's Pride violated the Fair Labor Standards Act ("FLSA") by forcing employees to continue working on the production line even though their employer has stopped compensating them for their time, and not paying employees for time spent donning (putting on) and doffing (taking off) personal protection equipment that their employer requires them to wear.  The plaintiffs also seek liquidated damages in an amount equal to the unpaid and underpaid overtime wages.  In addition, the plaintiffs have requested an injunction to prohibit Pilgrim's Pride from engaging in future violations of the FLSA.

Pilgrim's Pride contends that all employees were properly paid for all hours actually worked. Pilgrim's Pride expressly denies that it engaged in unlawful conduct with respect to the named plaintiffs and the class members and asserts that the class members were properly paid in accordance with the FLSA.

The court has not ruled on the merits of the plaintiffs' claims or on the denials and other defenses raised by Pilgrim's Pride.

## III. COMPOSITION OF THE CLASS

Plaintiff seeks to recover damages against Pilgrim's Pride on behalf of himself and also on behalf of the other line time paid employees of Pilgrim's Pride, past and present. The Court has ruled that the lawsuit shall be conditionally maintained as a collective action brought by the named Plaintiff, individually and on behalf of the class members. The Court's ruling rests on its preliminary determination that there may be other employees of Pilgrim's Pride who are similarly situated and who desire to join or opt-in to the lawsuit. Specifically, the Court has conditionally certified a class consisting of the following:

> All employees of Pilgrim's Pride's Athens, Alabama or Enterprise, Alabama poultry processing plants during anytime from August 23, 2003, to the present, who were paid on a line time basis and not paid fully for the time actually spent working.

You can participate if you worked on a line for Pilgrim's Pride at either the Athens facility or Enterprise facility at any point in time from August 23, 2003, to the present, and were not paid for all time spent working. Just as is true in any lawsuit, participation does not mean that the named Plaintiff or anyone opting into the collective action, is by participation alone, entitled to recover against Pilgrim's Pride.

## IV.  YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT

If you fit the definition of the class described above, you may join this suit or "opt in" by returning in the enclosed envelope or by mailing by First Class mail, postage prepaid, a completed and signed "Consent to Become Party Plaintiff" form postmarked on or before **June 11, 2007**, to Plaintiff's counsel at the following address:

> WHATLEY, DRAKE & KALLAS, LLC
> 2323 Second Avenue North
> P.O. Box 10647
> Birmingham, AL 35202-0647
> (205) 328-9576

Further information about this Notice, the deadline for filing a "Consent to Become Party Plaintiff," or questions concerning this lawsuit, may be obtained by writing Plaintiff's counsel at the number and address stated above, or by calling attorney Kevin McKie of Whatley Drake & Kallas, L.L.C., at 1-800-695-6750.

The law firm of Whatley Drake & Kallas, L.L.C. has agreed to represent the Plaintiffs in this case, and by signing the consent to representation and the contract agreement you agree to their representation and the terms therein. As stated in the contract, Whatley Drake & Kallas, L.L.C.

2

is not charging you an hourly fee for their services.   Their fee is set up on a contingency basis, and any money owed them will only be collected after the completion of a successful lawsuit.

Failure to timely return or properly complete and sign the Consent to Become Party Plaintiff form by the above date will result in your not being able to participate in this lawsuit.

The law prohibits retaliation against anyone participating in a lawsuit of this nature.

Even if you file a "Consent to Become a Party Plaintiff" form, your continued right to participate in this suit may depend upon a later decision by the District Court that you and the Plaintiffs are actually "similarly situated" in accordance with federal law.

## V.  EFFECT OF JOINING THIS SUIT

If you choose to join this suit, you will be bound by the judgment, whether it is favorable or unfavorable.   While this suit is proceeding, you may be required to provide information, appear for deposition, and/or testify in court.

## VI.  NO OPINION EXPRESSED AS TO THE MERITS OF THE CASE

This notice has been authorized by Judge Inge Johnson of the United States District Court for the Northern District of Alabama solely for the purpose of notifying individuals of the lawsuit.  The court has taken no position in this case regarding the merits of the plaintiff's claims or defenses of Pilgrim's Pride.  This notice should not be taken as an indication that you should or should not join this lawsuit.

## VII.  FURTHER INFORMATION

The pleadings and other documents of record in this lawsuit may be examined and copied at any time during regular business hours at the office of the Clerk of the United Stated District Court for the Northern District of Alabama located at the Hugo Black United States Courthouse, 1729 5th Avenue North, Birmingham, Alabama.

Pilgrim's Pride is represented by:

GARDERE WYNNE SEWELL LLP
1601 Elm Street, 3000 Thanksgiving Tower
Dallas, TX 75201

and

LIGHTFOOT FRANKLIN & WHITE, LLC
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DARRYL ANDERSON, et. al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **1:06-cv-01000-MEF-WC** |
| | § | |
| **PERDUE FARMS INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

# **EXHIBIT 4**

FILED
2007 Jul-03 PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JAMES E. BOLDEN, et al., | } | |
| Plaintiffs, | } | |
| | } | |
| v. | } | Case No.: 5:06-CV-2096-IPJ |
| | } | |
| WAYNE FARMS, LLC, | } | |
| Defendant. | } | |

| | | |
|---|---|---|
| PAMELA M. ALLEN, et al., | } | |
| Plaintiffs, | } | |
| | } | |
| v. | } | Case No.: 5:07-CV-639-IPJ |
| | } | |
| WAYNE FARMS, LLC, | } | |
| Defendant. | } | |

## ORDER

Pending before the court is Plaintiffs' Motion for an Order Permitting Court Supervised Notice to Employees of Their Opt-in Rights (Doc. # 33)[1] filed February 19, 2007, and Plaintiffs' Motion to Lift Stay (Doc. # 73) filed June 14, 2007. Plaintiffs filed their memorandum in support of this motion in the same submission and the court set out a briefing schedule for the motion in its February 21, 2007, Order (Doc. # 35). Defendant filed its response in opposition to Plaintiffs' motion (Doc. # 47). The court had previously scheduled oral argument on the motion for April 24, 2007, to be held contemporaneously with the hearing set in *Belue v. Wayne Farms, LLC*, civil action

---

[1] All document numbers in this Order are taken from the docket sheet in the lead case, *Bolden v. Wayne Farms*, 5:06-CV-2096-IPJ, unless otherwise noted.

number 4:06-CV-2095-RDP, in Judge Inge P. Johnson's courtroom.  However, after being notified of an attorney's illness, the court canceled the hearing and notified all parties.

On May 7, 2007, the court ordered the above-styled cases consolidated for all pretrial proceedings.[2] (Doc. # 67).  The court again set the Plaintiff's motion for oral argument and a status conference (Doc. # 64), which was held on May 23, 2007, in Judge Inge P. Johnson's jury room. At the status conference, both parties led the court to believe that the appointment of lead counsel for Plaintiffs was unnecessary, as attorneys at The Cochran Firm and William S. Hommel could effectively coordinate their efforts and their communications with defense counsel.  Also during the status conference, the court was led to believe that both parties would work together to submit a joint proposed order appointing a special master, a joint proposed class notice, and a joint status report regarding the acquisition of mailing addresses for the purpose of mailing the class notice.  After the status conference on May 23, 2007, the court issued an Order in which it directed both parties to submit the joint status report regarding their discussions about the appointment of a special master, the proposed class notice, and the joint status report regarding the acquisition of potential opt-in plaintiffs' mailing addresses by no later than June 8, 2007.  (Doc. # 69).

On June 6, 2007, two days before the submissions outlined in the court's May 23, 2007, Order were due, Defendant filed its Notice of Motion to Transfer and Consolidate for Pretrial Proceedings to the Judicial Panel on Multi-District Litigation ("MDL") and supporting brief and

---

[2]The court is mindful that Plaintiffs' Motion for an Order Permitting Court Supervised Notice to Employees of Their Opt-in Rights (Doc. # 33) was filed before the consolidation of these cases, and that no similar motion was filed in *Allen v. Wayne Farms, LLC,* 5:07-CV-639-IPJ.  However, the court here notes that all parties understand that the motion was to include the *Allen* Plaintiffs and that no party has stated otherwise.  In any event, this collective action may ultimately result in an opt-in plaintiff class, and the *Allen* Plaintiffs, by submitting to this court's jurisdiction through consolidation, have essentially opted-in to the putative class.

exhibits. (Docs. # 70 & 71). After being led to believe that both parties had agreed to a stay in this case, the court then issued its June 7, 2007, Order staying the case pending the disposition of Defendant's motion in front of the MDL Panel. (Doc. # 72). However, on June 14, 2007, Plaintiffs filed their Motion to Lift Stay (Doc. # 73) so that class notice could issue. On June 18, 2007, Defendant filed its Opposition to Plaintiff's Motion to Lift Stay (Doc. # 74), asking that the stay continue until such time as the Judicial Panel on MDL could consider Defendant's motion for consolidation. The court set a telephone conference in this case by its June 20, 2007, Order, in which it also asked the parties to submit the joint status report regarding their discussions about the appointment of a special master, the proposed class notice, and the joint status report regarding the acquisition of potential opt-in plaintiffs' mailing addresses that were originally due by June 8, 2007. (Doc. # 75). On June 25, 2007, the parties filed their submissions originally ordered by the court in its May 23, 2007, Order, and again in its June 20, 2007, Order. To the court's dismay, the parties submitted competing versions of both a proposed class notice and proposed order appointing a special master. (Doc. # 76 Exs. A, B, C & D). Furthermore, as was made evident during the telephone conference, the parties continue to refuse to coordinate their efforts and work together in good faith on various issues. Therefore, having thoroughly reviewed the parties' submissions and arguments, the court finds as follows:

Plaintiffs brought this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, on behalf of themselves and other similarly-situated individuals. More specifically, Plaintiffs allege that their employer, Defendant Wayne Farms, LLC, violated the FLSA by failing to pay employees for various pre-production and post-production line activities they perform that are integral to their overall employment responsibilities and that are not captured in the "master time

compensation" recording system of hours worked. Defendant asserts several reasons why this case is not appropriate for class action treatment, including that several employees encompassed in Plaintiffs' proposed class definition do not have a valid FLSA claim and are not "similarly-situated" with the subset[3] of employees that Defendant argues would be the only group entitled to any compensation.

The Eleventh Circuit has established a two-tiered approach for a district court's consideration of whether to allow a FLSA claim to proceed as a collective action:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action

---

[3]Defendant offers that if any class were approved for court-supervised notice of their opt-in rights, such class should be limited to "knife-wielding debone" hourly employees whose time is "recorded by master-card swipes" and whom Defendant requires to wear PPEs, "have received six minutes per day personal time compensation," have 45 minute unpaid breaks each shift, and use the main employee break room for such breaks. (Doc. # 47 at 25–27). The court finds this proposed class definition to be overly narrow and approves the class as set forth *infra*.

Additionally, Defendant alleges that the amount of time spent donning and doffing gear is *de minimis* or that FLSA specifically exempts time claimed by Plaintiffs as compensable under 29 U.S.C. § 203(o). However, these arguments go to the merits of Plaintiffs' claims and are not relevant to the issue of whether other similarly situated individuals are subject to the same "unified policy, plan or scheme of discrimination." *Hipp*, 252 F.3d at 1217.

4

to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—*i.e.*[,] the original plaintiffs—proceed to trial on their individual claims.

[*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)] (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995) (internal footnote omitted)). Since *Hipp*, the district courts in our circuit have utilized the two-tiered approach described above. *See, e.g.*, *Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227, 1230 (S.D. Ala. 2003); *Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1102 (M.D. Ala.2003); *Stone v. First Union Corp.*, 216 F.R.D. 540, 544-46 (S.D. Fla.2003).

*Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).

During the notice stage, the court may facilitate the notice process to prospective class members. However, before intervening in the process, the district court must be satisfied that there are other employees of the employer who (1) desire to opt-in and (2) who are similarly situated with respect to their job requirements and their pay provisions. *Cameron-Grant*, 347 F.3d at 1244; *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir.1991).

In *IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S. Ct. 514 (2005), the United States Supreme Court directly addressed several of the issues presented by Plaintiffs here. The Court wrote that:

[U]nder *Steiner* [*v. Mitchell*, 350 U.S. 247 (1956)], activities, such as the donning and doffing of specialized protective gear, that are "performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1)." [*Steiner*], at 256, 76 S. Ct. 330.

126 S. Ct. at 521.

5

Applying the standards stated above, the court finds that Plaintiffs have proposed a class of all "1st and 2nd processing" employees.[4]  Such employees assert that Defendant has violated the FLSA by (1) failing to pay them for pre-production and post-production activities integral to their job responsibilities, and (2) failing to pay them for all time actually worked, rather than that recorded by a "master time card" compensation system.  Defendant responds that this in not an appropriate class because some potential members of Plaintiffs' proposed class definition do not have a valid FLSA claim and different positions within the plant have different requirements as to what gear must be donned and/or activities must be performed, and how compensation time is calculated, and, thus, these employees are not "similarly-situated."  However, at this stage of the proceedings, Plaintiffs do not necessarily need to show a "unified policy, plan, or scheme of discrimination" to establish that the proposed class members are similarly situated. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th

---

[4]Specifically, Plaintiffs propose a class of:

All current and former hourly 1st and 2nd processing employees of Defendants, paid under a master time compensation system in which individuals' time card punches are not the basis for starting and ending hours worked, who worked at the Decatur facility since October 16, 2003, and who were not paid for all the time spent performing compensable work-related tasks or legally compensable time, including, but not limited to authorized unpaid break times, donning and doffing times, washing activity times, time associated with passing through security check points and walking to changing areas and time walking to security and passing through security at the end of the day and walking times to and from break areas or donning and doffing areas, and including time compensable at regular hourly wages, as well as overtime pay for these employees.

(Doc. # 30 ¶ 26).

6

Cir.1996)).[5] Here, through consents to join this case filed to date added to the original Plaintiffs,

Plaintiffs have established that at least two hundred seventy five (275) employees exist who allege

---

[5]Defendant insists that this "lenient standard" as set out in *Hipp*, 252 F.3d at 1217, is inappropriate for this case because there has been sufficient discovery produced to Plaintiffs on the certification issue. They argue that, even at the notice stage, courts have applied a higher standard—akin to that normally used in the decertification stage—when a significant amount of discovery has occurred. *See Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004) (rationale for "lenient" standard "disappears once plaintiffs have had an opportunity to conduct discovery"); *see also Brooks v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 566 (N.D. Ala. 1995) (analyzing class certification in light of extensive discovery by plaintiff); *Fox v. Tyson Foods, Inc.*, No. 4:99-CV-01612-VEH, slip op. at 10–12 (N.D. Ala. Nov. 15, 2006) (after substantial discovery, "certification of the Plaintiffs' class under the more lenient standard of the first-tier in Hipp would be unjust . . . [and] contrary to the interests of judicial economy.").

The court cannot agree that this case, which is barely eight months old, is procedurally similar to those cases cited by Defendant, in which general discovery was nearing to a close after a period of years. Furthermore, the court finds each cited case distinguishable from the present case. In *Davis*, Judge Thompson held that, "[e]ven under the 'fairly lenient standard' called for by *Hipp*, plaintiffs have not met their 'burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist[ ] in the broad class that they propose[ ].'" 303 F. Supp. 2d at 1277. In *Brooks*, Judge Blackburn found that the plaintiff failed "to submit evidence establishing at least a colorable basis for his claim that a class of similarly situated plaintiffs exist" even after the court had granted him a specific period for discovery on that issue. 164 F.R.D at 567–68. Finally, in *Fox*, Judge Hopkins specifically found that there was no "unified policy, plan, or scheme of discrimination" perpetrated by Defendant, that the class action would not be feasible because of the large number of plaintiffs, and that plaintiffs could not meet an heightened certification standard after almost seven years of discovery. *Fox*, No. 4:99-CV-01612-VEH, slip op. at 10–14. Moreover, Plaintiffs in this case seek to certify a class that is already more narrowly drawn than the overly-broad "all employees," as they single out "processing employees paid by a master time card system" for certification, which the court finds substantiated by evidence in the record to date.

To the extent that there is any such similarity, the court finds that there is not sufficient evidence before it at this stage to "skip" the first-tier of the Eleventh Circuit's certification process set forth in *Hipp*, nor to hold Plaintiffs to this "more stringent" certification standard. Alternatively, Defendant urged this court to allow for discovery sufficient to apply the "more stringent" standard to Plaintiffs' motion. The court expressly declines this invitation and reiterates that Defendant will not only be permitted to resubmit these arguments (undoubtedly with more factual support in the record post-discovery) during the "decertification stage," but also notes that Defendant may make a proper motion to remove any opt-in Plaintiff filing a consent if he or she does not fit within the class definition as approved by the court.

7

they have not been paid for time spent donning and doffing protective gear or for other time they are engaged in "work."

Having considered the foregoing, and being of the opinion that both the motion to lift the stay and the motion to conditionally certify the class and facilitate notice are due to be granted:

It is therefore **ORDERED** by the court that Plaintiffs' Motion to Lift Stay (Doc. # 73) is due to be **GRANTED** for the limited purposes of issuing class notice and appointing a special master in this case. Any other filings **SHALL** only be permitted after the parties confer on such matters in a face-to-face meeting, as detailed by the court's Order addressing such matters and entered contemporaneously herewith.

It is further **ORDERED** by the court that Plaintiffs' motion to facilitate 29 U.S.C. § 216(b) notice (Doc. # 33) be and hereby is **GRANTED**.

It is further **ORDERED** by the court that the following Notice of Right to Opt-In to Collective Action be sent to all present and former "1st and 2nd processing" employees of Defendant who were paid on a "master card time" basis, from October 16, 2003, to the present, such definition being set forth more fully in the following Notice.[6]

It is further **ORDERED** that said Notice be sent in English and be accurately translated and sent in Spanish.

**DONE** and **ORDERED** this 3rd day of July 2007.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

_____

[6]Defendant also objected strongly to the semantics and appearance of Plaintiffs' proposed Notice (Doc. # 33 Ex. A). The court noted such objections in making its revisions.

8

9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

DARRYL ANDERSON, et. al.,       §
                                §
    Plaintiffs,             §
                                §         CIVIL ACTION NO.
v.                              §         1:06-cv-01000-MEF-WC
                                §
PERDUE FARMS INC.,              §
                                §
    Defendant.              §
                                §
                                §
                                §

# <u>EXHIBIT 5</u>

Case 2:06-cv-04018-TFM   Document 40   Filed 05/16/2007   Page 2 of 13
Case 1:06-cv-00496-MEF-CSC   Document 40-8   Filed 11/05/2007   Page 2 of 13
Case 2:06-cv-00957-MEF-TFM   Document 54   Filed 05/09/2007   Page 2 of 13

FILED
2007 Mar 23  PM 03:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

CYNTHIA RICHTER,                    ]
on behalf of herself and others     ]
similarly situated,                 ]
                                    ]
        Plaintiffs,                 ]
                                    ]
                                    ]
    vs.                             ]        7:06-CV-01537-LSC
                                    ]
DOLGENCORP, INC., et al.,           ]
                                    ]
        Defendants.                 ]

## MEMORANDUM OPINION

### I.   Introduction.

The Court has for consideration Cynthia Richter's ("Plaintiff") Motion

for Expedited Ruling on Collective Action Certification, filed on August 15,

2006, and Dolgencorp, Inc.'s[1] ("Defendant") Motion to Dismiss Pursuant to

---

[1] In addition to Dolgencorp, Inc., the following entities are also named as
defendants in this cause: Dolgencorp of New York, Dolgencorp of Texas, and Dollar
General Partners. These three defendants claim that they are not subject to this Court's
personal jurisdiction and have moved to be dismissed from this case. (Doc. 27.) As
addressed elsewhere in this opinion, that motion is due to be denied. Defendant
Dolgencorp, Inc. has stated in its Response to Plaintiff's motion for collective action
certification that its fellow defendants joined in that filing "to the extent the Court
determines is appropriate" without a waiver of their personal jurisdiction objections.
(Doc. 41 at 1 n.1.) Dolgencorp, Inc., however, stated that its co-defendants did not join
it in its surreply to Plaintiff's reply brief. (Doc. 71 at 1 n.1.) For the sake of clarity, the

Case 2:06-cv-04081-MEF-TFM   Document 40   Filed 05/04/2007   Page 3 of 13
Case 1:06-cv-01090-MEF-WC   Document 49-8   Filed 11/05/2007   Page 3 of 13
Case 2:05-cv-00551-MEF-TFM   Document 54   Filed 05/04/2007   Page 3 of 13

Rule 12(b)(2) for Lack of Personal Jurisdiction, filed on September 5, 2006. (Docs. 6, 27.) Both motions have been fully briefed and are under submission.

Defendant operates retail stores under the trade name "Dollar General." (Doc. 2 ¶ 1; Doc. 29 ¶ 1.) Plaintiff was the manager of Defendant's store #01558 in Cottondale, Tuscaloosa County, Alabama, from February 2005 to June 2005. (Doc. 2 ¶ 3; Doc. 5 at 5.) On August 7, 2006, Plaintiff filed this cause as a collective action[2] pursuant to 29 U.S.C. § 216(b). (Doc. 1.) She alleges that Defendants intentionally and/or recklessly "failed to pay their store managers proper wages, including overtime compensation," in violation of the Fair Labor Standards Act, 29

---

Court will use the term "Defendant" to refer to Dolgencorp, Inc. When the Court refers to the other defendants, the implicit context will make it obvious.

[2] This action was filed the same day that *Brown, et al., v. Dollar General Store, LTD, et al.*, 7:02-CV-00673-UWC, was settled. *Brown* was filed in the Northern District of Alabama in 2002 and assigned to then-Chief Judge U.W. Clemon. Plaintiff asserts that her allegations in this case are "identical to the ones made in the *Brown* case." (Doc. 7 at 4.)

Also on August 7, 2006, *Gray v. Dolgencorp, et al.*, 7:06-CV-01538-LSC was filed in this Court. The plaintiffs in that cause (former *Brown* opt-ins) assert substantially the same allegations against the same defendants as in the instant case, and they are represented by the same counsel. Plaintiff has stated that she "anticipates" moving for the consolidation of the *Gray* and *Richter* cases should this Court grant conditional certification in the latter cause. (Doc. 7 at 3.)

Case 2:06-cv-04081-MEF-TFM   Document 40   Filed 05/10/2007   Page 4 of 13
Case 1:06-cv-01000-MEF-WC   Document 49-8   Filed 11/05/2007   Page 4 of 13
Case 2:06-cv-00531-MEF-TFM   Document 54   Filed 02/23/2007   Page 3 of 12

U.S.C. § 201 *et seq.* ("FLSA").[3]   (Doc. 6 ¶ 3.)  Plaintiff asks the Court to conditionally certify this cause as a collective action; to facilitate nationwide notice or partial notice to all similarly situated persons; and to order Defendant to produce the "name, telephone number, address, and social security number of all present and former employees within three years of the date the complaint was filed." (Doc. 6 at 5.)  Plaintiff further seeks unpaid compensation and benefits; damages and/or prejudgment interest; attorneys' fees and costs; and appropriate injunctive relief. Defendant argues that this cause is unsuitable for conditional collective action certification because Plaintiff and her proposed opt-in class are not "similarly situated" to each other within the meaning of 29 U.S.C. § 216 (b) and the applicable regulations.

---

[3] Plaintiff claims that Defendant implemented a company-wide conversion of its store manager positions from hourly to salaried in 1995-96.  She avers that this was done because store managers often had to work overtime hours, and doing so meant that Defendant could avoid "paying its highest paid employee premium overtime rates." (Doc. 5 at 6-7.)  Plaintiff further claims that Defendant "imposes uniform guidelines and constraints on store managers that compel all of them to spend the majority of their time on non-management duties.  Those same non-management tasks are performed in each store.  The 'relative importance' of those same non-management tasks is the key to the profitability of each store." (Doc. 53 ¶ 4.)

Case 2:06-cv-04081-MEF-TFM   Document 40   Filed 05/10/2007   Page 5 of 13
Case 1:06-cv-01393-RWSc   Document 39   Filed 04/23/2007   Page 5 of 13
Case 2:06-cv-00351-MEF-TFM   Document 54   Filed 04/02/2007   Page 3 of 13

Upon careful consideration of the evidence and legal arguments made
by the parties, Plaintiff's motion is due to be GRANTED, and Defendants'
motion is due to be DENIED.

II.   Procedural History.

Plaintiff filed her complaint on August 7, 2006, and asserted a
collective action against Defendants on behalf of all others similarly
situated. (Doc. 1.) She amended her complaint on August 9, 2006, and
moved for an expedited ruling on collective action certification on August
15, 2006. (Docs. 2, 6.) Defendant answered on September 5, 2006. (Doc.
29.) On that same day, Defendants Dolgencorp of New York, Dolgencorp of
Texas, and Dollar General Partners moved to be dismissed from this cause
for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal
Rules of Civil Procedure. (Doc. 27.)

III.   Discussion.

Plaintiff has brought this FLSA action against Defendant on behalf of
herself and all current and former store managers similarly situated.
However, "a member of the class who is not individually named in the
complaint is not a party to [an FLSA lawsuit] unless he affirmatively 'opts in'

Case 2:06-cv-04091-MEF-TFM Document 40 Filed 05/10/2007 Page 6 of 13
Case 1:06-cv-01008-MEF-WC Document 49-8 Filed 11/05/2007 Page 6 of 13
Case 2:06-cv-00951-MEF-TFM Document 54 Filed 04/09/2007 Page 6 of 13

by filing a written consent with the Court."[4] *Haynes v. Singer Co.*, 696 F.2d 884, 885 (11th Cir. 1983) (citing 29 U.S.C. §216 (b)). Plaintiff therefore asks the Court to allow this case to proceed conditionally as a collective action and authorize nationwide notice to "all managers and former managers of Defendants" for the past 3 years.[5] (Doc. 6 at 1.) Before a district court may issue such an order, however, Plaintiff must show to the court's satisfaction "that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Florida Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Plaintiff need not establish "a unified policy, plan, or scheme of discrimination" to satisfy the liberal "similarly situated" requirement of §216(b)," *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996), but she does bear the burden of demonstrating a "reasonable basis" for her claim of class-wide

---

[4] In this manner, a collective action under 20 U.S.C. §216(b) is a "fundamentally different creature than the Rule 23 class action." *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003).

[5] Because Plaintiff has alleged that Defendant has intentionally violated the FLSA, the notice period for the conditional opt-in class would be 3 years. *See* 29 U.S.C. § 255(a); *see also Knight v. Columbus, Ga.*, 19 F.3d 579, 582 (11th Cir. 1994), *cert. denied*, 513 U.S. 929 (1994).

Case 2:06-cv-01081-MEF-TFM   Document 40   Filed 05/10/2007   Page 7 of 13
Case 1:06-cv-01000-MEF-WC   Document 49-8   Filed 11/05/2007   Page 7 of 13
Case 2:06-cv-00353-MEF-TFM   Document 54   Filed 05/25/2007   Page 7 of 13

discrimination. *See Haynes*, 696 F.2d at 887. Plaintiff may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination — that is, detailed allegations supported by affidavits which "successfully engage defendants' affidavits to the contrary." *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 406-07 (D. N.J. 1988). The decision whether to facilitate notice to potential plaintiffs is within the sole discretion of the district court, which also has the power to allow for discovery of the names and addresses of potential collective action class members. *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989).

The United States Court of Appeals for the Eleventh Circuit has suggested a two-tiered approach for dealing with collective action certification and notice pursuant to § 216(b). *Hipp v. Libery Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).[6] First, a district court would make a decision, "usually based only on the pleadings and any affidavits which have been submitted — whether notice of the action should be given to potential class members." *Id.* at 1218 (quoting *Mooney v. Aramco Servs.*

_____

[6] Although *Hipp* addresses a collective action brought under the Age Discrimination in Employment Act of 1967, the same analysis applies to collective actions under the FLSA. *Cameron*, 347 F.3d at 1243 n.2.

Case 2:06-cv-04081-MEF-TFM Document 40 Filed 05/16/2007 Page 8 of 13
Case 1:06-cv-01009-MEF-WC Document 40-8 Filed 11/05/2007 Page 8 of 13
Case 2:06-cv-00991-MEF-TFM Document 54 Filed 06/20/2007 Page 8 of 13

Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' or a representative class." *Id.* Then, "after discovery is largely complete...[and] the court has much more information on which to base its decision," the district court makes a "factual determination" as to whether the claimants are similarly situated. *Id.*

Although any characterization of Ms. Richter as a wholly new plaintiff with no connection to the *Brown* litigation is essentially one step shy of a legal fiction, Defendant has not convinced this Court that the "fairly lenient" standard of the first analytical tier should not be applied. Defendant notes the extensive discovery carried out in *Brown* — estimating that it alone produced over 400,000 pages of documents (Doc. 71 at 3 n.4) — and correctly observes that district courts often apply a more rigorous standard in analyzing motions for collective action certification where substantial discovery has already taken place.[7]  However, the discovery in

---

[7] *See Brooks v. Bellsouth Telecommunications, Inc.,* 164 F.R.D. 561, 568-69 (N.D. Ala. 1995) (denying certification after "extensive discovery" had been done in the case); *Davis v. Charoen Pokphand (USA) Inc.,* 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004)

Case 2:06-cv-01081-MEF-TFM    Document 40    Filed 05/10/2007    Page 9 of 13
Case 1:06-cv-01000-MEF-WC    Document 49-8    Filed 11/05/2007    Page 9 of 13
Case 2:06-cv-00951-MEF-TFM    Document 54    Filed 04/23/2007    Page 9 of 13

such cases was conducted by the same plaintiff in the same action in which the motion for collective action certification was pending. That is not the situation here. At least 30 individuals from diverse states have filed consents to opt into this action. These potential plaintiffs and Ms. Richter are different and distinct plaintiffs from the named plaintiffs in *Brown*, and assert "substantial allegations of class-wide discrimination" through allegations and evidence that Defendant has violated the FLSA. *See, e.g,* *Grayson*, 79 F.3d at 1097. Such allegations, if founded, may well unify individuals in the proposed class and allow for "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffman-LaRoche Inc.*, 493 U.S. at 170. Defendant further argues that this case is inappropriate for collective action certification because the only disputed element of the executive exemption

---

(applying "a more rigorous standard than that called for...a typical motion for conditional certification" where plaintiffs "have had an opportunity to conduct discovery with respect to defendant's policies and procedures); *Morisky v. Public Service Electric & Gas Co.*, 111 F. Supp. 2d 493, 498 (D. N.J. 2000) (less lenient standard where discovery was completed "well before" the motion for collective action certification was filed). Further, this Court's opinion in *Slaughter v. CVS RX Servs., Inc.*, 2:03-cv-01403-LSC (N.D. Ala. Nov. 2, 2004) applied a more rigorous standard where the plaintiffs moved to facilitate notice at a comparatively late stage of the litigation; had already conducted extensive discovery; and offered only "mere conjecture" and a single questionable affidavit as evidence that similarly situated employees wished to opt into the lawsuit.

is the question of whether Plaintiff's "primary duty" is management – a criterion requiring an individualized inquiry.   (Doc. 47 at 3.)   While Defendant may ultimately be able to establish this at the "tier two" decertification phase of this cause, the Court finds that Plaintiff has met her burden under the more lenient standard of "tier one."

Plaintiff's motion is therefore due to be GRANTED.[8]   The Court will facilitate nationwide notice to those similarly situated.  The parties will be DIRECTED to confer and jointly file with the Court a proposed collective action notice and plan for facilitating notice.

The Court emphasizes, however, that it is under no illusion that the instant action bears no relation to the *Brown* litigation, and will not perpetuate any such pretense.  *Brown*, filed in 2002 and settled in late

---

[8] The Court also has for consideration Defendant's Motion to Strike the Evidentiary Submission Filed with Plaintiff's Reply in Support of the Motion for Collective Action Certification, or in the Alternative for Leave to File Surreply in Opposition to the Motion for Collective Action Certification, filed on October 10, 2006 (Doc. 56), and Defendant's Motion to Strike Plaintiff's Supplementary Evidentiary Submission in Support of the Motion for Collective Action Certification, or in the Alternative for Leave to File Surreply in Opposition to the Motion for Collective Action Certification, filed on January 8, 2007 (Doc. 71).  The Court will not strike the evidentiary material in question, but it has given due consideration to the surreply that Defendant appended to its second Motion to Strike.  (*Id.*)  Both of these motions are therefore due to be GRANTED IN PART (as to leave to file a surreply) and DENIED IN PART (as to the striking of evidentiary material).

Case 2:06-cv-01081-MEF-TFM   Document 40   Filed 05/16/2007   Page 11 of 13
Case 1:06-cv-01082-MEF-CSC   Document 40-3   Filed 11/05/2007   Page 11 of 13
Case 2:06-cv-00951-MEF-TFM   Document 54   Filed 05/29/2007   Page 11 of 13

2006, was litigated by the same counsel and stated the same allegations against the same defendant. All parties have extensively relied on the evidentiary record of *Brown*, and Plaintiff in particular has tried to, in the words of Defendant, "have it both ways - claiming that she lacks sufficient discovery while relying on the wealth of information accumulated throughout four years of litigation." (Doc. 71 at 2.) Although the interests of justice lead the Court to grant conditional certification and to facilitate nationwide notice, the Court acknowledges its role in ensuring that the discovery process is not unduly duplicative, burdensome, or costly.[9] Accordingly, the Court sees no reason why discovery conducted in *Brown* or in *Gray* should not be used in *Richter* to the extent that it is relevant. The parties are **DIRECTED** to ensure that the discovery in this cause is carried out in good faith and takes into account the time, expense, and substance of the discovery already undertaken in *Brown* and / or *Gray*.

---

[9] *See* Fed R. Civ. P. 26(b)(1) cmt. background (2000) (amendments to the discovery rules were in part "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery. The Committee has been informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery. Increasing the availability of judicial officers to resolve discovery disputes and increasing court management of discovery were both strongly endorsed by the Federal Judicial Center").

Case 2:06-cv-0108-MEF-TFM   Document 40   Filed 05/10/2007   Page 12 of 13
Case 1:06-cv-01090-MEF-WC   Document 49-2   Filed 11/05/2007   Page 12 of 13
Case 2:06-cv-00031-MEF-TFM   Document 54   Filed 05/23/2007   Page 11 of 12

IV.   Conclusion.

For the aforementioned reasons, this Court exercises its discretion to authorize and order nationwide notice to Plaintiffs' proposed opt-in class, and to conditionally certify this cause as a collective action.  Therefore, Plaintiff's Motion for Expedited Ruling on Collective Action Certification is due to be GRANTED.  Should further discovery reveal that the opt-in plaintiffs are too disparate and/or their claims are of an individualized nature not suitable for collective action treatment, Defendant may raise these issues in a motion for decertification or a motion for summary judgment.

Since the Court has conditionally certified this cause as a collective action, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) is due to be DENIED. The moving Defendants have leave to re-file this motion upon any subsequent decertification of this cause.

Further, in light of the considerable amount of time and resources already expended over the life of the *Brown*, *Richter*, and *Gray* actions, the Court will ORDER the parties to actively discuss settlement and/or

Alternative Dispute Resolution possibilities. The parties will also be

ORDERED to apprise the Court on the outcome of this discussion.

A corresponding order is filed contemporaneously herewith.

Done this 23rd day of March 2007.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DARRYL ANDERSON, et. al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 1:06-cv-01000-MEF-WC |
| | § | |
| PERDUE FARMS INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

# <u>EXHIBIT 6</u>

Case 2:06-cv-00205-MEF-WC Document 240 Filed 08/08/2007 Page 2 of 11
Case 7:06-cv-01553-LSC Document 62 Filed 04/12/2007 Page 1 of 10
Case 1:06-cv-01000-MEF-WC Document 49-9 Filed 11/05/2007 Page 2 of 11

FILED
2007 Apr-12 PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

SUSIE KNOTT, *on behalf of herself* ]
*and others similarly situated,* ]
                     ]

    Plaintiff, ]
                   ]

    vs. ]          7:06-CV-01553-LSC
                   ]

DOLLAR TREE STORES, INC., ]
                   ]

    Defendant. ]

## MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration Susie Knott's ("Plaintiff") Motion to Facilitate Notice Pursuant to § 216(b) of the Fair Labor Standards Act, filed on January 26, 2007. (Doc. 24.) The motion has been fully briefed and is under submission. The Court convened a hearing on this matter on March 27, 2007.

On August 8, 2006, Plaintiff filed the current action on behalf of herself and other current and former Dollar Tree store managers similarly situated. Plaintiff was once the manager of one of Defendant's stores in

Page 1 of 10

Tuscaloosa County, Alabama.  (Doc. 1 ¶ 3.)  She alleges that Dollar Tree Stores, Inc. ("Defendant") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by intentionally and recklessly failing to pay overtime compensation.   (Doc. 1 ¶ 4; Doc. 24 ¶ 3.)   Plaintiff seeks reinstatement; unpaid compensation and benefits; damages and/or prejudgment interest; attorneys' fees and costs; and appropriate injunctive relief.  (Doc. 1 at 9.)  She further requests that the Court  conditionally certify this cause as a collective action pursuant to 29 U.S.C. § 216(b) and facilitate nationwide notice to all similarly situated persons.[1]  Defendant argues that this cause is unsuitable for conditional collective action certification and notice because Plaintiff and her proposed opt-in class are not "similarly situated" to each other within the meaning of 29 U.S.C. § 216 (b) and the applicable regulations.

Upon careful consideration of the evidence and legal arguments submitted by the parties, Plaintiff's motion is due to be granted.

----

[1] Plaintiff appended a proposed notice to her motion. (Doc. 24 ex. 1.) Defendant did not comment on the proposed notice in its response to the motion. (Doc. 41.) If the Court grants notice, Plaintiff asks that Defendants be ordered to produce, within 10 days, the names, addresses, and social security numbers of potential plaintiffs. (Doc. 24 at 3.)

Case 2:06-cv-00703-CSC-TFM Document 40 Filed 03/08/2007 Page 4 of 11
Case 2:06-cv-01553-LSC Document 62 Filed 12/12/2007 Page 4 of 11
Case 1:06-cv-01000-MEF-WC Document 49-9 Filed 11/05/2007 Page 4 of 11

## II. Procedural History.

Plaintiff filed her complaint on August 8, 2006, and asserted a collective action against Defendants on behalf of herself and all others similarly situated. (Doc. 1.) Defendant answered on August 25, 2006. (Doc. 5.) On December 7, 2006, Defendant moved to transfer this action to the United States District Court for the Eastern District of Virginia. (Doc. 11.) The Court denied the motion to transfer venue on February 28, 2007. (Doc. 49.) Plaintiff moved to conditionally certify this cause as a collective action and to facilitate notice on January 26, 2007. (Doc. 24.)

## III. Discussion.

"[A] member of the class who is not individually named in the complaint is not a party to [an FLSA lawsuit] unless he affirmatively 'opts in' by filing a written consent with the Court."[2] *Haynes v. Singer Co.*, 696 F.2d 884, 885 (11th Cir. 1983) (citing 29 U.S.C. § 216 (b)). Plaintiff asks the Court to allow this case to proceed conditionally as a collective action and authorize nationwide notice to "all Store Managers currently employed with

---

[2] In this manner, a collective action under 20 U.S.C. § 216(b) is a "fundamentally different creature than the Rule 23 class action." *Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1249 (11th Cir. 2003).

Case 2:06-cv-00821-MEM-TFM Document 257-40 Filed 06/30/2007 Page 5 of 11
Case 2:06-cv-01553-LSC Document 62 Filed 04/12/2007 Page 5 of 10
Case 1:06-cv-01000-MEF-WC Document 49-9 Filed 11/05/2007 Page 5 of 11

the defendant or previously employed within 3 years of the filing of the Complaint."[3] (Doc. 24 at 1-2.) Before a district court may issue such an order, Plaintiff must show to the court's satisfaction "that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Florida Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Plaintiff need not establish "a unified policy, plan, or scheme of discrimination" to satisfy the liberal "similarly situated" requirement of § 216(b)," *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996), but she does bear the burden of demonstrating a "reasonable basis" for her claim of class-wide discrimination. *See Haynes*, 696 F.2d at 887. Plaintiff may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination — that is, detailed allegations supported by affidavits which "successfully engage defendants' affidavits to the contrary." *Sperling v. Hoffman-LaRoche, Inc.*,

---

[3] Because Plaintiff has alleged that Defendant has intentionally violated the FLSA, the notice period for the conditional opt-in class would be 3 years. *See* 29 U.S.C. § 255(a); *see also Knight v. Columbus, Ga.*, 19 F.3d 579, 582 (11th Cir. 1994), *cert. denied*, 513 U.S. 929 (1994).

Page 4 of 10

Case 2:06-cv-00355-WKW-TFM   Document 23-7   Filed 09/08/2007   Page 6 of 11
Case 2:06-cv-01553-LSC   Document 62   Filed 04/12/2007   Page 6 of 10
Case 1:06-cv-01000-MEF-WC   Document 49-9   Filed 11/05/2007   Page 6 of 11

118 F.R.D. 392, 406-07 (D. N.J. 1988). The decision whether to facilitate notice to potential plaintiffs is within the sole discretion of the district court, which also has the power to allow for discovery of the names and addresses of potential collective action class members. *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989).

The United States Court of Appeals for the Eleventh Circuit has suggested a two-tiered approach for dealing with collective action certification and notice pursuant to § 216(b). *Hipp v. Libery Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).[4] First, a district court would make a decision, "usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members." *Id.* at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' or a representative class." *Id.* Then, "after discovery is largely complete ... [and] the court has much more

_____

[4] Although *Hipp* addresses a collective action brought under the Age Discrimination in Employment Act of 1967, the same analysis applies to collective actions under the FLSA. *Cameron*, 347 F.3d at 1243 n.2.

Case 2:06-cv-01000-MEF-WC   Document 40   Filed 05/30/2007   Page 7 of 11
Case 7:05-cv-01583-LSC   Document 62   Filed 04/12/2007   Page 8 of 10
Case 1:06-cv-01000-MEF-WC   Document 49-9   Filed 11/05/2007   Page 7 of 11

information on which to base its decision," the district court makes a "factual determination" as to whether the claimants are similarly situated. *Id.*

Defendant has not convinced this Court that the "fairly lenient" standard of the first analytical tier should not be applied. · At least 35 individuals from different states have filed consents to opt into this action. Plaintiff has filed 26 declarations[5] from herself and opt-in plaintiffs — one of whom is a former Dollar Tree District Manager — that assert "substantial allegations of class-wide discrimination" through allegations and evidence.[6]

_____

[5] The Court notes that these declarations are obviously form declarations. The declarations show minimal (if any) divergence from one another. Although not fatal to Plaintiff's motion for conditional certification and notice, Plaintiff will have to engage in heightened evidentiary and factual development to survive the inevitable "tier two" decertification analysis.

[6] Plaintiff claims that she and the opt-in plaintiffs "were required to work 50-70 hours per week without compensation," and that they "spent 85% or more of their time unloading trucks, stocking shelves, running the cash register and various other non-managerial job duties." (Doc. 24 at ¶ 6.) Plaintiff claims that this was in keeping with "a uniform policy and practice of consistently requiring its Store Managers to work over 40 hours a week for a salaried amount without overtime compensation." (Doc. 1 ¶ 5.) She avers that Defendant has operated its business in this manner for at least 10 years (presumably from the date of the complaint). (*Id.* at ¶ 24.) In essence, Plaintiff has claimed that it is Defendant's District Managers, and not its Store Managers, who wield the powers contemplated by the executive exemption (e.g., store management, authority to hire/fire/promote/discipline/award pay raises, customarily and regularly directing the work of two or more employees). (*Id.* at ¶¶ 7-11.) The declaration of Ernest Dan Howard, former District Manager and current Store Manager in Defendant's employ, is particularly in accord with Plaintiff's allegations. (Doc. 45 ex. A.)

Case 2:06-cv-00365-WKW-TFM Document 23-40 Filed 05/09/2007 Page 8 of 11
Case 2:06-cv-01553-LSC Document 62 Filed 04/12/2007 Page 7 of 10
Case 1:06-cv-01000-MEF-WC Document 49-9 Filed 11/05/2007 Page 8 of 11

See, e.g, Grayson, 79 F.3d at 1097. Such allegations, if founded, may well

unify individuals in the proposed class and allow for "efficient resolution in

one proceeding of common issues of law and fact arising from the same

alleged [FLSA violation]." Hoffman-LaRoche Inc., 493 U.S. at 170. Although

Defendant correctly notes that some district courts have employed a

heightened analysis[7] — more akin to "tier two" than "tier one" — at this

---

[7] Defendant cites several cases that apply a heightened standard where the parties had already engaged in extensive discovery. See Brooks v. Bellsouth Telecommunications, Inc., 164 F.R.D. 561, 568-69 (N.D. Ala. 1995); Morisky v. Public Service Electric & Gas Co., 111 F. Supp. 2d 493, 498 (D. N.J. 2000) (less lenient standard where discovery was completed "well before" the motion for collective action certification was filed). See also Slaughter v. CVS RX Servs., Inc., 2:03-CV-01403-LSC (N.D. Ala. Nov. 2, 2004), where this Court applied a more rigorous standard when the plaintiffs moved to facilitate notice at a comparatively late stage of the litigation; had already conducted extensive discovery; and offered only "mere conjecture" and a single questionable affidavit as evidence that similarly situated employees wished to opt into the lawsuit. No such circumstances are present in the instant case.

Defendant cites additional caselaw, none of which is precedent and some of which is unpublished. In Horne v. United States Automobile Assoc., 279 F. Supp. 2d 1231, 1235-37 (M.D. Ala. 2003), the court found that class certification was due to be denied because, inter atia, movant had at times actually received overtime pay, and offered an affidavit asserting only his "belief" as evidence that there were other similarly situated persons willing to opt in — extenuating factors not present in this cause. Both Harris v. Fee Transportation Servs., Inc., 2006 WL 1994586 (N.D. Tex. May 15, 2006) (unpublished opinion) (court had allowed 7 months for discovery regarding the certification issue) and King v. West Corp., 2006 WL 118577, at *13 (D. Neb. Jan. 13, 2006) (unpublished opinion) (court applied "tier two" certification scrutiny when the plaintiff moved to certify because the parties had, pursuant to a mutual agreement, been proceeding for eighteen months as though the case had been conditionally certified) are likewise distinguishable on their facts.

Case 2:06-cv-01003-MEF-TFM   Document 21-40   Filed 08/03/2007   Page 9 of 11
Case 2:06-cv-01003-ESC   Document 62   Filed 04/12/2007   Page 309 of 11
Case 1:06-cv-01000-MEF-WC   Document 49-9   Filed 11/05/2007   Page 9 of 11

stage of FLSA collective actions, most of those cases are glaringly distinguishable and therefore inapposite to the instant action.

Moreover, the lion's share of Defendant's brief in opposition to conditional certification and notice argues that the declarations of non-party Dollar Tree store managers and corporate officers show that "[t]he variations in the amount of time each [store manager] spends performing managerial duties and the amount of discretion each [store manager] exercises with respect to personnel decisions are dispositive of whether Dollar Tree [store managers] are similarly situated."[8]   (Doc. 41 at 8.) Defendant accordingly argues that this supposed variance in time spent performing managerial duties and in managerial discretion compels the conclusion that Plaintiff and the opt-in plaintiffs are not similarly situated to one another.  While Defendant may ultimately be able to establish this at the "tier two" decertification phase of this cause, the Court exercises its

---

[8] Plaintiff, in turn, counters that even if different store managers spend different amounts of time performing job duties, this does not establish that they are not similarly situated with regard to the job duties they perform, as "[n]ot one [store manager] declared that he/she alone performs a particular job duty that no other [store manager] performs because of the size, location, volume or merchandise of his/her store." (Doc. 45 at 7.) In any event, the Court agrees with Plaintiff that the "tier two" decertification phase is the appropriate juncture to explore these issues.

discretion and finds that Plaintiff has met her burden under the more lenient standard of "tier one."

IV.    Conclusion.

Plaintiff has established "a reasonable basis" for the allegation that a class of similarly situated persons exists, *Grayson*, 79 F.3d at 1097, and her motion is therefore due to be granted. The Court will facilitate nationwide notice to those similarly situated. The parties will be directed to confer and jointly file with the Court a proposed collective action notice and plan for facilitating notice.[9]

A corresponding order is filed contemporaneously herewith.

---

[9] At the March 27, 2007 class certification hearing, Defendant argued that should the Court authorize notice in this case, current and former managers of Defendant's California stores should be excluded because the California store manager job descriptions and duties differ from those of non-California store managers. The Court ordered Defendant to file a written memorandum of law to this effect, and Defendant did so on March 30, 2007, in the form of a motion to exclude current and former California store managers from any notice the Court may authorize. (Doc. 57.)

Because Plaintiff responded on April 2, 2007 that she does not oppose excluding California store managers from notice (Doc. 59), the Court will order the parties to take the "California exclusion" into account while jointly drafting the proposed collective action notice and plan.

Case 1:07-cv-00275-CG-M   Document 23-7   Filed 08/08/2007   Page 11 of 11
Case 2:06-cv-00681-MEF-WC   Document 40   Filed 04/05/2007   Page 11 of 11
Case 1:06-cv-01000-MEF-WC   Document 49-9   Filed 11/05/2007   Page 11 of 11

Done this 12th day of April 2007.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
147406

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DARRYL ANDERSON, et. al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **1:06-cv-01000-MEF-WC** |
| | § | |
| **PERDUE FARMS INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

# <u>EXHIBIT 7</u>

FILED
2007 Jul-03  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

JIMMY BELUE, et al.,                    }
                                        }
    **Plaintiffs,**               }
                                        }
v.                                      }        **Case No.: 4:06-CV-2095-RDP**
                                        }
WAYNE FARMS, LLC,                       }
                                        }
    **Defendant.**                }
                                        }
_____          }
                                        }
ROBERT THOMAS DUNN, et al.,             }
                                        }
    **Plaintiffs,**               }
                                        }
v.                                      }        **Case No.: 4:07-CV-0647-RDP**
                                        }
WAYNE FARMS, LLC,                       }
                                        }
    **Defendant.**                }

## ORDER

Pending before the court is Plaintiffs' Motion for an Order Permitting Court Supervised Notice to Employees of Their Opt-in Rights (Doc. # 28)[1] filed February 20, 2007 and Plaintiffs' Motion to Lift Stay (Doc. # 62) filed June 18, 2007. Plaintiffs filed their memorandum in support of this motion in the same submission and the court set out a briefing schedule for the motion in its March 27, 2007 Order (Doc. # 43). Defendant filed its response in opposition to Plaintiffs' motion (Doc. # 49) on April 10, 2007 and Plaintiffs submitted their reply on April 17, 2007 (Doc. # 52). The court had previously scheduled oral argument on the motion for April 24, 2007, to be held

---

[1]All document numbers in this Order are taken from the docket sheet in the lead case, *Belue v. Wayne Farms*, 4:06-CV-2095-RDP, unless otherwise noted.

contemporaneously with the hearing set in *Bolden v. Wayne Farms, LLC*, civil action number 5:06-CV-2096-IPJ, in Judge Inge P. Johnson's courtroom. However, after being notified of an attorney's illness, the court cancelled the hearing and notified all parties.

On April 11, 2007, on its own motion, the court ordered the above-styled cases consolidated for all pretrial proceedings.[2] (Doc. # 50). Thereafter, the court again set the Plaintiff's motion for oral argument and a status conference (Doc. # 55), which was held on May 23, 2007 in Judge Inge P. Johnson's jury room. At the status conference, both parties led the court to believe that the appointment of lead counsel for Plaintiffs was unnecessary, as attorneys at The Cochran Firm and William S. Hommel could effectively coordinate their efforts and their communications with defense counsel. Also during the status conference, the court was led to believe that both parties would work together to submit a joint proposed order appointing a special master, a joint proposed class notice, and a joint status report regarding the acquisition of mailing addresses for the purpose of mailing the class notice. After the status conference, on May 25, 2007, the court issued an Order in which it directed both parties to submit the joint status report regarding their discussions about the appointment of a special master, the proposed class notice, and the joint status report regarding the acquisition of potential opt-in plaintiffs' mailing addresses by no later than June 8, 2007. (Doc. # 58).

---

[2]The court is mindful that Plaintiffs' Motion for an Order Permitting Court Supervised Notice to Employees of Their Opt-in Rights (Doc. # 28) was filed before the consolidation of these cases, and that no similar motion was filed in *Dunn v. Wayne Farms, LLC*, 4:07-CV-0647-RDP. However, the court here notes that all parties understand that the motion was to include the *Dunn* Plaintiffs and that no party has stated otherwise. In any event, this collective action may ultimately result in an opt-in plaintiff class, and the *Dunn* Plaintiffs, by submitting to this court's jurisdiction through consolidation, have essentially opted-in to the putative class.

Two days before the submissions outlined in the court's May 25, 2007 Order were due, on June 6, 2007, Defendant filed its Notice of Motion to Transfer and Consolidate for Pretrial Proceedings to the Judicial Panel on Multi-District Litigation ("MDL") and supporting brief and exhibits. (Docs. # 59 & 60). After being led to believe that both parties had agreed to a stay in this case, the court then issued its June 7, 2007 Order staying the case pending the disposition of Defendant's motion in front of the MDL Panel. (Doc. # 61). However, on June 18, 2007, Plaintiffs filed their Motion to Lift Stay (Doc. # 62) so that class notice could issue. The court set a telephone conference in this case by its June 20, 2007 Order, in which it also asked the parties to submit the joint status report regarding their discussions about the appointment of a special master, the proposed class notice, and the joint status report regarding the acquisition of potential opt-in plaintiffs' mailing addresses that were originally due by June 8, 2007. (Doc. # 63). On June 21, 2007, Defendant filed its Opposition to Plaintiff's Motion to Lift Stay (Doc. # 64), asking that the stay continue until such time as the Judicial Panel on MDL could consider Defendant's motion for consolidation. On June 25, 2007, the parties filed their submissions originally ordered by the court in its May 25, 2007 Order, and again in its June 20, 2007 Order. To the court's dismay, the parties submitted competing versions of both a proposed class notice and proposed order appointing a special master. (Doc. # 65 Exs. A, B, C & D). Furthermore, as was made evident during the telephone conference, the parties continue to refuse to coordinate their efforts and work together in good faith on various issues. Therefore, having thoroughly reviewed the parties' submissions and arguments, the court finds as follows:

Plaintiffs brought this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, on behalf of themselves and other similarly-situated individuals. More specifically,

Plaintiffs allege that their employer, Defendant Wayne Farms, LLC, violated the FLSA by failing to pay employees for various pre-production and post-production line activities they perform that are integral to their overall employment responsibilities and that are not captured in the "master time compensation" recording system of hours worked. Defendant asserts several reasons why this case is not appropriate for class action treatment, including that several employees encompassed in Plaintiffs' proposed class definition do not have a valid FLSA claim and are not "similarly-situated" with the subset[3] of employees that Defendant argues would be the only group entitled to any compensation.

The Eleventh Circuit has established a two-tiered approach for a district court's consideration of whether to allow a FLSA claim to proceed as a collective action:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

---

[3]Defendant offers that if any class were approved for court-supervised notice of their opt-in rights, such class should be limited to "knife-wielding debone" hourly employees whose time is "recorded by master-card swipes" and whom Defendant requires to wear PPEs, "have received six minutes per day personal time compensation," have 45 minute unpaid breaks each shift, and use the main employee break room for such breaks. (Doc. # 49 at 25–27). The court finds this proposed class definition to be overly narrow and approves the class as set forth *infra*.

Additionally, Defendant alleges that the amount of time spent donning and doffing gear is *de minimis* or that FLSA specifically exempts time claimed by Plaintiffs as compensable under 29 U.S.C. § 203(o). However, these arguments go to the merits of Plaintiffs' claims and are not relevant to the issue of whether other similarly situated individuals are subject to the same "unified policy, plan or scheme of discrimination." *Hipp*, 252 F.3d at 1217.

4

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—*i.e.*[,] the original plaintiffs—proceed to trial on their individual claims.

[*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)] (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995) (internal footnote omitted)). Since *Hipp*, the district courts in our circuit have utilized the two-tiered approach described above. *See, e.g., Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227, 1230 (S.D. Ala. 2003); *Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1102 (M.D. Ala.2003); *Stone v. First Union Corp.*, 216 F.R.D. 540, 544–46 (S.D. Fla.2003).

*Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).

During the notice stage, the court may facilitate the notice process to prospective class members. However, before intervening in the process, the district court must be satisfied that there are other employees of the employer who (1) desire to opt-in and (2) who are similarly situated with respect to their job requirements and their pay provisions. *Cameron-Grant*, 347 F.3d at 1244; *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir.1991).

In *IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S. Ct. 514 (2005), the United States Supreme Court directly addressed several of the issues presented by Plaintiffs here. The Court wrote that:

[U]nder *Steiner* [*v. Mitchell*, 350 U.S. 247 (1956)], activities, such as the donning and doffing of specialized protective gear, that are "performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1)." [*Steiner*], at 256, 76 S. Ct. 330.

126 S. Ct. at 521.

5

Applying the standards stated above, the court finds that Plaintiffs have proposed a class of all "1st and 2nd processing" employees.[4] Such employees assert that Defendant has violated the FLSA by (1) failing to pay them for pre-production and post-production activities integral to their job responsibilities, and (2) failing to pay them for all time actually worked, rather than that recorded by a "master time card" compensation system. Defendant responds that this in not an appropriate class because some potential members of Plaintiffs' proposed class definition do not have a valid FLSA claim and different positions within the plant have different requirements as to what gear must be donned and/or activities must be performed, and how compensation time is calculated, and, thus, these employees are not "similarly-situated." However, at this stage of the proceedings, Plaintiffs do not necessarily need to show a "unified policy, plan, or scheme of discrimination" to establish that the proposed class members are similarly situated. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th

---

[4]Specifically, Plaintiffs propose a class of:

All current and former hourly 1st and 2nd processing employees of Defendants, paid under a master time compensation system in which individuals' time card punches are not the basis for starting and ending hours worked, who worked at the Albertville facility since October 16, 2003, and who were not paid for all the time spent performing compensable work-related tasks or legally compensable time, including, but not limited to authorized unpaid break times, donning and doffing times, washing activity times, time associated with passing through security check points and walking to changing areas and time walking to security and passing through security at the end of the day and walking times to and from break areas or donning and doffing areas, and including time compensable at regular hourly wages, as well as overtime pay for these employees.

(Doc. # 26 ¶ 26).

6

Cir.1996)).[5]  Here, through consents to join this case filed to date added to the original Plaintiffs,

---

[5]Defendants insist that this "lenient standard" as set out in *Hipp*, 252 F.3d at 1217, is inappropriate for this case because there has been sufficient discovery produced to Plaintiffs on the certification issue.  They argue that, even at the notice stage, courts have applied a higher standard—akin to that normally used in the decertification stage—when a significant amount of discovery has occurred. *See Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004) (rationale for "lenient" standard "disappears once plaintiffs have had an opportunity to conduct discovery"); *see also Brooks v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 566 (N.D. Ala. 1995) (analyzing class certification in light of extensive discovery by plaintiff); *Fox v. Tyson Foods, Inc.*, No. 4:99-CV-01612-VEH, slip op. at 10–12 (N.D. Ala. Nov. 15, 2006) (after substantial discovery, "certification of the Plaintiffs' class under the more lenient standard of the first-tier in Hipp would be unjust . . . [and] contrary to the interests of judicial economy.").

The court cannot agree that this case, which is barely eight months old, is procedurally similar to those cases cited by Defendant, in which general discovery was nearing to a close after a period of years.  Furthermore, the court finds each cited case distinguishable from the present case. In *Davis*, Judge Thompson held that, "[e]ven under the 'fairly lenient standard' called for by *Hipp*, plaintiffs have not met their 'burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist[ ] in the broad class that they propose[ ].'" 303 F. Supp. 2d at 1277. In *Brooks*, Judge Blackburn found that the plaintiff failed "to submit evidence establishing at least a colorable basis for his claim that a class of similarly situated plaintiffs exist" even after the court had granted him a specific period for discovery on that issue. 164 F.R.D at 567–68. Finally, in *Fox*, Judge Hopkins specifically found that there was no "unified policy, plan, or scheme of discrimination" perpetrated by Defendant, that the class action would not be feasible because of the large number of plaintiffs, and that plaintiffs could not meet an heightened certification standard after almost seven years of discovery. *Fox*, No. 4:99-CV-01612-VEH, slip op. at 10–14. Moreover, Plaintiffs in this case seek to certify a class that is already more narrowly drawn than the overly-broad "all employees," as they single out "processing employees paid by a master time card system" for certification, which the court finds substantiated by evidence in the record to date.

To the extent that there is any such similarity, the court finds that there is not sufficient evidence before it at this stage to "skip" the first-tier of the Eleventh Circuit's certification process set forth in *Hipp*, nor to hold Plaintiffs to this "more stringent" certification standard. Alternatively, Defendant urged this court to allow for discovery sufficient to apply the "more stringent" standard to Plaintiffs' motion.  The court expressly declines this invitation and reiterates that Defendant will not only be permitted to resubmit these arguments (undoubtedly with more factual support in the record post-discovery) during the "decertification stage," but also notes that Defendant may make a proper motion to remove any opt-in Plaintiff filing a consent if he or she does not fit within the class definition as approved by the court.

7

Plaintiffs have established that at least forty-three employees exist who allege they have not been paid for time spent donning and doffing protective gear or for other time they are engaged in "work."

Having considered the foregoing, and being of the opinion that both the motion to lift the stay and the motion to conditionally certify the class and facilitate notice are due to be granted:

It is therefore **ORDERED** by the court that Plaintiffs' Motion to Lift Stay (Doc. # 62) is due to be **GRANTED** for the limited purposes of issuing class notice and appointing a special master in this case. Any other filings **SHALL** only be permitted after the parties confer on such matters in a face-to-face meeting, as detailed by the court's Order addressing such matters and entered contemporaneously herewith.

It is further **ORDERED** by the court that Plaintiffs' motion to facilitate 29 U.S.C. § 216(b) notice (Doc. # 28) be and hereby is **GRANTED**.

It is further **ORDERED** by the court that the following Notice of Right to Opt-In to Collective Action be sent to all present and former "1st and 2nd processing" employees of Defendant who were paid on a "master card time" basis, from October 16, 2003, to the present, such definition being set forth more fully in the following Notice.[6]

It is further **ORDERED** that said Notice be sent in English and be accurately translated and sent in Spanish.

**DONE** and **ORDERED** this _____3rd_____ day of July, 2007.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[6]Defendants also objected strongly to the semantics and appearance of Plaintiffs' proposed Notice (Doc. # 28 Ex. A). The court noted such objections in making its revisions.

8

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DARRYL ANDERSON, et. al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 1:06-cv-01000-MEF-WC |
| | § | |
| PERDUE FARMS INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CLIFTON SPEARS, etc.,        :

     Plaintiff,        :

                        :

vs.                     :     CIVIL ACTION 07-0275-CG-M

                        :

CHOCTAW COUNTY COMMISSION,     :

     Defendant.        :

MEMORANDUM ORDER

The following motions are before the Court:  Plaintiff's Motion for an Order Permitting Court Supervised Notice to Employees of Their Opt-In Rights[1] (Doc. 23), Defendant's Motion to Strike [Plaintiff's] Notices of Consent to Join[2] (Doc. 33), Plaintiff's Motion for Protective Order[3] (Doc. 35), and Defendant's Motion to Strike Plaintiff's Supplemental Response[4] (Doc. 43).

The facts are, briefly, as follows.  Plaintiff Clifton Spears is a former deputy sheriff[5] who worked for the Choctaw

---

[1]Defendant has filed an Objection to this Motion (Doc. 32) to which Spears has filed a Reply and a Supplemental Reply (Doc. 37, 42).

[2]Plaintiff has filed a Response and Supplemental Response to this Motion (Docs. 36, 40) to which Defendant has Replied (Doc. 44).

[3]Defendant has filed a Response to this Motion (Doc. 41) to which Plaintiff has Replied (Doc. 47).

[4]Plaintiff has filed a Response to this Motion (Doc. 45).

[5]Plaintiff has stated that he is a former employee as well as a current employee on medical leave (cf. Doc. 1, ¶¶ 8, 11, 17).

County Sheriff's Department[6] which provided law enforcement, emergency, and rescue services for the City of Butler and Choctaw County (Doc. 1, ¶¶ 2, 8, 17). The Defendant is the Choctaw County Commission (hereinafter *Choctaw*) (*id.*, at ¶ 1).[7] Spears claims that during his employment, which has been within the last three years of his having filed this action, he was paid as an hourly employee for forty hours per week, though he regularly worked more than forty hours during a week (*id.* at ¶¶ 8, 11-12). Plaintiff has worked as many as sixty-five hours during a week, but received pay for only forty hours; he never received compensation for more than forty hours (*id.* at ¶¶ 15-16, 18).

Spears brought this action on April 18, 2007, claiming that Defendant's failure to compensate him for his overtime work is a violation of the Fair Labor Standards Act of 1938 (hereinafter *FLSA*) (Doc. 1). *See* 29 U.S.C. § 207. He has brought this action on behalf of himself and all others similarly situated, seeking to maintain this action as an "opt-in" collective action under provisions of the FLSA (Doc. 1, ¶¶ 23-33). Unto that end, Plaintiff has filed several "Notice[s] of Filing Additional Notices of Consent to Join" (Docs. 6, 9, 46, 48) and a "Motion

---

[6]Throughout the complaint and various other pleadings, it is stated that Plaintiff worked for the Choctaw County Police Department and for the Choctaw County Sheriff's Department; this is confusing. However, it seems from all the pleadings that the later is correct and that title will be used herein.

[7]The Court notes that the Choctaw County Sheriff's Department was originally a Defendant to this action, but it was dismissed (Doc. 20).

2

for and Order Permitting Court Supervised Notice to Employees of

Their Opt-in Rights" (Doc. 23).

Spears has brought this action under the following FLSA

statute:

> Any employer who violates the provisions of
> section 206 or section 207 of this title
> shall be liable to the employee or employees
> affected in the amount of their unpaid
> minimum wages, or their unpaid overtime
> compensation . . . An action to recover the
> liability prescribed in either of the
> preceding sentences may be maintained against
> any employer . . . in any Federal or State
> court of competent jurisdiction by any one or
> more employees for and in behalf of himself
> or themselves and other employees similarly
> situated.  No employee shall be a party
> plaintiff to any such action unless he gives
> his consent in writing to become such a party
> and such consent is filed in the court in
> which such action is brought.

29 U.S.C.A. § 216(b).   The parties both agree that the analysis

of this process begins with *Hipp v. Liberty National Life*

*Insurance Co.*, 252 F.3d 1208 (11th Cir. 2001), *cert. denied*, 534

U.S. 1127 (2002).   Though not requiring it, the *Hipp* Court

recommended that district courts use a two-tiered approach to

determine whether to certify a § 216(b) opt-in class.   *Hipp*, 252

F.3d at 1219.[8]   That approach, which the *Hipp* Court attributes to

---

[8]"The two-tiered approach to certification of § 216(b) opt-in
classes described above appears to be an effective tool for district
courts to use in managing these often complex cases, and we suggest
that district courts in this circuit adopt it in future cases.
Nothing in our circuit precedent, however, requires district courts to
utilize this approach.  The decision to create an opt-in class under §
216(b), like the decision on class certification under Rule 23,

*Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), is as follows:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-*i.e.*, the original plaintiffs-proceed to trial on their individual claims.

*Hipp,* 252 F.3d at 1218.

The Court will follow *Hipp*'s recommendation of the two-

---

remains soundly within the discretion of the district court." *Hipp,* 252 F.3d at 1219.

tiered approach in considering whether to conditionally certify a class in this action. Though it is a fairly lenient standard, *Hipp*, 252 F.3d at 1218, "[P]laintiff[] bear[s] the burden of demonstrating a 'reasonable basis' for [his] claim of class-wide discrimination." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir.), *cert. denied*, 419 U.S. 982 (1996) (quoting *Haynes v. Singer, Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983)). The *Grayson* Court goes on to state that "[t]he plaintiff[] may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which 'successfully engages defendants' affidavits to the contrary.'" *Grayson*, 79 F.2d at 1097 (quoting *Sperling v. Hoffman-LaRoche*, 118 F.R.D. 392, 406-07 (D.N.J. 1988)).

Spears, in a Declaration filed with the Court, has stated that he has worked for the Choctaw County Sheriff's Department as a Deputy Sheriff from July 2002 through August 2007 (Doc. 23, Exhibit 1 (Spears Decl.), ¶¶ 1, 4). Plaintiff also stated that, during his employment, he was not paid for hours worked over forty hours per week (*id.* at ¶ 6); Spears further stated that, during the course of performing his job, he had noticed that other employees were also not paid for hours worked over forty hours per week (*id.* at ¶ 7). Defendant has stated that "there are actually only twenty-two (22) employees that would qualify for the potential opt-in class" (Doc. 32, p. 10).

5

Plaintiff has also provided notice of six other people who have all consented to join the suit as Opt-In Plaintiffs:  Danny Wallace, Lee Henry McGrew, Robert Cottrell, Leonard Pat Murray, Robert Timothy Dykes, and Sarah Hare (Docs. 6, 9, 48; Doc 46, Exhibit A).[9]  All potential Opt-In Plaintiffs presently work for the Choctaw County Sheriff's Department and state that they believe that they were not paid for all compensable time, including overtime (see id.).  Seven different employees, of a possible twenty-two, have come forward and expressed their desire to join this action as Opt-in Plaintiffs and seek unpaid overtime compensation from the Defendant.

Choctaw has argued that this number is too small and that Spears has failed to demonstrate that there are enough employees who are interested in proceeding as a collective action.  As support for its assertion, Defendant has provided a group of ten potential class-members who state that they wish to have no part of this action (Doc. 32, pp. 8-9 and Exhibits A-K).[10]

---

[9]The Court notes that there is a question as to whether Sarah Hare still works for the Defendant as her declaration states that she worked through October 2, 2007, the same date that she signed it (see Doc. 48).

The Court also notes that Choctaw has filed a Motion to Strike the Notices of Consent to Join, arguing that this action has not yet been certified as a collective action (Doc. 33).  In light of the Court's ultimate decision to conditionally certify a collective action herein, Defendant's Motion to Strike is **DENIED**.

[10]These exhibits are the declarations of the following people: Jennifer Deskin (A); Carl Ray Jackson (B); Jimmy Huckeba (C); Raymond Lafferty (D); Ernest J. Randall (E); James M. Skinner (F); Ralph Crook (G); Robert Dykes (H); Wallace Sturdivant (J); and Tony Gates (K).

The Court notes that Defendant actually filed eleven

The Court has reviewed the ten declarations and notes that all Declarants state that they are familiar with this action and do not wish to participate. The Court also notes that only one Declarant, Deskin, states anything about knowing of overtime being worked (Deskin admits that it happens) while the others do not speak of it at all. However, the Court is mindful that the ten Declarants could change their mind (*see* footnote ten) and become class-members if they choose to do so as FLSA rights are not waivable. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945).

In summary, Choctaw has stated that there are twenty-two possible class-members. Seven have stated their desire to join this action as Opt-in Plaintiffs, seeking unpaid overtime compensation from the Defendant. Ten have provided affidavits which state that they are not interested in being a part of this action; some—or all—of those ten could change their mind as one already has. In any event, there are five potential class-members who have not given any indication as to whether they would be interested in joining this action.

The Court finds that Plaintiff has met his burden of showing a "reasonable basis" for his claim of class-wide discrimination. Though it has familiarized itself with Defendant's arguments that

---

declarations, but the eleventh person, Sarah Hare, has more recently filed a Consent to Join form, indicating that she has changed her mind (Doc. 32, Exhibit I; *cf.* Doc. 48).

the potential class-members are not "similarly situated" with regard to their particular job positions, responsibilities, and the execution of their duties, the Court finds that those arguments should be examined, if at all, "after discovery is largely complete and the matter is ready for trial." *Hipp*, 252 F.3d at 1218.[11] Therefore, after consideration of the pleadings of record, it is **ORDERED** that Plaintiff's Motion for an Order Permitting Court Supervised Notice to Employees of Their Opt-In Rights be **GRANTED** (Doc. 23) and that this action be conditionally certified as a collective action.

Spears has suggested that the potential class of "opt-in" employees be defined as follows:  "All current and former Police Department employees employed by Defendant[], paid under a compensation plan where employees were not paid overtime at the rate of time and a half for all hours worked over forty (40)" (Doc. 1, ¶ 23).  The Court has found no instance where Defendant has objected to this definition (*see* Docs. 21, 32).

The Court shall change the proposed class definition to specifically name the Choctaw County Sheriff's Department. Furthermore, the Court notes that Spears has stated, in the Complaint, that recovery could include "damages equal to the mandated overtime premium pay with the three years preceding the

---

[11]Likewise, the Court finds that any discussion of "subclasses" would best be taken up, if necessary, following a Motion for Decertification.  Therefore, the Court finds that Defendant's Motion to Strike Plaintiff's Supplemental Reply (Doc. 43) is **MOOT**.

filing of this Complaint" (Doc. 1, ¶ 43). This action was filed on April 18, 2007. Therefore, the Court shall include specific dates in the class definition which will encompass the period of time to include those employees who may avail themselves of the remedy sought in this action.

The Court would, therefore, modify the suggested class definition to read as follows:

> All current and former employees employed by the Choctaw County Sheriff's Department between April 18, 2004 and the present date, paid under a compensation plan where employees were not paid overtime at the rate of time and a half for all hours worked over forty (40) during the course of a work week.

Although the Parties informed the Court that the identity and number of potential class members is already known, Defendant is **ORDERED** to confirm that information and make available to Plaintiff, **not later than October 26, 2007**, a list of all such employees employed by the Choctaw County Sheriff's Department during the period in question so that Spears can provide notice to potential class-members of this action.

Plaintiff has submitted a proposed Notice of Pendency of Collection Action Under the Fair Labor Standards Act as well as a proposed Consent to Join form (Doc. 23, Exhibits A, B). The Court approves the use of these forms to be sent to prospective class members to this action with the following provisions.

There are written changes which need to be made in the

9

Notice.  Specifically, the paragraph beginning *If you were* should set out April 18, 2004 rather than saying *during the past three (3) years* (Doc. 23, Exhibit A).  No period should appear after the word *Commission*.  Robert Timothy Dykes and Sarah Hare should be added to the list of Opt-in Plaintiffs.  In the third bulleted-paragraph, a hyphen should appear between *hourly* and *paid*; in that same paragraph, *since April 18, 2004* should be substituted for *during the past three years*.  On the second page, in the first paragraph under the box, the comma following *Opt-in* should be a semi-colon; following the semi-colon, the following phrase should be added:  *If you choose to opt-in to this action,* followed by a comma.

Any potential class-member who wishes to opt-in this conditionally certified collective action must have the Consent to Join form filed, electronically, with this Court **no later than the close of business on December 7, 2007.**  Under no circumstance will a Consent to Join form which is filed after that date be considered timely; any untimely-filed form will be struck.

Plaintiff has also filed a Motion for Protective Order, seeking to prohibit "any representative of Defendant, including counsel, from communicating with any potential class member as described in Plaintiff's Complaint (Doc. 35).  Spears has suggested that a Protective Order is necessary because "Defendant has engaged in unilateral, unsupervised communications with

10

potential class members to sabotage the goal of the collective
class at this early conditional certification stage" (*id.* at ¶
6); as evidence, Plaintiff points to the ten declarations Choctaw
submitted as support for its argument that the Court should not
conditionally certify a collective class (*see* Doc. 32).

"[A]n order limiting communications between parties and
potential class members should be based on a clear record and
specific findings that reflect a weighing of the need for a
limitation and the potential interference with the rights of the
parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981).[12]
"'[T]o the extent that the district court is empowered . . . to
restrict certain communications in order to prevent frustration
of the policies of Rule 23, it may not exercise the power without
a *specific record showing* by the moving part of the particular
abuses by which it is threatened.'" *Gulf Oil*, 452 U.S. at 102
(emphasis added) (quoting *Coles v. Marsh*, 560 F.2d 186, 189 (3rd
Cir.), *cert. denied*, 434 U.S. 985 (1977)) (ellipsis in *Gulf Oil*).

Plaintiff has proffered the ten declarations as well as two
articles appearing the *Choctaw Sun*. In the first article, the
County Commission Treasurer warned that if expenses were not
reigned in, employees would have to be cut to meet the budget

---

[12]*Gulf Oil* involved a lawsuit filed as a class action under Rule
23, but lower courts have applied it to other collection actions,
including suits under Section 216(b). *See, e.g., Dolan v. Project
Construction* Corp., 725 F.2d 1263, 1268 (10th Cir. 1984); *Goerke v.
Commercial Contractors & Supply Co.*, 600 F.Supp. 1155, 1161 (N.D. Ga.
1984).

(Doc. 35, Exhibit 2).  The second article discussed this lawsuit and concluded with the County Commission Chairman making a statement that taxpayers ultimately pay for overtime (Doc. 35, Exhibit 3).

The Court finds that Plaintiff has not demonstrated that Defendant has abused its position as employer by threatening the potential class-members in this action.  Though the ten submitted declarations indicate that communications about this action have taken place, there has been no evidence that there was any coercion in their making.  Likewise, the two newspaper articles, while expressing a concern for budgetary restraint, do not rise to the level of a threat against the twenty-two employees under consideration herein.

The Court notes that the class that is being conditionally certified herein is relatively small in number.  The class is comprised of present and former employees of Defendant; a substantial number of those class-members still work for Defendant.  The Court imagines that the operation of the Sheriff's Department, and the necessary communication that must take place in order to do that, will be strained enough during the pendency of this action without the Court micro-managing communications between the Parties and Class-members. Plaintiff's Motion for Protective Order is **DENIED** (Doc. 35).

In summary, after review of all pleadings of record, Plaintiff's Motion for an Order Permitting Court Supervised

12

Notice to Employees of Their Opt-In Rights (Doc. 23) is **GRANTED**,
Defendant's Motion to Strike [Plaintiff's] Notices of Consent to
Join (Doc. 33) is **DENIED**, Plaintiff's Motion for Protective Order
(Doc. 35) is **DENIED**, and Defendant's Motion to Strike Plaintiff's
Supplemental Response (Doc. 43) is **MOOT**.

   **Not later than October 26, 2007**, the parties are **ORDERED** to
meet and file a Supplemental Rule 26(f)Report of Parties Planning
Meeting.

   DONE this 17th day of October, 2007.


                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE

13

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DARRYL ANDERSON, et. al.,           §
                                    §
        Plaintiffs,                 §
                                    §
                                    §        CIVIL ACTION NO.
v.                                  §        1:06-cv-01000-MEF-WC
                                    §
PERDUE FARMS INC.,                  §
                                    §
        Defendant.                  §
                                    §

# EXHIBIT 9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

| | |
|---|---|
| RANDOLPH BENBOW, JANICE DUBOSE, ERNESTINE HAMPTON, TROY PATILLO, DAVID WARD, PHYLLIS HARRIS, ARTHUR RICHARDSON, CORA BIVENS, SAMMY LEWIS, VALARIE HIGHT, ALBERTO PENA, TERRY YOW, KATHRYN SNIPES, RUBY HOWARD, SARA GRIFFITH, all individually and on behalf of all others similarly situated, | C.A. No.: 3:06-cv-02751-MBS |
| Plaintiffs, | ORDER |
| vs. | |
| GOLD KIST, INC., | |
| Defendant. | |

This matter comes before the court on Plaintiffs' motion for notice to potential class members. Motion for Notice to Potential Class Members (Entry 30). Plaintiffs seek conditional certification of a putative class pursuant to the collective action provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). For the reasons stated below, the court grants Plaintiffs' motion.

## PROCEDURAL HISTORY

Defendant Gold Kist, Inc. is a large chicken processing company with plants in Alabama, Georgia, South Carolina, North Carolina, and Florida. On October 20, 2006, Plaintiffs - all of whom are current and former employees of Defendant - filed this action on behalf of themselves and all others similarly situated, alleging violations of the FLSA by Defendant. Specifically, Plaintiffs assert

1

that Defendant failed to pay overtime compensation for time spent donning and doffing protective gear. Plaintiffs filed the instant motion on February 14, 2007, arguing that the putative class is similarly situated for purposes of notice and conditional certification because the class members have performed similar duties in Defendant's processing plants and all claim to have been forced to work without compensation under the same hourly pay structure. Motion for Notice to Potential Class Members, 2. After having received an extension of time, Defendant filed a brief in opposition to Plaintiffs' motion on March 20, 2007. Response in Opposition to Plaintiffs' Motion for Notice to Potential Class Members (Entry 37). The court held a hearing on the motion on March 28, 2007.

## DISCUSSION

Plaintiffs' motion seeks conditional certification of this action under 29 U.S.C. § 216(b) for purposes of giving expedited notice to potential class members. Section 216(b) authorizes a plaintiff alleging FLSA violations to file suit "for and in behalf of himself . . . and any other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. "District courts have the discretion, in appropriate cases, to implement § 216(b) . . . by facilitating notice to potential plaintiffs." Shaffer v. Farm Fresh, 966 F.2d 142, 147 (4th Cir. 1992) (quoting Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 174 (1989)).

Certification of a collective action under § 216(b) is a two-step process. In the first stage:

> [T]he court examines the pleadings and affidavits of the proposed collective action and determines whether the proposed class members are "similarly situated." If the court finds that the proposed class members are similarly situated, the court "conditionally certifies" the class. Putative class members are given notice and the opportunity to "opt-in" and the action proceeds as a representative action throughout discovery.

Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005) (internal citations omitted). During the first stage, plaintiffs bear the burden of presenting preliminary facts showing that a similarly situated group of potential plaintiffs exists, D'Anna v. M/A.Com, Inc., 903 F. Supp. 889, 893-94 (D. Md. 1995), and courts generally apply a relatively lenient standard requiring "nothing more than substantial allegations that the putative class members were together victims of a single decision, policy, or plan," Hoffman, 493 U.S. at 174. See Evans v. Lowe's Home Ctrs., Inc., 2006 U.S. Dist. LEXIS 32104 (M.D. Pa. May 18, 2006) ("This [first stage] typically results in a conditional certification of the class as it is based on minimal information, usually the allegations of the complaint."); Scholtisek, 229 F.R.D. at 387 ("To demonstrate that other potential plaintiffs are similarly situated to him, a plaintiff must make only a modest factual showing sufficient to demonstrate that he and potential plaintiffs together were victims of a common policy or plan that violated the law. A plaintiff's burden at this stage is minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one.").

The second stage of certification occurs after discovery is complete and is typically precipitated by a motion for 'decertification' by the defendant. Id. In contrast with the first stage, the court in the second stage must "make[] a factual finding on the 'similarly situated' issue, based on the record produced through discovery." Id. If the court determines that the plaintiffs are similarly situated, the collective action may proceed; however, "if the claimants are not similarly situated, the court decertifies the class, and the claims of the opt-in plaintiffs are dismissed without prejudice." Id.

Applying these principles of law, the court finds that Plaintiffs have made the threshold

3

showing of similarity required in the first stage of collective action certification under the FLSA.[1]
Plaintiffs have provided the court with declarations from seventeen of Defendant's employees, all
of whom state that they have similar duties,[2] similar hourly pay, and were similarly deprived of
compensation for time spent donning and doffing. See Appendix to Plaintiff's Motion for Notice
to Potential Class Members, 4-43 (Entry 30-2); Supplement to Plaintiff's Motion for Notice to
Potential Class Members (Entry 43). Furthermore, more than 1,300 workers from plants in every
state in which Defendant operates have filed notices of consent with the court through Plaintiffs'
counsel since the case was filed. See First Notice of Filing Consents (Entry 5); Second Notice of
Filing Notices of Consent (Entry 15); Third Notice of Filing Notices of Consent (Entry 20); Fourth
Notice of Filing Notices of Consent (Entry 29); Fifth Notice of Filing Notices of Consent (Entry 38).
This evidence is sufficient to meet the lenient standard for giving notice to potential class members.
See Iglesias-Mendoza v. La Bell Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("The plaintiffs
rely, as they are entitled to at this stage of the proceedings, on the pleadings and their own
declarations. Plaintiffs have easily made the modest showing that is required of them at this

---

[1]    It is undisputed that Plaintiffs' motion is for stage one notification under the
       FLSA. See Motion for Notice to Potential Class Members, 2 ("Plaintiffs . . . ask[]
       this court for permission to send a notice to potential plaintiffs . . . to make these
       individuals aware of their rights and to allow them to make an informed decision
       as to whether or not to proceed with their case.").

[2]    Plaintiffs have proposed a class of all line employees. Plaintiffs' motion refers to
       "all current and former poultry process division employees," Motion for Notice to
       Potential Class Members, 2; however, during the hearing, Plaintiffs conceded that
       the non-line employees did not belong in the proposed class. Plaintiffs' counsel
       subsequently provided the court with the following revised definition of the
       proposed class: "All current and former hourly employees who are or have been
       employed by Gold Kist, Inc. on the first or second processing line . . . ." E-mail
       from Michael Josephson dated April 10, 2007. Accordingly, the court only
       includes first- and second-shift line employees within Plaintiffs' proposed class.

preliminary stage: they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class.").

Defendant's arguments are outside the purview of the first stage of the certification analysis. Defendant asserts that members of the putative class are not similarly situated because various plants have different customs with regard to the types of gear donned and the manner in which hours worked is calculated. Response in Opposition, 7-27. At this stage of the proceeding, however, Plaintiffs "need only show that their positions are similar, not identical, to the positions held by the putative class members." Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J.), aff'd in part and appeal dismissed in part, 862 F.2d 439 (3d Cir. 1988), aff'd, 493 U.S. 165 (1989). While each claim may differ as to amount, such determinations are the subject of the merits of the parties' claims, which are not at issue at this stage of the litigation. See Parks v. Dick's Sporting Goods, Inc., 2007 U.S. Dist. LEXIS 20949, *12 (W.D.N.Y. March 23, 2007) ("Whether the proof will ultimately support anything more than conditional certification is not at issue at this time . . . . [T]he fact that there may be variation in job duties or, that upon closer inquiry, it may turn out that some [employees] in some stores are not similarly situated for purposes of a collective action, does not mean that conditional certification must be denied at this juncture of the litigation."). Defendant's objections are premature and more appropriately considered during the second stage of the collective action certification.

## CONCLUSION

Accordingly, Plaintiffs' motion for notice to potential class members is granted. Plaintiffs shall have ten (10) days from the date of this order to submit an agreed upon notice for the court's

5

approval. In the event the parties are unable to agree, Plaintiffs shall submit the proposed notice to

the court within fifteen (15) days from the date of this order. Thereafter, Defendant will have five

(5) days to file any objections to Plaintiffs' proposal.

       **IT IS SO ORDERED.**

                      /s/ Margaret B. Seymour

April 16, 2007                            Honorable Margaret B. Seymour
Columbia, South Carolina             United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DARRYL ANDERSON, et. al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **1:06-cv-01000-MEF-WC** |
| | § | |
| **PERDUE FARMS INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

# <u>EXHIBIT 10</u>

## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### EL DORADO DIVISION

IN RE:                                    MDL DOCKET NO. 1:07-cv-1832
PILGRIM'S PRIDE FAIR LABOR
STANDARDS ACT LITIGATION                  ALL CASES

### CASE MANAGEMENT ORDER NO. 2

It is anticipated that Plaintiffs will file a motion for collective action certification in this case. The Court indicated at the July 6, 2007 pre-trial conference that it would be appropriate to allow the parties to engage in discovery relating to collective action certification issues. However, upon further consideration, the Court has decided that discovery is not necessary at the initial stage of the certification process, as courts usually make a decision to issue notice under 29 U.S.C. § 216(b) based solely on the pleadings and any submitted affidavits. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995); *Allen v. McWane, Inc.*, No. Civ. A. 2:06-CV-158TJ, 2006 WL 3246531 (E.D. Tex. Nov. 7, 2006); *see also* 51B C.J.S. *Labor Relations* § 1328. The Court is aware that sending notice early in this proceeding is critical under the Fair Labor Standards Act because the statute of limitations continues to run until individuals affirmatively opt-in to the action.

The Court has reviewed both parties's proposals pertaining to the certification issue. Bearing in mind that there will no discovery during this initial stage of certification, the Court hereby adopts and orders the following schedule of deadlines in advance of the collective action certification motion:

1. Plaintiffs have up to and including **September 21, 2007,** to file a motion for collective action certification and any supporting documents.

2. Defendant has up to and including **October 12, 2007,** to file a response to Plaintiffs' motion.

3. Plaintiffs have up to and including **November 2, 2007,** to file a reply to Defendant's response.

IT IS SO ORDERED, this 19th day of July, 2007.

/s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge

-2-