**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **DARRYL ANDERSON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Case Action No.:** |
| **v.** ) | **1:06-CV-1000-MEF-WC** |
| ) | **JURY TRIAL DEMANDED** |
| **PERDUE FARMS INCORPORATED,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO QUASH NOTICES OF
DEPOSITION AND STAY DISCOVERY PENDING THE COURT'S DECISION ON
PLAINTIFFS' MOTION FOR COURT-SUPERVISED NOTICE**

Defendant Perdue Farms, Incorporated ("Defendant" or "Perdue") submits this Response

to Plaintiffs' Motion to Quash Notices of Deposition and Stay Discovery Pending the Court's

Decision on Plaintiffs' Motion for Court-Supervised Notice (hereinafter referred to as Plaintiffs'

"Motion to Quash Depositions"). For the reasons stated herein, Plaintiffs' Motion must be

denied.

## Introduction

Plaintiffs filed their Motion to Quash Depositions on December 17, 2007, seeking to

prevent Perdue from taking the depositions of eight Plaintiffs on January 3 and 4, 2008. Perdue

sent Notices of Deposition via email to Plaintiffs' counsel on Friday, December 14. The parties

had discussed these depositions on several occasions. Plaintiffs filed their Motion as a defensive

tactic to prevent Perdue from deposing a representative sample of the Plaintiffs who filed

Declarations in support of Plaintiffs' Motion for Court-Supervised Notice, prior to Perdue filing

its Opposition.

Plaintiffs' Complaint in this case is only one of more than eight actions filed by this same Plaintiffs' law firm against poultry companies across the Southeast. Plaintiffs' counsel use the same pleadings, the same motion papers, and even the same declarations in these cases.[1] We have seen numerous occasions when counsel have taken their template lawsuit and cut-and-paste supporting motions, declarations, and discovery, and have applied them against an inapposite Defendant. Perdue is prepared to show, and will show in its Opposition to Plaintiffs' Motion for Court-Supervised Notice and its forthcoming Motion for Summary Judgment, that it is not a "cut and paste" poultry company defendant and is not in the same posture, for example, as Wayne Farms or Equity Group Eufaula Division, companies cited by Plaintiffs in their Motion to Quash Depositions. Apparently unlike those companies, Plaintiffs have filed an unsupportable lawsuit against Perdue that alleges facts that have absolutely nothing to do with the way Perdue operates its poultry processing plant in Dothan, Alabama, and has attached Declarations to its Motion for Court-Supervised Notice that do not reflect Perdue's operations.[2] By its Motion to Quash Depositions, Plaintiffs seek to prevent the disclosure of these facts and practices to the Court until after the Court rules on Plaintiffs' Motion for Court-Supervised Notice.

Plaintiffs' Motion for Court-Supervised Notice proffers as its only support 31 Plaintiffs' Declarations that are devoid of any probative value. The Declarations are conclusory, "fill-in-the-blank," and boilerplate that are non-specific to Perdue or to its Dothan, Alabama operations.

---

[1]    See Ex. A, enclosing sample of identical Declarations filed in Dobbins v. Tyson Chicken, Inc., N.D. Ala. 4:06CV04912, Dkt. No. 24-4, filed April 10, 2007; Adams v. Wayne Farms LLC, M.D. Ala. 1:06CV00950, Dkt. No. 50-4, filed March 9, 2007; Anderson v. Wayne Farms, LLC, M.D. Ala. 2:06CV00951, Dkt. No. 39-4, filed March 5, 2007; Carlisle v. GoldKist, Inc., N.D. Ala. 4:06CV01982-CLS, Dkt. No. 22-2, filed March 2, 2007; Atchison v. GoldKist, Inc., N.D. Ala. 4:06CV01983, Dkt. No. 21-2, filed March 2, 2007; Belue v. Wayne Farms, LLC, N.D. Ala. 4:06CV02095, Dkt. No. 28-4, filed February 20, 2007; Bolden v. Wayne Farms LLC, N.D. Ala. 5:06CV02096, Dkt. No. 33-4, filed February 19, 2007; and Benford v. Pilgrim's Pride Corp., N.D. Ala. 5:06-CV-02337, Dkt. No. 22-4, filed February 13, 2007.

[2]    It is worth noting that Fed. R. Civ. P. 11(b) states that counsel, when filing a pleading or motion, are certifying that its allegations and factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

All 31 are identical for all material purposes to each other and to other Declarations filed against other poultry industry employers across the Southeast. The Declarations filed here are also identical for all material purposes to the Declarations that Plaintiffs' counsel filed in their lawsuit against Perdue in the United States District Court for the Middle District of Georgia, Alford v. Perdue Farms, Inc (M.D. Ga. 5:07-cv-00087-CAR). In the Alford case, Plaintiffs' counsel did not oppose Perdue's ability to depose certain Plaintiffs before responding to Plaintiffs' notice motion. Those depositions established that the Declarations are invalid and should be stricken because they do not meet the requirement that they be based on each Declarant's personal knowledge.

Plaintiffs' counsel know that their entire case rests on 31 Declarations that have no probative value, which is why they are advocating to accelerate the Notice phase in this case as quickly as possible in order to encourage a financial settlement. Plaintiffs' counsel essentially admit this tactic when they state in Plaintiffs' Motion to Quash Depositions that "Plaintiffs provided Defendant a written offer to settle the claims of the named plaintiffs and opt-in plaintiffs, thus avoiding the need to address notice and alleviate the dispute over discovery." (Pls.' Mot. ¶ 10.) This tactic is inappropriate and Plaintiffs' position is indefensible. Plaintiffs' counsel know that their Motion for Court-Supervised Notice stands little chance of succeeding, despite the "fairly lenient" standard that Plaintiffs insist this Court should apply.[3]

---

[3]     Perdue will argue in its Opposition to Plaintiffs' Motion for Court-Supervised Notice that Plaintiffs rely exclusively on a misstatement of the Eleventh Circuit's use of a "two-tiered" approach to conditional class certification articulated in Hipp v. Liberty Nat'l. Life Ins. Co., 252 F.3d 1208 (11th Cir. 2001). While it is true that the burden on Plaintiffs at the notice stage is described as "not heavy," it is also not a "minimal one." Reed v. Mobile County School Sys., 246 F. Supp. 2d 1227, 1237 (S.D. Ala. 2003). The "lenient" standard in the Eleventh Circuit for sending notice and conditionally certifying a class in FLSA cases is not a universal mandate. Even in Hipp, the court noted that the lenient standard at stage one only "typically" results in authorization of notice. While district courts in the Eleventh Circuit generally have followed the Hipp two-tiered approach, the law is clear that "[n]othing in our circuit precedent . . . requires district courts to use this approach." 252 F.3d at 1219. "The decision to create an opt-in class under § 216(b), like the decision to certify a class under Rule 23, remains soundly within the discretion of the district court." Id.

There is nothing unusual or controversial about the nature or timing of Perdue's

December 14, 2007, Notices of Deposition.  The proposed depositions are consistent with the

discovery plan jointly filed by the parties in the March 28, 2007 Report of the Parties' Rule 26(f)

Planning Meeting.  (Dkt. No. 32.)  In that report, Perdue specifically stated that it planned "to

promulgate discovery requests, and issue notices of deposition, without any subject-matter

limitation, as soon as this Court enters a Scheduling Order in this case, including during the pre-

certification phase of the lawsuit."  (Id., ¶ 3(d).)  Plaintiffs did not object to this statement of

Perdue's discovery plan.  In fact, Plaintiffs echoed Perdue's discovery plan and stated that

"Plaintiffs also plan to promulgate discovery requests, without any subject-matter limitation, as

soon as this Court enters a Scheduling Order in this case."  (Id., ¶ 3(d).)  This Court's Uniform

Scheduling Order, dated July 17, 2007, similarly states that "[a]ll discovery shall be completed

on or before October 3, 2008," and does include any subject matter or timing limitations.  (Dkt.

No. 44, Section 7.)

<u>**Argument**</u>

Plaintiffs' Motion to postpone the discovery process should be rejected, and Perdue

should be permitted to conduct Plaintiffs' depositions prior to responding to Plaintiffs' Motion

for Court-Supervised Notice.

**I.    Plaintiffs' Depositions Will Demonstrate That Their Declarations—The Only
Evidence Cited In Support Of Plaintiffs' Motion for Court-Supervised Notice—
Have No Evidentiary Value And Should Be Stricken.**

The only factual allegations proffered by Plaintiffs in support of their Motion for Court-

Supervised Notice are contained in the 31 boilerplate Declarations filed by Plaintiffs in this case.

(Dkt. Nos. 49-4 and 49-5; <u>see, e.g.</u>, Ex. B, Thornton Decl., Whitfield Decl., Neal Decl., Lee

Decl., Jackson Decl., Baxter Decl., Wiggins Decl., and Smith Decl.)  Perdue seeks to depose the

Declarants to establish unequivocally that the Declarations filed by Plaintiffs have no probative

value and do not meet the evidentiary burden that this Court and the Eleventh Circuit require in order to send notice and grant conditional class certification.  See Grayson v. K Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996) (stating that the plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary") (citations omitted).  Defendant has a legitimate basis to believe that the depositions will confirm that Plaintiffs' Declarations have no evidentiary value because they are conclusory, non-specific to this Employer, are not predicated on personal information, and do not accurately reflect the working conditions at Perdue's Dothan, Alabama facilities or Perdue's methods of capturing compensable time.[4]

Moreover, the Declarations do not establish that there are similarly situated individuals at the Perdue poultry processing facility in Dothan, Alabama who want to join the lawsuit.  See Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983) (finding no abuse of discretion for district court's refusal to authorize class notice where plaintiff's counsel offered only unsupported allegations of widespread FLSA violations); Wombles v. Title Max of Ala. Inc., No. 03CV1158, 2005 WL 3312670, at *4–5 (M.D. Ala. Dec. 7, 2005) (holding five nearly identical affidavits to join FLSA class was insufficient to establish that others desired to opt in); Smith v. Tradesmen Int'l, Inc., 289 F. Supp. 2d 1369, 1371 (S.D. Fla. 2003) (rejecting as evidence of similarly situated employees three identical affidavits by employees and finding it more prudent

---

[4]     Plaintiffs rely on Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358 (M.D. Ala. 1999), to argue that these Declarations render the Court's favorable decision on their Motion for Court-Supervised Notice merely a procedural formality.  As will be discussed in more detail in Perdue's Opposition to Plaintiffs' Motion for Court-Supervised Notice, Plaintiffs misconstrue the Harper case and misstate the applicable standard.  Far from being a procedural formality, sending notice to potential class members in this case requires Plaintiffs to provide detailed and substantial evidence of alleged FLSA violations and the existence of similarly situated individuals who want to join the lawsuit.  185 F.R.D. at 363.  The court in Harper first **rejected** in part plaintiffs' motion to conditionally certify a huge, diverse class of employees.  Id.  The court ultimately found that a smaller class of employees was the appropriate conditionally certified class, because only for that smaller class could the plaintiffs meet their burden with "substantial, detailed allegations of FLSA violations and provided evidentiary support that they, like other members of the putative opt-in plaintiff class, were the victims of employment practices . . . ." Id. at 365.

to conduct additional discovery to meet burden of proof); <u>Horne v. United Servs. Auto. Ass'n</u>, 279 F. Supp. 2d 1231, 1235–36 (M.D. Ala. 2003) (denying collective action status where the court has found insufficient proof that there were similarly situated persons who desired to join the lawsuit).[5]

On their face, the Declarations filed by Plaintiffs do not affirmatively identify Perdue as the Declarants' present or former employer.  (Ex. B.)  Indeed, the Declarations make no mention of Perdue's operations at all.  Second, the Declarations do not state the facility where they allegedly work or worked, much less the specific processing area in which the Declarants allegedly work or worked.  (<u>Id.</u>)  This omission is glaring, given the amount of attention Plaintiffs pay in their Complaint and in their Motion for Court-Supervised Notice to their positions in "first" and "second" processing.  (<u>See</u> Pls.' Mot. at 5; Am. Compl. ¶ 10–11.)

## II. Plaintiffs' Counsel's Companion Case Against Perdue Filed In The United States District Court for the Middle District of Georgia Illustrates The Likely Probative Value Of Plaintiffs' Depositions In This Case.

As stated above, the same law firm representing Plaintiffs in this case has filed a similar case against Perdue that is currently pending in the United States District Court for the Middle District of Georgia, <u>Alford v. Perdue Farms, Inc.</u> (M.D. Ga. 5:07-cv-00087-CAR).  The plaintiffs in <u>Alford</u> filed a Motion for Court-Supervised Notice and included Declarations that are identical for all material purposes to the Declarations filed in this case.  (<u>See</u> Ex. D, Harrell Decl.)  The plaintiffs' depositions in <u>Alford</u> illustrate why Perdue needs to take Plaintiffs' depositions in this case before responding to Plaintiffs' Motion for Court-Supervised Notice.

---

[5]    In their Motion to Quash Depositions, Plaintiffs cite to <u>Burks v. Equity Group Eufaula Division LLC</u>, 2:06-CV-1081-MEF, as an example of a case where "identical affidavits" were "ample evidence" in support of the plaintiffs' notice motion.  Plaintiffs' description of the <u>Burks</u> case ignores the fact that the defendant in that case conceded that class notice was warranted and only argued against the form of the notice in its response to the plaintiffs' motion for class notice.  <u>See</u> Ex. C.

The Alford plaintiffs who appeared for depositions testified that they did not understand the terminology used in their Declarations or its relevancy to their claims. (See Ex. E, Harrell Dep. 51:22–52:25 (admitting she did not know what terms in her Declaration mean)).  During their depositions, the Alford plaintiffs could not describe the difference between pre-production or post-production line activities, even though their Declarations purport to emphasize this distinction.  (See Ex. F, Lawson Dep. 46:2–5 ("Q.  Do you know what preproduction time is?  A. No.  Q.  Do you know what post-production time activities are?  A.  No."); (see also Ex. E, Harrell Dep. 51:9–21) (attempting to describe the difference between pre-production and post-production line activities)).[6]  The Alford plaintiffs' sworn deposition testimonies also contradicted their Declarations and demonstrated a lack of understanding of and input into the Declarations they signed.  Several Plaintiffs admitted to not having personal knowledge of the matter described in the Declaration.[7]

The Alford plaintiffs also admitted they have trouble recognizing or even understanding what they signed.  For example, when asked if she was able to read, Ms. Lawson admitted she could not.  (Ex. J, Lawson Dep. 34:4–6).  When her signed Declaration was placed in front of her, Ms. Lawson was asked whether she recognized the Declaration at all.  She stated "I might remember.  I'm not sure."  (Ex. K, Lawson Dep. 40:25–41:2).  Ms. Lawson was unable to identify or explain the same document she claimed to have personal knowledge of and on which Plaintiffs' rely as evidence.  (See also Ex. F, Lawson Dep. 46:7–9 ("Q.  Can you explain to me

---

[6]    Ms. Harrell did not know what she meant when she attested in her Declaration that the pre-production and post-production line activities were "necessary," "integral," or "indispensable" to her overall employment responsibilities. (Id. at 51:22–52:25.)

[7]    For example, Plaintiff Maggie Lawson could not remember what she signed or what the Declaration was about.  (See Ex. G, Lawson Dep. 41:12–17.)  Ms. Lawson also admitted that despite statements in her signed Declaration to the contrary, she could not remember how Perdue's hourly poultry processing employees are paid, and did not know if it was true that other former hourly processing employees would join the litigation if they were given notice.  (See Ex. H, Lawson Dep. 71:21–72:15; see also Ex. I, Coley Dep. 51:8–11 (admitting that she does not understand what her Declaration means).

what this document means?  A.  No, I can't."))  Perdue should have the opportunity to demonstrate the same or similar deficiencies in this matter.

### III.  Allowing Perdue To Depose Certain Plaintiffs Before Responding To Plaintiffs' Motion For Court-Supervised Notice Will Not Cause Delay Or Waste Judicial Resources.

Plaintiffs argue that allowing Perdue to take eight depositions before it files a response to Plaintiffs' Motion for Court-Supervised Notice will "greatly delay these proceedings."  This simply is not true.  Perdue's response to Plaintiffs' Motion for Court-Supervised Notice is due January 14, 2008.  Perdue noticed Plaintiffs' depositions for January 3 and 4, 2008.  If these depositions occur as noticed, Perdue will not ask that the deadline be extended.  In fact, any delay in the proceedings will be a result only of Plaintiffs' decision to file their Motion to Quash Depositions.  Pursuant to the parties' Consent Motion For Extension of Time (Dkt. 51), filed November 19, 2007, the parties agreed that "[i]f discovery motions are filed, the parties agree that Perdue's response to Plaintiffs' Notice Motion should not be due until this Court issues a ruling on whether Perdue is entitled to take certain depositions prior to responding to Plaintiffs' Notice Motion."  (Id. ¶ 10.)

In addition, Plaintiffs are wrong to assert that Perdue requested an extension of the Court's initial deadline for Perdue to respond to Plaintiffs' Motion for Court-Supervised Notice in order to be able to take certain depositions.  (Pls.' Mot. ¶ 6.)  Plaintiffs' counsel already has acknowledged that Perdue requested an extension due to a pre-existing scheduling conflict.  As the parties stated in their Consent Motion For Extension of Time (Dkt. 51), "[o]n November 13, 2007, Brian Z. Liss, counsel for Perdue, contacted Robert Camp, counsel for the Plaintiffs, and informed him of an existing scheduling issue in another case pending in federal court that conflicts with Perdue's Court-ordered briefing schedule in this case.  In particular, counsel for

Perdue is preparing a response to class notice in another matter that is due on December 4, 2007."

It is untenable for Plaintiffs' counsel to accuse counsel for Perdue of delaying these proceedings. (Pls.' Mot. ¶ 19.) On November 7, 2007, two days after Plaintiffs filed their Motion for Court-Supervised Notice, Mr. Liss sent an email to Mr. Camp, stating that Perdue needed to depose some of the 31 Plaintiff-Declarants in order to respond to Plaintiffs' Notice Motion. Mr. Liss asked Mr. Camp for his availability for 2–3 days of depositions in December 2007. (Ex. L.) Mr. Liss later indicated that Perdue was available for depositions as early as November 27, 2007. Mr. Camp responded to Mr. Liss in a letter dated November 9, 2007, stating that he was not available for depositions until January 2008. (Ex. M.)

Finally, it should be noted that Perdue's request to take Plaintiffs' depositions will not prejudice the Plaintiffs. The parties already have jointly proposed that the statute of limitations applicable to the Fair Labor Standards Act claims of any individual Plaintiffs or any individual who opts-in to this action and who is represented by Plaintiffs' counsel shall be tolled between November 26, 2007 and January 14, 2008. (Dkt. 51, ¶ 6.) Perdue is the only party at risk of being prejudiced. Plaintiffs' Motion to Quash Depositions would have this Court take the unprecedented step of preventing Perdue from taking certain depositions, just because Plaintiffs argue that these depositions are not necessary for Perdue to respond to Plaintiffs' Motion for Court-Supervised Notice and that their Motion should be decided on the pleadings and affidavits alone. Preventing Perdue from taking the depositions and thereby preventing Perdue from making their arguments would be an irreparable prejudice to Perdue's case. Plaintiffs should not be permitted to handcuff the arguments Perdue intends to make, just because Plaintiffs argue that the arguments are not persuasive. That, of course, is for the Court to decide.

<u>**Conclusion**</u>

Plaintiffs argue that this Court's favorable decision on their Motion for Court-Supervised Notice is a mere procedural formality. Plaintiffs' Motion to Quash Depositions, however, takes this argument a step further and attempts to limit what Perdue can argue in opposition to Plaintiffs' Motion. This gamesmanship is inappropriate and the Court should reject Plaintiffs' attempt to limit Perdue's ability to conduct discovery in this case. This Court should deny Plaintiffs' Motion to Quash Depositions and Stay Discovery, and should rule that Perdue is permitted to depose certain Plaintiffs before filing its response to Plaintiffs' Motion for Court-Supervised Notice.

Dated: December 19, 2007                    Respectfully submitted,

*/s/Brian Z. Liss*
James J. Kelley (admitted pro hac vice)
D.C. Bar No. 194746
202-739-5095
jkelley@morganlewis.com
Brian Z. Liss (admitted pro hac vice)
D.C. Bar No. 468886
202-739-5579
bliss@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
202-739-3001 (fax)

Sandra B. Reiss
Alabama Bar No.  ASB-3650-S80S
**Ogletree, Deakins, Nash,**
**Smoak & Stewart, P.C.**
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, Alabama 35203
205-328-1900
205-328-6000 (fax)
sandra.reiss@odnss.com

*Counsel for Defendant Perdue Farms, Incorporated*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing Defendant Perdue Farms, Incorporated's Response to Plaintiffs' Motion to Quash Notices of Deposition and Stay Discovery Pending the Court's Decision on Plaintiffs' Motion for Court-Supervised Notice has been electronically filed on this **19th day of December, 2007** using the CM/ECF system which will send a notice of electronic filing as well as the full text of the Consent Motion to Plaintiffs' counsel of record who are confirmed to be individually registered for e-filing and will receive the same electronically from the Court.

*/s/Brian Z. Liss*
Brian Z. Liss (admitted pro hac vice)
D.C. Bar No. 468886
202-739-5579
bliss@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
202-739-3001 (fax)

*Counsel for Defendant Perdue Farms, Incorporated*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
### MIDDLE DIVISION

| | | |
|---|---|---|
| **FLORENCE DOBBINS, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **4:06-cv-04912-RDP** |
| | § | |
| **TYSON CHICKEN, INC.,** | § | |
| **et al.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## Exhibit 1

## AFFIDAVITS/DECLARATIONS OF
## SYLVESTER MORAGNE, CLIFFORD GREGORY SMITH,
## ANTHONY THOMAS.

## DECLARATION:

1. My name is *Sylvester Morague.*

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Albertville, County of Marshall, State of Alabama, from approximately *05-13-02* until *Present*. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____16th_____ day of February, 2007.


_Sylvester Moragne_
PLAINTIFF'S NAME

X _Sylvester Moragne_
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF MARSHALL.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____16_____ day of February, 2007.



_____

NOTARY PUBLIC

My Commission Expires: 01/17/2011

4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | | |
|---|---|---|
| SAMUEL ADAMS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 1:06-CV-00950-MEF-WC |
| | § | |
| WAYNE FARMS LLC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## AFFIDAVIT/DECLARATION OF
## SAMUEL ADAMS

## <u>DECLARATION:</u>

1.    My name is _Samuel Adams_

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Jack, County of Coffee, State of Alabama, from approximately ___3/2006___ until ___Present___.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.     I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

     I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the __3__ day of __March__, 2007.


__Samuel Adams__
PLAINTIFF'S NAME

     __Samuel Adams__
     PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,

COUNTY OF PIKE.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 3rd day of March, 2007.

[SEAL]

NOTARY PUBLIC

My Commission Expires:    01/17/2011

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
### NORTHERN DIVISION

| | | |
|---|---|---|
| DARREN ANDERSON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 2:06-cv-00951-MEF-DRB |
| | § | |
| WAYNE FARMS LLC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## AFFIDAVITS/DECLARATIONS OF

### KEVIN K. KEITH, MICHAEL LAWRENCE, RUBY STEPHENS, DARLENE SULLEN, ARTRICA MOORE, KATRINA MURRAY, THELMA D. PEEBLES.

## **DECLARATION:**

1.     My name is *Kevin K. Keith*.

2.     I am a Plaintiff in this action.

3.     I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.     To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of *Union Springs*, County of *Bullock*, State of *AL*, from approximately *03-08-00* until *President*.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.     During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.     During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___February___, 2007.


___Kevin K. Keith___
**PLAINTIFF'S NAME**

___Kevin K. Keith___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BULLOCK.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforesaid, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 10th day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires:  01/17/2011

FILED

2007 Mar-02 AM 10:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## DECLARATION:

1.    My name is _Billy Ray Brooks_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Boaz, in the County of _Marshall_ , State of Alabama, from approximately _11-1989_ until _Present_ .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, *all hourly employees are interchangeable* and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 17th day of February, 2007.


_Billy Ray Brooks_
PLAINTIFF'S NAME

X _Billy R Brooks_
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF MARSHALL.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ____17th____ day of February, 2007.

[SEAL]

_____
NOTARY PUBLIC

My Commission Expires: _01|17|2011_

4

FILED

2007 Mar-02  AM 10:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## DECLARATION:

1.     My name is _MARIE Delgado_ .

2.     I am a Plaintiff in this action.

3.     I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.     To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Guntersville, County of Marshall, State of Alabama, from approximately _01-02-97_ until _Present_ .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.     During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.     During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.     I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.


     I declare under penalty of perjury that the foregoing is true and correct.

     Executed on this the ___17th___ day of February, 2007.


MARie Delgado
**PLAINTIFF'S NAME**

X Marie Delgado
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF MARSHALL.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____17th_____ day of February, 2007.

[SEAL]

_____
NOTARY PUBLIC

My Commission Expires: 01|17|2011

4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JIMMY W. BELUE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 4:06-cv-02095-RDP |
| | § | |
| WAYNE FARMS LLC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

### AFFIDAVITS/DECLARATIONS OF
### LARCENA CARLISLE, MARTIN CHAMBERS, JEFFREY CHANDLER, JIMMY J. GLOVER, CAROLYN A. GURLEY, CAROLYN S. HOGELAND, WENDY L. MENDEL, MAGDALENA MIGUEL, BETTY M. MORGAN, JUDY OLIVER, BRUCE THURMAN POE, BETTY TIPTON, JENIFER RENEE WYNN.

## DECLARATION:

1.    My name is _Larcena Carlisle_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Albertville, County of Marshall, State of Alabama, from approximately _11-30-88_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _16th_ day of February, 2007.

_Larcena Carlisle_
**PLAINTIFF'S NAME**

_Larena Carlisle_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF MARSHALL.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____16th_____ day of February, 2007.

[SEAL]

_____
NOTARY PUBLIC

My Commission Expires: **01|17|2011**

4

## DECLARATION:

1.      My name is _Martin Chambers_.

2.      I am a Plaintiff in this action.

3.      I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.      To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Albertville, County of Marshall, State of Alabama, from approximately _08-04-88_ until _Present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.      During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.      During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
NORTHEASTERN DIVISION

JAMES E. BOLDEN, et al.,          §
                                  §
        Plaintiffs,               §
                                  §        CIVIL ACTION NO.
v.                                §         5:06-cv-02096-IPJ
                                  §
WAYNE FARMS LLC.,                 §
                                  §
        Defendant.                §
                                  §

**AFFIDAVITS/DECLARATIONS OF
BESSIE M. BAILEY, CHERYL BOLDEN, JAMES EDWARD
BOLDEN, PATSY MAE COOPER, ANGELA DOUGLAS, ANITA
ELLIOT, CAROLYN FRANKLIN, JOSEPH FRANKLIN HAMPTON,
EVA MAE JONES, GLADYS MATHEWS.**

## **DECLARATION:**

1.    My name is _Bessie M. Bailey_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Decatur_ , County of _Morgan_ , State of _AL_ , from approximately _January 1990_ until _present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc… (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on this the ___10th___ day of ___February___, 2007.


___Bessie M. Bailey___
**PLAINTIFF'S NAME**

x _Bessie M. Bailey___
**PLAINTIFF'S SIGNATURE**

3

STATE OF _Alabama_,
COUNTY OF _Morgan_.

    I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that _Bessie M. Bailey_, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

    Given under my hand and official seal this the _10th_ day of _February_, 2007.

[SEAL]

    _Sheri R. Hughes_
    NOTARY PUBLIC

    My Commission Expires: _01-11-2011_

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
## NORTHEASTERN DIVISION

IRENE BENFORD, et al.,            §
                                  §
        Plaintiffs,               §
                                  §        CIVIL ACTION NO.
v.                                §        5:06-cv-02337-TMP
                                  §
PILGRIM'S PRIDE CORP.,            §
                                  §
        Defendant.                §

## AFFIDAVIT / DECLARATION OF
## JUNE B. FUQUA

## DECLARATION:

1.     My name is _June B. Fuqua_.

2.     I am a Plaintiff in this action.

3.     I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.     To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of _Athens_, County of _Limestone_, State of _AL_, from approximately _July 7, 1987_ until _Present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.     During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.     During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _10_ day of _February_, 2007.


_June B. Fiqua_
**PLAINTIFF'S NAME**

x _June B. Fiqua_
**PLAINTIFF'S SIGNATURE**

3

STATE OF _Alabama_,
COUNTY OF _Morgan_.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that _June B. Fugua_, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the __10__ day of ____ _February_, 2007.

[SEAL]

_Sheri R. Hughes_
NOTARY PUBLIC

My Commission Expires: __01-11-2011__

4

# DECLARATION:

1.    My name is Cornelia Thornton .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately Aug 23, 2002 until the Presently . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____11_____ day of _____May_____, 2007.

Cornelia Thornton
**PLAINTIFF'S NAME**

Cornelia Thornton
**PLAINTIFF'S SIGNATURE**

STATE OF Alabama
COUNTY OF Houston

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____11_____ day of May, 2007

[SEAL]

NOTARY PUBLIC
My Commission Expires: 4/20/10

3

## DECLARATION:

1.  My name is _Regina Whitfield_.

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _08 08 04_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___15th___ day of ___May___, 2007.

_Regina Whitfield_
PLAINTIFF'S NAME

_Regina Whitfield_
PLAINTIFF'S SIGNATURE

STATE OF _Alabama_,
COUNTY OF _Houston_.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___15th___ day of May, 2007



[SEAL]

_Fatima R. Lloyd_
NOTARY PUBLIC
My Commission Expires: _01-17-11_

3

# DECLARATION:

1.  My name is _Dionne Neal_.

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _July 22, 2005_ until _present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___12th___ day of ___May___, 2007.

___Dionne Neal___
PLAINTIFF'S NAME

___Dionne Neal___
PLAINTIFF'S SIGNATURE

STATE OF ___Alabama___
COUNTY OF ___Houston___

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___12th___ day of May, 2007

[SEAL]

___Fatima R. Lloyd___
NOTARY PUBLIC
My Commission Expires: 01-17-11

3

## DECLARATION:

1.    My name is _Gwendolyn Lee_

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _Aug. 9, 2004_ until _present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.   I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___12th___ day of ___May___, 2007.

___Gwendolyn Lee___
**PLAINTIFF'S NAME**

___Gwendolyn M. Lee___
**PLAINTIFF'S SIGNATURE**

STATE OF ___Alabama___,
COUNTY OF ___Houston___.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___12th___ day of May, 2007.



[SEAL]

___Fatima R. Lloyd___
NOTARY PUBLIC
My Commission Expires: ___01-17-11___

3

## DECLARATION:

1.  My name is _Elisha A. Jackson_

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _April 12, 2004_ until _____Present_____.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.  I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___May___, 2007.

_Elisha A. Jackson_
PLAINTIFF'S NAME

_Elisha A. Jackson_
PLAINTIFF'S SIGNATURE

STATE OF _Alabama_,
COUNTY OF _Houston_.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___10___ day of May, 2007

[SEAL]

_____
NOTARY PUBLIC
My Commission Expires: 4/26/10

3

# DECLARATION:

1.    My name is *Norva Baxter* .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately *July 28, 2003* until *present* . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of ___May___, 2007.


_Nova Baxter_
**PLAINTIFF'S NAME**

_Nova Baxter_
**PLAINTIFF'S SIGNATURE**


STATE OF ___Alabama___,
COUNTY OF ___Houston___.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___10___ day of May, 2007


[SEAL]

NOTARY PUBLIC
My Commission Expires: _4/20/10_

3

## DECLARATION:

1.      My name is _Diane Wiggins_

2.      I am a Plaintiff in this action.

3.      I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.      I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately _May 10, 02_ until _present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.      During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.      During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above).  To my knowledge, there are/were hundreds of

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___10___ day of _May_____, 2007.

_Diane Wiggins_____        _Diane Wiggins_____
**PLAINTIFF'S NAME**                    **PLAINTIFF'S SIGNATURE**

STATE OF_Alabama____,
COUNTY OF_Houston_____.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___10___ day of May, 2007

[SEAL]

_Jennifer Selmer Dea_____
NOTARY PUBLIC
My Commission Expires: 4/20/2010

3

## DECLARATION:

1.  My name is *Thaya Smith*.

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Dothan, County of Houston, State of Alabama, from approximately *Oct. 07, 1997* until _____*present*_____. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, I have observed all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate. I personally have worked many positions other than my assigned job and have been moved various times, sometimes daily, as production requirements demand, working across department lines and under various supervisors.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production and post-production activities that are necessary,

integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the compensable walk time that ensues thereafter; donning and doffing of certain sanitary and personal protective equipment such as hairnets, beard nets, and ear plugs; time spent cleaning and sanitizing myself; wait time associated with cleaning and sanitizing myself; walking to and from the designated time clocks after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me was recorded under the same wage compensation system in which individual employee time clock punches are the basis for starting and ending hours worked but employees are required to clock in after clearing security and donning required sanitary and personal hygiene equipment as well as clock out before doffing required sanitary and personal hygiene equipment, returning smocks to assigned smock bins, and clearing security.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same manner in which I was paid (not receiving pay for work described in ¶¶6-8 above). To my knowledge, there are/were hundreds of

2

individuals employed by Defendant who have been subjected to the pay practices described above, many of which already have joined this lawsuit but many of which are unaware of this lawsuit because they are no longer employed.

10.   I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the __12th__ day of __May_____, 2007.


__Thaya Smith_____          __Thay Sitt_____
PLAINTIFF'S NAME                  PLAINTIFF'S SIGNATURE


STATE OF __Alabama__,
COUNTY OF __Houston__.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the __12th_____ day of May, 2007



[SEAL]                __Fatima R. Lloyd_____
                      NOTARY PUBLIC
                      My Commission Expires: __01-17-11__

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA - NORTHERN DIVISION

BETTY ANN BURKS, <u>et</u> <u>al</u>.,          :
                                       :
                    Plaintiffs,        :
                                       :
           v.                          :     No. 2:06-CV-1081-MEF
                                       :
EQUITY GROUP EUFAULA                   :
DIVISION LLC,                          :
                                       :
                    Defendant.         :

---

**RESPONSE TO PLAINTIFFS'
MOTION FOR CLASS NOTICE.**

---

### INTRODUCTION.

     Defendant, Equity Group Eufaula Division LLC ("Equity"),
upon review of plaintiffs' Amended Complaint [Dkt. No. 33] and
Motion for an Order Permitting Court Supervised Notice [Dkt. No.
40], does not oppose plaintiffs' request at this "notice stage"
of the certification process.  However, Equity does not agree to
the form of Notice or the Consent To Join as proposed by
plaintiffs for the reasons referenced in this Response.

### FACTS.

     Plaintiffs, current and former employees of Equity's poultry
processing plant, instituted this action under the Fair Labor
Standards Act ("FLSA") seeking, on behalf of themselves and all
others similarly situated, to recover wages and overtime for
allegedly uncompensated compensable time spent donning and
doffing sanitary and protective clothing worn at the processing
plant as well as for related cleaning and walking time.
Plaintiffs' proposed opt-in class consists of "current and former
hourly 1st and 2nd processing employees ... paid under a master

time compensation system...."  [Amended Complaint, Dkt. No. 33, at ¶ 26; see also Plaintiffs' Motion for Class Notice, Dkt. No 40, at 3-4.]

However, Equity did not purchase the assets (and not stock) (previously owned by Charoen Pokphand (USA), Inc. ("CP")), until March 12, 2004. [See Answer to Amended Complaint, ¶¶ 3, 9.] Thus, to the extent that plaintiffs named in the Amended Complaint suggest that the applicable period dates back to December 2, 2003 (3 years from the filing of a Complaint for an alleged willful violation of the FLSA), such request is inappropriate.  As to any other "opt-in" plaintiffs, under 29 U.S.C. § 256, the action does not commence until the filing of the consent to join.  As such, the statute of limitations is not tolled for any plaintiff, whether named or opt-in, until a consent to join is filed.  See, e.g., Atkins v. General Motors Corp., 701 F.2d 1124, 1130 n.5 (5th Cir. 1983); Partlow v. Jewish Orphans' Home of S. Cal., Inc., 645 F.2d 757, 760 (9th Cir. 1981); Bonilla v. Las Vegas Cigar Company, 61 F.Supp.2d 1129 (D.Nev. 1999); Cash v. Conn Appliances, Inc., 2 F.Supp.2d 884, 897 (E.D.Tex. 1997); Salazar v. Brown, Jr., 1996 U.S. Dist. LEXIS 18113, 1996 WL 302673, at *10-11 (W.D. Mich. Apr. 9, 1996); Graham v. City of Chicago, 828 F.Supp. 576, 583 (N.D.Ill. 1993).

Moreover, this Court granted summary judgment on similar claims in Davis v. Charoen Pokphand (USA), Inc., 302 F.Supp.2d 1314 (M.D.Ala. 2004).  There, this Court, pursuant to Section 3(o) of the FLSA, held that Section 3(o) barred plaintiffs' wage claims for donning, doffing and washing where the work was covered by a collective bargaining agreement with the Retail

-2-

Workers and Department Store Union ("RWDSU"). Likewise, at all times relevant to this case, the hourly production employees at Equity's plant have been covered by a collective bargaining agreement with the RWDSU.

**ARGUMENT.**

A.    **The Notice And Consent To Join Forms Must Be Properly Tailored To Plaintiffs' Proposed Opt-in Class And Limited To This Lawsuit.**

Under the framework set forth by the Eleventh Circuit in Hipp v. Liberty National Life Insurance Company, 225 F.3d 1208, 1218 (11th Cir. 2001), the Court must undertake both a preliminary determination (the "notice stage") and a subsequent evaluation of the proposed plaintiff class (the "decertification stage"). Nonetheless, the Notice form approved by the Court must be sufficiently tailored so as not to include individuals or claims that are not part of the class or claims advanced in the Amended Complaint. Indeed, despite plaintiffs' description of their own class, numerous individuals have already submitted opt-in forms who do not work in first or second processing or were not paid pursuant to line time, including, for example, individuals who work(ed) in the sanitation department, or who were employed at the facility prior to ownership by Equity. As such, attached as Exhibit "A" and "B," respectively, are a revised Notice and Consent to Join.

1.    **Plaintiffs' Proposed Notice Contains Improper And Confusing Language And Terms.**

a.    **Description Of The Proposed Class.**

Plaintiffs' proposed description of the plaintiff class will confuse potential opt-in plaintiffs, and extends well beyond the

-3-

claims specified in the Amended Complaint. [Amended Complaint, Dkt No. 33, ¶ 26; Plaintiffs' Proposed Notice, Dkt. No. 40, Ex. A.] In fact, the description of the class attempts to encompass any type of activity that plaintiffs may try to argue, in the face of the collective bargaining agreements that covered the plaintiff class during the entire period in question, constitute uncompensated compensable work. Such a lengthy description of the proposed class will likely result in either confusing potential opt-in plaintiffs or cause them to ignore the description and opt-in (even if not appropriately within the plaintiff class) with individual claims which are not suited for class treatment.

A more concise and proper explanation of the opt-in plaintiff class and Notice was approved by the Court in <u>Aguilas v. Pilgrim's Pride Corp.</u>, No. 6V-06-J-1673 (N.D. Ala.). [<u>See</u> Plaintiffs' Motion, Dkt. No. 40, Exhibit 3.] Such a Notice should reference those individuals employed during the past three years at the Equity facility in First or Second Processing and paid hourly according to line time. In fact, plaintiffs' proposed description includes activities that do not apply to Equity-Eufaula (<u>i.e</u>, "clearing security");[1] are not illegal under the FLSA and <u>IBP, Inc. v. Alvarez</u>, __ U.S. __, 126 S. Ct. 514 (2005); or apply to employees who are not paid on the basis of line time (and will cause confusion and result in assertion of

---

[1]Indeed, evidencing the lack of veracity of these Affidavits, the canned "Declarations" submitted with plaintiffs' Motion all suggest that plaintiffs had to "clear security" and had related walk time, even though there is no security to clear at the entrance to Equity's plant. [<u>See</u> Declarations at ¶ 6 (Exhibits 1 and 2 to Plaintiffs' Brief).]

many individual claims which are not appropriate in a collective action).

**b.    The Number Of Opt-ins To Date Is Irrelevant And Improperly Included.**

In the second bullet point in their proposed Notice, plaintiffs include the following statement:

> "To date, (322) other hourly paid 1st and 2nd processing production employees have consented to join the lawsuit as plaintiffs."

This statement does not inform any potential opt-in plaintiffs of the basis of the lawsuit or claims being asserted therein. Rather, this statement improperly suggests the validity of the underlying claim by referencing the number of plaintiffs who have joined. As such, this portion of plaintiffs' proposed notice should be stricken.

**c.    The Fact That The Case Has Yet To Be Decided Is Not Clear In Plaintiffs' Proposed Notice.**

Plaintiffs' proposed Notice does not make any mention that Equity has denied that it has done anything improper or failed to pay employees as required by law. This is especially critical given the existence of a collective bargaining agreement between Equity and the RWDSU that covers these potential opt-in plaintiffs and, among other things, delineates the methods through which the potential opt-in plaintiffs were to be paid at all times relevant to this lawsuit. As such, the Notice should include language that reflects the fact that Equity contests this action and believes it has acted in accordance with all legal and contractual requirements.

-5-

d.    <u>Other Concerns Related To The Notice.</u>

The third bullet point of the Notice should note that the recipients are being given the opportunity "so that they may be permitted to consider whether to 'opt-in'....," not simply that they are being provided the Notice so that they can opt-in. In addition, on Page 2 of the Notice, the last sentence in the first box should be deleted, so as not to create the impression that individuals are losing something if they decline to opt-in.

Finally, Equity requests that it be allowed 30 days after approval of the form of Notice to provide a list of potential opt-in plaintiffs to counsel in a format agreeable to the parties.

2.    **Plaintiffs' Proposed Consent Form Should Be Refined So That There Is No Question That Consent Is Given For Purposes Of This Lawsuit Only.**

The Consent Form should include the caption of the case, thereby identifying this action and making it clear that the individuals are opting-in to this litigation. Likewise, Paragraph 5 should read: "I hereby consent and agree to be a plaintiff in this lawsuit and to be bound by any decision in this lawsuit or by any settlement of this case."

Since this is a FLSA collective action (and not a Rule 23 class action) and Equity employs individuals only at this single location (the only one referenced in the Complaint), the next paragraph should read: "I understand that this suit may be brought as a collective action covering employees of Equity. If brought as a collective action under either federal or state law, I consent to join as a plaintiff in such suit."

-6-

## CONCLUSION.

For these reasons, Equity Group Eufaula Division, LLC requests that the Court approve the revised Notice and Consent form, as attached to this Response on Exhibits "A" and "B" and, further, allow Equity Group Eufaula Division, LLC 30 days to produce the list of potential opt-in plaintiffs.


                                        /s/ Malcolm S. Gould
                                        Howard A. Rosenthal
                                        Gary D. Fry
**OF COUNSEL:**                         Malcolm S. Gould
Pelino & Lentz, P.C.                       Attorneys for Equity Group
One Liberty Place                          Eufaula Division, LLC
Thirty-Second Floor
1650 Market Street
Philadelphia, PA  19103
(215)665-1540

Joel P. Smith, Jr., Esquire
Williams, Pothoff, Williams
   & Smith, LLC
125 South Orange Avenue
Eufaula, Alabama 36027-1626
(334)687-5834

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA - NORTHERN DIVISION

BETTY ANN BURKS, <u>et al</u>.,          :
                                         :
              Plaintiffs,                :
                                         :
         v.                              :     No. 2:06-CV-1081-MEF
                                         :
EQUITY GROUP EUFAULA                     :
DIVISION LLC,                            :
                                         :
              Defendant.                 :

### CERTIFICATE OF SERVICE

    The undersigned counsel for Equity Group Eufaula Division
LLC hereby certifies that a true and correct copy of the Response
to Plaintiffs' Motion for Class Notice in the above-captioned
matter was filed electronically with the Clerk of Court on May
23, 2007 using the CM/ECF system, which will send notification of
such filing to:

        Robert J. Camp
        M. John Steensland, III
        The Cochran Firm, P.C.
        505 North 20th Street, Suite 825
        Birmingham, AL  35203

        Robert Joseph Camp
        RCAMP@COCHRANFIRM.COM

        M. John Steensland , III
        parkman@graceba.net, jjsteensland@yahoo.com

        Richard Martin Adams
        parkman@graceba.net

        Samuel A. Cherry , Jr
        scherry@cochranfirm.com, samcherry@cochranfirm.com

        Joseph Davie Lane
        jlane@cochranfirm.com, jdavidlane@aol.com

        Bernard D Nomberg
        bnomberg@cochranfirm.com,

        James W. Parkman , III
        parkman@graceba.net

        Lance Harrison Swanner
        lanceswanner@cochranfirm.com

William Calvin White, II
parkman@graceba.net, wwhite@graceba.net

Attorneys for Plaintiffs

     /s/ Malcolm S. Gould
Howard A. Rosenthal
Gary D. Fry
Malcolm S. Gould
   Attorneys for Equity Group
   Eufaula Division, LLC

**OF COUNSEL:**
Pelino & Lentz, P.C.
One Liberty Place
Thirty-Second Floor
1650 Market Street
Philadelphia, PA  19103
(215)665-1540

Joel P. Smith, Jr., Esquire
Williams, Pothoff, Williams
   & Smith, LLC
125 South Orange Avenue
Eufaula, Alabama 36027-1626
(334)687-5834

-2-

## DECLARATION:

1.    My name is _Harrell Mary L._
        (Last Name, First Name)

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in the City of _Perry_, County of _Houston_ _____, State of Georgia, from approximately _2- 2005_
[county you worked in]                                                   (month & year started)
until _still employed_.  As a poultry-processing laborer, I was
        (date & year ended or still employed)
specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily worked in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment

responsibilities.    Such as donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, or other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; and time spent continuing work after the master time clock has stopped.

7.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

8.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶6-8 above).  To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

9.    I personally am aware that other former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join.

10.    I understand that the allegations contained within this Declaration are true and correct to the best of my knowledge.  Further, this Declaration has

been read and explained to me and I understand the contents of what I am signing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ____1st____ day of ___August___, 2007

_Mary L. Harrell_
PRINTED NAME

_Mary L. Harrell_
SIGNATURE

1       customers."

2               Do you work on the second processing?

3       A.      Yes.

4       Q.      Have you ever worked on the first

5       processing or in the first processing?

6       A.      No.

7       Q.      Paragraph 6 says -- well, it refers to the

8       preproduction line and post-production line

9       activities.  What are preproduction line activities?

10      A.      Excuse me?

11      Q.      What are preproduction line activities?

12      A.      That is after the -- oh, that is after the

13      chicken been -- you say after -- where you at now?

14      Q.      Paragraph 6, ma'am.

15      A.      Okay.

16      Q.      On the second line, it refers to

17      preproduction line and then it says post-production

18      line.  What are preproduction line activities?

19      A.      That's when you -- that's before the

20      chicken is cleaned, and post is when they're through

21      with it.

22      Q.      What does it mean that these activities

23      are necessary to your overall employment

24      responsibilities?

25      A.      Necessary?

1              MS. STEPHENS-JOHNSON:  Object to form,

2        calls for a legal conclusion.

3              THE WITNESS:  You said necessary?

4        Q.    (By Ms. Quamie)  The next line of the

5    Declaration that you signed says:  "These activities

6    are necessary to my overall employment

7    responsibilities."

8              What does it mean that these activities

9    are necessary?

10       A.    It's necessary that they clean the chicken

11   and prepare it to ship out.

12       Q.    What does it mean that these activities

13   are integral?

14       A.    Integral?  That's on the next page?

15       Q.    On the bottom of the first page of the

16   Declaration that you signed, it states that:  "These

17   activities are integral to my overall employment

18   responsibilities."  It carries on to the top of the

19   second page.

20             What does that mean, Ms. Harrell?

21       A.    I don't know that term.

22       Q.    What does it mean that "These activities

23   are indispensable to my overall employment

24   responsibilities"?

25       A.    I don't know.

11/5/2007  Lawson, Maggie

1      A.    No, sir, I can't remember that.

2      Q.    Do you know what preproduction time is?

3      A.    No.

4      Q.    Do you know what post-production time

5  activities are?

6      A.    No.

7      Q.    Can you explain to me what this document

8  means?

9      A.    No, I can't.

10     Q.    Okay.  Ms. Lawson, if you will turn back

11  to that bigger document, Defendant's Exhibit 6.

12     A.    Okay.

13     Q.    Again, this is the Complaint in your

14  lawsuit.  This is the document that tells the Court

15  what your lawsuit's all about.  I'm just going to

16  read a couple of paragraphs to you and ask you about

17  them.

18          On Page 4, if you will look at that.

19     A.    Okay.

20     Q.    Look at Paragraph 3.  It says:  "In IBP

21  Incorporated v. Alvarez, 126 S period Ct. 514,

22  (2005)."  That's the name of a lawsuit.  It says:

23  "The United States Supreme Court unanimously affirmed

24  a ruling that IBP's wage and hourly policies, those

25  at issue in this case, violated the Fair Labor

1    recognize this document at all?

2        A.    I might remember.  I'm not sure.

3        Q.    Okay.  At the top of the document, it says

4    Declaration, and then it says Number 1:  "My name is

5    Maggie Lawson."

6        A.    Okay.

7        Q.    And then it says, Number 2:  "I'm a

8    Plaintiff in this action."

9        A.    What does that mean?

10        Q.    Does this sound familiar at all?

11        A.    No.

12        Q.    It says, Number 3:  "I make this

13    declaration based on my personal knowledge.  I am

14    over the age of 18 years and competent to testify to

15    the matters contained within this Declaration."

16        Do you remember any of this?

17        A.    I don't remember.

18        Q.    You don't remember?

19        A.    No.

20        Q.    Okay.  Turn to the second -- I'm sorry.

21    Can you turn to the third page, please?

22        A.    (Witness complies with request of

23    counsel.)

24        Q.    You see about -- just above the middle of

25    the page, the very last line?

1       car?

2               A.      Uh-huh.

3               Q.      After you go on break, does anyone tell

4       you where you have to go to?

5               A.      No.

6               Q.      Are you allowed to go wherever you want

7       during break?

8               A.      Your 30 minutes, yeah.

9               Q.      As long as you're back on time?

10              A.      Uh-huh.

11              Q.      Do you know how much break time you're

12      entitled to under the law?

13                      MS. STEPHENS-JOHNSON:  Objection to form.

14                      THE WITNESS:  (Witness shakes head

15              negatively).

16              Q.      (By Mr. Eckard)  If you don't, it's okay.

17      If you do, tell me.

18              A.      No.

19              Q.      No?

20              A.      No.

21              Q.      Do you know anything about how other

22      employees are paid at Perdue?

23              A.      No.

24                      MS. STEPHENS-JOHNSON:  Object to form.

25              Q.      (By Mr. Eckard)  Did you understand the

**11/5/2007  Lawson, Maggie**

1    question?

2        A.    Not really.

3        Q.    Do you know anything about how other

4    employees are paid at Perdue?

5            MS. STEPHENS-JOHNSON:  Objection, form.

6            THE WITNESS:  I can't remember.

7        Q.    (By Mr. Eckard)  Going back to Defendant's

8    Exhibit 5 for a minute, Paragraph Number 9 that is on

9    the second page towards the bottom, it says:  "I

10   personally am aware that other former hourly

11   processing employees will join this litigation if

12   they are given notice of it and an opportunity to

13   join."

14           Is that true?

15       A.    I don't know.

16       Q.    When you signed this document, did you

17   know of other people that wanted to join this

18   lawsuit?

19       A.    I can't remember.

20       Q.    Okay.  Paragraph Number 10, which is the

21   very bottom of that page, it says:  "I understand

22   that the allegations contained within this

23   Declaration are true and correct to the best of my

24   knowledge."

25           Other than the things that you've already

**11/5/2007  Coley, Sarah**

1        A.    Right.

2        Q.    Okay.  When you signed it, what was your

3    understanding as to what this said?  Did you have any

4    understanding as to what it said?

5              MR. CELLER:  Object to form.

6              THE WITNESS:  No.  I don't understand it.

7        I don't know what you're talking about.

8        Q.    (By Mr. Eckard)  Let me ask you this,

9    Ms. Coley.  When you signed this in August of 2007,

10   did you understand what this document said?

11       A.    I guess not.

12             (Defendant's Exhibit-5 was marked for

13             identification.)

14       Q.    (By Mr. Eckard)  Again, Ms. Coley, if you

15   didn't understand any of these, that's okay.  Please

16   just answer me truthfully.  If the answer is no,

17   that's fine.

18             I'm going to give you what I have marked

19   as Defendant's Exhibit 5.  That is a copy of the

20   Complaint.  Would you take a minute to look through

21   that and let me know if you recognize that document,

22   please.

23       A.    Okay.

24       Q.    Have you ever seen this document before?

25       A.    With all these names on it?

11/5/2007  Lawson, Maggie

1          foundation.  She can't remember ever receiving

2          the document.

3                   THE WITNESS:  I can't remember this.

4          Q.    (By Mr. Eckard)  Please don't be

5     embarrassed by this, but are you able to read?

6          A.    No.

7          Q.    Is it possible that you were given this

8     document and you just don't recognize it?

9          A.    I can't remember.

10         Q.    Okay.  When you were first hired, did you

11    have anybody that read the documents to you?

12         A.    I really can't remember.

13         Q.    Okay.  Did you explain to your supervisor

14    that you weren't able to read them?

15         A.    I don't remember that, either.

16         Q.    Okay.  This document, I will kind of try

17    to summarize it for you or represent to you what it

18    says.  This document goes through the procedure for

19    clocking in, when you're allowed to clock in, what

20    you have to do before you clock in and what you have

21    to do after you clock in.  Did anybody ever explain

22    that procedure to you?

23         A.    I can't remember.

24         Q.    Okay.  When did you first learn that you

25    had to clock in before you put on all of your

**11/5/2007  Lawson, Maggie**

1       February of 2005?

2              A.    I can't remember that.  I can't remember.

3              Q.    Okay.  I mentioned a few moments ago that

4       this form has a list of things on it.  I will

5       represent to you that this is a list of training that

6       you were supposed to receive when you were hired,

7       okay?  One of the things on there is timekeeping.  Do

8       you remember being trained on timekeeping?

9              A.    I don't understand the question.

10             Q.    Okay.

11                   (Defendant's Exhibit-5 was marked for

12             identification.)

13             Q.    (By Mr. Eckard)  Ms. Lawson, I'm going to

14      hand to you what I have marked as Defendant's

15      Exhibit 5.

16                   MS. STEPHENS-JOHNSON:  It says Declaration

17             and a space for your name.

18             Q.    (By Mr. Eckard)  Do you remember seeing

19      this document?

20                   MS. STEPHENS-JOHNSON:  You want me to read

21             it or have it read to you?

22                   THE WITNESS:  Yes.

23                   MS. STEPHENS-JOHNSON:  Do you want me to

24             do it?

25             Q.    (By Mr. Eckard)  Before I read it, do you

1     recognize this document at all?

2          A.     I might remember.  I'm not sure.

3          Q.     Okay.  At the top of the document, it says

4     Declaration, and then it says Number 1:  "My name is

5     Maggie Lawson."

6          A.     Okay.

7          Q.     And then it says, Number 2:  "I'm a

8     Plaintiff in this action."

9          A.     What does that mean?

10         Q.     Does this sound familiar at all?

11         A.     No.

12         Q.     It says, Number 3:  "I make this

13    declaration based on my personal knowledge.  I am

14    over the age of 18 years and competent to testify to

15    the matters contained within this Declaration."

16              Do you remember any of this?

17         A.     I don't remember.

18         Q.     You don't remember?

19         A.     No.

20         Q.     Okay.  Turn to the second -- I'm sorry.

21    Can you turn to the third page, please?

22         A.     (Witness complies with request of

23    counsel.)

24         Q.     You see about -- just above the middle of

25    the page, the very last line?



**Brian Z. Liss/WA/MLBLaw**
11/07/2007 12:42 PM

To   rcamp@cochranfirm.com

cc   sandra.reiss@ogletreedeakins.com, James J. Kelley
     II/WA/MLBLaw@MorganLewis

bcc

Subject   Perdue/Anderson

Hi Robert - We received Plaintiffs' notice and opt-in motion that you filed electronically on Monday, November 5.  In order to respond to your motion, which we notice is virtually identical to the motion filed in the Alford v. Perdue Farms case (Perry, GA), we need to depose a sampling of your plaintiff declarants. Please let me know your availability for 2-3 days of depositions in the month of December.  We are following this procedure in the Perry case, but please let me know if you have any questions.

- Brian

Brian Z. Liss
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC  20004
202-739-5579 (phone)
202-739-3001 (fax)
bliss@morganlewis.com

# THE COCHRAN FIRM

### BIRMINGHAM

505 NORTH 20TH STREET • SUITE 825 • BIRMINGHAM, ALABAMA 35203
TELEPHONE: (205) 244-1115 • FAX: (205) 244-1171
WWW.COCHRANFIRM.COM

November 9, 2007

<u>VIA U.S. MAIL</u>
Brian Liss
Morgan Lewis & Brockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 2004

```
┌────────────────────────────────┐
│  RECEIVED                      │
│  NOV 1 4 2007                  │
│  MORGAN LEWIS & BOCKIUS LLP    │
└────────────────────────────────┘
```

### RE: <u>Perdue/Anderson</u>

Dear Brian,

I received your November 7th email. I understand you wish to set depositions in order to respond to our notice motion. I believe such a request is premature given Judge Fuller is in the process of issuing a briefing schedule. The scheduling order does not set forth a time to reply but Plaintiffs had proposed 15 days. It has been my experience that Judge Fuller usually requires a response within 10 – 15 days.

I understand the counsel in *Alford* agreed to allow for a period of time for you to conduct discovery and depositions to form a response to their notice motion. I have conferred with my co-counsel and we are steadfast in maintaining our position that discovery is not necessary for you to form a response since *Hipp* calls for the court to make a determination solely on pleadings and affidavits.

As such, I ask that you withdraw your request. Furthermore, as it is almost the middle of November and the Thanksgiving and Christmas holidays are quickly approaching, those days I will not be on vacation I am already booked. Lets set a time to talk after we receive a briefing schedule.

Very truly yours,

Robert J. Camp