# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA,

|  |  |  |
|---|---|---|
| **DARRYL ANDERSON, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **1:06-cv-01000-MEF-WC** |
| | § | |
| **PERDUE FARMS , INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## RESPONSE TO DEFENDANT'S MOTION TO LIFT ORDER <u>STAYING DISCOVERY</u>

Comes now Plaintiffs and respectfully request that this Court continue to stay discovery pending the Court's determination on court supervised notice. In support of this motion Plaintiffs show the following:

1.     Plaintiffs filed their Reply to Defendant's Response in Opposition of Court Supervised Notice on January 22, 2008. The notice issue is now fully briefed.

2.     Defendant's Motion to Lift Order Staying Discovery is essentially a motion for reconsideration.

3.    Defendant would like this Court to believe that Plaintiffs advocate the use of the 11th Circuit's *Hipp* analysis in order to rush to judgment on notice because their proffered declarations have no evidentiary value.

4.    This simply is not the case.  Within Plaintiffs' Reply brief (Dkt. No. 63), Plaintiffs clearly show that a colorable basis for their claim exists and as such the Court need not make credibility determinations or resolve factual issues at this initial stage of the litigation.  *See* Pltf's Reply, Dkt No. 63 at ¶¶ 5 – 19, ¶¶ 28 - 36.  Furthermore, Plaintiffs' Reply brief shows the proffered declarations in support of notice are accurate and it is Defendant who is not being completely upfront with the Court.   At this stage deposition testimony is not necessary and it is not maniacal for Plaintiffs to expect a speedy decision on notice.

Defendant has not made attempts to ensure it remains compliant with the FLSA in the last 5.5 years.  *See* Pltfs' Reply, Dkt. No. 63 at 7, fn. 3. This in itself could be interpreted as a violation of their consent judgment. *See* Def's Response, Dkt. 59, Exhibit B Tab 1 at 3, ¶ C (Pursuant to the Consent Judgment entered into by Defendant, Defendant is obligated to use its best efforts to maintain future compliance with the FLSA). Defendant conveniently blindly follows an outdated settlement agreement with the

DOL, which has no legal precedent, and somehow they expect the Court to find Defendant more credible than Plaintiffs. Defendant's settlement is no different than any other settlement involving a civil action brought by a private party; if the law changes after you enter into a settlement and you make procedural changes as a result of that settlement, you are still required to comply with precedent setting cases, such as decisions of the United States Supreme Court. Defendant's reliance on the consent judgment is only good for one thing, an argument that Defendant did not act willful under the Act. In fact, from the documents provided by Defendant, it does not appear Defendant even sought an opinion from the DOL with regard to their continued reliance on the 2002 agreement in the post *Alvarez* world.

5.    Defendant would like to make Plaintiffs out to be the "bad guy" stirring up litigation and wrongly seeking notice but Plaintiffs are simply protecting putative class members and Plaintiffs are not asking for anything out of the ordinary. In the 11th Circuit, Judge Clay D. Land, presiding over an MDL action with a putative class of more than 200,000 individuals, *In re:  Tyson Foods, Inc. Fair Labor Standards Act Litigation*, MDL Dckt. No. 1854, Case No. 4:07-MD-01854, found, ruling from the bench, that Defendant is not entitled to pre-notice discovery. *See* Exhibit A (Hearing

Transcript, pg. 43 lines 12 – 25, pgs. 44 – 46, pg. 49 lines 3 – 25 and pg. 93 lines 11 - 13). In deciding a briefing schedule for notice and whether defendant will be allowed to conduct pre-notice discovery, Judge Land states,

> "I'm going to follow the *Hipp* rule… I would think, unless there's some extremely unusual circumstance, the initial certification decision will be decided based upon the well-pled allegations of the complaint." *See* Hearing Transcript pg. 49 lines 3 – 8.

Judge Land went on to determine discovery should not commence until the last reply brief regarding conditional certification is filed. *See* Hearing Transcript pg. 56 lines 4 – 7. During the course of oral arguments Judge Land went as far as to accuse defendant's request for discovery as being nothing more than hoops which they were trying to make Plaintiffs needlessly jump through and that defendants would not suffer any prejudice as a result of discovery being issued without further discovery. *See* Hearing Transcript at pg. 43 lines 17 – 25, pg. 44 lines 1 – 3 and pp. 43 – 45. Subsequently, defendant consented to court supervised notice and an order reflecting defendant's consent was entered. *See In re: Tyson*, 4:07-MD-01854, Doc. 29.

Likewise, after briefing on the issue, Judge Harry F. Barnes presiding

over an MDL action with a putative class of more than 150,000 potential

members, _In re:  Pilgrim's Pride Fair Labor Standards Act Litigation_, MDL

Dckt. No. 01:07-cv-1832, also found discovery is not necessary at the initial

stage of the certification process stating,

> "The Court indicated… it would be appropriate to allow the
> parties to engage in discovery relating to collective action
> certification issues.  However, upon further consideration, the
> Court has decided that discovery is not necessary at the initial
> stage of the certification process… The Court is aware that
> sending notice early in this proceeding is critical under the Fair
> Labor Standards Act because the statute of limitations
> continues to run until individuals affirmatively opt-in to the
> action."  _See_ Plntfs' Motion for Notice, Dkt. 49, Exhibit 10.

6.      Defendant acts put upon that under the _Hipp_ analysis the initial notice

stage is more lenient than the second stage analysis but the reason for this

more lenient standard at the initial stage is plain and it is simple. As a trade

off Defendant does not face a Rule 23 class action where the statute of

limitations are tolled for all potential class members upon filing the

complaint and Defendant does not have to face a Rule 23 opt-out class.

Clearly from a class participation stand point the law provides Defendant

many advantages and the only reasonable expectation under _Hipp_ as a

counter to this advantage is that plaintiffs receive timely notice of an action

that may affect their rights.  But Defendant wants to have its cake and eat it

too. Defendant wants the benefits of a 216(b) collective action combined with the upfront discovery of a Rule 23 class action. Under *Hipp* this hybrid does not exist.

Thus, as Plaintiffs have said before, the genius of *Hipp* is that opt-in rights are protected and Defendant is protected in it is allowed full discovery at the second stage analysis.

7.    No doubt, if the Court grants Defendant's motion, Defendant will use the discovery and depositions it requested to attempt to prematurely move this action to the second stage analysis under *Hipp* before full blown discovery has occurred and the record is complete and as a result Plaintiffs, Opt-in Plaintiffs and putative class members will be prejudiced, as this Court astutely observed in its December 20, 2007 Order staying discovery.

8.    The notice issue is fully briefed, Defendant's have had an opportunity to submit affidavits and supporting evidence same as Plaintiffs, and as such a decision on notice is appropriate now rather than later.

9.    As for Defendant's posturing in this case regarding summary judgment, in *Alford v. Perdue Farms* Defendant's filed a motion for summary judgment and Plaintiffs submit that Defendant invariably did not even use the depositions it requested to support its Statement of Undisputed

Material Facts in support of summary judgment. *See Alford,* 5:07-cv-0087, Dkt. 41. The motion for summary judgment was filed after delaying a decision on notice now almost seven (7) months so Defendant could depose a representative sample of plaintiffs' declarants and in turn a single 30(b)(6) representative was put up for deposition. Defendant's statement of alleged undisputed material facts supporting its summary judgment motion is premised on newspaper articles, the declaration of the internal auditor charged with wage & hour compliance and the declaration of Perdue's Vice President of Human Resources. After a 7 month delay in notice proceedings Defendant didn't even rely on the deposition testimony it requested to develop undisputed material facts which quite expectedly are disputed. Scores of individuals potentially lost their right to join that litigation during this delay and the Court in *Alford* is being forced to make merit based determinations at the notice stage without a complete record before it.

10.    Surely Defendant cannot expect the Court to delay a decision on notice in this case which likewise prejudices potential opt-in plaintiffs. No, instead it is appropriate to move forward with notice pursuant to *Hipp* and if notice is granted the parties engage in full discovery and develop a

complete record upon which a motion for summary judgment or motion to decertify can be fairly judged.

11.    *Hipp* cannot be vacated simply because Defendant threatens to file a motion for summary judgment.  The purpose of *Hipp* will be frustrated and *Hipp* could be rendered useless because defendants will file or threaten to file motions for summary judgment based on incomplete records simply to delay the proceeding in order to reduce the putative collective class.

12.    Plaintiffs request that the discovery stay remain in place until a decision on notice is rendered by the Court consistent with the Court's previous order.  Plaintiffs propose that after such a decision is rendered the parties meet and submit a revised discovery plan within 10 days of the Court's order, reflecting changes that may be necessary as a result of the Court's order.

   WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully request that this Court as soon as practicably possible deny Defendant's Motion to Lift the Discovery Stay and grant Plaintiffs' motion for an order permitting court supervised notice to employees of their opt-in rights.

Dated:  January 24, 2008                    Respectfully submitted,

                                            **THE COCHRAN FIRM, P.C.**

                                            /s/ Robert J. Camp
                                            **ROBERT J. CAMP**
                                            505 North 20th Street, Suite 825
                                            Birmingham, AL  35203
                                            (205) 244-1115 (Phone)
                                            (205) 244-1171 (Fax)

                                            ***Attorney for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>January 24, 2008</u>, I electronically filed Plaintiffs' Response with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to:

Sandra B. Reiss
<u>sandra.reiss@odnss.com</u>

Lance Harrison Swanner
<u>lswanner@cochranfirm.com</u>

James J. Kelley
<u>jkelley@morganlewis.com</u>

Bernard D. Nomberg
<u>bnomberg@cochranfirm.com</u>

Brian Z. Liss
<u>bliss@morganlewis.com</u>

Samuel A. Cherry, Jr.
<u>scherry@cochranfirm.com</u>

/s/ Robert J. Camp
**ROBERT J. CAMP**

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

|  |  |
|---|---|
| ) | |
| ) | |
| ) | |
| ) | CASE NO. |
| ) | 4:07-MD-01854 (CDL) |
| IN RE:  TYSON FOODS, INC.  ) | |
| FAIR LABOR STANDARDS ACT  ) | DATE:  11/14/2007 |
| LITIGATION                ) | |
| ) | |
| ) | PRETRIAL CONFERENCE |
| ) | |
| ) | |
| ) | |

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE CLAY D. LAND,

UNITED STATES DISTRICT JUDGE

Proceedings recorded by mechanical stenography;
transcript produced by computer.

Betsy J. Peterson, RPR
Federal Official Court Reporter
P.O. Box 924
Columbus, Georgia  31902-0924
706 317 3111

```
 1                          APPEARANCES

 2

 3   ON BEHALF OF THE PLAINTIFFS:

 4       MS. CHRISTINE WEBBER
         cwebber@cmht.com
 5       MR. JOSEPH M. SELLERS
         jsellers@cmht.com
 6       Cohen, Milstein, Hausfeld & Toll, PLLC
         Suite 500, West Tower
 7       1100 New York Avenue, NW
         Washington, DC 20005-3934
 8       (202) 408-4600

 9       MR. PREYESH MANIKLAL
         preyeshmaniklal@gcmdlaw.com
10       Maniklal & Dennis, LLP
         4360 Chamblee Dunwoody Road
11       Suite 428
         Atlanta, GA 30341
12       (404) 875-0630

13       MR. ROBERT J. CAMP
         rcamp@cochranfirm.com
14       The Cochran Firm
         505 North 20th Street
15       Suite 825
         Birmingham, AL 35203
16       (205) 244-1115

17       MR. ROGER K. DOOLITTLE
         Attorney at Law
18       rogerkdoolittle@aol.com
         Briarwood One Building
19       450 Briarwood Drive
         Suite 500
20       Jackson, MS 39206
         (601) 957-9777
21
         MR. ROBERT E. DEROSE II
22       bderose@bnhmlaw.com
         Barken Neff Handelman Meizlish, LLP
23       360 S Grant Avenue
         Columbus, OH 43215
24       (614) 221-4221

25
```

1     MR. PETER D. WINEBRAKE
     pwinebrake@winebrakelaw.com
2     The Winebrake Law Firm, LLC
     Twining Office Center
3     715 Twining Road
     Suite 114
4     Dresher, PA 19025
     (215) 884-2491
5

6     MS. ANN K. WIGGINS
     awiggins@wcqp.com
     Wiggins, Childs, Quinn & Pantazis, LLC
7     1400 Southtrust Tower
     Birmingham, AL 35203
8     (205) 328-0640

9     MS. CANDIS A. MCGOWAN
     cmcgowan@wcqp.com
10    Wiggins, Childs, Quinn & Pantazis, LLC
     The Kress Building
11    301 19th Street
     Birmingham, AL 35203
12    (205) 314-0611

13

14  ON BEHALF OF THE DEFENDANTS:

15

16    MR. MICHAEL MUELLER
     mmueller@akingump.com
     Akin, Gump, Strauss, Hauer & Feld, LLP
17    Robert S. Strauss Building
     1333 New Hampshire Avenue
18    Washington, D.C. 20036
     (202) 887-4113

19

20    MS. LISA SCHRETER
     lschreter@littler.com
21    Littler Mendelson, PC
     3348 Peachtree Road, NE
22    Suite 1100
     Atlanta, GA 30326-1008
23    (404) 233-0330

24

25

1           (Proceedings on 11/14/2007, commencing at

2           10:03 a.m., as follows:)

3           THE COURT:  Please be seated.  Good morning.

4           All right.  This will be the initial pretrial

5    conference in the case of In Re: Tyson Foods, Inc., Fair

6    Labor Standards Act litigation, MDL No. 407-MD-01854.

7           Welcome to the Middle District, those of you

8    who have never been here before.  Hopefully, we can

9    accommodate everybody this morning and get done what we

10   need to get done in an efficient manner.

11          I have reviewed the filings by both parties,

12   both the defendant's proposed suggested scheduling order

13   along with the plaintiffs' proposals and responses.  I

14   suppose the first thing we need to do is find out who is

15   going to be speaking today on behalf of the plaintiffs.

16          Who would that be?

17          MR. SELLERS:  Your Honor, I'm Joseph Sellers.

18   I plan to speak today.  Mr. Maniklal, who is here with

19   us, may speak as well if that -- may permit the Court.

20          THE COURT:  All right.  Mr. Sellers and

21   Mr. Maniklal.

22          MR. MANIKLAL:  Yes, sir.

23          THE COURT:  All right.  And who's going to be

24   the spokesman today for the defendants primarily?

25          MR. MUELLER:  Good morning, Your Honor.

1  Michael Mueller with Akin, Gump, Strauss, Hauer and

2  Feld.  I'm proposed lead counsel.  With me is Li

3  Schreter.  She's proposed liaison counsel.

4           THE COURT:  All right.  Very good.

5           MR. MUELLER:  Li is with Littler Mendelson in

6  Atlanta.

7           THE COURT:  All right.  I am generally familiar

8  with the issues in the litigation, but before we get

9  into the specifics of the scheduling order, I do have a

10 few questions that I wanted to get straight in my mind.

11          One is, are all of the cases that are presently

12 pending in this MDL now single-plant cases, or not?

13 Mr. Sellers?

14          MR. SELLERS:  Yes, Your Honor.

15          THE COURT:  All right.

16          MR. SELLERS:  All of the cases are single-plant

17 cases, with the exception of the Adams case, that was

18 originally filed in the Western District of Arkansas.

19 That involves multiple plants, all of which are in

20 Arkansas.

21          THE COURT:  All right.  So the Adams Arkansas

22 case is a multiplant case.

23          MR. SELLERS:  That is correct.

24          THE COURT:  All right.  Have any of the cases

25 been -- I think I know the answer to this, but I just

```
 1    want to make sure.  Have any of the cases been certified
 2    yet in any of the transfer of courts?  Have there been
 3    any certifications, either conditionally or --
 4              MR. SELLERS:   No, Your Honor.
 5              THE COURT:  No.  All right.
 6              In any of the cases, has the certification --
 7    was the certification issue fully briefed in any of the
 8    cases; in other words, it was briefed -- all the briefs
 9    were in, it just hadn't been decided as of the time of
10    the transfer?
11              MR. SELLERS:   No, Your Honor.
12              THE COURT:  All right.  And for the unionized
13    plant cases, has the Section 203(o) issue been fully
14    briefed in any of the cases?
15              MR. SELLERS:   No, Your Honor.
16              THE COURT:  All right.  And how many of the
17    cases -- there are 18, correct, presently?
18              MR. SELLERS:  That is correct.
19              THE COURT:  How many of the cases have had no
20    discovery; in other words, they were just sent here --
21    they were sent to MDL right after they were filed and
22    then they were sent here.  Most of them or --
23              MR. SELLERS:  Yes, Your Honor.  I think about
24    11 --
25              THE COURT:  Okay.
```

1       MR. SELLERS:  -- out of the 18 have had no

2  formal discovery.

3       THE COURT:  All right.  So the only ones where

4  there's really been discovery are the ones that came

5  from the Northern District of Alabama, that were severed

6  and then refiled in various division -- districts.

7       MR. SELLERS:  Well, Your Honor, there was

8  originally a single case in the Northern District of

9  Alabama.

10      THE COURT:  Right.

11      MR. SELLERS:  The magistrate judge there

12  allowed discovery with respect to the plants at which

13  the named plaintiffs had worked.  So there were -- as to

14  those plants, where the named plaintiffs in that case

15  had worked, there has been formal discovery.  With

16  respect to all the other cases, that were brought by

17  others who may have opted into that case and have since

18  had their claims dismissed without prejudice, permitting

19  them to refile new cases, no formal discovery has been

20  conducted as to those cases.

21      THE COURT:  Okay.  And in those northern

22  Alabama cases where there was discovery, and then those

23  named plaintiffs have now gone and either participated

24  in or filed plant -- single-plant cases, are those

25  Alabama cases or are those scattered about?

```
 1              MR. SELLERS:  They're scattered, Your Honor.
 2      Perhaps --
 3              THE COURT:  There's some in Georgia, aren't
 4      there?
 5              MR. SELLERS:  That's correct.
 6              THE COURT:  Okay.
 7              MR. SELLERS:  And there's some in other
 8      places.
 9              The named plaintiffs who were in the Alabama
10      case were -- several of them were from Alabama plants,
11      but they were also from plants elsewhere in the
12      country.
13              THE COURT:  So there's seven cases scattered
14      throughout the 18 where there's been some discovery.
15              MR. SELLERS:  Yes, Your Honor.  They are
16      from -- in addition to Alabama, they're Kentucky,
17      Indiana, Missouri, Georgia, Maryland, and Mississippi.
18              THE COURT:  But not all of the cases in those
19      districts.
20              MR. SELLERS:  That's correct.
21              THE COURT:  Okay.  Which -- let's start -- and
22      I'm working off of my -- the Schedule A to my first
23      order that we sent out, where we listed the cases by
24      district, Schedule A to the original order that we sent
25      out.
```

1           MR. SELLERS:  Your Honor, may I address the

2    Court sitting so I can --

3           THE COURT:  Yes, you may.

4           MR. SELLERS:  Thank you.

5           THE COURT:  Can you tell fairly easily -- can

6    you go through these fairly easily and tell me which

7    cases there has been some discovery?

8           MR. SELLERS:  Yes.

9           THE COURT:  All right.  Let's start with the

10   Northern District of Alabama.

11          MR. SELLERS:  There are none that have had

12   formal discovery on that -- of those listed there.

13          THE COURT:  All right.  Arkansas?

14          MR. SELLERS:  None.

15          THE COURT:  All right.  Middle District of

16   Georgia?

17          MR. SELLERS:  The Mitchell case, Your Honor.

18          THE COURT:  Okay.  Indiana case?

19          MR. SELLERS:  The Joiner case has had formal

20   discovery.

21          THE COURT:  All right.  Kentucky case?

22          MR. SELLERS:  Yes.  The Garrett case has had

23   formal discovery.

24          THE COURT:  And Maryland?

25          MR. SELLERS:  Yes.  The White case has had

1    formal discovery.

2          THE COURT:  And then out of the Mississippi

3    cases?

4          MR. SELLERS:  The Brown case has had formal

5    discovery, Your Honor.

6          THE COURT:  Any other Mississippi cases?

7          MR. SELLERS:  No.

8          THE COURT:  Missouri case?

9          MR. SELLERS:  No -- oh, I'm sorry.  Yes.

10   Woodward.

11         THE COURT:  Oklahoma case?

12         MR. SELLERS:  No.

13         THE COURT:  And the Texas case?

14         MR. SELLERS:  And yes, the Earle case has had

15   formal discovery.

16         THE COURT:  Okay.  The rest of the cases

17   there's been no discovery whatsoever.

18         MR. SELLERS:  No formal discovery, yes, Your

19   Honor.

20         THE COURT:  Okay.  All right.

21         First, before we get into the meat of the

22   scheduling order, as I indicated in my text-only order,

23   I am going to require that a joint proposed scheduling

24   discovery order be submitted by the parties by November

25   27.  That's 14 days from today.  Hopefully, today we

1    will resolve the most substantial disagreements by the

2    parties, and I'll give you the indication as to what

3    should be included.

4           If we conclude with me saying y'all see if

5    y'all can work that out on an issue and you're unable to

6    work it out, then what I want included in the scheduling

7    order is a short statement of the plaintiffs' position

8    and then a short statement of the defendant's position,

9    because what I'll do is, I'll go into the order -- I'm

10   going to get you to -- you need to e-mail the order to

11   Ms. Elizabeth Long.  Her e-mail address is included in

12   that first order.  She's going to be the clerk handling

13   the filings in this case.

14          Send it to her in WordPerfect format so that I

15   can revise it easily.  If you e-mail it to her in that

16   format, there won't be any need to send a disk or

17   anything.  And what I'll do is, if there's sections

18   where there are disagreements, you'll have your position

19   stated, then the defendant's position stated, and then

20   I'm just going to go in and insert "The Court adopts the

21   plaintiff's position" or "The Court adopts the

22   defendant's position" or "The Court adopts the following

23   modified position."  So include it all there in the

24   order so that can be done fairly easily.

25          With regard to appointment of liaison counsel:

1   Now, there's reference here to lead counsel, liaison

2   counsel, steering committee.  Tell me from the

3   plaintiffs' perspective why that should matter to me,

4   the different roles that those people are playing.  I

5   mean, it seems to me that my concern should be

6   appointing liaison counsel that is going to have the

7   court-ordered responsibility to make sure everybody

8   stays informed.

9          But, Mr. Sellers, from your perspective --

10  didn't you indicate that there's lead counsel and then

11  there's liaison counsel and then steering committee?  Is

12  there any need for me to give any court-ordered

13  expectations to anybody other than liaison counsel?

14         MR. SELLERS:  Your Honor, we think there's some

15  value to that structure.  It ought to facilitate the

16  orderly coordination of proceedings before the Court.

17         THE COURT:  What's lead counsel going to do

18  vis-a-vis defense counsel, as compared to what liaison

19  counsel is going to do?  I mean, I just want -- I don't

20  have a problem with it.  I just want to make sure it's

21  clear between the parties as to who is who and who has

22  what responsibilities to each other, so that it

23  doesn't -- we don't complicate it, so that one person

24  doesn't -- the defendant Mr. Mueller doesn't know -- he

25  needs to know whether he's got to contact you or liaison

1    counsel or who.

2              MR. SELLERS:  Thank you, Your Honor.

3              I would -- it's my notion that the liaison

4    counsel would serve as the primary liaison with the

5    Court.  I would expect that for the most part I might

6    be -- expect to be the person delivering oral argument

7    in matters that are common to all these cases before the

8    Court.  But if the Court has questions about scheduling

9    or ensuring that somebody has copies of all the

10   pleadings or things of that sort, I would -- my notion

11   was, liaison counsel would --

12             THE COURT:  All right.  So liaison counsel will

13   be our contact, the Court's contact.

14             MR. SELLERS:  That's my expectation.

15             THE COURT:  Is that the way you see it,

16   Mr. Mueller?

17             MR. MUELLER:  Yes, sir.

18             THE COURT:  All right.  And you want -- who is

19   it that the plaintiffs are suggesting be liaison

20   counsel?

21             MR. SELLERS:  Mr. Maniklal.

22             MR. MANIKLAL:  I'll be the liaison counsel,

23   Your Honor.

24             THE COURT:  All right.

25             MR. MANIKLAL:  And I'm based out of Atlanta, a

14

```
 1   Georgia lawyer, admitted in the middle district.

 2              THE COURT:  Okay.  All right.

 3         And as far as communication between the

 4   plaintiffs and the defendants, scheduling that type of

 5   thing, who's going to handle that?  You will.

 6              MR. SELLERS:  Your Honor, my expectation is

 7   that I would and in my absence Ms. Webber would, but our

 8   office would do that.  We would coordinate matters with

 9   the defense.  We would also try to coordinate matters

10   amongst the plaintiffs' counsel for all these cases to

11   facilitate the orderly conduct of discovery, to minimize

12   the need for multiple filings on particular matters,

13   things of that sort.

14              THE COURT:  All right.  Mr. Mueller, do you see

15   the same way the role of liaison counsel and lead

16   counsel?

17              MR. MUELLER:  Yes, sir.  Mr. Sellers and I and

18   Ms. Webber have had a relationship that has worked

19   exactly as Mr. Sellers just described it for nine

20   years -- eight-and-a-half years.  It's worked well.  In

21   this instance now, Ms. Schreter would be joining and

22   playing a liaison role for our side.  But in terms of

23   that lead counsel relationship, I think that would be a

24   good relationship.

25              THE COURT:  All right.  Well, then, it sounds
```

1   like there's going to be no disagreement on that part of

2   the scheduling order, if y'all will just include in the

3   scheduling order the appointment of the liaison and the

4   lead counsel and just make it clear -- concise but

5   clear -- the role that each will play, and that should

6   take care of that.

7         Now, of course, in the past, when we did not

8   have electronic filing, the liaison counsel played a

9   huge role in making sure that everybody got copies of

10   everything.  Is it the expectation of the parties that

11   you're going to limit service to liaison counsel or

12   serve everyone?

13         What would be your position with regard to

14   that, Mr. Sellers?

15         MR. SELLERS:  Your Honor, our expectation is to

16   the extent possible we will file everything

17   electronically and, I assume, pursuant to the electronic

18   filing system.  Every counsel who has registered with

19   that system will automatically get service of those

20   matters.

21         THE COURT:  Right.

22         MR. SELLERS:  There may be some counsel -- as

23   yet I don't know who they would be, if any -- who might

24   not register or cannot register through that system.

25   And we would ensure -- I would hope that liaison counsel

16

```
 1   under those circumstances would ensure that those such
 2   people, such lawyers, would receive service as well.
 3           THE COURT:  Well, is that your understanding of
 4   how this would proceed under the electronic filing,
 5   Mr. Mueller, is everybody is going to get served that's
 6   electronically registered?
 7           MR. MUELLER:  That should do it, Your Honor.
 8   We're set up for ECF.
 9           THE COURT:  All right.
10           MR. MUELLER:  I assume everybody who wants to
11   be in the plaintiffs' group is set up for that.
12           The only issue that comes up from time to time
13   is certain confidential filings.  I have to study better
14   what the Court's rules are going to be for confidential
15   filings in this matter, but typically we've given a disk
16   to Ms. Webber.  If that means I now have to send a disk
17   to Atlanta, I'll do that.  But other than that --
18           THE COURT:  Our system is set up such that --
19   of course, you can have the typical filings where
20   anything that's filed is served on everybody and it's a
21   matter of public record.  Then you can file things under
22   seal on our system, such that it goes into our system
23   and it may show this was filed under seal and the public
24   does not have access to it, but all of the registered
25   attorneys on the case can go in and have access to it.
```

1          And then we've got a more restrictive access,

2     which I think we label ex parte.  I'm not sure how our

3     labels go.  I'm sure this is no different than any other

4     federal court that's on this system.  But we've got a

5     system situation where it can be filed such that only

6     the judge sees it.  And that would be something -- for

7     example, if there was something needed to be reviewed in

8     camera by the judge only, then the filing party, I

9     think, can make that designation and nobody else would

10    see it.  So I think our system takes care of all of

11    those things.

12          Now, before you can file anything under seal,

13    you've got to first get permission from the Court to do

14    that, and we'll get a short order allowing that to

15    happen.  So I don't think that's going to be a problem.

16    I think that will work.

17          Now, it seems to me that with liaison counsel

18    there is no need -- and with our mandatory CM/ECF

19    requirements -- it seems to me that there is no need for

20    us to serve any of our orders by mail on these non -- on

21    these attorneys who have not signed up for CM/ECF.  So

22    put in the scheduling order that the Court's orders will

23    only go to attorneys who are signed up for CM/ECF.  And

24    any other attorneys of record who are not so signed up,

25    the liaison counsel shall have the obligation of mailing

1   copies of those orders to those persons; and that would

2   provide you with some incentive to get them signed up,

3   if you don't want to have to -- of course, this is a

4   bigger problem for the plaintiff than the defendant.   I

5   mean, we've only got one defendant.  So you don't really

6   have a problem.

7          But I think there are about 20 of your brethren

8   that have not signed up for CM/ECF.  So that's going to

9   be -- anything we send out of here, you're going to have

10  to mail copies of it to them -- well, I guess you'll

11  have to serve them.

12         And I really think the defendant should be

13  excused from having to serve by mail any attorneys who

14  are not signed up through CM/ECF, and that their burden

15  of service will be satisfied upon making sure that

16  liaison counsel is served electronically.  And that way

17  everything by all of the parties will be done

18  electronically, with the liaison counsel picking up

19  those that don't sign up.

20         Now, they can -- seems to me you can either get

21  them all to sign up or you can encourage them to

22  withdraw in some way or, if you want to serve them by

23  mail, go ahead.

24         But I think, Ms. Schreter -- is it Schreter or

25  Schroeder?

19

```
 1            MS. SCHRETER:  It's Schreter, Your Honor.

 2            THE COURT:  Schreter?  Make sure there's a

 3   provision included in the scheduling order that's going

 4   to be filed in 14 days that indicates that your service

 5   obligation is just upon those who have registered

 6   electronically and that liaison counsel will serve the

 7   nonregistrants by mail.  I want to make sure that's set

 8   out in there so there's no confusion later on.

 9            But the clerk's office will not be sending --

10   for example, on Thursday, whenever it was I sent out

11   that text -- or Friday maybe -- text-only order, we had

12   to photocopy that and mail it to 20 people.  And we're

13   just not going to do that.

14            Okay.

15            MR. MANIKLAL:  Judge, is it -- would it be

16   acceptable in the order to say that for those that are

17   not registered that liaison counsel can serve them by

18   mail or, if we have electronic mail address --

19            THE COURT:  Sure.

20            MR. MANIKLAL:  -- we can do it that way also?

21            THE COURT:  What I think the order needs to say

22   is service upon the CM/ECF participants and liaison

23   counsel is good service on everybody in this case, and

24   that liaison counsel will have the duty to make sure the

25   nonregistrants are properly notified of each filing.
```

1      I mean, that's the way it worked before, wasn't

2   it, is that the Court would just serve liaison counsel

3   with the orders and that would be good -- or you would

4   just serve fellow liaison counsel, that would be good

5   service, but they had a duty under the Court's order to

6   keep everybody notified.

7      Okay.  Regarding the scheduling order and the

8   sequencing of discovery, seems to me that obviously the

9   biggest issue that needs to be resolved is how we

10   sequence the certification slash notice part of the case

11   in relation to the summary judgment motions that are

12   going to be filed in the union cases under 203(o).  The

13   defendant thinks that we should proceed with the 203(o)

14   issue first to narrow the issues.  The concern expressed

15   by plaintiffs, which I think -- I mean is a legitimate

16   one -- is that the Court needs to minimize delay so as

17   to make sure that the rights of potential opt-ins to opt

18   in in a timely manner before the statute of limitations

19   expires is preserved.

20      So that seems to be what needs to be balanced,

21   is the legitimate goal of deciding the 203(o) issue, I

22   think, to -- if it doesn't eliminate cases, it possibly

23   could in some cases narrow issues -- decide that in a

24   prompt manner, while at the same time preserving the

25   rights of the potential opt-ins not to be barred under

21

1  the statute of limitations, due to no real fault of

2  their own but due to the Court's delay in getting to

3  those issues because it may have a scheduling order that

4  puts them farther down the road than they should be.  It

5  seems to me pretty clear that the intent of the

6  collective action aspect of the -- these cases is to at

7  least decide fairly close to the beginning of the

8  litigation whether the action ought to at least

9  conditionally be certified so that notices can go out

10  and then give the defendant the opportunity to -- after

11  more substantial discovery -- to de-certify the class.

12        Well, let me ask this first.  I mean, that's

13  the two-stage process basically in the Eleventh

14  Circuit.  Is that -- is the Eleventh Circuit unique in

15  that regard?  I mean, it seems that the approach is you

16  take a look at the pleadings primarily and maybe

17  affidavits and you make a preliminary decision on

18  certification so that you can decide whether

19  notification ought to go out, and then that's done

20  promptly in a scaled-back version -- with a scaled-back

21  version of discovery, subject to the defendants then

22  being able to engage in discovery that would go toward

23  having it de-certified.

24        Is that the common practice in all of these

25  circuits where these cases come from, Mr. Sellers?

22

1          MR. SELLERS:  Yes, it is, Your Honor.  I

2     might -- if I might just add one thing.  I think it is

3     fairly common that the courts expect to rule on the

4     initial request for certification and notice, initial

5     certification and notice, on the basis of the well-pled

6     allegations and sworn statements.  And a number of

7     courts have concluded that it was not necessary to

8     proceed with discovery at that juncture, because there's

9     no need to resolve or expectation to resolve dispute --

10          THE COURT:  But do the other circuits -- I

11     forget the Eleventh Circuit case, may have been the Hipp

12     case.  One of the Eleventh Circuit cases that said,

13     fairly expressly, that there should be this two-step

14     process --

15          MR. SELLERS:  Yes.

16          THE COURT:  -- with regard -- do the other

17     circuits say that, or not?

18          MR. SELLERS:  Well, they do.  Not every circuit

19     has had occasion to address it; but where they have,

20     they do all embrace the same approach.  And the district

21     courts in the jurisdictions from which these --

22          THE COURT:  I mean, there's not a -- in your

23     view, there's not a circuit conflict on that issue.

24          MR. SELLERS:  That's --

25          THE COURT:  It's either not been addressed or

1    other circuits have addressed it similar to the Eleventh

2    Circuit?

3              MR. SELLERS:  That's correct.

4              THE COURT:  Do you agree with that,

5    Mr. Schroeder?

6              MR. MUELLER:  Mr. Mueller.

7              THE COURT:  I mean Mr. Mueller.  I'm sorry.

8    Ms. Schreter.

9              MR. MUELLER:  I do, but I'd like to add this

10   caveat.  I agree with Mr. Sellers, it's not been

11   addressed in all the circuits.  We also would like to

12   file a brief soon addressing whether the law --

13             THE COURT:  Let me ask you this:  Do you see --

14   do you have any objection -- I'm not saying what we're

15   going to do, whether we're going to adopt your position

16   yet on this 203(o) issue or not.  But when we address

17   the certification issue, do you have any objection to

18   that framework in the -- using the Eleventh Circuit

19   framework, that it's really contemplated to be a

20   two-step process:  one, a -- I won't call it no

21   discovery, but a minimal discovery review of conditional

22   certification.  And then if you certify, you have

23   additional discovery, and the defendant will have the

24   opportunity to seek de-certification.

25             Do you have any objection to that analytical

1    framework -- which is not something I'm making up, but
2    it's the Eleventh Circuit.  I guess I'm asking do you
3    have any objection to that being used in all of these
4    cases, even though they come from different circuits.

5         MR. MUELLER:  Your Honor, we would not have an
6    objection to that if that were the posture of this
7    case.  I mean, that is certainly what Hipp says.

8         The Court needs to be aware of the fact that
9    seven of these plaintiffs, when they were in the
10   Northern District of Alabama, conceded that the first
11   step review doesn't apply here.  And that's because they
12   had years of discovery already, and Judge Hopkins noted
13   this in her order.

14        THE COURT:  All right.  Well, we can address
15   that.  I mean, I'm not suggesting -- it seems to me that
16   when they file their motion for certification, then you
17   can -- you can oppose it.  And I would think that -- I
18   don't see a problem with you, in those cases where
19   there's already been discovery, using whatever has
20   already been filed.  In other words, if you've got
21   discovery in a case that conflicts with the well-pled
22   allegations of the complaint, then I don't know why at
23   that initial stage in that particular case you wouldn't
24   be precluded from pointing that out to the Court.  What
25   I'm thinking is, is deciding that initial certification

```
 1   issue without significant additional discovery.  But I
 2   don't think I would preclude you from using whatever has
 3   been filed up to -- up to now to oppose it.
 4           MR. MUELLER:  May I respond?
 5           THE COURT:  Yes, sir.
 6           MR. MUELLER:  In the two motions they have
 7   already filed, which is in the Dobbins case and in the
 8   Mitchell case, they're already making use of this
 9   discovery in support of their motion.  And from our
10   perspective it's unfair for them to take discovery that
11   covers the period '96 to March of 2001 and ask the Court
12   in 2007 -- or maybe 2008 -- to certify the classes
13   without a little bit of updating in the discovery.  And
14   that's why we've proposed --
15           THE COURT:  All right.
16           MR. MUELLER:  -- some additional discovery,
17   because it's -- they want the best of both worlds.  They
18   want to take the discovery and try and use it to get a
19   certification six and a half years after discovery.  We
20   can't talk to their clients.  We can only depose them.
21   And that's --
22           THE COURT:  All right.  Well --
23           MR. MUELLER:  -- a little unfair to us.
24           MR. CAMP:  Your Honor --
25           THE COURT:  Yes, sir.
```

1          MR. CAMP:   -- if I may, I'm Robert Camp.   I'm

2    counsel on the Dobbins case that Mr. Mueller

3    referenced.  And I filed the notice motion, and we did

4    not rely on any previous discovery from the Fox case

5    when filing that.  We simply filed our motion based off

6    of our pleadings and affidavits.  We did not include any

7    additional --

8          THE COURT:  All right.  Is that likely going to

9    be what -- how you're going to proceed in all of these

10   cases, Mr. Sellers, is you're just going to rely on the

11   well-pled complaint?

12         MR. SELLERS:  Your Honor, we plan to rely on

13   the well-pled allegations and some sworn statements but

14   not from formal discovery.

15         THE COURT:  You're not going to be citing

16   depositions or whatever from previous cases?

17         Well, just know that if you are, then I'm

18   likely going to give the other side a chance to do some

19   limited discovery to combat that.

20         MR. SELLERS:  That's fair enough, Your Honor.

21         THE COURT:  All right.  Let's not get into that

22   just yet.  I mean, now -- getting back to the issue of

23   how to balance the interests of addressing the 203(o)

24   issue in a prompt and efficient manner, while also

25   preserving the rights of these potential opt-in

1   plaintiffs not to lose the claim based on the expiration

2   of the statute of limitations while the Court's

3   considering the 203(o) issue.

4          I mean.  It seems to me that -- Mr. Mueller, if

5   you want to avoid -- if the defendants want to avoid --

6   or if the defendants want the 203(o) issue decided

7   first, then it seems to me that the only way to really

8   preserve the rights of these plaintiffs not to lose

9   their claims based on the statute of limitations

10  expiring would be for the defendants to agree that the

11  statute of limitations shall be tolled during the time

12  that the 203(o) motions are being considered.

13         Do you know of any reason why they couldn't

14  agree in all these cases to toll the statute of

15  limitations, if they agreed to do so?  Mr. Mueller?

16         MR. MUELLER:  Well, Your Honor, I would want to

17  check with my client before I agree to tolling, but I

18  would --

19         THE COURT:  I'm not asking you to agree right

20  now.  I'm just giving you the option -- basically what

21  I'm telling you is I'm not going to decide 203(o) first

22  unless you can provide me with a way to preserve the

23  claims that may be lost while the Court is considering

24  that issue due to the expiration of the statute of

25  limitations.

Betsy J. Peterson, RPR
Federal Official Court Reporter
P.O. Box 924
Columbus, Georgia  31902-0924
706 317 3111

1        MR. MUELLER:  Well, that makes it easy.   Then

2   we'll --

3        THE COURT:  You can present that to your

4   client.  If you want to get that 203(o) issue decided up

5   front. -- which I think there's great merit to doing

6   that, because I think it would -- it could.   I haven't

7   decided it.  Obviously, I've read Anderson.   But it

8   could narrow the issues in some of the cases and make

9   the work more efficient in the certification issue by

10   deciding that first.  But I'm not going to decide it

11   first if it runs the risk of causing potential

12   plaintiffs, opt-in plaintiffs, to lose their claim

13   because of the expiration.

14        So my -- I mean, you may have other

15   suggestions.  It seems to me that one thing, the

16   defendant could agree to toll the statute for that

17   limited period.  And the other, which I think is

18   probably -- may be less enticing to you, but you could

19   agree without any prejudice to conditional certification

20   and notice and subject to de-certifying.   And then we

21   eliminate that first hurdle altogether, but you would

22   not be eliminating your opportunity to oppose

23   certification.

24        So if you would agree to conditional

25   certification without any prejudice, so that you could

1    contest it later, then that would handle the notice

2    issue.  We'd get the notices out.  And then we'd move

3    straight to your 203(o) issue.  And then we'd have a

4    discovery schedule for you to do discovery to fight

5    certification, as well as the other issues.

6         So there may be some other way to do it, but

7    I'm not going to address 203(o) up front without some

8    protection for the potential opt-in plaintiffs.

9         MR. MUELLER:  May I just make --

10        THE COURT:  Yes, sir.

11        MR. MUELLER:  -- an observation?

12        If that's the Court's ruling, then obviously

13   that's what we'll do.  I was going to make the point

14   that we're prepared to brief this very quickly.  And

15   even under their proposed schedule, the 3(o) motion

16   would be --

17        THE COURT:  203(o)?

18        MR. MUELLER:  Yeah.  The issue would be fully

19   teed up before they even file their class briefs.  They

20   want 60 days to file the class briefs.  We can have this

21   3(o) motion totally teed up before then, and there

22   wouldn't be any prejudice to anyone.

23        THE COURT:  Well, what you sometimes don't

24   appreciate is that this is not my only case.  So while

25   it may be teed up, I may be playing another course and

1    not be able to get around to swinging at it for -- I

2    mean, you know, I've got other cases.  And the most

3    efficient operation in the world, I think, takes a

4    minimum of 60 days to decide what could be potentially

5    dispositive motions.  So once it gets to me, there's

6    going to be some additional time where I've got to

7    consider it and draft an opinion and that type thing.

8    So...

9            Yes, sir, Mr. Mueller.

10           MR. SELLERS:  I'm sorry --

11           THE COURT:  I'm sorry.  Mr. Sellers.

12           MR. SELLERS:  Yeah.  Your Honor, I would like

13   to remind the Court -- is perhaps already aware -- that

14   even under the Cagle's decision, the disposition of the

15   203(o) defense also involves factual determinations and

16   therefore will necessitate --

17           THE COURT:  Right.

18           MR. SELLERS:  -- some discovery in connection.

19           THE COURT:  I understand.  My impression --

20   well, I mean, I suppose there could be cases where the

21   donning and doffing is covered expressly in a collective

22   bargaining agreement.  Are there no cases like that?  Is

23   it all -- whether it's a custom and practice, so there

24   are no easy cases.

25           MR. MUELLER:  The latter.

1          THE COURT:  All right.  So there would have to

2    be some discovery as to whether excluding that time is a

3    custom and practice in that plant?

4          MR. SELLERS:  Your Honor, certainly there would

5    need to be some discovery with respect to whether

6    whatever has happened with -- in the bargaining history

7    constitutes a customer practice.

8          But if I may, the Cagle's case did not reach

9    the decision with respect to unique equipment -- what

10   was described as unique equipment by the district

11   court -- whether that qualified as clothes changing,

12   because in that -- in the case there, the work performed

13   in donning and doffing unique equipment was fully

14   compensated.  So there may be some question about

15   factually what would qualify as unique versus non-unique

16   equipment in the chicken-processing industry.  That's an

17   initial matter.

18         Then the second question, obviously, is if the

19   Court were to conclude that the -- that this were

20   clothes changing that satisfied the standard for Rule --

21   Section 203(o), we have the customer practice question,

22   for which we've had no discovery --

23         THE COURT:  All right.

24         MR. SELLERS:   -- on these plants.

25         And then the third question -- I'm sorry, Your

1   Honor.  Just the third question that would ensue is,
2   even if the Court were to rule on -- conclude that all
3   of that ought to be -- those claims -- the donning and
4   doffing at the outset and at the end of the shift should
5   be -- claims to that time should be dismissed, there's
6   still the question of whether, as was the case in the
7   Fox rulings before Judge Hopkins, that there may very
8   well be sufficient time remaining that it won't dismiss
9   the entirety of those claims anyway.  And that's --

10          THE COURT:  But if you -- I'm not saying this
11  is what the ruling would be.  But if you've got the
12  donning and doffing out of the cases, if that ended up
13  being the ruling -- which I'm not saying that it is --
14  then it certainly narrows down what you're going to be
15  arguing about as far as whether people are similarly
16  situated.

17          MR. SELLERS:  Well, Your Honor --

18          THE COURT:  If you don't get it knocked out,
19  you're going to say these people are similar because
20  they all would come in and put on the rubber boots or
21  whatever it is and the outer clothes and the hair net or
22  whatever it may be; whereas, if that's considered to be
23  clothing and not covered under 203(o), all that's --
24  you're not going to have to argue about it, and the
25  Court's not going to have to consider it -- then I may

33

```
 1   would just focus on, well, are there some of them that
 2   wear a mask or -- I mean, whatever -- I don't know what
 3   this protective equipment you're talking about would be,
 4   but it would certainly --
 5          It seems to me that the most efficient way to
 6   handle it is to be able to address that issue up front
 7   in the unionized cases, while at the same time
 8   preserving your statute of limitations issue, and to
 9   construct a scheduling order that provides for limited
10   discovery on the 203(o) issue.  I mean, do you --
11          Yes, sir.
12          MR. SELLERS:  Your Honor, I defer to the
13   Court's -- if this is the Court's ruling, we obviously
14   will abide by it.  I just want to be clear that even if
15   the Court were to conclude eventually that the donning
16   and doffing activity at the beginning and the end of a
17   shift --
18          THE COURT:  You may still have an FLSA claim in
19   those unionized plants.
20          MR. SELLERS.  Yes, but I -- I'm sorry.  I'm
21   making an additional point, which is there is donning
22   and doffing in the middle of the shift that would still
23   -- would not be the subject of any dismissal because
24   it's not post or preliminary.
25          THE COURT:  Well, again, if we've taken out the
```

1  beginning and end of the shift, then the motion that I'm

2  going to have to be considering is going to be narrowed

3  as to whether there are similarly situated persons in

4  the middle of the shift.  I mean, there -- however you

5  want to spin it, it would narrow the issues.

6       I mean, I don't know -- it may be that

7  everybody does exactly the same thing at the beginning,

8  at the middle, and at the end.  That's probably going to

9  be your argument.  And if that's so, then they're

10  probably going to be similarly situated.  But I could

11  see a situation where they all do exactly the same thing

12  at the beginning, at the end, but they may not at

13  midday.  And if I only have to decide whether they all

14  do the same thing at midday, it's just going to make it

15  more efficient to decide it.

16       But the first thing that would need to be

17  determined is whether Tyson, in order to get that issue

18  decided up front, is going to be willing to enter into

19  some tolling agreement on the statute of limitations or

20  agree to some type of conditional certification.  And

21  you just don't know the answer to that today, I would

22  assume, Mr. Mueller?

23       MR. MUELLER:  We can let the Court know

24  either -- certainly by tomorrow.  I would just have to

25  consult with my client.

35

1          THE COURT:  All right.  Well, if your client --

2     if your client -- let's do this, because I don't really

3     want you to come back to me except with this final

4     proposed scheduling order.

5          So let's first of all travel down the road that

6     your client is not willing to consent to it, that they

7     think there's some ghost in the bush that's going to

8     come out and get them later on if they consent to

9     something.  So let's assume that they're not going to

10    consent to it, first of all.  And what I'm understand --

11    which would mean that we would proceed on the scheduling

12    order with the initial certification decision to be

13    decided first.

14         And as I'm understanding you, Mr. Sellers, you

15    don't expect that decision to require any discovery.

16         MR. SELLERS:  Your Honor, I don't expect to

17    require any new discovery.  And as I understood the

18    Court's position a moment ago, in the event as to any of

19    these plants for which we seek certification, we rely on

20    any information collected in formal discovery undertaken

21    in the Fox case, we certainly recognize that Tyson would

22    have -- should have the opportunity then to conduct some

23    limited discovery in response to it.

24         THE COURT:  All right.  Well, then, if -- does

25    everybody agree that --

1          Well, do you agree, Mr. Sellers, that the legal

2    standard for certification and notice is the same in all

3    of the circuits where these cases are pending?

4          MR. SELLERS:  Yes, Your Honor.

5          THE COURT:  I mean, this is not a classic class

6    action.  I'm going to have to decide certification and,

7    quite frankly, Rule 203(o) issues based on the law of

8    the circuit for each case and where they're coming

9    from.

10          Do you agree with that?

11          MR. SELLERS:  I think in general that's

12    correct.

13          THE COURT:  All right.

14          MR. SELLERS:  But I --

15          THE COURT:  Do you anticipate any difference

16    between the cases, based upon the circuit they're coming

17    from, with regard to the certification notice standard?

18          MR. SELLERS:  No, Your Honor.

19          THE COURT:  Do you anticipate any difference,

20    Mr. Mueller?

21          MR. MUELLER:  Your Honor, I do not.  I can't

22    represent that I know the standard in every one of these

23    circuits, but we're going to file a brief with the

24    Court's leave, as is typical in an MDL case, arguing

25    that Eleventh Circuit law applies and -- especially

1    since this is a procedural matter -- and that it's the

2    Eleventh Circuit's standard that governs here on this

3    issue.  That would just take care of the issue of

4    whether there even are any --

5              THE COURT:  Is that the law with regard -- the

6    substantive law -- I don't think that's the law with

7    regard to the substantive law in an MDL case unless the

8    parties agree, is it?

9              MR. MUELLER:  I believe that the MDL courts,

10   transferee courts, have generally -- and I mean very

11   heavily -- agreed to the law -- apply the law of the

12   circuit of the transferee court.  And I believe that's

13   true of both procedural and substantive matters, but --

14             THE COURT:  Well, I can see that being the case

15   if there's no indication that the other circuits have

16   any contrary position.  But for example, if on 203 --

17   the 203(o) issue, if there is another circuit where

18   these cases were pending before they came here, that

19   took the exact opposite position -- say there's a direct

20   conflict between the Fifth and the Eleventh Circuit --

21   then it would be your position that I would apply the

22   Eleventh Circuit standard -- it's not procedural,

23   substantive -- Eleventh Circuit standard to the Fifth

24   Circuit cases?  That can't be the law, can it?

25             MR. MUELLER:  I don't think there are any

1   direct conflicts --

2          THE COURT:  All right.

3          MR. MUELLER:  -- between the circuits at this

4   point, but I would like to brief it --

5          THE COURT:  I'm going to let you brief it,

6   but --

7          MR. MUELLER:  There's some nuances certainly,

8   and we'd like to address that point.

9          THE COURT:  I mean, I could see following the

10  Eleventh Circuit law if there's no indication in the

11  other circuits of any conflict, which that may be the

12  case.  There may be no other circuit that's spoken to

13  the 203(o) issue.  I mean, that's just the only issue

14  that really pops out at me.  I'm sure there are others.

15         Okay.  With regard to the certification, what

16  did -- what did the plaintiffs suggest as to the timing

17  of filing those motions?

18         MR. SELLERS:  Your Honor, our proposal is that

19  we would file those motions roughly within 60 days of

20  today's date on a rolling basis, in order to permit some

21  kind of sequencing of the adjudication of those issues,

22  but on a rapid rolling basis so it doesn't --

23         THE COURT:  And then the defendants would have

24  how long to respond?

25         MR. SELLERS:  They would have 40 days to

1   respond, and then there would be a 20-day period for a

2   reply.

3           THE COURT:  All right.  Assuming that we

4   proceed with the notice certification issue first,

5   Mr. Mueller, does that schedule sound reasonable to

6   you?

7           MR. MUELLER:  Well, we have a different view of

8   how it ought to proceed.  If he wants to file them on a

9   rolling basis or a rapid rolling basis, I guess that's

10  fine.

11          THE COURT:  Well, what I want to decide today

12  is any disagreements between the two of you so that when

13  you -- whoever is going to draft the scheduling order --

14  y'all are not fighting back and forth, you're just

15  basically putting down what I've decided.

16          So what --

17          MR. MUELLER:  We would like to --

18          THE COURT:  This is under the assumption that

19  you're not going to agree to conditional certification

20  and that you're not going to agree to tolling, and we're

21  going to therefore proceed with notice certification

22  first.

23          What is your proposal?

24          MR. MUELLER:  We would like some discovery

25  first.  That's our proposal.  Not 40 days after they

1    just filed these, but that we have an opportunity to

2    conduct the limited discovery that I think Mr. Sellers

3    said he agrees we're entitled to.

4        THE COURT:  You want to conduct the discovery

5    in the cases where they intend to rely upon something

6    other than the well-pled complaint.

7        MR. MUELLER:  We would like that discovery

8    whether or not they cite that.  The point is, they have

9    the discovery.  Whether they choose to cite it in their

10   brief, I don't think, is the important point under

11   Hipp.  The point is, the discovery has been had, and

12   we've agreed among ourselves that all the discovery is

13   usable in this case.

14       THE COURT:  But it exists.  So if you want to

15   use it to oppose it -- oppose this motion for

16   certification, then you can use it.  I'm not -- nothing

17   would prohibit that.  If they want to use it, and you

18   think that in order for it to be balanced you need some

19   limited discovery in those cases where there is

20   discovery that they want to use, then I would not have a

21   problem permitting that.  But if there is just discovery

22   out there, already done, that they don't intend to use,

23   why would you need additional discovery to combat

24   something that they don't intend to use, when -- if you

25   think it's in your favor -- you can use it already?

1          MR. MUELLER:  Well, because, first of all, Hipp

2     says if the discovery is out there, you apply a little

3     bit more stringent standard.  It's not a question of

4     whether they use it.  It's a question of whether the

5     discovery has been had.

6          And second, I think in the Mitchell case we've

7     already seen their motion, and they're relying on some

8     new declaration evidence to try and --

9          THE COURT:  Well, let's take the first issue

10    first.  If Hipp says if it's out there, there's a little

11    more stringent standard, then that can be your response,

12    that there is a more stringent standard here, there is

13    this discovery, here it is, and this is why you

14    shouldn't certify it.  And they will run that risk of

15    the Court deciding that's what Hipp says.

16         What's the second problem?

17         MR. MUELLER:  The second -- I wouldn't say it's

18    a problem.  But evidentiarily they have attached at

19    least one new declaration -- I don't know how many -- to

20    their Mitchell motion.  And they're trying to fill the

21    gap in the years since the discovery was taken as well.

22    We obviously don't have a right to talk to that person,

23    and I don't know how else he's going to support his

24    motions that are coming up.  But our point would be that

25    we would like to respond to that with some limited

1  discovery.

2        THE COURT:  How do you read the Hipp

3  bifurcated -- not bifurcated but the Hipp two-step -- I

4  mean, if you're going to allow all this discovery on the

5  first step, why do you even have the second step?

6        MR. MUELLER:  Well, that's an interesting

7  question.  The Fox case proceeded, I think, before Hipp

8  came out.  I think it came out in the middle of the

9  case.  And you can't undo that.  I mean, you can't put

10 the toothpaste back in the tube here.  We have a lot of

11 discovery.  We've all agreed among ourselves all that

12 discovery is usable in this case.  It wasn't just at the

13 eight plants.  It was also at corporate.  And you have

14 to take that into account.  There's been a lot of

15 discovery here.

16       THE COURT:  Well, the court that allowed all

17 that discovery didn't go along -- didn't go for the Hipp

18 two-step.

19       MR. MUELLER:  Hipp was unknown at the time, but

20 that's correct.  The Court just allowed the discovery to

21 go forward while the class motion was pending.  And

22 there was substantial discovery before it was first

23 argued, and all discovery was done by the time it was

24 actually decided.

25       THE COURT:  Yes, sir.

1          MR. SELLERS:  Your Honor, may I speak to a

2    couple of things?

3          First of all, in the Fox case, I think it's

4    important for the Court to recognize the discovery in

5    that case ended in 2001.  So it did not extend back --

6    there's been no discovery whatsoever, by either side, of

7    any events that occurred over the last three years,

8    which would presumably be the focus of most of the

9    discovery at this juncture because that's the period

10   that's covered by the statute of limitations under the

11   Fair Labor Standards Act.

12         THE COURT:  Let me ask you this:  Who has

13   the -- I'm presuming that it's the plaintiffs' burden to

14   bear the cost of notification preliminarily.  Is that

15   correct?

16         MR. SELLERS:  That's correct.

17         THE COURT:  So what is the burden on defendant

18   of deciding the certification issue initially, based on

19   no discovery, and then if the Court concludes based on

20   the well-pled complaint that it should be certified --

21   and then the plaintiffs have the burden of notifying all

22   these people of their opt-in rights, knowing that all

23   that could be for naught if the Court later

24   de-certifies -- then what is the burden from the

25   defendant's perspective of having the matter decided

1    based on limited or no discovery in that first step

2    other than just putting them through as many hoops as

3    you can put them through?

4            MR. MUELLER:  If I understand the question

5    right --

6            THE COURT:  There's going to be no expense to

7    you in notification; correct?  If the Court certifies

8    and says notify, then that's no expense to you.

9            MR. MUELLER:  Not really.  We have to come up

10   with the names and addresses.

11           THE COURT:  Okay.

12           MR. MUELLER:  And they're asking for names and

13   addresses going back to 1996.  This is not as easy as it

14   sounds, but --

15           THE COURT:  All right.  It's not significant.

16           MR. MUELLER:  It's not an insignificant burden

17   on us to go through the process.

18           THE COURT:  Okay.

19           MR. MUELLER:  And I think that's -- if that's

20   Your Honor's only question.

21           THE COURT:  Well, I'm just trying to see how

22   your rights are prejudiced by deciding the initial

23   certification decision on no discovery.

24           I could see how they would be prejudiced if it

25   were your burden solely to notify everybody and go

1  through that expense.  That may be for naught if

2  discovery later indicates it should not have been

3  conditionally certified.  But I'm really seeing how you

4  are significantly prejudiced --

5          MR. MUELLER:  Well, from --

6          THE COURT:  -- because -- I mean, you say that

7  it may cost you something to look at the addresses, but

8  you're saving the cost of having to do the initial

9  discovery.  I don't know how all that is going to

10  offset.  I guess you can use that same discovery later

11  on.

12          But it seems clear to me that the framework, at

13  least envisioned by Hipp, is that we're not going to

14  fight certification full bore twice.  We're going to

15  fight it in phases.  In one the Court's going to do an

16  initial review of the well-pled complaints to determine

17  whether there are sufficient allegations and the record

18  is sufficient to determine whether it should go to the

19  next step, and that is be conditionally certified so

20  that people can be notified of their opt-in right.  And

21  then you're going to be able to do this discovery and

22  then file a motion to de-certify it, if you're able to

23  pierce the allegations in their complaint and show that

24  that's not the facts, that's not a fact, that -- and

25  therefore, the Court should de-certify.

1       But it seems like you're taking this hybrid

2    position:  Well, we ought to do some discovery in the

3    first phase and then full-fledged discovery in the

4    second phase.  And what I'm trying to understand is how

5    do you draw the line, how do you keep them from not both

6    becoming full-fledged discovery-based decisions.

7       MR. MUELLER:  Well, Your Honor, as I understand

8    it, there's two questions:  First, why we take the

9    position in the case --

10       THE COURT:  The one question is, why do you

11   need discovery in the first phase.

12       Let me make it even simpler.

13       MR. MUELLER:  Yes, sir.

14       THE COURT:  Let's assume that this is just a

15   FLSA case that has been filed -- just filed, it's one of

16   these cases where there was no previous discovery.

17   Let's take out the Fox cases.  We'll pick one of the

18   other ones.

19       In that case, where there's been no previous

20   discovery, why do you need discovery in those cases on

21   the initial issue of conditional certification?

22       MR. MUELLER:  If that is all we were talking

23   about, we probably wouldn't, except that that's not the

24   animal that we have here.  We have a case that's got

25   years of discovery and already a ruling on intraplant

1  and interplant differences.

2  　　　　THE COURT:  But just for those plants;

3  correct?

4  　　　　MR. MUELLER:  Well, she was ruling on a case

5  that encompassed all these plants.  They only had

6  limited discovery.

7  　　　　THE COURT:  All plants in all 18 cases?

8  　　　　MR. MUELLER:  Yes, every one of our plants in

9  the country.  That was part of the class that they

10  wanted certified.  It wasn't just eight plants.  They

11  got plenary discovery from those eight plants, but the

12  case wasn't about just eight plants.  It was about all

13  the plants that are in this case, and that's what makes

14  this different --

15  　　　　THE COURT:  Well, I haven't read her order, but

16  my understanding of the order was that she concluded

17  that there couldn't be a nationwide collective action;

18  that from plant to plant it was insufficient to -- it

19  was either unmanageable or they couldn't carry their

20  burden of showing that the practices in every plant in

21  the country were sufficiently similar.

22  　　　　MR. MUELLER:  I agree with that.  That is --

23  　　　　THE COURT:  But that's not what I have.  What I

24  have is whether in most of the cases, except for the

25  Arkansas case -- what I've got is whether the plant in

1   Buena Vista, Georgia -- whether all of those employees,

2   when they are on the chicken line or whatever you want

3   to call it -- whether they all are subject to the same

4   policy with regard to pay for their donning and doffing

5   and their cleaning and everything else.

6        Now, certainly her order on these other plants,

7   that there were not sufficient similarities nationwide,

8   is going to have no binding effect on my decision with

9   regard to that Buena Vista plant.  Maybe you think it

10  will, but I don't think it would.

11       MR. MUELLER:  I don't see it as binding.  In

12  fact, she does note intraplant differences, so she --

13  and she's not talking about Buena Vista in her order,

14  but she is talking about eight of the plants.

15       THE COURT:  All right.  Well, let's take the

16  Buena Vista case.  Is there any discovery needed in that

17  case, for the Court to decide the initial conditional

18  certification?

19       MR. MUELLER:  We would like the discovery.  Can

20  I cite you a case that says --

21       THE COURT:  Yes, sir.

22       MR. MUELLER:  -- absolutely entitled to it?

23  No, sir.

24       THE COURT:  Okay.

25       MR. MUELLER:  The Hipp case talks about what

1  usually happens.  It's not a definitive rule.  And our

2  point is just --

3       THE COURT:  I'm going to follow the Hipp rule.

4  So unless you can convince me that -- well, to me, the

5  rule should be the Hipp rule, which is -- I would think,

6  unless there's some extremely unusual circumstance, the

7  initial certification decision will be decided based

8  upon the well-pled allegations in the complaint.

9       Now, if the plaintiffs seek to rely upon

10 anything beyond -- I mean, they're going to refile these

11 motions.  And if they seek to rely upon anything beyond

12 the well-pled allegations of the complaint or the

13 affidavits of the individual employees, then you'll have

14 the right to file a -- either reach agreement with the

15 plaintiffs to do some limited discovery or, if they

16 don't agree, file a motion with the Court to do some

17 limited discovery.  But if they don't rely on anything

18 other than the well-pled complaint in these additional

19 employee affidavits, then I don't see where there's need

20 for discovery at this first phase.  You'll be able to do

21 full discovery in your -- if you decide to file a motion

22 to de-certify.

23       So if there's no discovery, does the defendant

24 think they've got sufficient time to respond under the

25 plaintiffs' proposed schedule, which you'll have 30

```
 1   days -- or 40 -- you gave him 40?

 2           MR. SELLERS:  40.

 3           THE COURT:  -- 40 days from the date that any

 4   motion to certify is filed to file your response.  Does

 5   that seem adequate?

 6           MR. MUELLER:  I would --

 7           THE COURT:  If there's no discovery?

 8           MR. MUELLER:  Well, as I understand it, we have

 9   a right to use the discovery still to respond.

10           THE COURT:  You do.

11           MR. MUELLER:  And my only concern is -- with

12   agreeing to that is we don't know what the rapid rolling

13   basis is.  I have no way of planning.  It's totally

14   within their control.  And unless I know how they're

15   staged, I don't want to agree to 40 days.  I think

16   that's self-evident.  He may or may not elect to file

17   them at the same time.  He may put some of them closer

18   than others.  It's just hard for me to say as I stand

19   here.

20           THE COURT:  I mean, I say "only."  But there

21   are only going to be 18 of them; right?

22           MR. MANIKLAL:  At this point, Judge, unless

23   there's another case transferred in, but that's correct.

24           THE COURT:  Well, I mean, this is not a

25   situation where we're talking about 200 cases.
```

1          MR. MUELLER:  That's correct.  But the one case

2     alone has 16 plants, and that one's a big motion.  I

3     think it's --

4          THE COURT:  The Arkansas case has 16 plants?

5          MR. MUELLER:  Yes, sir.

6          MR. SELLERS:  Your Honor, we'd be happy to

7     agree to stage it so that that one gets filed later,

8     slightly later, not a long time later.  But we deal --

9     with all the others, we would file them all by

10    mid-January, and then we can set a separate schedule --

11         THE COURT:  All right.  Let's do this --

12         MR. SELLERS:  -- for the Arkansas filing.

13         THE COURT:  I think you've got enough of the

14    flavor of how I want it addressed.  I'm going to let

15    y'all get together between now and when you've got to

16    submit the order and see if y'all can't reach agreement

17    as to how they're filed and the timing of it.  And if

18    you can't, put in the order this is what the plaintiffs'

19    position is, this is what the defendant's, and I'll

20    decide.

21         But I don't intend for that part of the order

22    to be a brief.  It's just your position.  Not pages but

23    sentence.  I'm sure y'all can reach agreement as to how

24    you would file them.

25         All right.  Initial disclosures.  Well, the

1  plaintiffs don't think that there should be any other

2  discovery done until the Court makes its decision on

3  initial certification.

4      Mr. Mueller or Ms. Schreter, do -- I mean,

5  you're going to have your hands busy responding to all

6  these motions; but do you also want, while the Court is

7  considering these, to be doing merits-based discovery

8  that may be necessary on, for example, the 203(o) issue,

9  rather than just waiting until the certification

10 decisions are made?  I mean, you're going to have that

11 defense whether it's certified or not.

12     I guess what I'm asking is, Do you want to do

13 this in a pure -- they want to do it purely sequential,

14 as I understand the plaintiffs' proposal, where we

15 decide the class certification notice issues and then

16 when that's decided we then move on to the rest of the

17 discovery that would go, I presume, both to a potential

18 motion to de-certify and a potential motion for summary

19 judgment in the unionized plants on 203(o).  I guess

20 what I'm asking is, Do you want to have the opportunity

21 to do some of that discovery in the first phase?

22     MR. MUELLER:  You're going beyond initial

23 disclosures; is that right?

24     THE COURT:  Yes.  Yeah, I'm going beyond

25 initial disclosures.  I mean, I'm going to get to that,

1  but --

2         MR. MUELLER:  We are requesting the right for

3  some discovery in an earlier phase, yes.

4         THE COURT:  Yes, sir.

5         MR. SELLERS:  Your Honor, I confess to being

6  somewhat confused.  I apologize.

7         I had understood that the Court's sentiment was

8  that there would be -- unless we relied on some

9  discovery that -- with respect to the notice motions,

10 there would be no discovery relating to notice at that

11 juncture.

12         THE COURT:  What I said -- maybe I wasn't

13 precise -- is that there would be no -- there would be

14 no necessity of -- since you're not going to use

15 discovery on the certification question initially, you

16 would not need to delay filing the motions and responses

17 regarding certification to wait -- you would not need to

18 delay that filing because you're waiting on discovery.

19 But what I'm asking is -- I mean, you can do two things

20 at once -- whether there is some merit to not just

21 putting discovery completely on hold until the

22 certification issues are decided.

23         It wouldn't be used for that.  So it's not a

24 timing issue, that you've got to wait on the discovery

25 before we decide certification.  But it could be engaged

1    in so that when the certification issue is decided

2    you're not starting from the starting gate.

3        MR. SELLERS:  Your Honor, I must tell you, I

4    think our concern is that under the plan we proposed and

5    are prepared to live by, we're going to be very busy

6    over the next 60 days putting together a number of

7    motions for certification.

8        THE COURT:  All right.  Well, let's -- what

9    about after all of those motions are submitted?  In

10   other words, it could take the Court 60, 90 days to

11   decide the motions.  I don't know how long.  It may be

12   longer.  I'm not going to say.  But that's going to be

13   dead time --

14       MR. SELLERS:  Right, that's -- I'm sorry, Your

15   Honor.  We would have no objection to --

16       THE COURT:  You're starting discovery after the

17   last reply brief is filed.

18       MR. SELLERS:  That's correct, Your Honor.

19       THE COURT:  I mean, as a practical matter,

20   Mr. Mueller, you're probably not going to get focused on

21   that until you're finished responding to all these

22   certification motions anyway, are you?

23       MR. MUELLER:  I could --

24       THE COURT:  I'm not going to let you use it on

25   the certification issue.  So it's just a matter of, you

1  know, you wanting to get out of the block.

2      MR. MUELLER:  Well, that's the first I've heard

3  you say -- at least I didn't understand you to say we

4  couldn't use it until just now.  If that's the case --

5      THE COURT:  No, no.  You can use existing.  I'm

6  talking about new.

7      MR. MUELLER:  If we can't use it, then there's

8  no incentive to get started on it --

9      THE COURT:  Right.

10      MR. MUELLER:  -- for either.  So that --

11      THE COURT:  No.  When I say can't use it, I

12  mean on the initial phase.  I mean you clearly are going

13  to be able to do discovery in support of a motion to

14  de-certify.  I'm not -- I want to make that clear.  I'm

15  not limiting that in any way.

16      Well, then, let's try to draft the scheduling

17  order so that it has this period for the certification

18  motions to be decided relatively quickly, and then for

19  the discovery period to begin after the last reply brief

20  is filed on certification.  That will be the beginning

21  of the discovery period.  And hopefully y'all can reach

22  an agreement as to how that -- how long that discovery

23  period shall last -- maybe we need to take it up now.

24      What do you think?  What I'm -- what I don't

25  want -- when I get this order back from you, I don't

 1    want to have a lot of sections in it where it says

 2    plaintiffs' position, defendant's position.  I want to

 3    get most of that knocked out today.

 4              So we're going to start the discovery period on

 5    the day that the last reply brief regarding

 6    certification is filed.  How long do you think that

 7    discovery period should last?

 8              MR. SELLERS:  Your Honor, I think overall we

 9    think we can complete the discovery within a year.  For

10    some plants, it will undoubtedly be shorter, where most

11    of the -- some discovery may have already been

12    undertaken, and others may take --

13              THE COURT:  I think we should probably phase

14    the discovery.  I think we should have a short period

15    where we -- you do the unionized plant discovery --

16    well, of course, that would be inefficient.  It's not

17    going to be efficient for you to go do just discovery on

18    203(o).  I mean, if you're going to go do it, you're

19    going to do it all at one time.

20              MR. SELLERS:  Right.  We certainly --

21              THE COURT:  What would be your suggest -- I

22    mean, what I would want to happen is to -- I wouldn't

23    want to put a one-year discovery period and then that

24    mean that the 203(o) issue is not decided until the end

25    of that year.  I mean, it would seem like you could -- I

```
 1   don't know if you would just do the discovery in the
 2   unionized plants, but that's most of the cases, isn't
 3   it?
 4            MR. SELLERS:  Less than half, Your Honor.
 5            MR. MUELLER:  Well, it's 15 of 33 plants.
 6            MR. SELLERS:  It's less than half.
 7            THE COURT:  Okay.  What's your proposal as
 8   to -- assuming we start the discovery period the day
 9   that the last reply brief on certification is filed,
10   would the defendants prefer that to be just going to
11   take a year for discovery, or do you want to try to
12   phase it in some way?
13            MR. MUELLER:  We have -- just like Mr. Sellers
14   proposed a year, I think it would be beneficial to stage
15   it in some way.  I think the most logical way to stage
16   it is by plant, maybe by region, but I just say by
17   plant.  It almost doesn't matter whether it's by
18   region.  And, you know, it's as good a place to start
19   with unionized plants as anywhere else.
20            By the way, I think I'll come back to the
21   plaintiffs and the Court and tell you we're going to
22   agree to the tolling.  I just can't commit to it today.
23   We haven't talked about the case schedule if there is
24   tolling.  If that's the case, it looks like we're going
25   to be addressing the 3(o) issue up front.  And
```

 1    Mr. Sellers said he wanted discovery --

 2            THE COURT:  I'm going to get to that in a

 3    minute.  This may all be for naught, because you may do

 4    tolling and we may be -- have a more abbreviated

 5    schedule.  But if you don't agree to tolling, you're

 6    satisfied with just having the discovery period be 12

 7    months and then y'all work it out among yourselves as to

 8    how you stage it.

 9            MR. MUELLER:  We can do that.

10            THE COURT:  All right.

11            MR. MUELLER:  We've worked on lots of things

12    together.

13            THE COURT:  Good.  And as far as -- the

14    scheduling order will need to have a deadline for

15    dispositive motions.  I'm sure y'all can agree on that.

16            Initial disclosures.  The plaintiffs' position

17    is within 60 days of today, defendant's position 30 days

18    from today.

19            MR. MUELLER:  Court's preference.

20            THE COURT:  Either --

21            MR. MUELLER:  Court's preference.

22            THE COURT:  Okay, 30 or 60.

23            All right.  Well, let's say 60 days then.  That

24    way nobody will be tempted to come back and ask for an

25    extension.

1          All right.  Initial disclosures will be -- who

2     wants to take the lead on the first draft of the order,

3     to getting it to the other side?  Plaintiffs?

4          MR. SELLERS:  We'll be happy to do that, Your

5     Honor.

6          THE COURT:  All right.  60 days on the initial

7     disclosures.

8          Motions for leave to amend.  There seems to be

9     no disagreement between the positions except that the

10    plaintiffs --

11         MR. SELLERS:  Your Honor --

12         THE COURT:  I mean, is there going to be any

13    joinder of other parties?  Isn't it just going to be

14    opt-in plaintiffs?  I guess if you found out one of your

15    named plaintiffs didn't really work where they said they

16    did or something?

17         MR. SELLERS:  Your Honor, yeah, we'd like to

18    have some limited period of time to add additional named

19    plaintiffs, but that is --

20         THE COURT:  You say 45 days after initial

21    disclosure is completed.  That seems -- I mean, that's

22    relatively short, and I would think the defendants would

23    go along with that.  I mean, the defendants don't want

24    them to be able to name new parties six months down the

25    road.

1     MR. MUELLER: I don't think they need the 45

2  days. I mean there's nothing we're going to say in our

3  initial disclosures that's going to affect, you know,

4  who their named plaintiffs should be. We're going to

5  disclose our supervisors, you know; the kinds of

6  documents we have, like payroll records and so on. And

7  in the whole history of the litigation, which has been a

8  good relationship between us, I can't understand why

9  they need initial disclosures to amend their named

10  plaintiffs.

11     MR. SELLERS: Your Honor, I'm proposing

12  amendment to our position, which is that we would agree

13  to any amendments of the pleadings as to plaintiffs,

14  named plaintiffs, for -- within 45 days of today, rather

15  than after initial disclosures.

16     THE COURT: All right. I'm going to allow

17  that. But, I mean, that could -- if you add somebody,

18  that could conceivably -- I don't want you to add

19  somebody in one of the cases where you've already filed

20  your motion for certification, because then it becomes a

21  problem of who they're responding to.

22     MR. SELLERS: That's fine.

23     THE COURT: So once a motion to certify is

24  filed, there will be no amendment of that.

25     MR. SELLERS: We agree.

1          THE COURT:  Okay.

2          MR. MANIKLAL:  So we'll do basically -- we have

3     leave to amend to add named plaintiffs no later than 45

4     days or a notice motion, whichever comes first.

5          THE COURT:  Right.  No longer than 45 days from

6     today or the date that your motion to certify is filed,

7     whichever comes first.

8          MR. MANIKLAL:  Right.

9          THE COURT:  Mr. Mueller?

10          MR. MUELLER:  If I may offer an observation on

11     that.  These seven people who were transferred from the

12     Northern District of Alabama were transferred as

13     individuals.  In one of the cases I know we briefed --

14     and I think there was already a ruling on -- whether

15     they could convert it into a collective action.

16          I think judicial efficiency would suggest the

17     same sequence here; that is, Your Honor will have to

18     decide first if they are allowed to turn an individual

19     case into a collective action before it decides the

20     class motion.

21          THE COURT:  Well, I mean, they originally filed

22     the case in the Northern District of Alabama as a

23     collective action that would include a class of all

24     similarly situated Tyson employees throughout the

25     country.  That court decided that that class was not

```
 1    maintainable or was not going to be certified.  So all

 2    of those plaintiffs' claims ended up being individual

 3    claims.

 4              And you have not, Mr. Sellers, filed a amended

 5    complaint for those plaintiffs to maintain a collective

 6    action on a plant -- a single plant only?

 7              MR. SELLERS:  That's correct, Your Honor.

 8    Except for Arkansas, that's right.

 9              THE COURT:  Don't you need to do that?

10              MR. SELLERS:  We did.  I'm just saying

11    Arkansas --

12              THE COURT:  You did file an amended complaint.

13              MR. MANIKLAL:  We have filed amended.

14              THE COURT:  So the question is -- the court has

15    not ruled on it yet, but you have -- for example, the

16    cases, when they got transferred to the other divisions,

17    other districts -- when they were transferred, they were

18    transferred just as an individual case.  And you say you

19    have filed a motion to amend them or either have amended

20    them?

21              MR. SELLERS:  May Ms. Webber speak to this,

22    Your Honor?

23              THE COURT:  Ms. Webber?

24              MS. WEBBER:  Thank you, Your Honor.

25              Of the seven transfers -- when they were
```

1  transferred, they were transferred with the original

2  complaint, which was the nationwide complaint.  And so

3  we started the process of seeking to amend those

4  complaints to make clear that we were narrowing to a

5  single plant, rather than continuing to seek

6  nationwide.

7        We filed motions in three of the seven

8  transferred cases, motions for leave to amend.  One of

9  those has already been granted.  The other two are still

10  pending.  We have -- we had planned to file motions for

11  leave to amend in a similar fashion in the remaining

12  four cases.

13        THE COURT:  So one of the motions to amend was

14  granted before it was transferred to MDL.

15        MS. WEBBER:  Correct, Your Honor.

16        THE COURT:  Well, then, for the other ones, the

17  Court would need to decide the motion to amend before

18  you -- before you file your motion for certification.

19        MR. SELLERS:  That's correct.

20        THE COURT:  All right.  Well, include in the

21  order how those are going to be handled, and

22  specifically list them so that I won't have to go hunt

23  them down.  Specifically list that these cases, the

24  motion to amend -- there's a motion to amend, defendants

25  shall have --

1       Have they been fully briefed, or you've just

2   filed them, or you haven't even filed the amendments yet

3   -- the motions yet?

4       MS. WEBBER:  They're in different stages, Your

5   Honor.  Some have been briefed, some have not, and some

6   have not yet been filed.

7       THE COURT:  All right.  Well, just put in the

8   scheduling order the scheduling of those, and then

9   you'll have to address in the scheduling order how the

10  motions to certify those -- the deadlines for the

11  motions to certify those would need to run within so

12  many days after the Court decides the motion to amend.

13  Those would be outside the 30 day or rolling day.

14      MR. SELLERS:  Right.

15      THE COURT:  Okay.  Just make sure that's

16  clearly addressed.

17      That's your point, Mr. Mueller, is those

18  motions need to be addressed first.

19      MR. MUELLER:  Yes, sir.

20      THE COURT:  But that shouldn't prevent you from

21  filing the motions in the other cases under the schedule

22  that we talked about.

23      MR. SELLERS:  That's correct, Your Honor.

24      THE COURT:  All right.  Okay.

25      Protective orders.  Defendants wish to just

1  have the Fox protective order continued?  Is that right,
2  Mr. Mueller?

3        MR. MUELLER:  Yes, sir, or at least materially
4  the same term so there's no confusion.  We've got a
5  large corpus of evidence already subject to one order.
6  We just don't want to be subject to inconsistent
7  obligations.  It will very quickly be hard to follow
8  different rules for different pieces of evidence.

9        THE COURT:  Is there a problem with -- I mean,
10  obviously we need one protective order.

11       MR. SELLERS:  That's correct, Your Honor.  The
12  area that -- with which we take issue from the Fox
13  protective order is that it provided that within 30 days
14  after the production of what were thousands of pages of
15  materials, we had to indicate which of those material's
16  confidentiality designations we contested in the Fox
17  case.  That was an impossibility.  We couldn't review
18  all those documents within 30 days.  And virtually every
19  document they produced was marked confidential.

20       And so we're really just asking for the
21  opportunity to modify that provision.  And ultimately we
22  may bring to the Court at some point the issue of
23  whether some of those designations were proper.  We're
24  certainly willing to treat the documents as confidential
25  under the Fox order unless and until the Court were to

1    rule otherwise, but we want a different time period

2    within which to have to designate or challenge

3    confidentiality designations because 30 days is just too

4    fast.

5            THE COURT:  Well, I'm sure that that Court's

6    intention was that you either file your objections

7    within 30 days or seek a modification of the 30 days.  I

8    mean, I can't imagine if you'd filed some motion saying

9    there's no way we can do it in 30 days, the Court would

10   not have at least considered that.

11           MR. SELLERS:  Well --

12           THE COURT:  Did you try that?

13           MR. SELLERS:  I don't think so, Your Honor.  We

14   were preoccupied with --

15           THE COURT:  Okay.

16           MR. SELLERS:  -- reviewing the documents and

17   other things.

18           THE COURT:  Well, for the time being -- until

19   the discovery period starts in these cases, new

20   discovery, then the only issue is whether the documents

21   that have already been produced remain confidential.

22   And what we need is -- we don't need a confidentiality

23   order in this MDL until discovery starts -- I mean we

24   need it before discovery starts.

25           MR. SELLERS:  Yeah.  And, Your Honor, we're

1  prepared, unless and until the Court relieves us --

2       THE COURT:  To follow the Fox order.

3       MR. SELLERS:  We will follow the Fox order.

4       THE COURT:  Didn't my first order cover that?

5  Doesn't it say any protective --

6       MR. SELLERS:  Yes.

7       THE COURT:  -- orders that have been previously

8  issued shall continue?  I guess the question is whether

9  that would -- well, that's going to be confusing.  It

10 may not be clear that that Fox order protects anything

11 beyond the Fox litigation.

12      That's your point, Mr. Mueller --

13      MR. MUELLER:  No --

14      THE COURT:  -- or not?

15      MR. MUELLER:  We have an agreement that extends

16 it to these cases.

17      THE COURTR:  Oh, you do?  Okay.

18      MR. MUELLER:  But I agree with Mr. Sellers that

19 if this Court saw fit to impose a different procedure

20 for new documents produced, the Court would certainly

21 have the authority to do that.  Our point is that that

22 arrangement we've had was a negotiated arrangement, it's

23 worked for years, and there's no need to change it.  And

24 it would be -- given eight years of following this

25 process, it's a good process, and it should continue to

1   go forward.

2          THE COURT:  Well, we're going to follow the Fox

3   order unless and until it's amended by this Court, and

4   that would require a motion on behalf of the

5   plaintiffs.  But until that -- and then the defendants

6   can respond and I'll decide it.  But until it's amended,

7   the Fox order will be the protective order for all of

8   these cases.  All right.

9          I don't think there's any disagreement as to

10  how expert discovery will be handled.  Seems like that

11  was -- except the plaintiffs wanted to be able to name

12  rebuttal experts.

13         MR. SELLERS:  Or just produce rebuttal reports

14  from the same experts.

15         THE COURT:  Well, put down in your proposed

16  order what exactly you want and see if they'll agree

17  with it, and hopefully you can reach agreement on that.

18  If not, set out the differences and I'll decide it.

19         MR. SELLERS:  Okay.

20         THE COURT:  Proposed discovery motions.  I

21  think y'all can reach agreement on the timing of that.

22  I didn't notice any significant dispute.

23         What about electronic discovery?  The

24  plaintiffs I think raised that issue.

25         MR. SELLERS:  Your Honor, the last time we

1    conducted electronic discovery was eight or nine years

2    ago, something like that.  And our point is really that

3    we would like to discuss with counsel for Tyson what, if

4    any, additional materials they maintain in electronic

5    format.  We may or may not wish to pursue them in

6    discovery.  But the presumption made by Tyson in its

7    submission was that the only forms of electronic

8    discovery we would have any interest in were e-mails and

9    pay records.  And we merely want to make clear that we

10   would like to discuss with them if there are other forms

11   of electronically maintained materials that we'd like to

12   pursue through discovery, and that's -- and we're happy

13   to discuss that with them.

14          THE COURT:  I mean, the Federal Rules provide

15   for it.  I mean, I don't --

16          MR. SELLERS:  I would hope there's no

17   significant difference between us over this.

18          THE COURT:  Okay.  Well, if there is, you --

19   I'll straighten it out.  But I'm going to assume that

20   there's going --

21          I mean, is there any problem that the

22   defendants anticipate with regard to electronic

23   discovery, Mr. Mueller?

24          MR. MUELLER:  Well, I don't want to ever

25   anticipate problems.  I think e-mails, payroll

```
 1  records --
 2          THE COURT:  I thought that's what you were paid
 3  for -- or not just you but all lawyers.
 4          MR. MUELLER:  Well, I think we'll be able to
 5  work it out.  We propose to talk to them.
 6          THE COURT:  All right.
 7          MR. MUELLER:  The only thing I'm aware of that
 8  we didn't just discuss were security videotapes, which
 9  aren't very helpful in these cases, but we can talk
10  about that.
11          THE COURT:  All right.  Well, if there's some
12  dispute about producing it, then I'm sure y'all filed
13  motions.  Okay.
14          All right.  Now, there should not be any opt-in
15  filings until after -- obviously until after I rule on
16  your initial motions for certification.
17          MR. SELLERS:  Well, Your Honor -- I'm sorry --
18          THE COURT:  Go ahead.
19          MR. SELLERS:  We have had experience of people
20  contacting us for the purpose of expressing an interest
21  in participating in this case.  It's not in any
22  organized fashion, but if we -- I don't think we can
23  ethically advise them to refrain from filing a notice of
24  consent to participate until a later date, as the toll
25  of the limitations period would continue to run on their
```

1  individual claim.

2          THE COURT:  All right.  Well, what I just want

3  to make sure of -- either before you file your motions

4  or what comes in afterwards -- is that what is filed

5  with us logistically is done in such a way that it can

6  be easily managed in our system and downloaded.  And

7  what I would think could happen -- I mean, obviously the

8  opt-in or the consents in any future notice would be

9  directed to you, not directed to the Court.

10         MR. SELLERS:  That's correct.

11         THE COURT:  So it would be your burden to put

12 them in a format that we can download them into

13 electronic format --

14         MR. SELLERS:  That's correct.

15         THE COURT:  -- here, rather than you just

16 sending us paper and saying, "Here, you scan it and get

17 it in your system."

18         MR. SELLERS:  That's correct, Your Honor.

19 We'll accept responsibility for that.

20         THE COURT:  All right.  I mean, I'm sure --

21 you've handled these cases --

22         MR. SELLERS:  We have.

23         THE COURT:  -- where there's electronic filing

24 before.

25         MR. SELLERS:  We have.

1          THE COURT:  And so you at least know in those

2     other districts how that works best.

3          MR. SELLERS:  That's correct.

4          THE COURT:  So before you file them, you

5     contact Ms. Long and tell her what your -- the format

6     you're contemplating filing them in.  And then hopefully

7     that will work in our system.  If not, we'll contact our

8     systems folks just to make it work.

9          I mean, if -- and I'm not suggesting this is

10    going to happen.  But if all these cases were certified,

11    how many potential employees do we think we could

12    possibly be talking about as potential plaintiffs?

13         MR. SELLERS:  Your Honor, there would be

14    thousands, depending on the number or the length of

15    limitations period.  I don't -- I can't be sure, but it

16    certainly could be thousands.

17         THE COURT:  What records would we need to keep

18    in the official court record as to information regarding

19    those plaintiffs, other than their names?

20         MR. SELLERS:  Your Honor, what we've done in

21    another case, if I may answer your question this way, is

22    we have taken the consents, on which people register

23    typically their name and perhaps some minimal other

24    information by which they can be reached and identified,

25    and we have -- we have reduced that to a PDF, an

1   electronically readable form.  We've attached it to a

2   notice of filing on a regular basis -- let's say

3   weekly -- and then we have filed those with the --

4   through the electronic filing system.

5          So I would assume that if the Court were to

6   certify one or more of these cases, notice were at issue

7   and we had a series of consent people contact us and

8   consents prepared by those people, we would file -- we

9   would obviously work with Ms. Long, but we would intend

10  to file in some electronically-managed form or

11  manageable form the paper records of their consents.

12  And then we could retain the copies of the originals, or

13  the Court could direct us to proceed with the originals

14  in some other fashion.

15          THE COURT:  And during the pendency of the MDL,

16  there's going to be no need for the Court to treat them

17  as separate plaintiffs.

18          MR. SELLERS:  That's correct.

19          THE COURT:  I mean, as far as worrying about --

20          MR. SELLERS:  That's correct.

21          THE COURT:  Okay.  So we wouldn't really need

22  to do anything.  If you can electronically file it, then

23  it's in our system and we don't have to do anything with

24  it.

25          MR. SELLERS:  That's correct.

1          THE COURT:  Except if -- well, you're going to

2   file them in a format so they not only end up showing up

3   as consents in the general MDL but consents in the

4   individual cases.  So that at the end of the day, when I

5   send them back to wherever, it's going to be easy to

6   tell, if I didn't certify a case, who all these

7   individual plaintiffs are that have got to be sent back

8   for individual trial?

9          MR. SELLERS:  That's correct, Your Honor.

10          THE COURT:  And how are you going to do -- I

11  mean, you're going to take the -- is it going to be --

12  do you see it as your burden -- if you don't get a case

13  certified, then liaison counsel and lead counsel are

14  ultimately going to be responsible for those individual

15  cases until you can determine which of these other

16  plaintiffs' lawyers they came from?

17          MR. SELLERS:  Well, Your Honor --

18          THE COURT:  For example, if I sent -- if I

19  didn't certify the -- let's just say the Mississippi

20  cases, and they're not certified -- I don't know if

21  under the MDL -- am I going to be expected to handle the

22  individual discovery in the individual case.  Okay.

23          MR. SELLERS:  Well, Your Honor, I certainly

24  don't mean to instruct -- advise the Court about its

25  obligations under the MDL order, but I think the only

```
 1   question would be --
 2              THE COURT:  The only thing I'm not going to do
 3   is try it.
 4              MR. SELLERS:  I believe that's correct.
 5   Otherwise, venue is proper in this court for all
 6   pretrial proceedings.
 7              THE COURT:  But at the end of the day, if the
 8   Mississippi cases don't get certified and we've done all
 9   the pretrial with regard to that, and I send them back
10   to Mississippi, will the Mississippi court still have a
11   record of who their lawyers were when they were in
12   Mississippi?  I guess they would.
13              MR. SELLERS:  I believe so.  And I believe --
14              THE COURT:  I'm just thinking that when you
15   file these -- of course, those lawyers would not have
16   signed up to represent the opt-ins, though.  If they opt
17   in, if they consent and they didn't get certified, how
18   is that going to work?
19              MR. SELLERS:  Your Honor --
20              THE COURT:  Let's say you've got a case in the
21   Southern District of Mississippi and you've got 200
22   opt-ins --
23              MR. SELLERS:  Right.
24              THE COURT:  -- and we do all the discovery and
25   I de-certify -- certify it and then I de-certify, and
```

1   then the discovery is done and I send it back.  Who's

2   going to represent those 200 individuals to try those

3   cases in Mississippi?

4           MR. SELLERS:  Your Honor, I think -- it's

5   important to recognize that the lawyers who were

6   representing the plaintiffs in connection with those

7   claims in those plants before, before they were

8   consolidated, are counsel before this Court, in addition

9   to us.  So they will be -- presumably, if those cases

10  get returned as individual claims not certified in the

11  Mississippi court, the lawyers who were handling those

12  cases before and were involved in any discovery that may

13  take place before this Court with respect to those

14  claims will accompany those cases back to Mississippi

15  and be handling them.

16          THE COURT:  Well, as far as your steering

17  committee and all that, do you plan on having some

18  agreement with all these lawyers written as to your

19  responsibility vis-a-vis them?  I mean, is everybody

20  consenting to you being lead counsel and liaison, all

21  lawyers who are lawyers of record in those cases?

22          MR. SELLERS:  It's my understanding.  If the

23  Court wants to make some -- inquire about some further

24  representation, we can have some --

25          THE COURT:  Well, I just don't want -- I mean,

```
 1    there are probably only, what, 18 of them?

 2            MR. SELLERS:  At this point there are 18.

 3            THE COURT:  I think it would be prudent to --

 4    well, I would have thought, if you were going to be lead

 5    counsel, you'd want some agreement with all of them

 6    so -- to protect yourself as to what you're -- but maybe

 7    not.

 8            But it seems to me it would be -- what I don't

 9    want to happen is a couple of the decisions go bad and

10    then some lawyer come in from Mississippi or Arkansas

11    and say, "Well, I never agreed to this crowd

12    representing me on the motion to certify."  I mean, I

13    think they would have waived it.

14            MR. SELLERS:  Right.

15            THE COURT:  But it would just make it easier if

16    you had some written agreement that everybody's

17    consenting to the lead counsel and -- I mean, all I've

18    done this morning is taken you at your word, that

19    everybody's in favor of you being lead counsel and you

20    being liaison.

21            MR. SELLERS:  Your Honor --

22            THE COURT:  Yes, sir.

23            MR. SELLERS:  -- perhaps one way to address the

24    Court's concern would be that we have filed by counsel,

25    who have been counsel of record in these cases in the
```

 1  transferor jurisdictions, a notice with this Court

 2  indicating their assent to us serving as lead counsel.

 3  Mr. Maniklal --

 4          THE COURT:  I tell you what.  As part of the

 5  pretrial -- as part of the proposed scheduling order,

 6  just prepare a short, separate order for me that says

 7  that the Court has designated you as lead and you as

 8  liaison to act on behalf of the plaintiffs in all of the

 9  cases.  And that will be binding on every case.  Any

10  party that has an objection to this, any attorney, shall

11  file it within, you know, 30 days or something.

12          MR. SELLERS:  That's fine.

13          THE COURT:  And just -- that'll take care of

14  it.

15          MR. SELLERS:  Okay.  Thank you.

16          THE COURT:  That isn't going to be a problem.

17          MR. MUELLER:  Your Honor, if --

18          THE COURT:  Tyson is the only defendant;

19  right?

20          MR. MUELLER:  I'm sorry?

21          THE COURT:  Tyson is the only defendant, so you

22  don't have this problem.

23          MR. MUELLER:  That's correct, sir.

24          I have one issue I want to raise about the

25  consents.  We still don't have agreement on who are the

1  opt-ins in the Fox case.  And the reason for that is

2  when these consents are filed, there's almost never a

3  Social Security number.  And I understand that under the

4  E-Government Act there can't be on any public filing a

5  Social Security number; but it would be very helpful to

6  the course of this case and the future cases, when

7  they're transferred back, if we could get that

8  information, because when you get a name -- you know, we

9  have over time some 250, 300 thousand employees at any

10 one plant.  There's many, many people, sometimes with

11 the same names or very common names.  And it would be

12 nice to address that.

13        THE COURT:  I mean, you're going to prove your

14 damages through their records to some extent.  So it

15 would be helpful for you on the front end to have

16 whatever identifying information you think they probably

17 gave their employer.

18        MR. SELLERS:  Your Honor, I appreciate what

19 Mr. Mueller is saying.  There are people who are -- who

20 regard the Social Security number as a private piece of

21 information and are reluctant to disclose it to us or

22 anyone else.  I think --

23        THE COURT:  Well, can I not place that as a

24 condition of opting in?

25        MR. SELLERS:  Well, the Court obviously can do

1  that.  I would ask the Court not to do that.  I think

2  there are other ways for people to identify themselves.

3  If there are -- when we file these consents, if there

4  are two John Does in a particular plant, I would

5  expect -- and we've had this happen before -- that

6  Mr. Mueller would contact us and say, "There are two

7  John Does in this plant during this period.  Could you

8  help us sort out which one you're dealing with?"  We can

9  go to the Mr. Doe who has contacted us and inquire about

10  more identifying information.

11        THE COURT:  At this point I'm not going to

12  impose any requirement as to exactly what information

13  you have, but the burden -- if you seek information from

14  the defendant with regard to those employees and the

15  defendant makes a reasonable request, we've got to have

16  more information to identify them, then the burden is

17  going to be on you.

18        MR. SELLERS:  That's fair enough.

19        THE COURT:  And if the defendant says after an

20  initial search of the name, "We need more information,"

21  then the Court's expectation is going to be for you to

22  provide it to them.  And if that person says, "No, I

23  can't," then --

24        MR. SELLERS:  Right.

25        THE COURT:  -- you know, they're out.

1          MR. SELLERS:  Your Honor, that's fully

2     acceptable to us.  I just would like to have the

3     flexibility to provide --

4          THE COURT:  What I would think, Mr. Mueller, is

5     they provide you with the name.  You go through your

6     list of the name.  And if you can't identify it based on

7     reviewing the name, then you write him a letter and tell

8     him, "We can't identify him based on the name.  We have

9     these people in our database based upon date of birth or

10    Social Security number or whatever, and for us to have

11    to search it in some other method is going to cost us

12    this."  And I would likely put the burden to them to pay

13    for that extra cost, if they don't provide you with the

14    identifier.  But I'm not going to put some barrier up

15    that may artificially inhibit somebody from

16    participating in the case just because they don't want

17    to give out a Social Security number.

18          Now, at some point, if it is a burden for you

19    to identify them and they still will not provide the

20    identifier, then I won't hesitate to strike them.  But

21    we'll address it on a case-by-case -- I would think most

22    of them, you've probably got them in your plant based on

23    name, although I understand these people come and go

24    and --

25          MR. MUELLER:  Often we can't read them.

1    They're handwritten. And sometimes they're -- we can

2    identify six people with the same name.

3          THE COURT: Well, surely you can get them to at

4    least print under their name legibly their name.

5          MR. SELLERS: Your Honor, we'd certainly ask

6    them to do that, and we can state that in the notice.

7    If there --

8          THE COURT: It's just going to be more -- I

9    mean, you've got an incentive as an attorney to do that

10   because if they say, "I can't read it," then you're

11   going to have to go track them down and have your

12   paralegal or whoever do it. So I think that --

13         MR. SELLERS: We have every incentive to get

14   easily read, identifiable information, Your Honor.

15         THE COURT: All right.

16         MR. MANIKLAL: Your Honor, I think the opt-in

17   forms that we've utilized in the past -- at least the

18   ones that we've utilized in the last year -- provide for

19   a printed line as well as a signature line.

20         THE COURT: Well, really, this will be

21   addressed when we decide -- if it's certified, what the

22   notice will say and all that. I mean, I understand

23   there are some people that were opting in sporadically

24   even before, but we don't need to decide the opt-in form

25   today.

83

1       Okay.  All right.  Now, if -- I think that

2  covers most everything that seems to me needs any of my

3  direction with regard to the scheduling order if the

4  defendants are unwilling to stipulate to tolling.

5       Mr. Sellers, if they agree to stipulate to

6  tolling, you'd agree that would be binding on them.  I

7  mean, there's nothing in the law that would say that

8  filing within so many days is jurisdictional, so that

9  even if they agreed to it, the Court wouldn't have

10  jurisdiction.  That's not a problem, is it?

11       MR. SELLERS:  That's correct, it's not a

12  problem.

13       THE COURT:  Okay.  So they can protect your

14  potential opt-ins' rights with regard to filing a stale

15  claim by agreeing to tolling.  I mean, I'll give you a

16  chance to argue it.

17       What would be the problem with addressing the

18  203(o) issue up front, after some limited discovery, if

19  they agree to tolling?

20       MR. SELLERS:  Your Honor, the only issue that I

21  can envision is that I would like to make sure that

22  we're not, if possible, while we're preparing the notice

23  motions, embarked on briefing responses to lots of

24  motions for summary judgment.

25       THE COURT:  I think what I would do -- and this

84

1    would be our other path.  If they come back tomorrow to

2    you and say we agree to tolling, I think what I would

3    expect then is the proposed scheduling order to have the

4    briefing schedule for that set out up front, with very

5    limited discovery; and then within so many days of the

6    Court deciding those motions, you would file the motions

7    for certification, because I wouldn't want you to -- it

8    would defeat its purpose if you filed them before you

9    saw the Court's ruling, because then you may would be

10   arguing about certain things that are irrelevant.

11        So I would think that scheduling order would be

12   within so many days the defendants shall have for

13   limited discovery on the 203(o) issues by such and such;

14   they have to file all motions for summary judgment in

15   the unionized plant cases on that issue; you've got so

16   many days to respond; and then within 30 days of the

17   Court's ruling -- or however long you want to say -- on

18   those summary judgment motions, plaintiffs shall file

19   their motions for class certification.  And I would

20   restrict the summary judgment motions just to the 203(o)

21   issue, not everything.

22        Yes, sir.

23        MR. SELLERS:  Your Honor --

24        THE COURT:  What's wrong with that?

25        MR. SELLERS:  Your Honor, I'm not sure that

1  that will work in the sense that, number one, there's

2  going to be -- there is going to be some significant

3  discovery that I think we will need to take in

4  connection with our aid of our defense of those 203(o)

5  motions.  So to -- I think the Court should not

6  underestimate that that may take some time.

7       The second issue, which I want to come back to

8  again -- I mentioned it before -- is that even if the

9  Court were to grant the motion in its entirety, there

10  would be a totally separate inquiry, because it won't

11  dispose of the entirety of these claims as to whether --

12       THE COURT:  I understand that.

13       MR. SELLERS:  No, but the reason --

14       THE COURT:  I understand that.

15       MR. SELLERS:  I'm sorry.  But the reason it's

16  important is because that would mean that there would

17  still -- the need would still exist for notice to go out

18  even in those plants.

19       THE COURT:  I understand that.

20       MR. SELLERS:  So my point is that since the

21  notice does not specify in detail the nature of the

22  claims, there's no reason that the disposition of the

23  203(o) motion would affect the certification or the form

24  of the notice that would be issued.

25       THE COURT:  Well, but what it would affect

1  possibly is the Court's analysis of the -- of the

2  motions for certification.  And it could affect the

3  description of the class.

4        I mean, as I -- we've handled several of

5  these -- not MDL but several of these FLSA cases, and my

6  recollection was that the notice did have to describe

7  who was in the class.

8        MR. SELLERS:  Well, that --

9        THE COURT:  And it may or it may not.  It may

10  end up, regardless of the Court's ruling, say all line

11  workers or whatever they're called; or it may say --

12  there may be some way to exclude those who change

13  clothes only at the beginning or end of the shift.  I

14  just can't think of all the possibilities.  I mean --

15        MR. SELLERS:  Yeah.  But I guess the point I'm

16  making is that anybody who is -- who's come to the shift

17  at the beginning and whose donning and doffing may or

18  may not be included in the case, depending on the

19  Court's ruling on 203(o), is still going to have claims

20  with respect to activity in the middle of the day.

21  Everybody had to wash their equipment.  Washing is

22  clearly -- I don't think there's any dispute about

23  this.  Washing is not covered by the clothes changing

24  exception under 203(o).  There's walking time.  There's

25  donning and doffing in the middle of the day, in the

```
1   course of unpaid breaks where people performed work,
2   that would not be excluded by the ruling in 203(o).
3           And so --
4           THE COURT:  203(o) doesn't say putting on and
5   removing clothing and washing before and after --
6   doesn't say washing?
7           MR. SELLERS:  It's washing of the person but
8   not of the equipment.
9           THE COURT:  Okay.  Washing the person.
10          MR. SELLERS:  Yes.  We're not -- we're not
11  taking issue with that.  But washing person is not part
12  of the claim here.  It's the washing of the equipment
13  that's been donned and then doffed and washing it,
14  sanitizing it --
15          THE COURT:  You mean their equipment that they
16  carry with them.
17          MR. SELLERS:  That's correct.
18          THE COURT:  Not the line, not the steel or
19  whatever the chickens roll down.
20          MR. SELLERS:  It's the personal equipment these
21  people are wearing.
22          THE COURT:  Their knives or whatever.
23          MR. SELLERS:  Right.  Or their -- you know,
24  their helmets or their boots or their mesh gloves or
25  aprons or things of that sort.  That's the equipment
```

1  that must be washed and sanitized multiple times during

2  the day.  And the only issue that 203(o) defense

3  addresses is what is known as the post and preliminary

4  activity, the activity at the very beginning of the

5  shift and the activity at the very end of the shift.

6  All the activity in the middle of the shift is not

7  affected by -- it would not be affected by even an

8  adverse ruling on 203(o).  That's the reason why in the

9  Fox --

10         THE COURT:  You think there are going to be

11  very few cases that would --

12         MR. SELLERS:  -- be disposed of entirely.

13         THE COURT:  -- disposed of entirely.

14         MR. SELLERS:  And, Your Honor, I think we have

15  some experience with this at this point as well.  In the

16  Fox case, as we made clear in our papers, there were

17  several individual claims, named plaintiffs, that

18  remained before Judge Hopkins.  And we now have the

19  experience of two of those cases -- all three of them

20  actually -- Judge Hopkins granted summary judgment

21  pursuant to 203(o).  And in all three of them the Court

22  ruled that the time that remained was not de minimis,

23  and the trial -- the cases proceeded to trial on all

24  three.  One of them ended in a mistrial.  The other two

25  ended in plaintiff's verdicts.

1          So it is not dispositive of whether those

2    claims can go forward, and for that reason it should not

3    affect whether or not notice would be issued.  And I'm

4    just concerned about building in a sequencing that will

5    inevitably delay the issuance of notice.

6          THE COURT:  Mr. Mueller --

7          MR. MUELLER:  Do you have a question, or can I

8    respond to that?

9          THE COURT:  You can respond.

10          MR. MUELLER:  Your Honor, under Hoffman, the

11    whole point of the notice process is so that it's court-

12    supervised and people can make intelligent decisions.

13    The cases he just talked about, I think, make our point

14    because they were not class cases.  They were individual

15    trials.

16          Certain people here, like people who do not

17    handle -- we have two types of employees basically:

18    food handlers and non-food handlers.  As I understand

19    it, they're all within these proposed classes, but

20    there's different rules that apply to them.

21          At the beginning and end of a shift, non-food

22    handlers do not have washing requirements.  That's just

23    a general rule.  I mean, there may be some exceptions,

24    but that's a general rule.  Those people may get the

25    notice and say, "You know, if I see that 3(o) is applied

1    and the Court's not considering claims for pre-imposed

2    shift donning and doffing, and I don't do any washing

3    myself pre- or post-shift, I don't want to join the

4    suit," or, "I want to hire my own lawyer and file my own

5    individual action," like the ones we just tried.  That's

6    the whole point of the notice process, to let people

7    make that decision.  And the notice should be clear

8    about what claims are in the case, and people can make

9    that decision.  But it's no reason not to address the

10   legal issue.

11        THE COURT:  Well, why would -- why could you

12   not -- why can 203(o) not be addressed in your

13   opposition to the motion for certification by arguing

14   that -- your first argument would be these people aren't

15   similarly situated and, therefore, shouldn't be

16   certified; but if you found they were similarly

17   situated, then in certifying the class you should

18   certify the class to exclude all persons who doffed and

19   donned their stuff at the beginning and end of the shift

20   under 203(o)?  Why couldn't it be addressed there, and

21   then the notice that would go out would be to employees

22   who didn't do those things?

23        MR. MUELLER:  Well, because you're mixing

24   merits and class issues --

25        THE COURT:  Well --

91

```
 1          MR. MUELLER:  -- which you're not supposed to
 2  do, and --
 3          THE COURT:  I'm trying to do it efficiently.
 4          MR. MUELLER:  I understand.  Well, I think the
 5  most efficient way would be to get a ruling --
 6          THE COURT:  What's wrong with that,
 7  Mr. Sellers?
 8          MR. SELLERS:  I don't think we have any
 9  objection to that approach.
10          THE COURT:  What would be wrong with him having
11  the right in the certification -- arguing that if the
12  Court does certify it, it ought to exclude from the
13  class persons that come under 203(o) and then figure out
14  a way to write that into the notice?
15          MR. SELLERS:  Your Honor, as long as -- I mean,
16  I agree with Mr. Mueller that the Court should not mix
17  the notice with the merits, but I understand the Court's
18  thinking to be you deal with --
19          THE COURT:  Dividing the class.
20          MR. SELLERS:  You divide it up.  But I think --
21  I just again want to emphasize, although we'll address
22  it in our briefs, that even if the Court were to rule
23  against us on 203(o), it's -- I mean, we cite the
24  Marshall Durbin case.  There are a number of cases that
25  are -- that we attach, in fact, that speak to the issue
```

```
 1   that that would not be dispositive of the balance of the
 2   claims.
 3             THE COURT:  No, I know that.
 4             MR. SELLERS:  Okay.
 5             THE COURT:  But it would be indisputable in the
 6   union cases that an employee could not -- that an
 7   employee could not assert a claim, whatever the language
 8   of 203(o) is.  And if the Court certified the class, why
 9   couldn't the class be defined to exclude those persons?
10             MR. SELLERS:  Because, Your Honor --
11             THE COURT:  You can't tell who they are?
12             MR. SELLERS:  No, you can't tell who they are.
13   Your Honor, the point I was trying to make is --
14             THE COURT:  I mean, I wouldn't be throwing out
15   your claim.  It would just --
16             MR. SELLERS:  It would -- but it -- I'm sorry.
17             THE COURT:  Go ahead.
18             MR. SELLERS:  It would not eliminate the
19   entirety of their claims, so that for -- and so
20   therefore, when the Court posits the possibility that a
21   ruling against the plaintiffs on 203(o) would lead to
22   the elimination of some people's claims, I think that is
23   an extraordinarily unlikely event.  We haven't seen it
24   occur yet in any of these other cases since the Cagle's
25   decision came down.
```

1        THE COURT:  All right.  This is what I'm going

2   to do.  I think trying to balance all these interests is

3   just going to create problems, Mr. Mueller, even if you

4   were willing to stipulate as to tolling.  I'm not sure

5   that it's going to be so clear-cut that it's going to

6   completely eliminate the claims anyway.  I don't really

7   know at this point.  But just based upon what I have

8   seen, and having read Anderson, I think that does leave

9   the door open that that's not dispositive of

10  everything.

11        We're going to handle this in a traditional

12  manner, where we do the certification first, and then

13  we'll do the 203(o) summary judgment motions with

14  regard -- in the same way we would do other dispositive

15  motions.  That may -- that may create a little more

16  complication later on, but at the end of the day those

17  claims will be weeded out.  And by the time it gets sent

18  to -- back to where I've got to send them, they'll know

19  in those cases that those claims don't exist or they

20  do.

21        So prepare the joint proposed scheduling order

22  based upon exactly what we've said the last hour and a

23  half and no need to provide an alternative, and there'll

24  be no need to check with your client on whether they

25  will agree to tolling.

1          Two other issues, and then I'll let you bring

2    up anything that we need to bring up.

3          I would like what I'll call master briefs,

4    because they would apply to all the cases, to be filed

5    at some point early on, indicating the parties' position

6    with regard to the legal standard for certification.   In

7    other words -- I mean, you may want to include it in

8    your response -- individual responses with your

9    individual motions, but I'd like to have one brief that

10   doesn't start out arguing the facts but just says this

11   is the legal standard for certification in all of these

12   cases.  And indicate whether your side takes the

13   position that it's different depending upon the circuit

14   or whether you're agreeing that -- what I think you need

15   to do is say, "This is the Eleventh Circuit standard,

16   here it is, and we take the position that this should be

17   applied with regard to certification issues in every

18   case," or, "We take the position that it's different in

19   this circuit; and therefore, this standard should

20   apply."  I really think you can get me that brief within

21   30 days of the filing of the scheduling order, that

22   master brief.

23          And then eventually I'm going to require the

24   same thing with regard to 203(o), but I don't guess you

25   need to file that this early since we've delayed

1    consideration of that.  But I -- so within 30 days of

2    the date that you file the scheduling order, file a

3    brief that just sets forth the certification notice

4    standard and whether it's different from circuit to

5    circuit.

6            MR. SELLERS:  Okay.

7            THE COURT:  Shouldn't be.  It's the same

8    statute.  But the supreme court does occasionally have

9    to resolve conflicts between the different circuits, so

10   it may be different.

11           I suppose, if both of you agreed that the

12   Eleventh Circuit was the better view, then we could

13   consent to that standard even if it's different.  I

14   don't know.  But take a look at that and file a brief on

15   that.  It doesn't need -- don't need any responses or

16   replies.  Just each side file one brief.

17           All right.  Mr. Sellers, is there anything else

18   that we need to take up, first of all, with regard to

19   what needs to be included in the proposed scheduling

20   order?

21           MR. SELLERS:  I don't think so, Your Honor.

22           THE COURT:  All right.  Mr. Mueller?

23           MR. MUELLER:  I don't think so.

24           THE COURT:  Okay.  All right.

25           Any other issues we need to take up today?

```
 1   We've been here two hours and 10 minutes, and I'm sure
 2   the court reporter is tired, but I'm sure if we could
 3   get this done quickly she'd rather go -- as I would --
 4   go ahead and break for good, rather than let you get
 5   reinvigorated during a break and it take longer.
 6           So what else, Mr. Sellers?
 7           MR. SELLERS:  Your Honor, this is merely a
 8   ministerial matter, but I wanted to call to the Court's
 9   attention that there are three motions to intervene that
10   are pending and fully briefed and ready for
11   disposition -- not intending to argue anything -- in the
12   Ackles, the Dobbins, and the Buchanan cases, all of
13   which are -- have been transferred from Alabama.  These
14   are --
15           THE COURT:  Named --
16           MR. SELLERS:  I'm sorry.
17           THE COURT:  Named plaintiffs seeking to
18   intervene?
19           MR. SELLERS:  These are people who were -- had
20   filed consents in the Fox case and are seeking now to
21   intervene in those cases.  In other words, these are
22   cases that were filed, I think, before the Court
23   de-certified the Fox case -- or denied certification of
24   the Fox case, excuse me -- and dismissed the claims of
25   the people -- without prejudice, of the people who had
```

97

```
 1  filed consents.  They are now -- they have sought to
 2  intervene in those cases that were pending involving
 3  those -- the separate cases that were filed.  And those
 4  cases have now been transferred to this court, and I'm
 5  just alerting the Court that those motions for leave to
 6  intervene are pending.
 7              THE COURT:  Tell me the cases again?
 8              MR. SELLERS:  The case names are Ackles,
 9  A-c-k-l-e-s; Dobbins, D-o-b-b-i-n-s; and Buchanan,
10  B-u-c-h-a-n-a-n.
11              THE COURT:  And those are the Alabama cases?
12              MR. SELLERS:  That's correct.
13              THE COURT:  And are --
14              MR. SELLERS:  Fully briefed.
15              THE COURT:  So since they were not parties in
16  those cases, their attorneys would not have been
17  notified of this MDL or --
18              MR. SELLERS:  No.  Their attorneys are
19  actually -- I'm sorry.  Their attorneys are -- have been
20  notified of the MDL.  Their attorneys are in fact here,
21  I believe, but they -- what they seek -- have sought to
22  do is to have these individuals, whose claims were filed
23  in the -- I'm sorry -- in the Fox case, and which were
24  dismissed without prejudice -- those people have sought
25  to intervene in the cases that involve the plants at
```

1   which they had worked, rather than having to file new

2   actions.

3        THE COURT:  So they didn't -- so they were

4   actually -- they were actually consent plaintiffs.

5        MR. SELLERS:  In the Fox case.

6        THE COURT:  And then -- well, why didn't their

7   case -- then they were severed out, having just

8   individual claims.

9        MR. SELLERS:  They were then -- their claims

10  were dismissed without prejudice because certification

11  was denied in the Fox case.  And rather than filing --

12       THE COURT:  Why didn't that happen to the other

13  people in the Fox case?

14       MR. SELLERS:  They sought to opt in as well.

15  I'm sorry --

16       THE COURT:  Oh, they were named plaintiffs in

17  the Fox --

18       MR. SELLERS:  They partici -- I'm sorry.

19       Go ahead.  Why don't you speak to this?

20       MS. WEBBER:  Sorry, Your Honor.

21       As to all the other opt-ins who were dismissed

22  from the Fox case, they have sought to opt in to other

23  cases rather than move to intervene.

24       THE COURT:  Okay.  So the Fox case plaintiffs

25  that are before me were the named plaintiffs, the

```
 1   original named plaintiffs.
 2            MS. WEBBER:  Correct, Your Honor.
 3            THE COURT:  And all the opt-in plaintiffs were
 4   the ones that were dismissed out.
 5            MR. SELLERS:  Correct.
 6            MS. WEBBER:  Correct, Your Honor
 7            THE COURT:  All right.  And so now this opt-in
 8   plaintiff, rather than just choosing to opt in, wants to
 9   be a named plaintiff.
10            MS. WEBBER:  And the reason for the motion to
11   intervene, Your Honor, is because of a case in the
12   Eleventh Circuit that suggested that was -- that
13   intervention was an appropriate step following
14   de-certification and trying to follow what may be
15   controlling law for that case in Alabama.
16            THE COURT:  That's going to prevent all those
17   other opt-ins to file motions to intervene as named
18   plaintiffs.
19            MS. WEBBER:  They certainly could, Your Honor.
20   That's not our intention --
21            THE COURT:  I mean, their rights would be
22   protected --
23            MS. WEBBER:  -- as counsel for those
24   plaintiffs.
25            THE COURT:  Their rights would be protected if
```

1  they had the right to opt in.

2          MS. WEBBER:  As long as an opt-in is on file,

3  the statute of limitations is tolled and their rights

4  are protected.  There was some question in Alabama as to

5  whether the Alabama courts would recognize a second

6  opt-in or whether the intervention was necessary to

7  protect their rights.  And to be as protective as

8  possible of their rights, the motions to intervene were

9  filed, and one of them has already been granted.

10          THE COURT:  Before it was transferred?

11          MS. WEBBER:  Yes, before the transfer.

12          THE COURT:  Well, didn't my original order say

13  any motions in those other cases had to be refiled?  I

14  mean, I'm -- this is not like removal, where I'm just

15  accepting anything that was filed in the state court.

16          MR. SELLERS:  That's correct.  We have to

17  refile them.

18          THE COURT:  All right.  Well, I'm not going

19  to -- as far as I'm concerned, that motion is not

20  pending -- whoever is here for them, that motion is not

21  pending presently and will only be considered by the

22  Court upon the filing of a motion to intervene.  And I

23  don't want to decide something without having studied

24  it, but I'm going to have a hard time concluding that

25  they would have a right to intervene as a matter of

1    right.  I don't think they would because they're

2    protected.  And as far as permissive intervention, I'm

3    likely to be reluctant to grant that because I don't

4    want all these other opt-in plaintiffs that were

5    dismissed out coming in filing interventions.

6         But who is that that's going to be filing that

7    motion or not?  We'll hear it, but you need to file it

8    in -- you need to file it here, if you want to pursue

9    it.

10        Yes, sir, Mr. Mueller.

11        And obviously you'll have -- if there's some

12   motion like that, that's not addressed by our scheduling

13   order, then our local rules will apply, which tells you

14   how much time you've got to respond to certain motions.

15        MR. MUELLER:  It was not related to that.  You

16   had asked me earlier if there was anything else --

17        THE COURT:  Well, let me make sure Mr. Sellers

18   is finished.

19        Any other issues?

20        MR. SELLERS:   No, Your Honor.

21        THE COURT:  All right, Mr. Mueller.

22        MR. MUELLER:  In our proposed schedule, we had

23   obviously proposed a period of 180 days for some initial

24   discovery.  It looks like things are going to proceed a

25   little differently.

1        Because of that, we proposed certain limits on

2   discovery, such as numbers of depositions,

3   interrogatories, and length of depositions.   The

4   question now, I think, becomes should we address this in

5   the filing in two weeks or we should put -- should we

6   put all that off, because it'll get affected by whether

7   the Court certifies some or all of these cases as

8   collective actions.   I mean, it'll change everything

9   about the scope of the discovery.

10        THE COURT:   Well, we can -- I mean, that would

11   be similar to the way we handle Rule 23 class actions,

12   where you do discovery -- certification discovery and

13   then you come back and decide what the schedule is going

14   to be with regard to merits discovery after the

15   certification decision is made.

16        If the parties are in agreement to proceeding

17   in that manner, then just put in the scheduling order

18   that this carries us up through the certification

19   decision, and then within so many days after that -- I

20   want to put some definite deadlines on you.   So I would

21   say within -- within 30 days of the Court's final

22   certification decision, I guess with regard to the last

23   case, the parties shall submit a proposed scheduling

24   order that will govern discovery for the remainder of

25   the case.   But rather than just leaving it wide open,

1   put in the -- put in this order that within 30 days of

2   that last certification end date you'll submit a

3   proposed scheduling order for the rest of it.

4          MR. SELLERS:  That's fine, Your Honor.

5          THE COURT:  Okay.  Anything else?

6          So I'm going to have to enter an order in each

7   case with regard to certification.

8          MR. SELLERS:  I believe that's correct, Your

9   Honor, based on how this is -- how this has been set up

10  at this point.

11         THE COURT:  Have you handled FLSA case in the

12  MDL setting before?

13         MR. SELLERS:  I have.

14         THE COURT:  Okay.

15         MR. SELLERS:  And --

16         THE COURT:  Have you, Mr. Mueller?

17         MR. MUELLER:  Yes, sir.

18         THE COURT:  Okay.  Are we proceeding generally

19  how those other cases have proceeded?

20         MR. MUELLER:  Foundation.

21         MR. SELLERS:  Yes.

22         MR. MUELLER:  Makes an assumption.

23         MR. SELLERS:  In general, yes.

24         THE COURT:  Okay.  Are there any suggested

25  improvements?

1          MR. SELLERS:  No.  I think the Court --

2          THE COURT:  I know Mr. Mueller has one.  He

3  wants to address his summary judgment motion first off.

4          MR. SELLERS:  I mean, I -- to be fair, Your

5  Honor, I think the -- this case is in a -- has some

6  unusual features to it.  And so I think the Court is

7  handling it in a way that we think is consistent with

8  the features of this case.

9          THE COURT:  All right.  Well, how long did it

10  generally take those other cases to work their way

11  through the --

12          MR. MUELLER:  You won't like the answer.

13          THE COURT:  Well, I don't like the -- I don't

14  understand how the -- I mean I -- I shouldn't say.

15          MR. MUELLER:  About --

16          THE COURT:  How did the Northern District of

17  Alabama case take so long to -- just sat there?

18          MR. SELLERS:  Your Honor, it was assigned to

19  four different judges.

20          THE COURT:  Okay.

21          MR. SELLERS:  And it -- we only had two years

22  of discovery in that entire period.  We briefed --

23          THE COURT:  Some view these cases as -- when

24  the ERISA cases come in, they say, "Oh, gosh."  And then

25  next it's the FLSA cases.

1          MR. DOOLITTLE:  There was an agreed period

2     of stay as well waiting on...

3          THE COURT:  Okay.  It doesn't matter at

4     this point.

5          MR. SELLERS:  We don't expect the same kind

6     of circumstances --

7          THE COURT:  Well, we're not -- we're going

8     to move forward.  I like to move things along.  I

9     mean, I typically defer to the lawyers' judgment on

10    things that they can agree on as to how long it

11    takes to get things done, as long as it looks like

12    we're moving at a reasonable pace.  But we certainly

13    want to get this resolved in a fair and efficient

14    manner so it can go back to these other judges who

15    will have to conduct bench trials, or not.

16         MR. SELLERS:  No, they're jury trials, Your

17    Honor.

18         THE COURT:  Did you get a jury trial?

19         MR. SELLERS:  That's -- they're jury

20    trials.

21         THE COURT:  Okay.  Didn't we try -- we

22    tried one of these, I thought, as a bench trial.

23         Are all of them bench trials -- all FLSA

24    cases are bench trials -- I mean are jury trials?

25         MR. SELLERS:  Well, they have -- the

1    parties have the right to demand a jury, and not all

2    parties exercise it, but --

3         THE COURT:  Okay.  I think that's what

4    happened.  We had a milk case involving a big dairy,

5    and the question was whether they -- the real

6    question was whether or not certain of them were

7    exempt as independent contractors, as opposed to

8    hourly employees.  And I don't think we had the

9    benefit of a jury.  They must have opted for a bench

10   trial.

11        Okay.  Nothing else?  Everybody knows their

12   assignment, and we will expect the proposed order

13   back two weeks from today.  Make sure you send it --

14   you e-mail it to Ms. Long in WordPerfect format,

15   because that's our program, and it'll make it easier

16   for us to adjust.  And we'll go from there.

17        MR. SELLERS:  Thank you.

18        THE COURT:  All right.  We're adjourned.

19             (Proceedings concluded)

20

21

22

23

24

25

1                CERTIFICATE OF REPORTER

2              I, Betsy J. Peterson, Official Court
Reporter of the United States District Court, in and

3  for the Middle District of the State of Georgia,
Columbus Division, a Registered Professional

4  Reporter, do hereby CERTIFY that the foregoing
proceedings were reported by me in stenographic

5  shorthand and were thereafter transcribed under my
direction into typewriting; that the foregoing is a

6  full, complete, and true record of said
proceedings.

7

8         This 21st day of NovemberMay, 2007.

9

10                          _____
                           s/Betsy J. Peterson, RPR,CCR

11                           Federal Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Betsy J. Peterson, RPR
Federal Official Court Reporter
P.O. Box 924
Columbus, Georgia  31902-0924