IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DARRYL ANDERSON, et al.,** )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**PERDUE FARMS INCORPORATED,** )<br>)<br>**Defendant.** )<br>) | Case Action No.:<br>1:06-CV-1000-MEF-WC<br>JURY TRIAL DEMANDED |

**DEFENDANT'S NOTICE OF FILING SUPPLEMENTAL AUTHORITY**

Defendant, Perdue Farms Incorporated, ("Defendant" or "Perdue") hereby files this Notice of Filing Supplemental Authority in support of its Motion to Stay Issuance of Court Supervised Notice. Defendant gives Notice of the attached Order granting Defendant's Motion for Summary Judgment decided on March 28, 2008 in *David Alford, Sr. et al.*, *v. Perdue Farms, Inc.*, Civil Action No. 5:07CV87 (M.D. Ga.).

In *Alford*, Plaintiffs alleged the exact same violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. and filed identical Declarations to support their Motion for an Order Permitting Court Supervised Notice as they have filed in this case. In *Alford*, plaintiffs were subject to the identical pay policy and followed precisely the same donning and doffing procedures as they do here. Perdue's facilities in *Alford* and here in *Anderson* are both subject to the Consent Judgment with the United States Department of Labor in 2002 and the same case law that has consistently affirmed Perdue's pay practice of compensating its 1st and 2nd processing employees for time spent donning and doffing specialized departmental gear, but not personal protective equipment, such as hair nets, beard nets, goggles, and ear plugs.

1-WA/2949914.1

The court's order affirms Perdue's position that Plaintiffs are appropriately paid for all compensable activity. That time spent donning and doffing the personal gear at issue, under these circumstances, is preliminary and postliminary under the Portal to Portal Act, 29 U.S.C. § 254. Specifically, the Court found that "[a]s a matter of law, the activities for which Plaintiffs seek compensation [the same activities for which they seek compensation in *Anderson*] were preliminary and postliminary activities not subject to compensation under the FLSA."

Defendant requests this Court take notice of the attached supplemental authority and grant its motion to stay the issuance of Court-Supervised Notice to potential opt-in Plaintiffs, or, reconsider its Order granting Plaintiffs' Motion for an Order Permitting Court Supervised Notice to Employees of Their Opt-in Rights. As Defendant advised in its Opposition to Plaintiffs' Motion for Notice, Defendant intends to file its Motion for Summary Judgment in this case forthwith.

Dated: March 28, 2008                    Respectfully submitted,

***/s/ James J. Kelley***
James J. Kelley (admitted pro hac vice)
D.C. Bar No. 194746
202-739-5095
jkelley@morganlewis.com
Lexer I. Quamie (admitted pro hac vice)
D.C. Bar No. 502908
202-739-5955
lquamie@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
202-739-3001 (fax)

Sandra B. Reiss
Alabama Bar No.  ASB-3650-S80S
**Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.**
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, Alabama 35203
205-328-1900
205-328-6000 (fax)
sandra.reiss@odnss.com

*Counsel for Defendant, Perdue Farms, Incorporated*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the foregoing Notice of Filing of Supplemental Authority has been served upon Plaintiffs' counsel via the electronic filing system on this 28th day of March 2008 via electronic mail on:

Robert J. Camp
The Cochran Firm, P.C.
505 North 20th Street, Suite 825
Birmingham, AL  35203
205-930-6900 (phone)
205-930-6910 (fax)
rcamp@cochranfirm.com

       */s/  Lexer I. Quamie*
       Lexer I. Quamie (admitted pro hac vice)
       D.C. Bar No. 502908
       202-739-5955
       lquamie@morganlewis.com
       **Morgan, Lewis & Bockius LLP**
       1111 Pennsylvania Avenue, N.W.
       Washington, DC  20004
       202-739-3001 (fax)

       *Counsel for Defendant Perdue Farms, Incorporated*

# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| **DAVID ALFORD, SR.,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | Civil Action |
| | : | No. 5:07-cv-87 (CAR) |
| v. | : | |
| | : | |
| **PERDUE FARMS, INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## *ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

This case is before the Court on Defendant's Motion for Summary Judgment. Plaintiffs are hourly-wage employees of Defendant's poultry processing plant in Perry, Georgia, who allege that Defendant failed to compensate them for all work as required by the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201, *et seq.* Plaintiffs seek to bring a collective action on behalf of themselves and other similarly situated employees. Upon review of the arguments of counsel, the relevant legal authorities, and the evidentiary materials on file with the Court, the Court finds that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment (Doc. 40) is hereby **GRANTED**. In light of this Order granting summary judgment in favor of Defendant, Plaintiff's Motion for an Order Permitting Court-supervised Notice to Employees (Doc. 29) is **DENIED**.

Plaintiffs' sole remaining claim in this case is that Defendant "fails to pay Plaintiffs for the donning and doffing of personal protective equipment such as hair nets, beard nets, goggles, ear plugs, boots, or bump caps . . . prior to the start and end of their workshift, and during break periods." (Pls' Resp. in Opposition to Mot. for Summary Judgment (Doc. 45), p. 2). Summary

1

judgment is warranted as to this claim because the activities in question are "preliminary" or "postliminary" activities that are deemed non-compensable under the Portal-to-Portal Act of 1947. 29 U.S.C. § 254. Even if these activities could be characterized as integral and indispensable to Plaintiffs' principal activities, they are *de minimis* and not entitled to additional compensation.

It is undisputed that employees at the Perry plant are compensated for the donning and doffing of specialized gear unique to the poultry industry and to their particular jobs. This gear includes gloves, hand and arm guards, aprons and smocks, and cutting equipment. Under Defendant's compensation system, employees obtain this gear from their department after they have clocked in for work. Thus, they are compensated for time they spend donning the gear and for time walking from the dressing area to their work stations. They remain "on the clock" while they remove these items before break periods and at the end of the work day. Although they must put on the specialized gear on site and during compensated working hours, the employees are required to be wearing their hair and beard nets, ear plugs, boots, and caps prior to beginning work. Employees may take these items home with them and wear them to work or store them in lockers at the plant and put them on before clocking in.

Defendant's compensation system was developed in cooperation with the United States Department of Labor ("the Department") and was incorporated into a 2002 Consent Judgment in settlement of litigation filed by the Department in the United States District Court for the Middle District of Tennessee. This Consent Judgment ended the practice known as "line time," which was the prevailing practice in the poultry industry at the time. Under the "line time" system, employees were only paid from the time that the first chicken arrived at their work station, and were not compensated for time spent donning and doffing specialized gear, walking to the work stations, or

waiting for the production line to start. The Consent Judgment provided that hourly employees at Defendant's plants would be "paid for all hours worked from the start of [their] first principal activity of the work day until the end of the last principal activity of [their] work day, with the exception of any time taken for bona fide meal breaks or bona fide off-duty time." (Consent Judgment, Doc. 42, Attachment 3, ¶ 2). A principal activity is defined in the Consent Judgment as

> any activity that is integral and indispensable to the employee's work and includes such activities as the donning, doffing, and sanitizing of any clothing or equipment (**excluding such items that the employee is free to put on at home, such as hair nets, bump caps, ear plugs, glasses, and footwear**) which is required by law, the employer, or the nature of the work, and not merely a convenience to the employee and not directly related to the specific work.

Id. at ¶ 3 (emphasis added). Thus, the Department differentiated between the generic personal gear that employees kept themselves and the specialized equipment that Defendant maintained at the plant. Donning, doffing, and sanitizing the specialized clothing and equipment was considered to be a part of the work day. Donning and doffing the generic gear was not.

Plaintiffs' counsel apparently were unaware of the terms of the Consent Judgment, or of the actual compensation system at their clients' workplace, when they filed the initial Complaint. In the first Complaint, Plaintiffs alleged that Defendant maintained the line time system and only paid employees for time that they were on the production assembly line or in production areas. The Complaint further alleged that employees were not compensated for the time spent donning and doffing their gear; for time walking from the dressing area to the work station and back; for time spent waiting to return required supplies, tools, and other equipment; or for time spent waiting at the production line prior to the line start-up. After receiving notice from Defendant's counsel as to the terms of the Consent Judgment, and after finding that Defendant was in compliance with the Consent

3

Judgment, Plaintiffs withdrew all claims except for their claim that they are not compensated for donning and doffing their personal protective equipment.

A review of the law regarding compensation in the poultry industry shows that the Department of Labor was correct in distinguishing non-unique, personal gear that employees may put on at home from unique, specialized equipment that employees must put on and take off on site. This case falls under the purview of the 1947 Portal-to-Portal Act, in which Congress provided that employers would not be liable to provide compensation for activities which are "preliminary to or postliminary to" the principal activity or activities which employees are employed to perform. 29 U.S.C. § 254(a)(2). Applying the Portal-to-Portal Act, the Supreme Court has determined that activities performed before or after an employee's regular work shift are compensable if they are "an integral and indispensable part of the principal activities for which covered workman are employed." Steiner v. Mitchell, 350 U.S. 247, 256 (1956). Consistent with this law, the Department correctly determined that Defendant was not liable to compensate employees for time spent donning and doffing such generic items as hair nets, caps, ear plugs, glasses, and footwear.

Ordinarily, such activities as changing clothes and showering are preliminary or postliminary actions that are not compensable. Nearly every occupation requires some attention to dress and grooming, and this is normally done on an employee's own time. Some employees, such as office workers or food-service workers, find it necessary to wash before work. Other employees, such as construction workers or landscapers, might find it more sensible to wash after work. A lawyer, banker, or bureaucrat might be required to spend a few moments each morning tying a tie around his neck. A bus driver might have to put on a uniform. A retail clerk might have to pin on a name tag. The regulations promulgated by the Secretary of Labor recognize that these activities are not

integral to work activities. See 29 C.F.R. § 790.7(g). Although they may be required by or ultimately for the benefit of the employer, these activities are only preliminary to the principal activities for which the employees are engaged.

In certain situations, however, the act of washing or of dressing and undressing may be so integral and indispensable as to be part of the employee's principal activities. In Steiner, for example, the plaintiff employees worked at a battery plant, where they were exposed to various toxic chemicals during the workday. To protect the workers, the company provided a locker room on the premises and required the employees to change into company-provided work clothes in the morning and to remove their work clothes and shower before leaving at the end of the day. Without any significant discussion, the Court found that this changing and showering was compensable because "it would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees." Id., 350 U.S. at 256.

The wearing of hair nets, ear plugs, caps, and steel-toed shoes, for which Plaintiffs in this case seek compensation, is more comparable to the normal preliminary washing and dressing that all employees must do before reporting to work. Plaintiffs have presented no evidence or reason to believe that their steel-toed shoes are any more difficult to put on than any other pair of shoes, or that a "bump cap" is more difficult to put on than any other type of cap. Ear plugs and a hair net are no more difficult to put on than a tie or a name tag. Although many employees chose to put on their steel-toed shoes or hair nets in a locker room at the plant, they were allowed to put them on or take them off at home, in their cars, or elsewhere. As such, these generic items are distinguishable from the more specialized protective gear and sanitary gear that was kept at the plant – the plastic aprons,

5

the protective gloves, the arm and leg guards, the cutting equipment. Employees were required to put on and take off these items on premises so that they could be properly maintained. Employees were also fully compensated for the time they spent putting on and taking off this gear.

Two circuit courts of appeals have considered the donning and doffing of similar generic personal gear in the context of the meat processing industry, and both have found that time spent donning and doffing such equipment is non-compensable. In Reich v. IBP, Inc., 38 F.3d 1123 (10th Cir. 1994), the Tenth Circuit determined that putting on such gear was not work and was therefore not subject to compensation. The court differentiated the generic items – safety glasses, ear plugs, hard hats, and safety shoes – from the more specialized protective gear required for the employees who worked with cutting equipment, including mesh aprons, arm guards, protective gloves, and shin guards. The court found that donning and doffing the specialized gear was compensable work, but that the time spent putting on or taking off the generic items was comparable to the time any other employee would spend getting dressed before work or undressed after work:

> Requiring employees to show up at their workstations with such standard equipment is no different from having a baseball player show up in uniform, a businessperson with a suit and tie, or a judge with a robe. It is simply a prerequisite for the job, and is purely preliminary in nature.

Id. at 1126 n.1. Because putting on these items was a preliminary activity, it was not work that required compensation under the FLSA.

Although Reich has not been overruled and remains good law, it must be noted that the opinion has been criticized for its reasoning that time spent donning and doffing the generic items was not "work," given the broad definition of "work" under the FLSA. In Ballaris v. Wacker Siltronic Corp., 370 F.3d 901 (9th Cir. 2004), the Ninth Circuit held that employees of a silicon wafer manufacturing plant were entitled to compensation for time spent donning and doffing sterile

6

uniforms at the beginning and end of their work shifts. The court compared Reich to its own decision in Alvarez v. IBP, Inc., 339 F.3d 894 (9th Cir. 2003) and noted that "work" under the FLSA need not require exertion, and that changing clothes could be compensable even if it was "non-exertional." Ballaris, 370 F.3d at 910-911. The court therefore rejected Reich's reasoning based on the definition of work. Although the court in Ballaris was correct to observe this flaw in Reich's reasoning, for purposes of this case Reich remains instructive for its finding that the activities of donning and doffing the generic protective gear were comparable to normal dressing and washing and its holding that they were inherently preliminary or postliminary to the principal work activity.

Ballaris itself is readily distinguishable from the present case. The court in that case emphasized several times that the employer's requirement that employees change clothes *on the employer's premises* made the act of changing clothes compensable work. There is a clear implication that the analysis would be different if the employees were allowed to take the clothing home with them and don it at home. The court also noted evidence that the process of changing occupied as much as twenty to thirty minutes each day. In that sense, Ballaris is distinguishable not only from this case, but also from the Ninth Circuit's earlier decision in Alvarez.

In Alvarez, under facts very similar to the facts in this case, the Ninth Circuit held that there was no liability to compensate for donning and doffing the generic personal protective gear that Plaintiffs in this case were required to wear to work. The court affirmed a district court decision that denied recovery for the donning and doffing of hard hats, ear plugs, safety glasses, boots, or hair nets. In affirming the district court's decision, the Ninth Circuit "endorsed the distinction between the burdensome donning and doffing of elaborate protective gear, on the one hand, and the time spent donning and doffing nonunique gear such as hardhats and safety goggles, on the other." IBP,

7

Inc. v. Alvarez, 546 U.S. 21, 32 (2005). The court then found that the time spent donning and doffing the non-unique gear was *de minimis*. Alvarez, 339 F.3d at 904. Although the Ninth Circuit found that wearing such gear was integral and indispensable to the employees' work, it observed that the donning and doffing of this gear occupied "only a few seconds or minutes of work beyond the scheduled working hours." Id. (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692 (1946)). As such, neither FLSA policy nor the "actualities" of the employees' working conditions justified compensation for the time spent performing these activities.

The Alvarez court further noted that its decision was consistent with the observation in Reich that the time spent donning and doffing non-unique protective gear, though essential to the job and required by the employer, was "at once so insubstantial and so difficult to monitor that it is '*de minimis* as a matter of law.'" Alvarez, 339 F.3d at 904 (quoting Reich, 38 F.3d at 1126 n. 1). In Reich, the Tenth Circuit had reasoned that

> The placement of a pair of safety glasses, a pair of earplugs and a hard hat into or onto the appropriate location on the head takes all of a few seconds and requires little or no concentration. Such items can easily be carried or worn to and from work and can be placed, removed, or replaced while on the move or while one's attention is focused on other things. Similarly, safety shoes can be worn to and from work and require little or no additional effort to put on as compared to most other shoes.

38 F.3d at 1126. These actions require little effort beyond that required in the mere act of getting dressed in the morning, and therefore do not require the employer to take additional steps to monitor their performance and provide compensation for them. Alvarez remains good law. Alvarez was affirmed by the Supreme Court in IBP, Inc. v. Alvarez, 546 U.S. 21 (2005).[1]

---

[1] The Supreme Court's decision in IBP, Inc. v. Alvarez concerned only the time the meat processing plant employees spent walking from the locker rooms to the production line after donning their special gear and the time they spent waiting to don and doff their gear at the start and end of the work day. Although the unanimous opinion refers approvingly to the district court's finding that there was no liability to compensate for the donning and doffing of hard hats, ear plugs, safety glasses, boots or hairnets, that aspect of the lower courts' decisions was not presented

8

In addition to the two cases above that specifically concern meat processing employees, the Second Circuit has recently held that the donning and doffing of similar generic safety equipment by employees of a nuclear power plant was non-compensable. In Gorman v. Consolidated Edison Corp., 488 F.3d 586 (2nd Cir. 2007), the plaintiffs sought compensation for time spent donning and doffing helmets, safety glasses, and steel-toed boots. The court conceded that such gear might have been indispensable to the employees' work, in that it was required by the employer or by government regulations, but found that the donning and doffing of such gear was not integral to the employees' work. The court contrasted the uncompensated wearing of generic safety gear with the complete changing and showering required by the employer in Steiner. It also contrasted the wearing of specialized gear required for employees who worked in the nuclear containment area, for which those employees were compensated. The court reasoned that procedures for wearing this specialized gear were integral to the act of working in the hazardous environment of the containment area. By contrast, the court found that "the donning and doffing of . . . generic protective gear [such as a helmet, safety glasses, and steel-toed boots] is not different in kind from 'changing clothes and showering under normal conditions,' which under Steiner are not covered by the FLSA." Gorman, 488 F.3d at 594.

Plaintiffs' reliance on the decision in DeAscencio v. Tyson Food, Inc., 500 F.3d 361 (3rd Cir. 2007), is misplaced. Although DeAscencio, like Ballaris, is critical of Reich, its actual holding has little relevance to this case. The Third Circuit in that case held that the district court had erred in giving a jury charge on the definition of work that required a finding of mental or physical exertion. The Court's decision in this case does not rely on a narrow definition of work, such as the district

---

to the Supreme Court for review.

9

court adopted in the case underlying DeAscencio. An activity that meets even the broad definition of work applied in DeAcencio and Ballaris may yet be non-compensable if it is a preliminary or postliminary activity excluded by the Portal-to-Portal Act or if it is *de minimis*.

Furthermore, on it facts DeAscencio is distinguishable from this case and from Alvarez and Reich. In DeAscencio, as in Ballaris, the employees were required to do all donning and doffing on premises, including both the generic and the specialized gear. The defendant's internal operating requirements provided that "a worker may not keep the gear at home and wear it to the plant nor can a worker wear the gear home." DeAscencio, 500 F.3d at 364 n.3. Accordingly, the court did not differentiate between the two different types of gear, but considered them all in the aggregate. In this case, it is not possible to consider the generic and the specialized gear in the aggregate, as the Plaintiffs were required to be wearing their personal, generic gear when they arrived at work, and were required to don and doff the specialized gear on the premises, during work time.

Gorman, Alvarez, and Steiner together display a sound judicial instinct. At their heart, these decisions recognize that the simple act of putting on a pair of boots, a hair net, a cap, and ear plugs is difficult to distinguish from the act of "changing clothes and showering under normal conditions," an act that is by definition preliminary or postliminary to work activities. 29 C.F.R. § 790.7(g). It is something that the employee can do at his home, in his car, or whenever suits his convenience. It is a task that adds little, if any, time and effort to the ordinary act of washing and getting dressed that every person undertakes every day. Thus, whether it is characterized as not integral to the principal activities (as in Gorman) or as not inherently work (as in Reich) or as *de minimis* (as in all three cases) the donning and doffing of such gear is a perfect example of the sort of preliminary or postliminary activity excluded from FLSA's coverage by the Portal-to-Portal Act.

There is no genuine issue of material fact as to the nature of the activities performed by the Plaintiffs in donning and doffing their personal protective equipment before and after work each day. As a matter of law, the activities for which Plaintiffs seek compensation were preliminary and postliminary activities not subject to compensation under the FLSA. To the extent that they were otherwise compensable activities, they are *de minimis* in nature. Accordingly, Defendant is entitled to summary judgment.

**SO ORDERED**, this 28th day of March, 2008.


        S/ C. Ashley Royal
        C. ASHLEY ROYAL
        UNITED STATES DISTRICT JUDGE


chw