IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DARRYL ANDERSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case Action No.: |
| v. ) | 1:06-CV-1000-MEF-WC |
| ) | JURY TRIAL DEMANDED |
| PERDUE FARMS INCORPORATED, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs have not shown that there is a genuine issue as to any material fact submitted by Defendant Perdue Farms, Inc.'s ("Defendant" or "Perdue") in support of its Motion for Summary Judgment. Defendant's Motion for Summary Judgment should be granted and Plaintiffs' Amended Complaint should be dismissed with prejudice.

**I.   INTRODUCTION**

In an effort to avoid summary judgment, Plaintiffs have attempted to over complicate what is a very basic donning and doffing case. Indeed, unlike the collection of donning and doffing cases in poultry, meatpacking, and other industries which center on the more complicated issues of unique, job-specific protective gear, this case only addresses the compensability of donning and doffing lightweight and practically generic "non-unique" personal items. In their sweeping and repetitive response, Plaintiffs fail to demonstrate that Perdue's pay practices do not compensate the poultry-processing employees for all compensable work under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. Neither Defendant nor Plaintiffs dispute that Plaintiffs' personal protective equipment is required by Perdue,

1

government regulation, and job necessity. The only question before the Court is the legal issue of the compensability of donning and doffing Plaintiffs' personal equipment of bump caps, safety glasses, slip-resistant footwear, and hair or beard nets. That question is appropriate for disposition at this summary judgment stage, because it is a simple question of law to be resolved by this Court.

Plaintiffs' first principal activity for the work day is donning their unique department-specific gear required for their specific jobs, which may include smocks, gloves, and hand or arm guards. (Def.'s Stmt. Facts ¶¶ 24–26). There is no dispute of fact that they are compensated for donning these items and the production-line work that follows. (Id.) Perdue's pay practices are wholly consistent with the controlling case law, the Department of Labor regulations, and Advice Memoranda that have determined repeatedly that time spent donning personal items such as work boots, hair and beard nets, and ear plugs, which employees may take home, and don on their own time is not compensable under the FLSA. (Def.'s Stmt. Facts ¶¶ 20–21).

Plaintiffs seek to expand the Supreme Court's decision in <u>IBP, Inc. v. Alvarez</u>, to support their claims here and to invalidate the DOL's endorsement and approval of the DOL's pay practices but they go too far. As several courts have observed, <u>IBP, Inc. v. Alvarez</u> did not change the law that preceded it and, for purposes of this case, there has been no change in the law since the consent decree was entered, specifically that an employer is obliged to pay hourly employees commencing with the first principal activity of the workday. Perdue is not as bold as Plaintiffs, to dismiss the precedents that control this case, including the Department of Labor, this circuit and other courts of appeals, and the United States Supreme Court.

Finally, even if this Court should deem Plaintiffs' preliminary activities compensable, Plaintiffs create no genuine issue of material fact with respect to the minimal amount of time

spent on them. The insignificant amount of time Plaintiffs spend donning and doffing their general protective equipment render the activities *de minimis* and noncompensable as a matter of law.

## II. ARGUMENT

### A. The Supreme Court in *Alvarez* Did Not Opine On Plaintiffs' General Protective Gear And Thus It Is Not Dispositive On Whether Donning And Doffing Such Gear Constitutes A Compensable Principal Activity.

Despite Plaintiffs' attempts to argue the contrary, IBP, Inc. v. Alvarez, 546 U.S. 21 (2005) did not change the legal landscape regarding donning and doffing. Instead, Alvarez resolved a dispute under the Portal-to-Portal Act, 29 U.S.C. § 254(a) without making any change in the law which preceded it. The Court did not rule that donning and doffing of non-unique personal protective gear is integral and indispensable. The Court stated that the issues posited in the case were: (1) whether employees would be paid for time spent walking between the place where they don and doff protective equipment and their job site; and (2) whether time spent waiting to remove gear at the end of the workday was compensable. 546 U.S. at 25. The Court held that employees must be compensated for any walking time that occurs *after* their first principal activity. Id. at 37. The Court also held employers are not required to pay employees for time spent on any task that precedes their first principal activity, nor are they required to pay for time spent waiting to receive protective gear before the work shift begins. Id. at 40–41. The Court's holding confirmed that "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity'" under the Portal-to-Portal Act. Id. at 37. Specifically, the Court was not presented with and did not decide the compensability of Plaintiffs' personal protective gear at issue in this case.

Courts both before and after IBP, Inc. v. Alvarez, however, have held the donning and doffing of lightweight general protective equipment by poultry-processing employees is not

integral and indispensable to the principal activities of poultry processors. The Ninth Circuit Court of Appeals in Alvarez v. IBP, Inc., 339 F.3d 894 (9th Cir. 2003), which was affirmed by the Supreme Court endorsed the distinction between the burdensome donning and doffing of job-specific unique gear as compensable, as opposed to the time spent donning and doffing personal equipment such as hardhats and safety goggles as noncompensable under the FLSA. Id. at 904.

The Second Circuit in Gorman v. Consol. Edison Corp., 488 F.3d 586 (2d Cir. 2007), cert. denied, 76 U.S.L.W. 3644 (U.S. June 9, 2008) also concluded that time spent "donning and doffing" personal equipment was not compensable. Id. at 594–95. The Second Circuit held although the plaintiffs' pre- and post-work activities were "indispensable" or even "necessary" to do their jobs, they are not "integral" to the principal activities for which they were hired. Id. at 591. Thus, even in the highly regulated, potentially unsafe environment of a nuclear power plant, and the significance of such items to plant safety, donning personal protective equipment, such as a hard hat and safety goggles was not "integral" to performance of the specific job for which the employees were employed, and therefore not compensable. Id. at 595. The Second Circuit's holding in Gorman is neither "bizarre," as stated by a district court in Wisconsin, nor should it be subject to ridicule as such by Plaintiffs in this case.[1] The Tenth Circuit's decision in Reich v. IBP, Inc., is also instructive here, where the Tenth Circuit determined that donning, removing, and depositing for laundering standard safety equipment and sanitary outer garments

---

[1] The Western District of Wisconsin's decision in Spoerle v. Kraft Foods Global, Inc., 527 F. Supp. 2d 860 (W.D. Wis. 2007) is not persuasive, as it is not grounded in the Supreme Court's analysis in Alvarez. In Spoerle, the court concedes that in Alvarez, the issue of whether pre- and post-shift donning and doffing were principal activities was not before the Supreme Court, yet concludes that the Court must have concluded that they were somehow principal activities. Id. at 865. Moreover, Spoerle is unconvincing in light of the Second Circuit's well-reasoned decision in Gorman.

1-WA/2997301.1

was not work and was therefore not subject to compensation. 38 F.3d 1123, 1125–26 (10th Cir. 1994).[2]

Following Reich, several federal courts have ruled that clothes changing and washing in meat processing plants is not work under the FLSA.  See Pressley Farms v. Sanderson Farms, Inc., No. Civ. A. H-00-420, 2001 WL 850017, at *2–3 (S.D. Tex. Apr. 23, 2001) aff'd, 33 Fed. Appx. 705 (5th Cir. 2002) (holding the time spent by employees donning, doffing, and cleaning their smocks, aprons, cotton and/or rubber gloves, rubber sleeves, hairnet, and earplugs was not compensable work under the FLSA); see also Pilgrim's Pride Corp., 147 F. Supp. 2d at 563 (holding that donning and doffing non-unique personal gear qualified as preliminary and postliminary activities for which employees were not entitled to compensation).  Other federal courts have reached the same result for similar clothing in other jobs.  See Pirant v. U.S. Postal Serv., No. 03 C 9383, 2006 WL 3590072, at *7 (N.D. Ill. Dec. 7, 2006) (stating employee's time spent donning and doffing ordinary gloves and an apron was not compensable); Reich v. Oscar Mayer Foods Corp., No. 4:93CV204, 1995 WL 1765643, at *2 (E.D. Tex. Mar. 2, 1995) (holding that time spent by employees changing into their uniforms or putting on safety glasses, earplugs or bumphats is preliminary and postliminary and employees are not entitled to compensation under the FLSA.).

Plaintiffs also misstate the holding in the Third Circuit's recent decision in De Asencio v. Tyson Foods, Inc., 500 F.3d 361 (3d Cir. 2007), cert. denied, 76 U.S.L.W 3644 (U.S. June 9, 2008) (No. 07-1014).  De Asencio interpreted Alvarez's treatment of walking and waiting time under the Portal-to-Portal Act.  Id. at 370.  It held that it was error for a jury to be instructed to consider the relative degree of effort or exertion in determining whether donning and doffing

---

[2]  Although Reich has been criticized for its reasoning that time spent donning and doffing the generic items was not "work," given the broad definition of "work" under the FLSA, it has not been overruled and remains good law.

constitutes "work" under the Act. 500 F.3d at 370–71. Defendants do not contest that <u>De Asencio</u> found that the activity in that case constituted "work," but Plaintiffs cannot contest that the court also ruled that "preliminary or postliminary work is non-compensable under the Portal-to-Portal Act, if the work is not 'integral and indispensable' to [the] 'principal acitivit[ies]' of a given job[.]" <u>Id.</u> at 373 (citing <u>IBP, Inc. v. Alvarez</u>, 546 U.S. at 37). The Third Circuit in <u>De Asencio</u> did not opine on the question of whether the donning of general protective equipment was integral and indispensable to the principal activities of poultry-processing employees. The Supreme Court's recent denials of certiorari in both <u>De Asencio v. Tyson Foods, Inc.</u>, 500 F.3d 361 (3d Cir. 2007), <u>cert. denied</u>, 76 U.S.L.W. 3644 (U.S. June 9, 2008) (No. 07-1014) and <u>Gorman v. Consol. Edison Corp.</u>, 488 F.3d 586 (2d Cir. 2007), <u>cert. denied</u>, 76 U.S.L.W. 3644 (U.S. June 9, 2008) confirm there is no conflict among the circuits to resolve regarding the compensability of personal protective gear.

> **B.   Donning and Doffing Plaintiffs' Hair Nets, Beard Nets, Ear Plugs, Bump Caps, and Slip Resistant Footwear Is Not Integral And Indispensable To Plaintiffs' Principal Work Activities.**
>
>   **1.   The Regulations And Company Policy Requiring Plaintiffs To Wear Items Do Not Render Donning And Doffing Plaintiffs' Personal Equipment Compensable.**

Plaintiffs insist that the requirement to wear personal protective gear on the processing floor automatically renders donning such gear compensable as a matter of law. It does not.

Plaintiffs' per se argument that because these general protective items are required by law and Defendant they are compensable, has been rejected by numerous courts. <u>Gorman</u>, 488 F.3d at 594–95 (2d Cir. 2007) ("Donning and doffing of generic protective gear is not rendered integral by being required by the employer or by government regulation" and finding a helmet, safety glasses, and boots may be indispensable without being integral); <u>Anderson v. Pilgrim's Pride, Corp.</u>, 147 F. Supp. 2d 559, 563 (E.D. Tex. 2001), <u>aff'd</u>, 44 Fed. Appx. 652 (5th Cir.

2002) (rejecting employees' contention that the time spent changing and sanitizing clothing should be compensable because the employer and the United States Drug Administration ("USDA") require sanitary clothing be worn); Pressley v. Sanderson Farms, Inc., No. Civ.A. H-00-420, 2001 WL 850017, at *3 n.3 (S.D. Tex. Apr. 23, 2001) (stating USDA requirements do not mandate a finding that the time spent donning and doffing and cleaning equipment is indispensable and integral).

**2.     Donning And Doffing Of Plaintiffs' Personal Protective Gear Is Not Required To Take Place On Perdue's Premises.**

The nature of Plaintiffs' work does not render the donning and doffing of their personal protective gear compensable simply because some Plaintiffs choose not to take their gear home. Donning and doffing of required gear is encompassed by the continuous workday regulation only when the employer or the nature of the job mandates that it take place on the employer's premises. (See Def.'s Mem. Ex. H, Wage and Hour Adv. Mem. No. 2006-2, at 2–3). The Department of Labor, following Alvarez, has stated, "[i]t is our longstanding position that if employees have the option and the ability to change into required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant." Id. It is undisputed that Perdue does not require its poultry-processing employees to don personal protective items on premises. Plaintiffs cannot create a dispute of material fact with affidavits that contend they would not wear their personal protective gear from their house because they would "look foolish." (See, e.g., Pls.' Resp. at Ex. 5, Brackins Decl. ¶ 36).

It is undisputed that Defendant gives its employees the option to take these items home or store them in a company-provided locker. (Def. Stmt. Facts ¶ 45). Plaintiffs admit to choosing when and where they don these items as long as they do so before swiping in at their assigned Kronos time clocks. Plaintiffs cannot escape or "muddy" this simple fact by contending in their

7

affidavits that they do not "really" have the option to wear these items from home. (Pls. Br. at 32). Plaintiffs admit to putting on the personal protective gear before swiping in at the location of their choosing. Plaintiffs themselves have therefore confirmed that the donning and doffing of their general protective gear is not required to take place on Perdue's premises.

The poultry-processing employees' ability to don and doff their personal equipment at home, is an important distinction because the poultry-processing employees are not constrained from donning and doffing the same items at work. Case law is clear that where employees have the option and ability to change into and out of required gear at home, the activity is not compensable even if the employees choose to don and doff on the employer's premises. See, e.g., Abbe v. City of San Diego, Nos. 05cv1629 and 06cv0538, 2007 WL 4146696, at *6 (S.D. Cal. Nov. 9, 2007) (denying motion for summary judgment where employees put on required gear at home, and neither law nor workplace policy mandated that employees dress at work); Bagrowski v. Maryland Port Auth., 845 F. Supp. 1116, 1121 n.6 (D. Md. 1994) (noting that police officers not entitled to compensation under FLSA for time spent donning and doffing uniforms and required gear at work where they had the option to get dressed and undressed at home); see also Def.'s Mem. Ex. H, Wage and Hour Adv. Mem. No. 2006-2, at 2–3. This situation is distinct from Steiner v. Mitchell, 350 U.S. 247 (1956) where employees were required by state law to dress and shower at work because of the caustic and toxic materials in the battery plant. Id. at 247.

This Court should not be persuaded or misled by the court's decision in Lemmon v. City of San Leandro, 538 F. Supp. 2d 1200 (N.D. Cal. 2007), which held that police officers are entitled to compensation for time they spent donning and doffing unique work clothing and protective gear. Lemmon is not in line with Ninth Circuit precedent and is not binding on this

Court. It is not even consistent with decisions of other district courts in that circuit. See Bamone v. City of Mesa, No. 06-1860, 2004 U.S. Dist. LEXIS 31121 (D. Ariz. Apr. 14, 2008) (donning and doffing of police uniforms and protective gear is not compensable work under the FLSA where neither the law nor the police department required that the officers change at the station or the reporting location); Abbe, 2007 WL 4146696, at *6 (stating that an employee must only be compensated for donning and doffing which by law, policy of the employer, or nature or the work must occur on the employer's premises). These Plaintiffs are not required to don or doff their general protective gear on Perdue's premises and cannot create a genuine issue in dispute by trying to complicate this undisputed fact.

    **C.**    **Plaintiffs' Minimal Time Spent Passing Through Security Is Not A Compensable Principal Activity.**

Plaintiffs have proffered Affidavits which stated that they cannot enter the plant without going through security. (Pls.' Br. at 7). Plaintiffs state they must wait to be checked in *if* they forget their badge. Defendant does not dispute that if Plaintiffs are unable to display proof of employment with Perdue, proper safety procedure is to have the guard receive authorization to grant the associate's entrance. (Pls.' Br. at Ex. 6). However, Plaintiffs' arguments that they should be compensated for passing through security fly in the face of the Eleventh Circuit's opinion in Bonilla v. Baker Concrete Construction, Inc., which held that uniform security clearance is not integral and indispensable. 487 F.3d 1340, 1344 (11th Cir. 2007). See also Gorman, 488 F.3d at 593 (holding that security procedures are necessary but not integral to principal work activities and are modern paradigms of the preliminary and postliminary activities described in the Portal-to-Portal Act). The few seconds that Plaintiffs spend walking past the security gate waving their employee identification cannot qualify as an activity for which Plaintiffs must be compensated.

**D.      Plaintiffs Spend No Compensable Time Walking Through Sanitizing Foam.**

No party disputes that Plaintiffs are required to sanitize their slip-resistant footwear before entering the first and second-processing process areas but it is important for the Court to understand that the sanitizing process adds <u>no</u> time to an employee's work day, either before, during, or after the work shift. An employee sanitizes his/her footwear by simply walking through sanitizing foam when entering or exiting the processing areas. In fact, Plaintiffs do not stop, slow down, or interrupt the flow of traffic when they walk on and through the sanitizing stations. <u>See</u> Ex. A, Byrd Decl. ¶ 6. Plaintiffs' walk through the sanitizing solution cannot be compared to cleaning of equipment for which plaintiffs were not compensated in <u>Fox v. Tyson Foods, Inc.</u>, No. CV-99-BE-1612-M, 2002 WL 32987224 (N.D. Ala. Feb. 4, 2002). In <u>Fox</u>, employees were required to wash their aprons and gloves in a sanitary solution before their compensable shift began. <u>Id.</u> at *4. The issue of walking through a sanitizing station for slip-resistant footwear was not before the court in <u>Fox</u>. Here, Plaintiffs are compensated for sanitizing their aprons and gloves, and do not spend any compensable time walking through sanitizing foam.

It is not disputed that Perdue compensates Plaintiffs for time spent sanitizing their equipment and themselves after they have swiped in for their work shift (Def.'s Stmt. Facts ¶ 39). <u>See</u> <u>Cherup v. Pittsburgh Plate Glass Co.</u>, 350 F. Supp. 386, 293 (N.D. W. La) (holding that showering and changing clothes, which was accomplished near the end of the shift, was on company time and no additional compensation was due).

**E.      Plaintiffs Are Not Entitled To Compensation During Their Two Meal Periods.**

Plaintiffs raise no genuine issue of material fact as to break times because it is undisputed that all compensable donning, doffing, and sanitizing activity is done on the clock before

Plaintiffs swipe out for their thirty-minute unpaid meal break and after swiping in from their thirty-minute unpaid meal break. (See Def.'s Stmt. Facts ¶¶ 30–31). As Plaintiffs acknowledge, a "bona fide" period of thirty minutes or more to enable employees to eat a meal, and during which the employees are completely relieved from duty is not work time. (Pls.' Br. at 41 (citing 29 C.F.R. § 785.19)). The standard for determining whether Plaintiffs' meal periods are "bona fide meal periods" in the Eleventh Circuit is set forth in Kohleim v. Glynn County, 915 F.2d 1473, 1477 (11th Cir. 1990) ("[T]he essential consideration in determining whether a meal period is a bona fide meal period or a compensable rest period is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal"). There is no requirement that an employee actually eat a meal during the time provided. Instead, the Eleventh Circuit instructed in Kohleim, that "what matters in meal period cases is whether the employees are subject to real limitations on their person freedom which inure to the benefit of their employer." Id. at 1477 n.19. Both of Plaintiffs' breaks are provided for the purpose of providing employees the opportunity to eat a meal at regularly scheduled intervals. Plaintiffs have no "affirmative responsibilities" that they are required to perform during either rest period. During Plaintiffs' meal break they are not *required* to do anything or spend their break period in any particular place or in any particular activity.

Even for those employees who choose to doff their personal protective outerwear at the beginning of the meal period and then don the equipment at the end of break, this simply does not meet the burden of compensable activity Id. (noting Eleventh Circuit requires a higher level of responsibility during a rest break before finding that employees retained "significant affirmative responsibilities" during their meal breaks); see also Chao v. Tyson Foods, Inc., 2008 WL 2020323 (N.D. Ala. Jan. 22, 2008) ("[s]hort of donning, doffing, and washing their

protective gear Defendant's employees are free to spend their meal periods as they wish. They are "completely relieved from duty" as that standard is applied in this circuit, thereby satisfying the requirements of a "bona fide meal period" under § 785.19.").

Plaintiffs' walk and wait times after the commencement of their breaks do not constitute compensable activities. 29 C.F.R. § 790.8(c) ("activities such as checking in and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities."); see also Anderson v. Pilgrim's Pride, Corp., 147 F. Supp. 2d 559, 562 n.12 (E.D. Tex. 2001), aff'd, 44 Fed. Appx. 652 (5th Cir. 2002) ("The Court also concludes that the 'walk time' to an employee's work station is not compensable under the Portal-to-Portal Act"). It is undisputed that Plaintiffs may use their meal break times any way that they choose. (Def.'s Stmt. Facts ¶ 33). Any choices Plaintiffs make after they swipe out for a break is postliminary to their compensable "on the clock" activities. Plaintiffs have not disputed that during their break periods they may choose to eat in the cafeteria, go to the break room, or outside to their vehicles to socialize, read, or run errands. (Id.) There is no dispute that Plaintiffs are completely relieved from work during their meal breaks.

    F.    **The Time Spent Donning and Doffing Plaintiffs' General Protective Gear Is *De Minimis*, Taking It Outside Of The Requirements Of The Fair Labor Standards Act.**

Even if Plaintiffs' donning and doffing of personal equipment could be considered principal activities—which they are not—the time Plaintiffs spend is *de minimis* and noncompensable. It is indisputable that the time required to insert ear plugs or put on a bump cap is so insubstantial it is trivial. See Alvarez v. IBP, Inc., 339 F.3d 894, 903 (9th Cir. 2003), aff'd on other grounds, 546 U.S. 21 (2005) (stating time spent donning and doffing "protective gear such as hardhats and safety goggles" is not compensable because the time it takes to don and doff these items is "*de minimis* as a matter of law").

Plaintiffs contend that there are insufficient facts in the record to determine the amount of time Plaintiffs spend inserting ear plugs, putting on bump caps, and boots before entering the processing plant or in the locker room because Defendant has failed to submit any evidence regarding the amount of time it takes to perform the activities at issue. (See Pls.' Br. at 45). No time studies are necessary to scientifically validate how long it takes to put a cap on your head, a pair of boots on your feet, or ear plugs in your ears. In fact, "[m]ost courts have found that daily periods up to approximately ten minutes are *de minimis* even though otherwise compensable." Lindow v. United States, 738 F.2d 1057, 1062 (9th Cir. 1984); see also Pilgrim's Pride, 147 F. Supp. 2d at 563 (finding the time employees spend dressing and sanitizing was *de minimis* when even slow dressers spend no more than one to two minutes donning their equipment and less time doffing their equipment); Reich v. IBP, Inc., 38 F.3d 1123, 1126 n.1 (3d Cir. 1994) (stating that time spent taking off general safety gear, hard hats, ear plugs, safety footwear, and eyewear is *de minimis* as a matter of law and "[r]equiring employees to show up at their work stations with such standard equipment is no different from having a baseball player show up in a uniform, a businessperson with a suit and tie, or a judge with a robe. It is simply a prerequisite for the job, and is purely preliminary in nature."). Of course, the Court need not reach the *de minimis* issue if it determines, as it must, that the donning and doffing of such universal lightweight personal equipment does not constitute a principal activity in the first place.

### III.     CONCLUSION

Plaintiffs are unable to demonstrate that Perdue's time-keeping and compensation system fail to provide statutory compensation for any work time deemed compensable by the Fair Labor Standards Act, the DOL's regulations, or the controlling case law. Instead, Plaintiffs try to over complicate the legal issue before this Court and irreverently dismiss the contrary opinions of the courts of appeals, the Supreme Court, and the Department of Labor. For all the foregoing

reasons, Perdue requests that this Court grant Defendant's Motion for Summary Judgment and dismiss Plaintiffs' Amended Complaint with prejudice.

Dated: June 25, 2008

           **/s/ Lexer I. Quamie**

James J. Kelley (D.C. Bar No. 194746)*
202-739-5095
jkelley@morganlewis.com
Lexer I. Quamie (D.C. Bar No. 502908)*
202-739-5955
lquamie@morganlewis.com
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
202-739-3001 (fax)

Sandra B. Reiss (Alabama Bar No. ASB-3650-S80S)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, Alabama 35203
205-328-1900
205-328-6000 (fax)
sandra.reiss@odnss.com

*Counsel for Defendant, Perdue Farms Incorporated*

* *James J. Kelley and Lexer Quamie have been admitted to this Court pro hac vice.*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 25th day of June 2008, I caused a copy of the foregoing Memorandum in Support of Defendant's Motion for Summary Judgment to be served via electronic mail and first class U.S. mail upon:

> Robert J. Camp
> 505 North 20th Street, Suite 825
> Birmingham, AL 35203
> (205) 930-6900 (Phone)
> (205) 930-6910 (Fax)
> rcamp@cochranfirm.com

> */s/ Lexer I. Quamie*
> Lexer I. Quamie (admitted pro hac vice)
> D.C. Bar No. 502908
> 202-739-5955
> lquamie@morganlewis.com
> Morgan, Lewis & Bockius LLP
> 1111 Pennsylvania Avenue, N.W.
> Washington, DC  20004
> 202-739-3001 (fax)
>
> *Counsel for Defendant, Perdue Farms Incorporated*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DARRYL ANDERSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case Action No.: |
| v. ) | 1:06-CV-1000-MEF-WC |
| ) | JURY TRIAL DEMANDED |
| PERDUE FARMS INCORPORATED, ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF BRENT BYRD

I, Brent Byrd, depose and state the following based on my personal knowledge:

1. I am currently employed by Perdue Farms, Inc. ("Perdue") as the Second-Processing Unit Leader for Perdue's poultry-processing plant in Dothan, Alabama. I have held that position since April 1, 2008. Prior to becoming the Second-Processing Unit Leader, I was the Second-Processing Production Manager for the Dothan facility. I held the position of Second-Processing Production Manager since 2005.

2. I am responsible for supervising team leaders and shift managers in the first- and second-processing shifts. I am also knowledgeable about Perdue's requirements for personal protective equipment and sanitization for the first- and second-processing employees in Perdue's poultry-processing plant in Dothan, Alabama.

3. Slip-resistant footwear is required to be sanitized each time processing employees enter and exit the production areas.

4. First-processing employees sanitize their footwear after they clock in at a Kronos time-keeping clock. After first-processing employees clock in at their assigned Kronos time-keeping clock, they walk up a ramp to begin working on the production line. While walking

from the clock, first-processing employees pass through foam spray that sanitizes their slip-resistant footwear. The first-processing employees do not stop or slow down when they walk through the foam spray.

5. When first-processing employees leave their department to take one of their two thirty-minute breaks, or leave at the end of the day, they walk through the foam spray to sanitize their slip-resistant footwear. The employees then swipe out at their assigned Kronos time-keeping clock to begin their break or to end their work day.

6. Before clocking in at the beginning of their shift, second-processing employees walk on a rubber sanitizing mat. They then walk through sanitizing foam on the floor. They do not slow down or stop as they walk on the sanitizing mat or through the sanitizing foam.

7. After passing the rubber sanitizing mat and walking through the sanitizing foam, second-processing poultry workers clock-in at their assigned Kronos time-keeping clock.

8. The process is reversed when second-processing employees begin one of their two thirty-minute breaks or at the end of their shift.

9. After second-processing employees clock out at the Kronos time-keeping clock, they walk past the sanitizing foam and then walk over the rubber sanitizing mat. They do not slow down or stop as they walk through the foam and over the mat.

10. The process of sanitizing one's boots is no different than walking to and from one's station. The sanitizing foam and sanitizing mat do not add any time to an employee's walk to and from his or her station.

11. I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 24, 2008

_____
Brent Byrd