IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DARRYL ANDERSON, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No.: |
| v. ) | 1:06-CV-1000-MEF-WC |
| ) | **JURY TRIAL DEMANDED** |
| **PERDUE FARMS INCORPORATED,** ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO STRIKE EXHIBIT C**

**I.   INTRODUCTION**

Plaintiffs have shown no valid reason to strike Defendant Perdue Farms Incorporated, ("Perdue" or "Defendant") evidentiary submission, specifically Exhibit C, attached to Defendant's Motion and Memorandum in Support of Summary Judgment. Plaintiffs' Motion to Strike Defendant's Exhibit C from the record should be Denied.

**II.   ARGUMENT**

1. The Exhibit at issue is an orientation document entitled "First Principal Activity – Associate Performance Standards and Dothan Plant Discipline Program." Defendant originally produced the exhibit on April 4, 2008 in response to Plaintiffs' First Request for Production of Documents seeking "[a]ll policies, safety or otherwise, in effect in the last three (3) years related to the wearing by employees of personal protective equipment to perform their duties with Defendant."

2. Defendant submitted this same document with its Motion for Summary Judgment, as an example of training materials distributed to new poultry-processing employees. (Def. Mem. in Supp. Mot. Summ. J. at 13; Stmt Facts ¶ 87). Defendant's statement of undisputed facts which refers to the Exhibit provides that "all new poultry-processing employees are given Perdue's orientation and training brochure that describes in detail Perdue's donning and doffing procedures." Id. The Exhibit was attached to support this statement, solely as an example of training material used by Defendant.

3. In fact, despite Plaintiffs' characterization, Defendant refers to Exhibit C only once in its Statement of Facts, in Paragraph 87. More importantly, Plaintiffs did not dispute Paragraph 87 in their Response in Opposition to Defendant's Motion for Summary Judgment, and as such, this Exhibit does not prejudice the Plaintiffs in any manner and should not be granted leave to strike the accompanying Exhibit from consideration at this time.

4. However, out of an abundance of caution, Defendant submits the attached affidavit from the Director of Human Resources at Defendant's Dothan, Alabama facility authenticating the use of Exhibit C as a training document during orientation of first and second-processing employees. See Ex. A.

### III. CONCLUSION

WHEREFORE, Defendant respectfully requests that this Court Deny Plaintiffs' Motion to Strike Defendant's Exhibit C from the record. Alternatively, Defendant asks that this Court consider the attached affidavit authenticating Defendant's Exhibit.

Dated: July 11, 2008

          */s/  Lexer I. Quamie*
James J. Kelley  (D.C. Bar No. 194746)*
202-739-5095
jkelley@morganlewis.com
Lexer I. Quamie  (D.C. Bar No. 502908)*
202-739-5955
lquamie@morganlewis.com
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, D.C.  20004
202-739-3001 (fax)


Sandra B. Reiss (Alabama Bar No.  ASB-3650-S80S)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, Alabama 35203
205-328-1900
205-328-6000 (fax)
sandra.reiss@odnss.com

*Counsel for Defendant, Perdue Farms Incorporated*

---

* *James J. Kelley and Lexer Quamie have been admitted to this Court pro hac vice.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 11th day of July 2008, I caused a copy of the foregoing Memorandum in Opposition to Plaintiffs' Motion to Strike Exhibit C to be served via electronic mail upon:

    Robert J. Camp
    rcamp@cochranfirm.com

    Lance Harrison Swanner
    lswanner@cochranfirm.com

    Richard Bernard Celler
    richard@cellerlegal.com

    Samuel Alex Cherry, Jr.
    scherry@cochranfirm.com

    Bernard Dobbie Nomberg
    bnomberg@cochranfirm.com

    */s/ Lexer I. Quamie*
    Lexer I. Quamie (admitted pro hac vice)
    D.C. Bar No. 502908
    202-739-5955
    lquamie@morganlewis.com
    Morgan, Lewis & Bockius LLP
    1111 Pennsylvania Avenue, N.W.
    Washington, DC  20004
    202-739-3001 (fax)

    Counsel for Defendant, Perdue Farms Incorporated

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DARRYL ANDERSON, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>PERDUE FARMS INCORPORATED, )<br>)<br>Defendant. )<br>) | Civil Action No.:<br>1:06-CV-1000-MEF-WC<br>JURY TRIAL DEMANDED |

### DECLARATION OF TOL DOZIER

I, Tol Dozier, depose and state the following based on my personal knowledge:

1. I am currently employed by Perdue Farms Incorporated, ("Perdue") as Director of Human Resources for Perdue's poultry-processing plant in Dothan, Alabama. I have held that position since September 2003. Prior to becoming the Director of Human Resources for Perdue's Dothan facility, I was the night-shift superintendent from February 2003 through September 2003. From July 2001 to February 2003, I was a Team facilitator. I began my career with Perdue in January 2000 as a Human Resource Representative.

2. In my current capacity as Director of Human Resources, I oversee orientation for staff, including orientation for first and second hourly poultry-processing employees. I am also responsible for supervising the human resources staff and reviewing discipline administered to first and second hourly poultry-processing employees.

3. I am knowledgeable about Perdue's requirements for personal protective equipment and sanitization for the first and second hourly poultry-processing employees in its Dothan, Alabama facility. I also ensure that Perdue conducts training for proper donning and doffing procedures to comply with Perdue's requirements.

4. All new hourly first and second poultry-processing employees are given orientation and training that describes the relevant donning, doffing, and time clock procedures.

5. Since September 2006, it has been our practice that new first and second-processing employees reviewed a training brochure and viewed a slideshow that defines "donning," "doffing," and "first and last principal activities," and also makes it clear that the Department of Labor and the Fair Labor Standards Act require employees to be paid for time spent donning and doffing required items, and that employees get paid from the first principal activity until the last principal activity, excluding unpaid breaks. See Ex. A.

6. Additionally, since January 2008, it has been our practice that new first and second processing employees receive a copy of a document titled "First Principal Activity – Associate Performance Standards and Dothan Plant Discipline Program" to review and sign. The document outlines the required procedures for compliance with performance standards, including putting on and removing required gear and clocking out for meal breaks. See Ex. B.

7. I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 11, 2008

_Tol Dozier_
Tol Dozier

# EXHIBIT A


































PER_AND000117

5

# EXHIBIT B

# First Principal Activity - Associate Performance Standards and Dothan Plant Discipline Program

### Purpose:

To provide management/supervision with guidelines for managing the First Principal Activity Plan and provide associates with information needed in order to be compliant.

### Scope:

All plant associates performing work that is line driven or associates who are required to handle product in any form.

### Required Procedures for Compliance with Performance Standards:

### Start of Shift

Associates covered by the First Principal Activity Compliance Plan may not punch a time clock until their designated starting time. Starting times are assigned by work station and will be made known to all associates.

Associates must clock their time card in before putting on aprons, lab coats, rain suits, freezer suits, gloves or

PER_AND000127

Signature: _____  Date: _____

any other item of apparel provided by the company. Exceptions are personal protective equipment, i.e., hairnets, earplugs, bump cap, safety glasses, LOTO equipment and boots, which may be worn from home or put on before clocking their time card in.

Associates must put on **_required_ gear** (aprons, lab coats, rain suits, freezer suites, and gloves), sanitize if required, then proceed to their designated work station within an acceptable amount of time to be determined by management, but not to exceed 2 minutes.

### Start/Return From 30 Minute Break

Associates must clock their time card out for the 30 minute lunch/dinner break. A lunch/dinner break of less than 30 minutes is not permissible. Supervisors will establish the department or individual times for this break.

At the designated time for a 30 minute break, associates must first remove their required gear and place in predetermined location, and then proceed to designated time clock in an acceptable amount of time as determined by management, but not to exceed 2 minutes, to clock their time card out. Associates will not be allowed to wear any required gear (hairnets, ear plugs, boots, bump caps, glasses and LOTO equipment are allowed) outside their work area during these 30 minutes, however normal procedures as required by USDA or Quality Assurance apply during the two company paid breaks.

Signature: _____    Date: _____

Associates returning from 30 minute lunch/dinner break must clock time card in before putting on any required gear. After clocking time card in, gearing up, and sanitizing if required, proceed to work station in an acceptable amount of time as determined by management, but not to exceed 2 minutes.

### End of Shift

Associates must remove any required gear before clocking their time card out. At a time announced by management, associates remove required gear and place in predetermined location and proceed to designated time clocks in an acceptable amount of time as determined by management, but not to exceed 2 minutes to clock their time card out. **See *paragraph below, "Miscellaneous Provisions"* regarding the use of lockers after clocking out.**

### Miscellaneous Provisions

Associates who have assigned lockers **may not** store aprons, lab coats, rain suits, freezer suits, or gloves in lockers at any time. Personal items such as: jackets, coats, purses, carry bags, boots, shoes, food, etc. may be kept in assigned lockers.

Associates are required to clock time cards at assigned time clocks only. Supervisors will inform associates of assigned time clock and its location.

Signature: _____     Date: _____

PER_AND000129

## Disciplinary Action

**Associates are required as a condition of employment to follow the above procedures regarding clocking in and out, the donning and doffing of required apparel, the acceptable time to go to and from the time clocks to the work station, and the necessity to take a full 30 minute unpaid break. Associates who fail to abide by the provisions of the above procedures will be in violation of the standards of acceptable personal conduct at work and therefore subject to the** Perdue Farms Disciplinary Procedures **as outlined on page 28, "Disciplinary Action", of the Associate Handbook.**

Effective August 12, 2002

Signature: _____   Date: _____

PER_AND000130