**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **DARRYL ANDERSON, individually and on behalf of all others similarly situated, *et al.*,** | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | ) |
| **PERDUE FARMS INCORPORATED,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**DEFENDANT PERDUE FARMS INCORPORATED'S
<u>NOTICE OF SUPPLEMENTAL AUTHORITY</u>**

     **COMES NOW**, Defendant, **PERDUE FARMS INCORPORATED** ("Perdue" or "Defendant"), by and through its undersigned counsel to inform the Court of supplemental authority from the United States District for the Northern District of Georgia that relates directly to the issues presented by the parties' pending cross motions for summary judgment in the captioned matter.

     Specifically, on July 29, 2008, Judge William C. O'Kelley, Senior United States District Court Judge in the United States District Court for the Northern District of Georgia, Gainesville Division, entered an Order in *Jenkins, et al., v. Harrison Poultry, Inc.,* Civil Action No. 2:07-CV-0058-WCO, granting summary judgment to Harrison Poultry Company in a donning and doffing case involving the equivalent of first and second processing employees.  (Attachment #1) Judge O'Kelley's decision addresses, specifically, the following:

1. That donning and doffing of generic, (non-unique) gear such as hairnets, safety glasses, and ear protection, is preliminary and or postliminary under the Portal-to-Portal Act and non compensable (Slip Op. p. 11–12);

2. That any time spent walking, or retrieving supplies, prior to "clocking in" for the workday is non-compensable (Slip Op. p. 13, n.10);

3. That time spent "flashing" a security badge to enter a poultry processing facility is non compensable (Slip Op. p. 14, n.12);

4. That any compensable time associated with the foregoing activities was *de minimis* as a matter of law (Slip Op. p. 12); and

5. That even if employers were required to don, doff, wash, or sanitize in conjunction with a 30-minute unpaid meal period, that such activities would not constitute significant affirmative duties or responsibilities which would convert meal time to compensable time.  (Slip. Op. 15-18)

On the basis of the foregoing, the Court granted summary judgment to Harrison Poultry Company and dismissed the case.  This decision provides supplemental authority for this Court to grant Summary Judgment to Perdue Farms Incorporated in this matter.

Dated:  August 5, 2008                    Respectfully submitted,


                    ___/s/_____
                    James J. Kelley  (admitted pro hac vice)
                    D.C. Bar No. 194746
                    202.739.5095
                    jkelley@morganlewis.com
                    Lexer I Quamie  (admitted pro hac vice)

D.C. Bar No. 502908
202.739.5955
lquamie@morganlewis.com
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
202.739.3001 (fax)


Sandra B. Reiss
Alabama Bar No. ASB-3650-S80S
Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, Alabama 25203
205.328.1900
205.328.6000 (fax)
sandra.reiss@odnss.com


Counsel for Defendant,
Perdue Farms, Incorporated

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing Defendant Perdue Farms Incorporated's Notice of Supplemental Authority has been served upon Plaintiffs' counsel via the electronic filing system on this 5th day of August, 2008 via electronic mail on:

Robert J. Camp
rcamp@cochranfirm.com

Joseph Allen Schreiber
allen@sppclaw.com

Lance Harrison Swanner
lswanner@cochranfirm.com

Richard Bernard Celler
richard@cellerlegal.com

Samuel Alex Cherry, Jr.
scherry@cochranfirm.com

Bernard Dobbie Nomberg
bnomberg@cochranfirm.com

*/s/ Lexer I. Quamie*
Lexer I. Quamie (admitted pro hac vice)
D.C. Bar No. 502908
202-739-5955
lquamie@morganlewis.com
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
202-739-3001 (fax)

*Counsel for Defendant, Perdue Farms Incorporated*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN  DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|  |  |  |
|---|---|---|
| JACKIE JENKINS, DOMANQUE WARREN, and OVELLA TANNER, individually and on behalf of all others similarly situated, | : : : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 2:07-CV-0058-WCO |
| vs. | : : | |
| HARRISON POULTRY, INC., | : : | |
| Defendant. | : | |

## ORDER

This case is before the court for consideration of defendant's motion for summary judgment [24-1].

### I.    **Factual Background**[1]

Defendant operates a poultry processing facility in Bethlehem, Georgia, and plaintiffs are former employees of defendant.  In this lawsuit, they allege that defendant failed to compensate them for time spent donning and doffing

---

[1]  Unless otherwise noted, the court draws the undisputed facts that underlie the allegations in the complaint from defendant's statement of undisputed material facts.  If, however, plaintiffs have disputed a specific fact and pointed to evidence in the record that supports their version of the events, then the court has viewed that fact, evidence, or factual inference in the light most favorable to plaintiffs.  Accordingly, the facts set forth above are either undisputed or are viewed in the light most favorable to plaintiffs.

protective equipment, walking from the line to break or donning and doffing areas, clearing security and walking from security to donning and doffing areas, and for time allocated as unpaid breaks.  (Compl. ¶¶ 41-44).

A.    *Plaintiff Jackie Jenkins*

Jenkins was an "on and off" employee of defendant for many years. His last employment stint lasted from November 7, 2004, until April 19, 2006.  During that time, he worked in the live hang area at defendant's Bethlehem facility.[2] Every morning before his shift, Jenkins would don personal protective gear, including a dust mask, hairnet, safety glasses, two sets of gloves, sleeves, boots, apron, smock, and earplugs, in a utility room that was adjacent to the live hang area.[3] Jenkins wore many of these items for his convenience, but, to do his job, defendant required him to wear a hairnet, protection for his ears, safety glasses, and a dust mask.[4]

─────────────────────

[2] An employee in this department takes live chickens from a conveyor belt and attaches them to shackles affixed to an overhead conveyor belt.  (Jenkins Depo. 37, 40).  Live hang is also referred to as "receiving."

[3] Although Jenkins typically donned his gear in the plant's utility room, he was free to don it at home.

[4] Defendant admits that it provided all of the items Jenkins testified to wearing to its live hang employees, but, in its motion for summary judgment, it denies *requiring* them to wear any gear.  However, Julietta Moore, defendant's Human Resources Supervisor, testified that, until March 2008, she had been telling live hang employees that they were required to wear safety glasses, hairnets, dust masks, and earplugs.  In light of Moore's testimony, the court cannot accept defendant's assertion that live hang employees were not required to wear *any* gear.  As

Like other live hang workers, Jenkins was paid according to "line time" during the period covered by this lawsuit. In other words, a supervisor kept the time of the entire live hang crew, who were checked in and out as a group. Live hang employees were not checked out until five (5) or ten (10) minutes after the last chicken passed down the line. During the workday, Jenkins and his colleagues enjoyed a ten (10) minute break in the morning, which was paid, and an unpaid thirty (30) minute meal break.

B.   *Plaintiff Ovella Tanner*

Tanner worked for defendant from June 21, 1978, until January 10, 2006, when she resigned. Unfortunately, on April 24, 2003, she suffered an on-the-job injury, and from that date until her resignation in April 2006, she worked with restrictions. Although Tanner worked in a number of light-duty positions (most of which required some degree of donning and doffing of gear) during that three-year period, she recorded—and was paid for—the time she actually worked.[5] Importantly, during the three years that preceded the filing of this lawsuit, Tanner

---

far as defendant's motion for summary judgment is concerned, the court will assume that defendant required its live hang employees to wear the four items Moore identified at her deposition.

[5]   Despite her own deposition testimony, Tanner maintains in her opposition to defendant's motion for summary judgment that a factual dispute exists as to whether she was paid according to her line time during part of the period covered by this lawsuit. (Pls.' Br. Opp. Def's Mot. Summ. Jdgmt. 11). Tellingly, she points to no evidence that creates such a dispute; a fact is not disputed simply because plaintiffs' lawyer says it is so.

did not don or doff any required gear off the clock. In other words, she clocked

in before donning the required smock, hairnet, earplugs, raincoat, sleeves, gloves,

and boots and did not clock out until *after* those items were doffed.[6] Defendant

---

[6] Because the undisputed evidence of record establishes that Tanner donned and doffed her gear on the clock, the amount of time it took her to do so is immaterial. Nevertheless, in moving for summary judgment, defendant misrepresented Tanner's testimony so badly that the court feels compelled to publicly voice its displeasure. In its statement of material facts, defendant, citing to Tanner's deposition, wrote that "[i]t took Ms. Tanner about six seconds to don the gear needed for [her] position." (Def. Stmt. Undisp. Material Facts ¶ 28). Defendant's statement *grossly* misrepresents Tanner's testimony:

Q     . . . And about how long would it take you to put all that stuff on as you're walking?

. . . .

Q     (By [Defense Counsel]) If you could just sort of start, one second, two seconds, three seconds, four seconds, five seconds, six seconds.

. . . .

THE WITNESS: To be honest, I never thought about it. I just do it.

Q     (By [Defense Counsel]) Okay. It didn't take that long, though, did it?

. . . .

THE WITNESS: I had a lot of stuff to put on. I had a raincoat, the sleeves, the smock. *It took a minute.* You've got to get it right.

Q     (By [Defense Counsel]) Okay.

(Tanner Depo. 33-34) (emphasis added). After plaintiffs objected to defendant's creative interpretation of Tanner's testimony, defendant wrote that plaintiffs' response "fails to directly refute the facts alleged in ¶ 28." (Def. Reply Stmt. Undisp. Material Facts ¶ 27). If that statement were not bad enough, the absurdity of defendant's position and conduct is fully cemented by the paragraph's final sentence, which suggests that defendant's original paragraph–the one contending that it took Tanner "about six seconds" to don her gear–"should be deemed admitted as to the fact that . . . it took [Tanner] *about a minute*" to don her gear. (*Id.* (emphasis added)). The conduct of defendant's lawyer in this regard is inexcusable.

did not require plaintiff Tanner to clock in or out for short rest breaks or bathroom breaks, and she clocked out for lunch only if she left the premises.

### C.    *Plaintiff Domanque Warren*

The factual circumstances of Warren's FLSA claims are irrelevant because they are barred by the applicable statute of limitations.  Warren last worked for defendant on March 18, 2004.  This lawsuit was not filed until May 23, 2007.  Because the lawsuit was filed more than three years after Warren's termination, Warren's claim is time-barred and must be dismissed.  *See* 29 U.S.C. 216(b) (providing, at most, three-year statute of limitations for FLSA claims).

## II.    **Analysis**

### A.    *Summary Judgment Standard*

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  It is well settled that a court considering a motion for summary judgment must view the evidence in a

light most favorable to the nonmoving party.  *See Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).  It is important to recognize, however, that this principle does not require the parties to concur on every factual point.  Rule 56 "[b]y its very terms . . . provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Consideration of a summary judgment motion does not lessen the burden on the nonmoving party.  The nonmoving party still bears the burden of coming forth with sufficient evidence.  *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).  However, it is important to note the difference "between direct evidence and inferences that may permissibly be drawn from that evidence.  Where a nonmovant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility; thus, there is no legal issue for the court to decide."  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).  On the other hand, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'"  *Id.* at 743.  Adopting language from one of its sister circuits, the Eleventh Circuit stated:

>If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. Inferences from the nonmoving party's "specific facts" as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law. This inquiry ensures that a "genuine" issue of material fact exists for the factfinder to resolve at trial.

*Id.* (citation omitted). "Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the nonmovant's claim rests." *Id.*

### B.    *FLSA and the Portal-to-Portal Act*

Put simply, the FLSA requires an employer to pay his employees for time spent engaged in work. Work is "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Reich v. IBP, Inc.*, 38 F.3d 1123, 1125-26 (10th Cir. 1994). The Act creates minimum protections for workers that ensure that they will receive a "fair day's pay for a fair day's work" and will be protected from "from the evil of overwork as well as underpay." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). "Minimum wage and overtime requirements are the two central themes of the

Act." *Johnson v. RGIS Inventory Specialists*, No. 1:05-CV-389, 2007 U.S. Dist. LEXIS 97023, * 19 (E.D. Tex. May 29, 2007).

Early judicial interpretations of the FLSA "superseded 'long-established customs, practices, and contracts between employers and employees'" and "creat[ed] wholly unexpected liabilities, immense in amount and retroactive in operation." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 26 (2005). Congress reacted to these "wholly unexpected liabilities" by "clarify[ing] the duties of employers concerning employees for incidental activities that constitute work but which occur before, after, or during the work shift" in the Portal-to-Portal Act. *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 562 (E.D. Tex. 2001). In relevant part, the Portal-to-Portal Act provides that

> no employer shall be subject to any liability or punishment under the [FLSA] . . . on account of the failure of such employer to pay an employee minimum wages, or . . . overtime compensation, for or on account of any of the following activities . . .
>
> (1)  walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2)  activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

"[A]n activity is considered 'principal' if it is 'an integral and indispensable part of the principal activities for which [the employee] is employed' and not specifically excluded by the Portal-to-Portal Act." *Johnson*, 2007 U.S. Dist. LEXIS 97023 at * 21. Activities "undertaken 'for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer'" are excluded from FLSA coverage. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 750 F.2d 47, 50 (8th Cir. 1984) (quoting *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398 (5th Cir. 1976)).

Activities that fall outside the Portal-to-Portal Act but within the scope of FLSA are not necessarily compensable. When a FLSA claim "concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of [FLSA]. It is only when the employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946). Most courts have held that daily periods of no more than ten (10) minutes are *de minimis* as a matter of law, even though otherwise compensable. *See Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984).

C.    *Discussion of Plaintiffs' Claims*

1.    <u>Donning and Doffing</u>

Both Jenkins and Tanner allege that defendant violated the FLSA by failing to compensate them for the time that they spent donning and doffing protective gear. Defendant has moved for summary judgment on these claims, and the court will consider them separately.

Defendant argues that Jenkins, a live hang employee, was not required to don and doff any protective gear. Of course, if that were true, Jenkins' claim *would* fail as a matter of law. *See Johnson*, 2007 U.S. Dist. LEXIS at * 22 (noting that activities not required by employer are excluded from FLSA coverage). But, unfortunately, this case is not that easy to resolve. As already mentioned, a material issue of fact exists as to whether live hang employees were required to wear hairnets, hearing protection, dust masks, and safety glasses.

This issue of material fact does not, however, preclude the entry of summary judgment in defendant's favor as to Jenkins' donning and doffing claim. Because defendant required its live hang employees to wear a pair of safety glasses, ear protection, a hairnet, and a dust mask, Jenkins' claim involves only

the donning and doffing of generic, not specialized, gear.[7]  Recently, in the Middle District of Georgia, Judge Royal disposed of an almost identical claim for time spent donning and doffing generic gear.[7]  *See generally Alford*, 2008 U.S. Dist. LEXIS 24948.  In *Alford*, Judge Royal analyzed the applicability of three decisions from circuit courts of appeal that addressed the compensability of donning and doffing generic gear and concluded that:

> *Gorman*, *Alvarez*, and *Steiner* together display a sound judicial instinct.  At their heart, these decisions recognize that the simple act of putting on a pair of boots, a hair net, a cap, and ear plugs is difficult to distinguish from the act of "changing clothes and showering under normal conditions," an act that is by definition preliminary or postliminary to work activities. 29 C.F.R. § 790.7(g).  It is something that the employee can do at his home, in his car, or whenever suits his convenience.  It is a task that adds little, if any, time and effort to the ordinary act of washing and getting dressed that every person undertakes every day.  Thus, whether it is characterized as not integral to the principal activities (as in Gorman) or as not inherently work (as in Reich) or as *de minimis* (as in all three cases) the donning and doffing of such gear is a perfect example of the sort of preliminary or postliminary activity excluded from FLSA's coverage by the Portal-to-Portal Act.

---

[7]  Both courts and the United States Department of Labor have distinguished between generic gear and specialized gear (sometimes referred to as unique and non-unique gear).  *See*, *e.g.*, *Alvarez*, 339 F.3d at 903(distinguishing between non-unique gear like hard hats and safety glasses and unique gear like Kevlar gloves); *Alford v. Perdue Farms, Inc.*, No. 5:07-CV-87, 2008 U.S. Dist. LEXIS 24948, * 7 (M.D. Ga. March 28, 2008) (noting that the Department of Labor had taken the position that defendant poultry processor was not obligated to compensate employees for time spent donning and doffing "such generic items as hair nets, caps, ear plugs, glasses, and footwear").

There is no genuine issue of material fact as to the nature of activities performed by the Plaintiffs in donning and doffing their personal protective equipment before and after work each day. As a matter of law, the activities for which Plaintiffs seek compensation were preliminary and postliminary activities not subject to compensation under the FLSA. To the extent that they were otherwise compensable activities, they are *de minimis* in nature.

2008 U.S. Dist. LEXIS 24948, at * 18-19.

The court agrees with Judge Royal and specifically adopts his reasoning. The donning and doffing of a pair of safety glasses, a pair of earplugs, a hairnet, and a dust mask "into or onto the appropriate location on the head takes all of a few seconds and requires little or no concentration. Such items can easily be carried or worn to and from work and can be placed, removed, or replaced while on the move or while one's attention is focused on other things." *Reich,* 38 F.3d at 1126.[8] "[N]either FLSA policy nor the 'actualities' of the employees' working conditions justif[y] compensation for the time spent performing these activities." *Alford*, 2008 U.S. Dist. LEXIS 24948, at * 11 (discussing the holding of *Alvarez*).

---

[8] Significantly, defendant allowed its live hang employees to don any gear they chose to wear at home. As defendant notes in its brief, this opportunity, in and of itself, cuts strongly against Jenkins' claim. The United States Department of Labor has declared that its "longstanding position" is that changing into gear is not a principal activity under the FLSA, even when it takes place on the employer's premises, "if employees have the option and the ability to change into the required gear at home." Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006).

Tanner's claim is even easier to resolve.  The undisputed evidence in the record establishes that during the time period covered by this lawsuit, Tanner was paid by the clock for the actual time she worked, not according to her "line time."[9] This fact is critical because Tanner further testified that she clocked in *before* donning the personal protective gear she was required to wear and did not clock out until *after* she had doffed that gear.[10]  An employee who brings an FLSA action for "unpaid minimum wages or overtime compensation . . . has the burden to prove that he performed work for which he was not properly compensated."

---

[9]  Although Tanner maintains otherwise in her opposition to defendant's motion for summary judgment, her deposition testimony could not be clearer:

Q    (By [defense counsel]) Your recollection now is that during the time after you were injured, you either had a card, or you used your hand to clock you in when you start your work---

A    Yes.

Q    —and to clock you out when you stopped your work; isn't that correct?

A    Yes.

(Tanner Depo. 71; *see also id.* at 30, 58-60, 65).

[10] Defendant compensated Tanner for the time that she donned and doffed her gear but did not compensate her for the time she spent waiting on supplies–her gear–every morning. (Tanner Depo. 46 (stating that she would "[g]et her supplies, and then go clock in")).  That waiting time is noncompensable.  *See IBP, Inc.*, 546 U.S. at 40-41 (holding that pre-donning waiting time and time spent waiting for supplies are not principal activities and are excluded from FLSA coverage under the Portal-to-Portal Act).  Therefore, to the extent that Tanner's (or, for that matter, Jenkins') donning and doffing claim may be read to embrace the time spent waiting on supplies, it fails as a matter of law.

*Adams v. United States*, 471 F.3d 1321, 1326 (Fed. Cir. 2006) (quoting *Anderson*, 328 U.S. at 686-87)).  Tanner has not satisfied her burden with regard to the donning and doffing claim because there is simply no evidence that defendant failed to compensate her for the time she spent donning and doffing her protective gear.  For that reason, defendant is entitled to summary judgment on this part of the case.[11]

## 2.    Time Spent Clearing Security

In their complaint, plaintiffs allege that they should have been compensated for the time they spent clearing security at defendant's facility.  In its motion for summary judgment, defendant contends that this claim fails for two reasons: (1) the time is *de minimis*, and (2) time spent clearing security is noncompensable under the Portal-to-Portal Act.  Plaintiffs do not rebut–or even address–these arguments in their response to defendant's motion for summary judgment.  Because plaintiffs have abandoned this claim, the court will not address it.  Defendant is entitled to summary judgment on plaintiffs' security claim.[12]

---

[11] Plaintiffs may also contend that they are entitled to compensation for the time it took them to walk to or from their work areas after donning and before doffing.  If the complaint can fairly be read to allege such a claim, it fails as to both plaintiffs for the reasons discussed above.

[12] Despite plaintiffs' silence, the court has independently reviewed the record.  The undisputed evidence establishes that employees simply flashed a badge as they entered the plant and were not required to even break stride.  Certainly, the time it took employees to pass the security area, even if work not excluded by the Portal-to-Portal Act, was *de minimis*.

### 3.    Meal Break Claims

Construing plaintiffs' complaint and responsive brief liberally, they also appear to allege that they should have been compensated for an unpaid, daily thirty (30) minute meal break because the time they spent donning, doffing, washing, waiting, and walking encroached upon their free time.  In other words, plaintiffs claim that they should be paid for their entire meal break because they spent some portion of it "working," i.e., donning and doffing gear, washing, and walking to and from their work areas.  This claim, as to these plaintiffs, fails for the same reason that their donning and doffing claims failed.  Any time that Jenkins spent donning and doffing *required* gear–a dust mask, safety glasses, earplugs, and a hairnet–is *de minimis* as a matter of law, and no evidence suggests Tanner donned and doffed any gear off the clock during the time period covered by this lawsuit.

Alternatively, defendant has shown that the break period plaintiffs attack is a "bona fide meal period," which is not compensable.  29 C.F.R. § 785.19 provides in relevant part that

> [b]ona fide meal periods are not worktime.  Bona fide meal periods do not include coffee breaks or time for snacks.  These are rest periods.  The employee must be completely relieved from duty for the purposes of eating regular meals. . . . The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.

-15-

A meal period should be considered a "bona fide meal period" if the employer establishes that an employee is "completely relieved from duty." *Kohlheim v. Glynn County, Ga.*, 915 F.2d 1473, 1477 (11th Cir. 1990). To be completely relieved from duty, the employee must not be subject to "significant affirmative responsibilities" during the break period. *Id.* The central question is whether the employee is "in fact relieved from work for the purpose of eating a regularly scheduled meal." *Id.*; *see also Chao v. Tyson Foods, Inc.*, No. 2:02-CV-1174-VEH, 2008 WL 2020323, * 3 (N.D. Ala. Jan. 22, 2008) (noting that the court must examine whether the challenged break was allotted for the purpose of eating a regularly scheduled meal, whether the defendant's employees retained significant affirmative responsibilities during the break, and whether the employees were subject to real limitations on their freedom during the breaks that inured to defendant's benefit).[13]

---

[13] Although plaintiffs cite *Kohleim* in their brief, they do not discuss or purport to apply this three-part test. At best, the half page devoted to the meal breaks suggests that the washing, walking, waiting, donning, and doffing of protective gear at the beginning and end of the breaks were significant affirmative responsibilities of the employees or, otherwise, created real limitations on their freedom that inured to defendant's benefit. Accordingly, as the parties have done, the court will fix its focus on only the second and third elements of the test.

No evidence suggests that either Jenkins or Tanner was subject to "significant affirmative responsibilities" during his or her meal break. Rejecting a similar claim, Judge Hopkins wrote that

> "a plant worker's job is to *work* at their station." During the . . . meal period at issue here, the employees are not suffered to work at their stations, or perform any other "significant affirmative responsibilities" which are even remotely analogous to their on-duty tasks. Moreover, Plaintiff offers neither argument nor authority for the proposition that donning, doffing, and washing protective outer gear at the beginning and end of a meal period constitutes "significant affirmative responsibilities" compared to the employees' productive work while on duty. Rather, Plaintiff ignores the completely relieved from duty standard altogether, and offers no analysis of this aspect of her claim.

*Chao v. Tyson Foods, Inc.*, No. 2:02-CV-1174-VEH, 2008 WL 2020323, * 5 (N.D. Ala. Jan. 22, 2008) (internal citation omitted). That passage could have been written for this case. Like the plaintiff in *Chao*, Jenkins and Tanner offer only their bald assertion that donning, doffing, walking, and washing are "significant affirmative responsibilities," and that simply is not enough.

Similarly, neither Jenkins nor Tanner was subject to real limitations on his or her freedom during the meal breaks. Unlike the firefighters in *Kohlheim*, plaintiffs did not remain on call or anything of that sort; as in *Chao*, "[s]hort of donning, doffing, and washing their protective gear," Jenkins and Tanner were

"free to spend their meal periods as they wish[ed]." 2008 WL 2020323, at * 6. Plaintiffs were "completely relieved from duty." *Id.*

Thus, plaintiffs' meal break claim fails for two reasons. First, each plaintiff's claim fails for the same reason as his or her underlying donning and doffing claim. Second, the break period each targets qualifies as a "bona fide meal period" under § 785.19 and, therefore, is noncompensable. For either of these reasons, defendant's motion for summary judgment as to plaintiffs' "lunch break claims" is due to be granted.

III.    **Conclusion**

Defendant's motion for summary judgment [24-1] is hereby **GRANTED**. In light of that action, plaintiffs' motion for leave to file a motion for an order permitting court supervised notice [23-1] is hereby **DENIED**. Defendant's motion to strike [28-1] twenty-two consents to join this lawsuit is hereby **GRANTED**.[14]

IT IS SO ORDERED, this 29th day of July, 2008.

s/*William C. O'Kelley*
WILLIAM C. O'KELLEY
Senior United States District Judge

---

[14] Plaintiffs have conceded that should the court deny them permission to file a motion for court supervised notice, "the consents submitted should be stricken from the record." (Pls. Reply in Support of Mot. for Leave 3).