# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

|  |  |  |
|---|---|---|
| **DARRYL ANDERSON, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Case Action No.:** |
| **v.** | § | **1:06-cv-1000-MEF-WC** |
| | § | |
| **PERDUE FARMS, INC.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § | |
| | § | |

## MOTION FOR LEAVE TO FILE RESPONSE TO DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY (Doc. #118)

1.    Plaintiffs filed their response to Defendant's Motion for Summary judgment on June 11, 2008 and their brief in support of their own Cross Motion for Summary Judgment on June 23, 2008.

2.    The dispositive motion deadline in this matter expired July 18, 2008.

3.    Without the Court's leave, Defendant filed its Notice of Supplemental Authority on August 5, 2008.

4.    For the foregoing reasons, Plaintiffs request leave to file a Response to Defendant's Notice:

5.    Defendant submits *Jenkins, et al., v. Harrison Poultry, Inc.,* Civil Action No. 2:07-CV-0058-WCO, as supplemental authority to support its

proposition that under the *Reich* analysis the activities at issue in this case are not work.

6.    Defendant asserts summary judgment is proper because under *Reich v. IBP, Inc.*, 38 F.3d 1123, 1125-26 (10th Cir. 1994), the donning and doffing of standardized equipment is not deemed work. Within Plaintiffs' Response to Defendant's Motion for Summary Judgment, Plaintiffs assert the Supreme Court's decision in *IBP v. Alvarez*, 546 U.S. 21 (2005), changed the standards set forth in *Reich.* Plaintiffs asserted the cases *De Asencio v. Tyson, Inc.*, 500 F.3d 361, 364 (3rd Cir. 2007) and *Garcia v. Tyson Foods, Inc.,* 474 F.Supp.2d 1240 (D.Kan.2007), support Plaintiffs' position finding in the aftermath of *Alvarez*, the *Reich* court would have approached their analysis of what constitutes a principal activity differently.  Tyson subsequently appealed the *Garcia* decision denying their motion for summary judgment on the grounds that the district court's decision to deny summary judgment changed Tyson's obligations under an injunction entered by the court in *Reich*.  Tyson argued,

> "Prior to the district court's order, *Reich* [II} foreclosed any possibility that Tyson could be charged with contempt for failing to compensate employees at non-union facilities for donning and doffing standard gear and sanitary over garments that *Reich* [II] found to be non-compensable.

7.    July 28, 2008 the Tenth Circuit addressed Tyson's appeal and itself opined on its prior decision in *Reich v. IBP*.  *See* Exhibit A.

8.    The 10th Circuit confirmed that it is arguable the Supreme Court's decision in *Alvarez* had the practical effect of undermining the *Reich* analysis and as such found it is the Supreme Court's decision in *Alvarez*, not necessarily the district court's decision in *Garcia,* which made Tyson susceptible to charges of contempt for violations of the *Reich* injunction. *See* Exhibit A, Slip Opinion at pg. 22, 25 – 26 and 28.  As a result, the 10th Circuit found it lacked jurisdiction to hear Tyson's appeal and it dismissed the appeal unfortunately without providing a discussion as to how *Reich* should be applied post *Alvarez*.

9.    Plaintiffs assert a response to Defendant's supplemental authority is necessary because the Tenth Circuit's acknowledgement that *Alvarez* conceivably changed the court's previous analysis in *Reich* supports Plaintiffs' argument that when successfully applying the "integral and indispensable" test[1], standardized equipment must be found to be integral and indispensable to a principal activity.

10.    Interestingly, the Tenth Circuit within its decision also discusses "the law of the district," stating "it is clear that there is no such thing as

---

[1] See two and three part tests to determine integral and indispensable found in Plain tiffs' Cross Motion for Summary Judgment, (Doc. # 92) at pg. 5.

"the law of the district". District court decisions cannot be treated as authoritative on issues of law." *See* Exhibit A, Slip Opinion at pg 26. As such the *Harrison* decision is not supplemental authority or controlling precedent as Defendant contends but instead is simply entitled to respect. *Id*.

11.    Furthermore, granting Plaintiffs leave to respond is appropriate in light of this Court's recent decision in *Burks v. Equity Group-Eufaula Division, LLC*, 2:06-cv-0181-TFM, (Doc. # 109), in which the Court rejects many of the points raised by Defendant in their Notice of Supplemental Authority. *See* Order attached as Exhibit B

Wherefore for the forgoing reasons, Plaintiffs request leave to Respond to Defendant's Notice of Supplemental Authority.

Dated:  August 8, 2008              Respectfully submitted,

**THE COCHRAN FIRM, P.C.**

/s/ Robert J. Camp
**ROBERT J. CAMP**
505 North 20th Street, Suite 825
Birmingham, AL  35203
(205) 244-1115 (Phone)
(205) 244-1171 (Fax)

*Attorney for Plaintiffs*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 8, 2008, I electronically filed the forgoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to:

Sandra B. Reiss
sandra.reiss@odnss.com

Lance Harrison Swanner
lswanner@cochranfirm.com

James J. Kelley
jkelley@morganlewis.com

Bernard D. Nomberg
bnomberg@cochranfirm.com

Lexer I. Quarmie
lquamie@morganlewis.com

Samuel A. Cherry, Jr.
scherry@cochranfirm.com


/s/ Robert J. Camp
**ROBERT J. CAMP**

# EXHIBIT A

FILED
United States Court of Appeals
Tenth Circuit

July 28, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

|  |  |
|---|---|
| ADELINA GARCIA; ANTONIO GARCIA; JERONIMO VARGAS-VERA; EFRAIN AGUILAR; PAULINA AGUILAR; ADELAIDA AGUIRRE; JOSE R. AGUIRRE; SALVADOR ALMANZA; MIGUEL AMAYA; ROGELIO ANDRADE; JESUS ANGUIANO; EFIGENIA ARANA; JOSE R. ARANA; RAMON ARANA; ALMA ARMENDARIZ; JORGE L. BANDA VALADEZ; DELFINO BARRAGAN; LUCIA BARRAGAN; RAMON P. BARRAGAN; HOLGA BENITEZ; BALTAZAR BONILLA; MARIA GUADALUPE BONILLA; CATALINA BUSTILLOS; BERNARDO CALDERON; ETELVINA CALDERON; GLORIA CALZADA DE CARILLO; MANUEL CALZADILLAS; JOAQUIN CAMACHO; ROBERTO CANO; ROSA M. CANO; ALBERTO CARRILLO; JAVIER CARRAVAJAL; LUIS CASTANON; MARIA ROSARIO CASTILLO; VICTOR CASTILLO; DAVID CASTRO; CIPRIANO CERNA; FLAVIO CHAVEZ; JOSE A. CHAVEZ; GRISELDA CLARO; JESUS CLARO; JOSE L. CONTRERAS; ELISEO PEREZ CORREA; AGUSTIN CRUZ; FLOR ANGELA CRUZ; LORENZO CRUZ; SOCORRO DE LEON; AURORA | No. 07-3162 |

CHAVEZ DE MONTES; JAVIER
DELGADO; JOSE N. DELGADO;
LILIANA MARTINEZ DELGADO;
LOREZO DELGADO; GILDARDO
RAMON DIAZ; ROSA D. DIAZ;
CARMELO G. DIAZ-SANTAMARIA;
ANA DURAN; EDGAR E. DURAN;
ABE DYCK; ELIZABETH DYCK;
FERNANDO H. ESCALANTE;
MARINA ESCALANTE; CANDIDO
HERNANDEZ ESCOBEDO; CARLOS
E. ESPINO; FRANCISCO ESTRADA;
HUMBERTO ESTRADA; MARIA
ESTRADA; AIDE B. ESTRADA
VITAL; JESUS FELIX; JOSE
FLORES; JUAN JOSE FLORES;
TOMASA FRAIRE; ERASMO
GALAN; MARICELA GALAN;
ROMUALDO GALAN; GLORIA
GALAVIZ; ROCIO GALAVIZ; CIRO
GALVEZ; SILVIA REYES GALVEZ;
AGUSTIN GARCIA; BERTHA
GARCIA; HUMBERTO PEREZ
GARCIA; LUZ E. GARCIA; MAURO
GARCIA; MOISES GARCIA; MARIA
S. GLORIA; ELIA GOITIA;
MELQUIADES GONZALES; JUAN
M. GONZALEZ; MARIA T.
GONZALES; MIGUEL LORENZO
GONZALEZ; ROSARI MELENDEZ
GRANDE; MANUEL GUERRERO;
SAMUEL GUEVARA; ANGEL R.
GUTIERREZ; EUSEBIO GUZMAN;
JUANA GUZMAN; LETICIA
GUZMAN; ROSENDO GUZMAN;
SILVIA GUZMAN; ELIZABETH C.
HAMILTON; HERBER RUFINO
HENRIQUEZ; ALBERTO
HERNANDEZ; EFREN
HERNANDEZ; ELIDA
HERNANDEZ; FELICIANO

-2-

HERNANDEZ; FIDEL HERNANDEZ;
GUADALUPE HERNANDEZ;
JESUS HERNANDEZ; JORGE
HERNANDEZ; MARIA
HERNANDEZ; MIGUEL ANGEL
HERNANDEZ; ROSA HERNANDEZ;
WENCESLAO C. HERNANDEZ;
WILFRIDO HERNANDEZ; ADRIAN
S. HERRADA; AIDA HERRADA;
ALFONSO HERRADA; MARIA
GUADALUPE HERRADA;
ELIZABETH HERRADA DE CRUZ;
RANDY HOSKINSON; OSCAR
INTERIANO; MARTIN H. ISCO;
MARGARITA LEANOS; PEDRO
LEYVA; CELSA LEYVA
DE GARCIA; BLANCA E. LIRA;
DIANA LOPEZ; GENARO LOPEZ;
ISMAEL LOPEZ; LAURA LOPEZ;
LAURO LOPEZ; MARGARITO
LOPEZ; MARIA DEL CARMEN
LOPEZ; MARIA DE LA LUZ LOPEZ;
MAURA LOPEZ; MIGUEL A.
LOPEZ; MIGUEL Z. LOPEZ;
RODOLFO LOPEZ; MODESTO
LOYA; JOSE A. LUJAN; MANUELA
O. GARAY DE LUJAN; BEATRIZ
MADERA; MONICA MARMOLEJO;
FELICIANO MARTINEZ; FIDEL
MARTINEZ; GANDINO MARTINEZ;
LETICIA MARTINEZ; NESTOR
MARTINEZ; RAFAELA ORTIZ
MARTINEZ; SATURNINO
MARTINEZ; MARIO MAYA;
DOMINGO MARTIN MEDINA;
RAMIRO MEJIA; MARIA DORA
MENDEZ; RODOLFO MENDEZ;
BEATRIZ MENDOZA; IRENE E.
MERINO; DIONILA MEZQUITA;
MARIA MOLINA; MAXIO A.
MOLINA; SERGIO A.

-3-

MONRREAL-ROCHA; RAUL
MONRROY; ALFONSO MONTANO;
LUIS MONTERROZA; ADRIAN
MORALES; FRANCISCA
MAGALLANES MUNIZ; ALFONSO
MURCIA; CARLOS MURGUIA;
ABRAHAM SOSA; ABEL
NAVARRETE; ALBERTO TAMAYO;
LORENZO NAVARRETE; SONIA
TAMAYO; RAMON NAVARRETTE;
ALISIA NIETO; JOSE J. TERRAZAS;
ISAAC OLGUIN; MARIA
TERRAZAS; JAVIER OLGUIN;
MARY OLGUIN; ALBARO TORRES;
MARIA D. OLIVAS; SANG THI
TRAN; LAURO ORTEGA; THANH
NGOC TRAN; MARIA ROSA
ORTEGA; MARICELA LARES
ORTEGA; MARIA URRUTIA;
YOLANDA ORTEGA; ROLANDO
VAILLANT; FRANCISCO A.
ORTEZ; MARIA E. VALADEZ;
MANUEL OSORIO; YASMIN
VALADEZ; JOSE RAUL PALACIOS;
MARIA ANGELINA PALACIOS;
GILBERTO ARMANDO VALENCIA;
MIGUEL PERALES; ABRAHAM
VALLEJO; BERTHA PEREZ;
GABRIELA PEREZ; BERTHA
VALLEJO; JORGE L. PEREZ;
MARIANA VANEGAS; MARTHA
PEREZ; GERARDO C. VARELA;
JOSE ALEJANDRO PINEDA;
ALEJANDRO PONCE; JOSE
VASQUEZ; IRMA PONCE;
RAYMUNDO VASQUEZ; JUAN
PONCE; SALVADOR VASQUEZ;
JOSE VICTOR PRIETO; ROSA
MARIA VELASCO; EUGENE
PROKOPINSKI; SAUL VELASCO;
JUAN ENRIQUE RAMIREZ;

-4-

MARIA RAMIREZ; NICOLAS
RAMIREZ-ACOSTA; JOSE
RENTERIA; ALMA RESENDIZ;
ESTEBAN RESENDIZ; SANDRA
RESENDIZ; JOSE A. REYES;
FRANCISCO J. VELAZQUEZ;
IRMA G. VELAZQUEZ; MIRIAM
DEL CARMEN REYES; FRANCISCO
MONTES RIOS; REYMUNDO
VIANA; SALVADOR ALVAREZ
RIVERA; JESUS VILLEDA; JORGE
ROBLES; SANTIAGO VILLEGAS,
JR.; LUZ M. ROCHA; SERGIO
ZAMORA; GUADALUPE
RODRIGUEZ; JOSE R.
RODRIGUEZ; MARINA
RODRIGUEZ; RAFAEL
RODRIGUEZ; ROSA RODRIGUEZ;
SALVADOR ROMERO; RUBEN N.
SALAS-ORTIZ; RICARDO
SALDANA; SIXTO SALDANA;
CANDIDO MARINO SANCHEZ;
ROSA MARIA SANCHEZ; RAMON
SANDOVAL; DANIEL
SANTACRUZ; LUIS A.
SANTACRUZ; JOAQUIN
SANTOYO; SOFIA E. SAUCEDA;
ALEJANDRO SERRANO;
ARMANDO SERRANO; FERNANDO
SERRANO; SERGIO SERRANO;
BRENDA SERRATO; RAFAEL
SOLIS; DAVID S. SOLORZANO;
AARON SOSA; MIGUEL
AGUILERA; JUANA ALMANZA;
MANUEL ALMANZA; BENITO
BARRAGAN; MARIA CERRITOS;
ISMAEL CHAIREZ; SARA
CHAVARRIA; RAQUEL ESTRADA;
ANA R. FLORES; JOSE HUERTA;
SOPHIA LAMDERO; ARNULFO
LIRA; GABRIELA LIRA; JULIA

-5-

LOPEZ; MANUEL DE JESUS
LOPEZ; MARIA A. MARTINEZ;
MARIA GUADALUPE MARTINEZ;
MAREIAL MORALES; ESTELA
MURGUIA; ARMANDO NUNEZ;
MICHELLE ORTEGA; OMAR
ORTEGA; LUIS ORTIZ; ROSALIA
PEREZ; SOCORRO PEREZ; MARIA
PEREZ-SERRANO; MELANIA
PINEDA; JOSE RAMIREZ; PETER
RAMIREZ; STEVEN RAMIREZ;
DIANA RAMOS; BLANCA
SALMERON; FELIX SOLOZANO;
VASHON L. TELFAIR; ARTURO
VILLANUEVA; IRINEO ZEPIEN;
CARLOS ACOSTA; ELIAS
MURILLO AVALOS; HUGO
CASTRUITA; ALICIA MUNOZ
HERNANDEZ; FRANCISCO
HUEREQUE; ALICIA MARTINEZ;
JOSE G. MARTINEZ; PEDRO
NEAVE; CATALINA ALVARAEZ
DE NICHOLS; EDUARD NICHOLS;
MARIA DEL CARMEN PEREZ;
MARIA MARGARITA RENOVA;
ALICIA SANCHEZ; MACARIO R.
FARIAS; PRIMITIVO GALVEZ;
MARIA LOURDES GONZALES;
GASPAR BENITO LUX; ENRIQUE
MUNOZ; GREGORIA RAMIREZ;
SALVADOR SANCHEZ; AURA
SANTACRUZ; JOSE I. VALDEZ;
HECTOR GARCIA VALLES; JESUS
AGUILAR; MARIA A. ARREOLA;
FEDERICO G. BALTAZAR;
ARMANDO CASTILLO; ABIGAIL
CHAIREZ; MARIA ESTRADA
CHAIREZ; PATRICIA CORREA;
ANGELICA MARIA NUNEZ
ENRIQUEZ; JOSE ANSELMO
ENRIQUEZ; FRANCISCO

-6-

ESQUIVEL; HUMBERTO
ESQUIVEL; TOMAS FELIX;
MARIA FLORES; SAMUEL GOMEZ;
ELIZABETH GONZALES; KRISTAL
GONZALEZ; RONALD W.
HARDEN; TEODOLO HEREDIA;
MARIO HERRERA; RIBORGERTO
JOHNSON; JOSE DE JESUS
LIAMAS; LUIS E. LOZANO;
MARIO CHAIREZ MARES;
EUSEBIO MARROQUIN; MARIA
NOELI MONTOYA; NORMA
NAIERA MORALES; HUGO
ORTEGA; ROSALBA ORTEGA;
GONZALO PADILLA; MERCEDES
RAMIREZ; SALVADOR ROJO;
RODOLFO RUBALCAVA;
ROSINDA DE JESUS UCLES;
IGINIO CRUZ; FELIPE BRAVO;
CHARLES VELAZQUEZ BAEZ;
REYNA LOPEZ; AURORA
ALDANA; EDUARDO F. NOLASCO;
PEDRO BALTAZAR; EDDIE
PRIETO; JACIMTO ALMAREZ;
CARLOS MARTINEZ; MARIA
MARTINEZ; JOSEFINA GARCIA
DE RODRIGUEZ; FELIMON
RODRIGUEZ; JOSE MARTIN
HERNANDEZ; JOSH LUNDBLADE;
NORA DURAN; SANDRA M.
HERNANDEZ ALFARO; FAUSTO
VASQUEZ; JOSE HERNANDEZ;
JORGE HINOJOSA; SEVERIONA
HINOJOSA; GILBERTO GUILLEN;
CRUZ P. RAMIREZ; VIDALINA G.
GALVAN; ANTHONY GARCIA;
ASCENCION GARCIA; ROBERTO
AGUILAR; ROBERTO ALMEDA;
BLANCA BENITEZ; DAVID
CHAVEZ; LUIS ALBERTO
SANTACRUZ CASTANEDA;

-7-

MARTIN FACIO; FEDERICO
CHAVEZ; AARON FINDLEY;
ANTONIO HINOJOS; MARIA
LAGUNA GUERRA; JOEL GARCIA
MAEDA; JOSE MORALES;
ELIZABETH ONTVEROS; JOEL
ORTEGA; MANUELA ORTEGA;
JUAN REYES; PEDRO REYES;
HELADIO RIVAS; CARMELITA
ROSALES; FEDERICO ROSALES;
ALFREDO RUTIAGA; REYNA
SALINAS; RAMON SOTO; JOSE
ARRAS; MARIA DEL CARMEN;
ELAINE ROMERO; CARLOS
MENDIAS; SABRINA GARCIA;
ADAMS MURILLO; AMALIA
MORALES; MICHAEL LIBARRA;
ARTURO CELIS; SONYA MARIBEL
HERNANDEZ; MARIA GERRERO;
WILFRIDO INGLES; EDELMIRA
VELAZZO; SHARON SMITH;
RAMON PEREZ; CINDY
CISNEROS; DORA ALICIA
MARTINEZ; AMADO FIGUEROA;
GUADALUPE QUESADA;
PATRICIA ANGUIANO; JOSE LUIS
BARRON MENDEZ; MARIA
PONCE; LEONARDO GODINEZ
VILLALOBOS; J. R. OTERO;
ALVARO TORRES; FIDEL REYES;
ISMAEL LOPEZ; JOSE VALADEZ;
RAFAEL RUIZ; LEOPOLDO
SANCHEZ; SAUL RIVERA;
MIGUEL ENRIQUEZ; RICARDO
MARTINEZ; GLORIA GARCIA;
JOSE MINEROS; INES LOPEZ;
PEDRO S. HERNANDEZ;
ALEJANDRO SOLORZANO;
FRANCISCA QUINTANA; CRUZ
GUEVARA; CRISTINA TUCKER;
PASCUAL BARCENAS; MIGUEL

-8-

CORTEZ; MARIA ELENA GOMEZ;
ROQUE SOTO; ARMANDO
AGUIRRE; JESUS ALVAREZ;
GALINDA BANUELOS; LETICIA
CARDEMAS; MARIA DAMIAN;
GUILLERMO DOMINQUEZ; CARLA
ESPINO; OSCAR GALVEZ;
BERNABED GRAMAJO; FRANK
GUEBANC; FRANCISCO
GUERRERO; ANTONIA
HERNANDEZ; LETICIA
HERNANDEZ; MARCO ANTONIO
HERNANDEZ; JOSE MARTINEZ;
JOSE LUIS MEDINA; MARTHA
MARIA MENDIOLA; SILVIA
NAVAR; DAVID RAMIREZ; MARIA
I. REYES; FRANCISCO RICO; JUAN
RICO RODRIQUEZ; LAWRENCE
STEADHAM; MARTIN TERRAZAS,
JR.; BERTHA F. TREJO; JUAN
VIRQUEZ; MARIA R. PENA;
ANTONIO G. VILLEGAS; ISAAC
ADAME; CALIXTO AGUILAR;
ROSA BARAHOMA; ISAAC
BONILLA; JAVIER CASTELLANOS;
MARIA CASTRUITA; LUIS
ORLANDO COTO; FELIX CRUZ;
HIGINIO CRUZ; MARIA CRUZ;
JUAN M. CALDERON
DOMINQUEZ; JOSE INES
SANCHEZ ESPINOZA; JUAN
FIGUEROA; VICTORIANO
GALVEZ; MARIA E. GOMEZ;
ELENA GONZALES; ROBIN E.
HERNANDEZ; BERTA HERRERA;
BRENDA LEIJA; HERLINDA
LEYVA; EDUARDO LOMELIN;
NOE LOPEZ; AURELIO MARQUEZ;
BARBARO MENDOZA; LUISA
MIGUEL; FLORISELA NUNCIO;
GILBERTO GARCIA PONCE;

-9-

CRISTINA RENTERIA;
HERMENEGILDO RESENDEZ;
MARIA ELENA RETANA;
LOCADIO ROBERTO RODRIGUEZ;
ARMANDO RICO; MARIA
RODRIGUEZ; MARIA RUCKER;
BLANCA SALAZAR; PATRICK
SMITH; MARIA SOLIS; ATANACIO
SOLORSANO; SAUL LOPEZ
SATELO; LIDIA SOTELO; JOSE
ACOSTA; MARIA GUEVARA;
CLARA INES LOPEZ; RAMIRO
ADAME; HUMBERTO
ARREDONDO; MARTHA A.
ARREDONDO; CLAUDIA
CARDONA; VALENTIN CASTRO;
EQUILEO CISNEROS; JESUS
GASPAR ESCOBEDO; MARIA
ISABEL FELIX; HERMINIO PINO
GRACIANO; JOSE R. GUEVARA;
LORENA GUEVARA; ALMA ROSE
HERNANDEZ; CAROLINA
HERNANDEZ; EMILIO LANDEROS;
EDGAR LOZA; EDMUNDO
NAVARRETE; ANTONIO PUENTES;
JUAN A. PUENTES; MAYRA
PUENTES; JOEL RAMOS;
EDLFANIO REYES; JOSE WIS
SALAS; ESEQUIEL SALAZAR;
ALMA D. VELAZAQUEZ;
ALFREDO AGUILAR; ROSE
AGUILAR; JOSEFINA ALCANTAR;
JUANA ALMANZA; ISMAEL
ALVARADO; CAUDELARIO
BONILLA; OSCAR A. CABRERA;
AGUSTIN CERVANTES; JOSE
CERVANTES; MARIA
CERVANTES; ROSA M.
CERVANTES; MARTIN CHAIREZ;
MARIO FAJARDO; MARTHA
HERNANDEZ; MARCO HUERTA;

-10-

ADELAIDO LEAL; IVONNE J.
MALONE; JESUS MENDOZA;
MARIA C. MORALES; JUAN
MUNOZ; LIMBO ADRIANA PEREZ;
JOSEFINA PRIETO; SALBADOR
RASCOM; LINO SALAS; ANGEL
SEIJAS; CRISTINA VARGAS; ANA
MARIA ASTORGA; TERESA
ESCOVAR; MANUEL H.
GONZALEZ; ALICIA HERNANDEZ;
RAUL HERNANDEZ; ANA MARIA
JIMENEZ; MARIA LEON; SAMUEL
LIBERTO; ROSA MACIAS; JAVIER
MARTINEZ; JAIME MONARREZ;
IVAN MONTES; JUAN NUNEZ;
ANTONIO QUESADA; MARIA
RIVERA; GABRIEL RODRIGUEZ;
JOSE TOPETE; JOSE VLLOA;
ROBERT WILSON; MIGUEL LOPEZ
ZAVALA; MARIA DE LA LUZ
ALEJO; ASENCION BARRIOS;
GLORIA BENITEZ; ADRIAN
MARTINEZ BONILLA; MARTIN
DOMINQUEZ; ANGELICA I.
GUADERRAMA; SALVADOR
HOLQUIN; MARGARITA OLIVAS;
CELERINO PACHECO; MARTHA
PENA DE HERNANDEZ; MARIA
DEL ROCIO SOTELO; MIGUEL
SOTO RODRIGUEZ; JUVENAL
SOTELO; ELEVTERIA TORRES
ELIAS VELASCO; SAID ABID;
DANNY ALVIDREZ; CESAR
AQUINO; JUAN ANTONIO
BONILLA; GRISELDA CORADO;
ABDISALAN GUARAD; EDIN E.
GOMEZ; DAVID HERNANDEZ;
ESPERANZA HERNANDEZ; JOSE S.
LAZARIN; INOCENTE LOPEZ;
ABDULKADIR MOHAMED OMAR;
CLAUDIA PENA; INOCENTE

-11-

PEREZ SANCHEZ; ROCIO PEREZ;
JOSE MANUEL PINEDA; RUBEN
ROBLES; MARGARITA ROMOS
ROJAS; RUSSELL SAUCEDO;
MARTHA SANCHEZ; ARACELI
ALARCON; BENJAMIN ALVAREZ;
ROSA M. BALTAZAR; GILDARDO
BARRAGAN; JUAN CHAVEZ;
LAQUITA CLARK; ANTONIO
MARTINEZ; ANTONIO MARTINEZ
CANO; JUAN FRANCISCO
MENDEZ; RICHARD MOLINA;
MARIA E. MONTANO; JUAN F.
MUNOZ; GREGORIO ORTEGA;
MARIA FELIX ORTEGA; MICHELL
PINEDA; CARMEN RAMIREZ;
IMELDA ANILES; JOSE ARANDA;
ADRIAN ARCE; LUIS CHAVEZ;
GERARDU CONTRERAS; JOSE L.
FELIX; RAFAEL G. GALLARDO;
MARIA GOMEZ; OLGA V. GOMEZ;
MIGUEL GONZALES; MARIA
LUISA HERRERA; FLORENCIA
CORONADO JUARADO;
GUADALUPE LOPEZ; TELESFORO
MONTELONGO; ERNESTINE
MAGALLANES RIOS; CHRIS
MORALES; FRANK RIVERA;
JAVIER HERNANDEZ RIVERA;
VILMA RUBIO; FEDERICO A.
SOLIS; SALVADOR TOQUINTO;
MARTIN ALVAREZ; MARCO
ANTONIO ARTEGA; EDITH A.
BARRERA; JOSE OVIDIO BENITEZ;
JOSE L. CORTEZ CASTRO; TONY
CRUZ; ROSAMARIA MONTES
DE CORTEZ; CARLOS
DOMINGUEZ; EUSEBIA
DOMINGUEZ; JOSE J. HERRERA
GALDAMEZ; OBED LIRA; MIGUEL
LOPEZ; VICENTE MARQUEZ;

-12-

MARIA L. MONTELONGO;
AURORA RAMOS; JESUS RAMOS;
LAURO RIOS; FELIPE ROBLEDO;
ELIDA SALVADOR; MARIA
SOLORZANO; MANUEL SANCHEZ;
DEBBY G. TORRES; GONZALO
ALBARRAN; JASINTO ALMARAZ;
MARIA E. ALMARAZ; MARIA
SARA ALVAREZ; RAFAEL
ARAGOMEZ; JUAN ARREOLA;
JOSE R. BOTELLO; HECTOR
CASTILLO; SAN JUANA
CAVAZOS; MARTIN CRUZ;
FLORINA DE LEON; ROLANDO
DE LEON; ABDON GARCIA; JOSE
GOMEZ; VICTOR HERNANDEZ;
NOEMI HOLGUIN; CARLOS
MARTIN LEYVA; JOSE DE JESUS
LLAMAS VALLE; BERTHA A
RODRIGUEZ; ARMANDINA
SALAZAR; LEONARDO SALAZAR;
GUILLERMINA TREJO; JULIA E.
TURCIOS; TOMAS VALDIVIA;
FRANCISCO O. YESCAS; YADIRA
ALBARRAN; CLARA M. ALVARES;
SERGIO AVITIA; OBDULIA
BARCENAS; EFRIAN DE LEON;
MAURICIO GALLEGOS;
MAURO I. GARCIA; JACINTO
GONZALES-CALVARIO; LUIS I.
GONZALEZ; JOSE F. GUEVARA;
ALEJANDRO LOPEZ; ANDRES
LOPEZ; MARIA LOPEZ; MONICA
LOPEZ; GLADYS MERINO;
CRISTINA NUNGARAY;
ALEJANDRA NUNO; RICARDO
PINTO; JOHAN M. PULIDO;
CRISTIAN RAMIREZ; MAURICIO
RAMIREZ; SOFIA REYES; JOSE
GONZALEA RIVERA; MIGUEL
RIVERA; ANDREA RODRIGUEZ;

-13-

GERARDO RONQUILLO;
DOMINGA SALDANA; ROSA
SALDIVAR; DIEGO SANCHEZ;
JESUS SORIANO; LEOBARDO
TREJO; OSCAR VASQUEZ; JOSE
ACOSTA; MARTIN ALMARAZ;
FERNANDO ALVARADO; BLANCA
L. BENITEZ; ERICK JOSE CAMPOS;
JOSE ENRIQUEZ; ADELINA
ESPINO; GERMAN FERMAN; J.
CARMEN FLORES; MARTHA
FRANCO; CARMEN I. GONZALEZ
ROSA GONZALEZ; VICTOR
MANUEL REYES; MANUELA RIOS;
MARTIN RIOS; FELIPE TENA;
MARGARITA MEZA DE TENA;
IRMA VICENTE; FABIAN
VILLATORO; ERNESTO
ALCANTARA; ELMER LOPEZ;
DOMINGO SIERRA; JOSE
RODRIGUEZ; DELIA
VALENZUCLA; DARLENE
ACEVEDO; JOSI ANGEL AMAYA;
AUGUSTIN AVILA; MANUEL
ANGEL BALBANEDA; JOSE
BARRERA; JUAN PABLO
CANQLES; MANUEL CISNEROS;
RAFAELA CISNEROS; HERMILA
CORRAL; LUZ IDALIA CRUZ;
CASTELLANO DOMINGUEZ;
CRECENCIANO GARCIA;
PATRICIA GARCIA; JUAN
MANUEL GONZALEZ; ANTONIO
HERNANDEZ; ISRAEL
HERNANDEZ; SOPHIA LANDERO;
ERIC LEDESMA; GUILLERMINA
MARTINEZ; INES MUNOZ; MARIA
NUNEZ; JONATHAN OLSON;
NILLER PINTO; PETER RAMIREZ;
ROBERTO RAMIREZ; JOSE R.
RECINOS; JOSE ALBERTO

-14-

RODRIGUEZ; MARIA GONZALEZ
ROMERO; NANCY ROMERO;
HECTOR SALDIVAR; SIMEON
SALDIVAR; ELISEO R.
SANDOVAL; JOAQUIN SANTOYA;
BRENDA TERRAZAS-LEYVA;
JESUS H. TERRAZAS; MARIA L.
TERRAZAS; HECTOR VALDEZ;
JESUS VALLEJO; GUADALUPE
ZUNIGA; MARIA BERTHA
(BAZAN) CURTIS; MARIA GAMEZ;
SULEMA JIMINEZ; JOHN R.
JUAREZ; CARLOS ROLVERA;
NATALIA AMAYA; JOSE
CARMONA; MARIA CARMONA;
SARAFIN CLARO; ARCADIO
FIGUEROA; JUANA FUENTES;
RAMON GOMEZ; NICOLAS
GUTIERREZ; MARIA G. GUZMAN;
MARIA GUZMAN; ADRIAN
HERNANDEZ; ARMANDO
HERNANDEZ; RAMON
HERNANDEZ; TERESA
HERNANDEZ; JOSE M.
HERNANDEZ-TORRES; ADRIAN
LEON; ESTEVAN LUNA; JOSE
LUNA; ERICA JUDITH MAJALCA;
ROSA MARKOTTE; FELIPE
MEDINA; JUAN MEDINA;
CONSUELO MOLINA MEZA;
AMPARA NUNEZ; MARIA
ONTIVEROS; MARIA CARMEN
PEREZ; JUAN MORENO;
FILIBERTO SANCHEZ; SERGIO
VERA; SAUL SANCHEZ; ROSA
VELASQUEZ; YENNY VENTURA;
MAXIMINO VIVIDOR; MARIA
CRISTINA ZARAGOZA; MARIA
HERNDANDEZ ADAME; RAUL
AGURRE; CECILIA CHAVEZ;
EVANGELINA CRUZ; JOSE A.

CRUZ; ALICIA DELGADO;
WILLIAM A. DUCOS; ADAN
FERREL; ETELVINA GARCIA;
JOEL GARCIA; ROCENDA GOUZ;
ROCENDA GOUX; JESUS
GUEVARA; ANTONIA
HERNANDEZ; MANUELA C.
HERNANDEZ; WESCESLAO
HERNANDEZ; FERNANDO LEOS;
DORALIA LIRA; VIDAL MADERA;
ROSA MAJALIA; ROSALVA
MARTINEZ; JAVIER MORALES;
ANATOLIO NUNEZ; DANIEL
NUNEZ; MARTIMIANA NUNEZ;
ATENOJENES MELGAREJO
RAMOS; RUBEN RAYAS; MARIA
C. RINCONS; CIPRIANA
RODRIGUEZ; EDUARDO
RODRIGUEZ; JOSE J. RODIQUEZ;
ERNEST DE LA ROSA; JOSE
HERNAND SANDOBAL; JUANA
SEIJAS; LEOBARDO TREJO;
RONALDO VAILLANT; ALBERTO
GONZALES; ROXANNE GAYLE
GUEBARA; BENITA LOZANO;
MARIBEL RENTERIA; RENEE D.
CANNON; ROBERT R. KRUMME;
CONNIE J. MASENTHIN; DORINDA
SNYDER; RIBOERTO ARVIZU,
individually and on behalf of a class of
others similarly situated,

   Plaintiffs-Appellees,

v.

TYSON FOODS, INC.;
TYSON FRESH MEATS, INC.,

   Defendants-Appellants.

-16-

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 06-CV-2198-JWL)

Submitted on the briefs:*

Joel M. Cohn, Michael J. Mueller, Evangeline C. Paschal, Christopher M. Egleson, Akin Gump Strauss Hauer & Feld LLP, Washington, D.C., for Defendants-Appellants.

George A. Hanson, Eric L. Dirks, Stueve Siegel Hanson LLP, Kansas City, Missouri, for Plaintiffs-Appellees.

Before **MURPHY, McKAY**, and **ANDERSON**, Circuit Judges.

**MURPHY**, Circuit Judge.


Defendants-appellants Tyson Foods, Inc. and Tyson Fresh Meats, Inc. (collectively, "Tyson") appeal from the district court's interlocutory order denying their motion for partial summary judgment. We ordered the parties to submit briefs addressing whether this appeal should be dismissed on the ground that the order appealed from was not final. Tyson argues that we have jurisdiction over the appeal under 28 U.S.C. § 1292(a)(1) because the

---

\* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

interlocutory order had the practical effect of modifying an injunction that had been entered against its predecessor-in-interest in another case, to which Tyson was now subject. Tyson's argument is that (1) the injunction in question requires it to comply with a certain provision of the Fair Labor Standards Act of 1938 ("FLSA"), (2) the interlocutory order denying summary judgment changed how that provision of FLSA is interpreted in the district, and (3) the interlocutory order therefore had the practical effect of modifying the injunction. We disagree. Because we hold that the interlocutory order had no precedential effect and could not have modified the injunction, we dismiss the appeal.

I.

Consideration of our jurisdiction over this appeal therefore requires analysis of the interplay between the previous lawsuit in which the injunction was entered and the present lawsuit. The previous lawsuit was brought more than fifteen years ago against IBP, Inc., a company that slaughtered cattle and swine and processed and packaged the beef and pork. It was brought by Robert Reich, the Secretary of the Department of Labor ("*Reich* Case") under the FLSA. The second lawsuit is the class-action case presently before us in which the numerous plaintiffs, on behalf of themselves and the class, have accused Tyson, also in the business of slaughtering cattle and swine and processing and packaging beef and pork, of, among other wrongs, violating the FLSA.

-18-

In the first phase of the *Reich* Case, *see Reich v. IBP, Inc. (Reich I)*, 820 F. Supp. 1315 (D. Kan. 1993), the district court held that the time spent by the IBP employees donning and doffing of *standard* protective gear (hard hats, ear plugs, safety footwear and eyewear) ("Standard Gear"), and donning and doffing sanitary outergarments, was not time for which those employees had to be paid under FLSA. The district court, however, also held that the time spent by the IBP knife-wielding employees donning and doffing *specialized* protective clothing and gear was compensable.

Following certification by the trial court under 28 U.S.C. § 1292(b), this court upheld the district court's ruling that the donning and doffing of the outergarments and Standard Gear was not compensable. *See Reich v. IBP, Inc.* ("*Reich II*"), 38 F.3d 1123, 1125 (10th Cir. 1994). We held that donning and doffing Standard Gear was not "work" under the FLSA. *Id.* at 1125-26. We held that the time spent donning and doffing the protective outergarments also was not compensable because it was "essentially time used to change clothes" and because the wearing of such outergarments was primarily for the employees' benefit and, therefore, not "integral and indispensable" to IBP's operations. *Id.* at 1126.

In 1996, in the second phase of the *Reich* Case, the district court entered an injunction (*Reich* Injunction) ordering IBP to not employ any employee "for workweeks longer than 40 hours without compensating such employee for his or her employment in excess of 40 hours per workweek at a rate not less than one

-19-

and one-half times the regular rate at which he or she is employed." Aplt. App.,
Vol. II at 470; *Reich v. IBP, Inc.*, No 88-2171-EEO, slip op. at 2 (D. Kan. July 30,
1996).

After the *Reich* Case, IBP and Tyson merged and Tyson succeeded to IBP's
assets and liabilities. As noted above, Tyson's argument to this court is that the
district court's order denying its motion for partial summary judgment had the
practical effect of modifying the above portion of the *Reich* Injunction.
Therefore, despite the fact that appeals from denials of summary judgment are
generally dismissed on jurisdictional grounds as appeals from interlocutory
orders, Tyson argues that here it is appealing an interlocutory order modifying an
injunction, over which we have jurisdiction under 28 U.S.C. § 1292(a)(1).

Tyson argued in its motion for summary judgment that judgment should be
entered in its favor as to any plaintiff's claim for compensation for time spent
donning and doffing sanitary outergarments and Standard Gear, because *Reich II*
shut the door on claims that those activities were compensable. The district court
denied summary judgment on the ground that the Supreme Court's decision in
*IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), cast doubt on the analysis behind our
holding in *Reich II*. The district court held that summary judgment was
inappropriate because it was "convinced that the Circuit, if given the opportunity
to revisit the issues in *Reich* [*II*], would approach its analysis of the pertinent
issues differently in light of *Alvarez* regardless of whether the Circuit ultimately

-20-

reached the same conclusions concerning compensability." *Garcia v. Tyson Foods, Inc.*, No. 06-2198-JWL, slip op. at 11 (D. Kan. Feb. 16, 2007). The district court held that it believed this court "*might* reach a different conclusion on compensability if analyzed in the context of *Alvarez*," but that even if we did not, further analysis would be required. *Id.* (emphasis added). The district court, therefore, did not rule that the time spent donning and doffing sanitary outergarments and Standard Gear was compensable after *Alvarez*, but simply that *Reich II* no longer definitively decided the question.

Tyson argues on appeal that the district court's order denying summary judgment "fundamentally changed the FLSA requirements that are incorporated by reference in the injunction." Aplt. Br. in Support of Jurisdiction at 8. In other words, it argues: (1) that the *Reich* Injunction ordered IBP, and now Tyson, to pay its employees—now and into the future—for overtime at a rate not less than one and one-half times the regular rate, (2) how much time and overtime an employee works can only be determined by reference to what work is compensable under present FLSA law, and (3) the district court's order denying summary judgment "changed the [present FLSA] law and thus the injunction itself." *Id.* at 11. It argues:

> Prior to the district court's order, *Reich* [*II*] foreclosed *any possibility* that Tyson could be charged with contempt for failing to compensate employees at non-union facilities for donning and doffing of standard gear and sanitary overgarments that *Reich* [*II*] found to be noncompensable. The district court's decision here,

-21-

> however, opens the possibility that the DOL could seek contempt
> charges against Tyson for the very acts that were deemed
> noncompensable in *Reich* [*II*].

*Id.* at 12.

As will be explained in detail below, we disagree that the district court

order at issue here had any practical effect on the *Reich* Injunction. While it is

certainly arguable that the Supreme Court's decision in *Alvarez* had a practical

effect on the *Reich* Injunction, that is not our concern at this point in time.

II.

"As a general rule, only final decisions of the district court are appealable."

*Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 477 F.3d 1151, 1153 (10th Cir.

2007) (citing 28 U.S.C. § 1291). Nevertheless, as noted above, under 28 U.S.C.

§ 1292(a)(1), the courts of appeal for the various circuits have jurisdiction over

"[i]nterlocutory orders of the district courts of the United States, . . . or of the

judges thereof, granting, continuing, modifying, refusing or dissolving

injunctions." Here, Tyson claims that the district court's order denying summary

judgment in this case modified the *Reich* Injunction.

The parties agree that the order denying summary judgment did not

expressly modify the *Reich* Injunction; it was, after all, entered in a separate legal

proceeding. But Tyson argues that the order had the practical effect of modifying

the injunction. As discussed above, Tyson's argument has two premises: (1) that

the *Reich* Injunction ordered it to comply with a certain provision of the FLSA

-22-

(i.e., properly compensating employees for overtime), and (2) that the district court's order denying summary judgment changed what activities are compensable under the FLSA in the district, thus changing how much time its employees are considered to be working and having the practical effect of modifying the *Reich* Injunction.

### A.

As to Tyson's first premise, we note that following the district court's order denying partial summary judgment, Tyson filed a motion under Federal Rule of Civil Procedure 59(e) asking the district court to alter or amend its denial. In its motion, Tyson asked the court to reverse its decision or, if it decided not to do so, to "acknowledge it ha[d] modified the [*Reich*] injunction, either explicitly or as a practical matter, by ruling that the standard items and 'sanitary outergarments' are no longer non-compensable as a matter of law." Aplt. App., Vol. II at 340. In its reply to plaintiffs-appellees' response to the motion, Tyson clarified its claim. It argued that "[b]y eliminating a long-standing defense that certain clothing items . . . are non-compensable as a matter of law, the Court has effectively modified the *Reich* injunction's admonition that IBP was to take action consistent with the 'activities found [by Judge O'Connor and the Tenth Circuit] to be compensable under the Act.'" *Id.* at 382-83 (*quoting Reich*, No. 88-2171-EEO, slip op. at 3) (second alteration in original). Tyson argued that the district court's order denying summary judgment "wholesale eliminated defenses that both the

-23-

[Department of Labor] and IBP clearly understood were available in light of the

Tenth Circuit's liability decision in *Reich [II]*." *Id.* at 383 n.2.

In denying Tyson's motion, the district court held "[t]he court . . . did not

modify the *Reich* injunction and its [order denying summary judgment] did not

have the practical effect of modifying the injunction." *Garcia v. Tyson Foods,*

*Inc.*, No. 06-2198-JWL, slip op. at 3 (D. Kan. May 2, 2007). But the district

court never reached Tyson's second premise, i.e., that the court's order changed

the law regarding what activities are compensable under the FLSA in the district.

Instead, the court determined that the *Reich* Injunction only compelled

compliance with the FLSA in regard to the activities that the *Reich* court found to

be compensable. The court held that

> [n]one of the provisions of the injunction addresses the donning and
> doffing of standard clothing or any other activity that the *Reich* court
> concluded was non-compensable. In fact, the injunction speaks only
> to those activities found by the *Reich* court to be compensable and
> the injunction directs defendants to take certain actions with respect
> to only those activities.

*Id.*

Nevertheless, the district court's determination that the *Reich* Injunction

would not compel compensation for the activities found non-compensable in

*Reich I* and *Reich II* is not binding on this court. Therefore, we will accept,

purely for the sake of argument, Tyson's contention that the *Reich* Injunction is

properly interpreted as a general order to properly pay overtime under the FLSA, however that statute might be later interpreted.

B.

As to Tyson's second premise, i.e., that the order denying summary judgment had the practical effect of modifying the *Reich* Injunction, we have held that "courts of appeals insist on looking beyond the captions and vocabulary attached to district court orders to determine the actual, practical effect of an order before exercising appellate jurisdiction under § 1292(a)(1)." *Pimentel*, 477 F.3d at 1153. Thus, "[w]hether an order . . . modifies an injunction is determined by its actual, practical effect." *Id.* at 1154. When a district court's order does not expressly or technically modify an injunction, but has the practical effect of modifying an injunction, this court has jurisdiction where an appellant will suffer "a serious, perhaps irreparable, consequence" that "can be effectively challenged only by immediate appeal." *Hutchinson v. Pfeil*, 105 F.3d 566, 569 (10th Cir. 1997) (quotation omitted). Citing to these propositions, Tyson argues that the district court's order "fundamentally changed" the state of FLSA law. Aplt. Br. in Support of Jurisdiction at 8.

But Tyson does not explain how a district court order denying summary judgment could accomplish this feat. First, we note that the argument presented by plaintiffs-appellees to the district court in the present case was based on the Supreme Court's decision in *Alvarez*. Thus, since the time *Alvarez* was handed

-25-

down, the *Reich* Injunction has likewise been susceptible to the argument put

forth in this case, i.e., that *Alvarez* undermined this court's analysis in *Reich II*.

Consequently, in arguing that the order denying summary judgment changed the

law from its previous state, Tyson must be contending that this order would in

some way bind the Kansas district court in later contempt proceedings regarding

the *Reich* Injunction. We do not see any reason the district court would be so

bound, and Tyson has not provided any.

First, "it is clear that there is no such thing as 'the law of the district.'"

*Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991).

"[D]istrict court decisions cannot be treated as authoritative on issues of law. The

reasoning of district judges is of course entitled to respect, but the decision of a

district judge cannot be a controlling precedent." *Bank of Am., N.A. v. Moglia*,

330 F.3d 942, 949 (7th Cir. 2003) (quotation omitted).

Nor would claim or issue preclusion apply in this case as both require the

issuance of a final judgment. *See MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831

(10th Cir. 2005) ("Under Tenth Circuit law, claim preclusion applies when

[certain] elements exist [including] a final judgment on the merits in an earlier

action.); *Arizona v. California*, 530 U.S. 392, 414 (2000) ("[I]ssue preclusion

attaches only '[w]hen an issue of fact or law is actually litigated and determined

by a valid and final judgment, and the determination is essential to the

-26-

judgment.'" (*quoting* Restatement (Second) of Judgments § 27, p. 250 (1982) (second alteration in original)).

Although the district court's order denying summary judgment might have sent a signal that a plausible argument could be made that *Alvarez* undermined *Reich II* to some extent, this is not a modification of the *Reich* Injunction. It is merely notice that one district court judge, in an interlocutory order, found *not* that time spent donning and doffing the Standard Gear and protective overgarments *was* compensable after *Alvarez*, but simply that *it might be* and that this court's analysis would have to be different. This is not sufficient grounds for jurisdiction under § 1292(a)(1).

> Section 1292(a) was intended to carve out only a limited exception to the final-judgment rule of 28 U.S.C. § 1291 and the long-established policy against piecemeal appeals. Consequently, the Supreme Court has cautioned that the statute should be narrowly construed to ensure that appeal as of right under § 1292(a)(1) will be available only in limited circumstances.

*Pimentel*, 477 F.3d at 1153 (citations, quotations, and brackets omitted). A possible modification in the legal community's speculative expectation regarding how a certain district court might read *Alvarez*' effect on *Reich II* is not reason enough for this court to exercise jurisdiction. In the end, *if* the interpretation of FLSA has changed since the *Reich* Injunction was entered, and *if* that change therefore had the practical effect of modifying the

-27-

*Reich* Injunction, that change was wrought by *Alvarez* and not by the district court's order at issue here.

III.

The appeal is DISMISSED.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BETTY ANN BURKS, *et al.*,           )
                                     )
     Plaintiffs,                   )
                                     )
v.                                   )     CASE NO. 2:06-cv-1081-MEF
                                     )
EQUITY GROUP-EUFAULA                 )     (WO - Recommended for Publication)
DIVISION, LLC,                       )
                                     )
     Defendants.                   )

## MEMORANDUM OPINION AND ORDER

Plaintiffs have brought this collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, alleging that their employer, Equity Group-Eufaula Division, LLC ("Equity"), violated the FLSA by failing to pay them for compensable hourly wages and overtime. Currently before this Court is Equity's Motion for Summary Judgment (Doc. # 83), filed May 30, 2008. After reviewing the submissions of the parties in connection with the motions, this Court finds that Equity's motion is due to be GRANTED IN PART AND DENIED IN PART.

### I. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 216(b) (FLSA). The parties contest neither personal jurisdiction nor venue, and the Court finds an adequate factual basis for each.

### II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.   An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party

2

to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

### III. FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motions.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

Plaintiffs are employees at a poultry processing facility owned by Equity.  Equity purchased the facility effective March 12, 2004 from Charoen Pokphand (USA), Inc. ("CP").

3

The production facility is comprised of two separate processing plants—the fresh plant and the further processing plant. Live chickens arrive at the fresh plant and are slaughtered in the first processing ("evisceration") department where the slaughtered birds are defeathered, trimmed, eviscerated and inspected. The chickens then proceed to the second processing ("debone") department where the carcasses are skinned, deboned and reduced to various cuts. The majority of the deboned chicken is then shipped to other facilities for additional processing, but the remainder is delivered to the further processing plant where it is cooked and otherwise processed as specified by the customer. Plaintiffs in this litigation are all employed in Equity's fresh plant in the evisceration and debone departments.

## A.    Collective Bargaining Agreements

Plaintiffs are employed and paid pursuant to a collective bargaining agreement ("CBA") negotiated on their behalf by the Retail, Wholesale and Department Store Union ("RWDSU"). Two CBAs cover the time period relevant to this litigation—one covering March 1, 2004 to March 1, 2008 ("2004 CBA") and the second covering March 1, 2008 to March 1, 2011 ("2008 CBA"). Regarding compensation for hours worked, the 2004 CBA provides:

12.5   Line Time

A. All employees will be paid according to the hours of work indicated by the Master Line Time Card.

The 2008 CBA incorporates a new provision that provided additional compensation for clothes changing and cleaning time:

4

12.5   Line Time

A. All employees will be paid according to the hours of work indicated by the Master Line Time Card.

B. All employees shall be paid an additional 3 minutes per day, at their regular rate, for clothes changing and cleaning time, in addition to any pay for hours worked.  Such payment shall be paid at the employee's normal hourly rate.

In addition, both the 2004 and 2008 CBAs contain the following provision related to meal and rest periods:

13.2 Meal/Rest Periods

A.  Employees will receive two (2) thirty (30) minute non-paid meal/rest breaks each full work day. In addition, where an employee is required to work more than 9 hours in any workday, except in the case of equipment or mechanical malfunctions or circumstances beyond the control of the Company, the employee shall be entitled to an additional 10 minute paid break to be scheduled by the Company, or to be paid for such break if not granted.

**B.     Compensation**

As noted above, Plaintiffs are paid according to the master line time card.  The master card system reflects the scheduled start time for production at the beginning of each shift and the time when production ends at the end of each shift.  Plaintiffs are paid for the time (less two thirty-minute breaks) beginning at the scheduled start time, when the master card is swiped, to the end of their shift, when the last bird to be processed passes the final work station and the master card is swiped again.  Any hours worked before or after the scheduled line or master card time are recorded by the employee's supervisor, and the employee's time record is adjusted for pay purposes.

5

## C.    Work Clothes and Other Equipment

Plaintiffs in both the evisceration and debone departments are required to wear the following clothes while they are engaged in their work on the production line: smock, boots or shoe covers, gloves, hairnet and/or beardnet, and ear protection. Employees in the debone department are also required to wear arm guards and steel mesh gloves, and they are issued knives. The knives and steel mesh gloves are distributed at the production line, and are cleaned and maintained by Equity.

Plaintiffs are permitted to don many of these items, including their boots or shoe covers, hairnet, beardnet, gloves, and earplugs outside of the production area. They may also wear these items outside of the plant and can don these items at home. However, Plaintiffs are required to don their smock and certain other sanitary garments inside the production area.

## D.    The Work Day

The day shift in the fresh plant begins at 5:50 a.m. The evisceration department starts work at 6:00 a.m., and the debone department starts at 7:30 a.m. All employees work nine hour shifts, which time includes two unpaid thirty-minute breaks for every employee. Night shift employees walk-on to their work stations as soon as they are ready to relieve the first shift employees in the evisceration department. However, because of Equity's need to maintain control over the knives and the steel mesh gloves, work is stopped in the debone department for approximately three to five minutes between shifts.

6

When Plaintiffs arrive at the beginning of their shift, they "swipe in" at a time clock for attendance purposes only. Plaintiffs are not paid based on when they arrive at work; as noted above, they are paid according to the master line time card and the scheduled start time for the production line. Plaintiffs then walk to the company's supply room to obtain new sanitary smocks. Employees in the debone department also obtain an arm guard. Plaintiffs also obtain from their locker the required gloves, aprons, sleeves, and boots. Plaintiffs carry all of these items to the production room. Plaintiffs are then required to sanitize and don all of these items prior to taking their position on the production line. Once Plaintiffs reach their position on the line, they wait for the chickens to reach their position. Plaintiffs are not paid for any of the sanitizing or donning time.

Equity requires all employees to take two thirty-minute "meal/rest periods" during each shift. During the unpaid break period, Plaintiffs are required to doff and sanitize their equipment prior to leaving the production room, then resanitize and don the equipment upon their return from break. Because the donning/doffing and cleaning/sanitizing occurs during Plaintiffs' thirty minute break-time, Plaintiffs are not compensated for these activities, and Equity does not count this time towards Plaintiffs' hours worked.

At the end of their shifts, Plaintiffs are required to again sanitize and doff the equipment. Plaintiffs then carry these items out of the production room, deposit their smocks in the laundry bin, and store their reusable items in their locker to use the next workday. Plaintiffs then "swipe out" as they leave the plant.

7

In all, Plaintiffs are required to sanitize, and then either don or doff, their smock, gloves, aprons, sleeves, and boots six times each day without compensation. Plaintiffs are also required to take two thirty-minute "meal/rest breaks" over the course of a nine-hour workday. Plaintiffs are paid for eight hours of work each day, excluding any overtime.

## IV. DISCUSSION

### A.    Legal Framework of the FLSA

The FLSA makes it unlawful for an employer to "employ" someone who is an employee for a workweek longer than forty hours unless the employee receives compensation for "employment" in excess of forty hours at a rate of at least one and one-half times the regular hourly wage. *See* 29 U.S.C. §§ 207(a)(1), 215(a)(2). The FLSA further defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). The statute does not contain a definition of "work."

The Supreme Court has interpreted "work" or "employment" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005). Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case. *See Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).

The Supreme Court has also stated that "the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's

8

principal activity or activities.'" *Alvarez*, 546 U.S. at 29 (quoting 29 C.F.R. § 790.6(b)).

This concept is known as the "continuous workday rule." *Id.* Moreover,

> the term principal activity or activities in Section 4 [of the Portal-to-Portal Act] embraces all activities which are an integral and indispensable part of the principal activities . . . . Thus, under *Steiner*, activities, such as the donning and doffing of specialized protective gear, that are performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1).

*Id.* at 29-30 (internal quotation marks omitted).

In addition, as noted in the quotation above, while the FLSA does not provide definitions for "work" or "employment," it has carved out certain exclusions from these terms. Section 4(a)(1) of the FLSA (codified at 29 U.S.C. § 254) provides that no employer can be liable under FLSA for failing to compensate for:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).  Furthermore, 29 U.S.C. § 203(o) excludes from "hours worked" any time spent "changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or

9

by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."

By their express terms §§ 203(o) and 254(a) do not apply to activities that occur during the continuous workday. *See* 29 U.S.C. § 203(o) (excluding time spent changing clothes or washing "at the beginning or end of each workday"), § 254(a) (limiting exclusion to activities "prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities"); *see also Alvarez*, 546 U.S. at 37 (holding that walking time performed after an employee performs the first principal activity and before the end of the last principal activity is not excluded by § 254(a)).

With these legal principles in mind, the Court will analyze the particular activities in dispute in this case.

**B.     Pre-shift and Post-shift Activities**

As discussed above, pursuant to the express terms of the FLSA and binding Supreme Court precedent, the workday begins when the employee performs the first principal activity, and it ends after he completes the last principal activity. Equity argues that it is entitled to summary judgment on Plaintiffs' claims that they are entitled to compensation for pre-shift and post-shift donning, doffing, and sanitizing activities. Equity claims that these activities are expressly excluded from "hours worked" under § 203(o).

Section 203(o) excludes from "hours worked" (1) time spent changing clothes or

10

washing (2) that occurs at the beginning or end of each work day (3) excluded from measured working time (4) by the express terms of, or by custom or practice under a bona fide collective-bargaining agreement (5) applicable to the particular employee. The only issues that are in dispute for pre- and post-shift activities are whether the cleaning and sanitizing activities Plaintiffs are required to perform fall within the "washing" exclusion under § 203(o), whether any of the pre- and post-shift activities are being excluded from hours worked by the express terms of, or by custom or practice under a bona fide collective-bargaining agreement, and whether any of these activities constitute "principal activities" within the definition of § 254(a).

### 1.     Section 203(o)

#### a.     Cleaning and Sanitizing Activities

In *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007), the Eleventh Circuit decided a case involving the scope of § 203(o) in the context of certain pre- and post-shift clothes changing activities in a poultry processing facility very similar to the one involved in this case. In *Anderson*, plaintiffs were employees at a poultry processing facility paid according to a line-time method that calculated compensable time based on when the chicken to be processed reaches the production line. *Id.* at 949. The *Anderson* plaintiffs, like Plaintiffs in this case, were required to don prior to the beginning of their shift, and doff after the end of their shift, various articles of protective clothing, including smocks, hair/beard nets, gloves, and hearing protection. *Id.*

11

The Circuit held that all of the articles of protective clothing that the plaintiffs in *Anderson* were required to wear fell within § 203(o)'s exclusion from the definition of "hours worked" of time spent "changing clothes." *Id.* at 955-58. Equity argues that *Anderson* implicitly included within its analysis the cleaning and sanitizing activities that Plaintiffs are arguing do not fit within § 203(o). However, the Circuit did not address any cleaning or sanitizing activities in its opinion. Indeed, *Anderson* did not even list cleaning or sanitizing the protective clothing as an activity the plaintiffs were required to perform, and did not address in any way the meaning of "washing" in § 203(o). *See id.* at 949, 955-58. Accordingly, *Anderson* can not serve as authority on whether the cleaning and sanitizing activities in this case are properly excluded from hours worked as "washing" activities under § 203(o).

Plaintiffs argue that "washing" in the context of § 203(o) is limited to washing of one's own body (i.e., showering or hand-washing). Equity argues that "washing" includes cleaning and sanitizing the clothing an employee is required to wear. The Eleventh Circuit in *Anderson*, in interpreting § 203(o)'s "changing clothes" provision, utilized a "plain meaning" analysis based on the words' "ordinary, contemporary, common meaning." *Anderson*, 4488 F.3d at 955. The Circuit used the dictionary definition of the words "changing" and "clothes" to reach its conclusion that the protective gear at issue was excluded under § 203(o). However, such an analysis is less useful in this case because the dispute is not about the meaning of the word "washing" but rather the *unidentified objects*

12

*of which* the washing is excludable from hours worked. Anything can be "washed," but clearly the drafters of § 203(o) did not intend *any* washing or cleaning activity to be excluded, or employees could be required to wash, clean, scrub, and sanitize any property of the employer without compensation under the FLSA. Therefore, this Court concludes that the term "washing" as used in § 203(o) is ambiguous.

Equity has cited cases purportedly in support of its argument that "washing" includes cleaning and sanitizing protective clothing. In *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 564-65 (E.D. Tex. 2001), the only relevant opinion cited by Equity, the court held that time spent "changing and cleaning sanitary clothing" was properly excluded under § 203(o) pursuant to a custom or practice under a collective bargaining agreement. However, this case is not particularly helpful since its analysis was entirely devoted to whether a custom or practice existed and appears to have taken for granted that cleaning sanitary clothing qualified as "washing" under § 203(o).

On the other hand, two circuit courts of appeals have held that cleaning and sanitizing protective clothing are compensable under the FLSA. In *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902-05 (9th Cir. 2003), *aff'd on other grounds*, 546 U.S. 21 (2005), the Ninth Circuit held that donning, doffing, washing, and retrieving of protective gear is compensable work under the FLSA, and not excluded by § 203(o). However, while the court did discuss the meaning of "changing clothes" under § 203(o), the Ninth Circuit did not specifically address the meaning of "washing" within that section. This Court is also mindful of the fact that the

13

Eleventh Circuit squarely disagreed with the Ninth Circuit's interpretation of "changing clothes" in *Anderson*. Furthermore, in *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 (10th Cir. 1994), the court held that donning, doffing, and cleaning of special protective gear (which included a mesh apron, plastic belly guard, sleeves or arm guards, wrist wraps, gloves, rubber boots, belt, scabbard, and shin guards), was compensable as "work" under the FLSA. However, *Reich* involved no discussion of § 203(o) or the meaning of "washing."

Additionally, Plaintiffs' position is supported by the fact that the vast majority of cases that have specifically discussed "washing" in the context of § 203(o) have done so only in the context of washing one's body. *See, e.g., Steiner v. Mitchell*, 350 U.S. 247, 254-55 (1956); *Hoover v. Wyandotte Chemicals Corp.*, 455 F.2d 387, 388-89 (5th Cir. 1972);[1] *Blum v. Great Lakes Carbon Corp.*, 418 F.2d 283, 285-86 (5th Cir. 1969); *Ciemnoczolowski v. Q. O. Ordnance Corp.*, 228 F.2d 929, 932 (8th Cir. 1956); *Hays v. Monfort, Inc.*, 160 F. Supp. 2d 746, 747 (N.D. Tex. 2000); *Williams v. W. R. Grace & Co.*, 247 F. Supp. 433, 435 (E.D. Tenn. 1965); *Nardone v. General Motors, Inc.*, 207 F. Supp. 336, 339-40 (D.N.J. 1962); *Laudenslager v. Globe-Union Inc.*, 180 F. Supp. 810, 813 (E.D. Pa. 1958); *Mitchell v. Se. Carbon Paper Co.*, 124 F. Supp. 525, 526-27 (N.D. Ga. 1954); *Durkin v. Steiner*, 111 F. Supp. 546, 547 (M.D. Tenn. 1953).[2]

---

[1]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit cases submitted or decided prior to October 1, 1981.

[2]  This Court is also aware of an unpublished decision that held that § 203(o) does not exclude from hours worked time spent washing protective clothing. *See Saunders v.*

Moreover, the legislative history of § 203(o) indicates that the term "washing" was intended to be limited to cleaning the person. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 187 n.8 (2004) (noting that legislative history is relevant to statutory construction when statutory text is ambiguous); *Rowe v. Jones*, 483 F.3d 791, 796 (11th Cir. 2007) (permissible to look to legislative history if statutory language is ambiguous). The definition of "hours worked" contained in § 203(o) was added in the 1949 Amendment to the FLSA. The Conference Report on the 1949 amendment stated with respect to that definition, "[t]he conference agreement limits this exclusion to time spent by the employee in changing clothes and *cleaning his person* at the beginning or at the end of each work day." *See* H.R. Rep. No. 81-1453, *reprinted in* 95 Cong. Rec. H194, 14995 (daily ed. Oct. 17, 1949) (emphasis added).

This Court therefore holds that the term "washing" as used in § 203(o) is limited to washing one's body and does not include the cleaning and sanitizing of protective clothing that Plaintiffs are required to perform. Therefore, the time Plaintiffs spend cleaning and sanitizing their protective clothing is not properly excludable from hours worked under a bona fide collective bargaining agreement pursuant to § 203(o).

### b.     Donning and Doffing Protective Clothing

With respect to the pre- and post-shift time spent donning and doffing the protective clothing, *Anderson* has determined that this meets the definition in § 203(o) of time spent

---

*John Morrell & Co.*, 1991 WL 529542, at *3-4 (N.D. Iowa Dec. 24, 1991).

"changing clothes." However, Plaintiffs argue that this time is still compensable because it does not meet the additional requirement of § 203(o) that this time has been "excluded from measured working time . . . by the express terms of or by custom or practice under a bona fide collective-bargaining agreement."

Plaintiffs contend that the CBAs are silent as to compensation for this activity, which means that donning and doffing time is not excluded by "the express terms of" the CBAs. Furthermore, Plaintiffs argue that there is not a "custom or practice" of excluding this time because there is no evidence that Plaintiffs ever "acquiesced" to such practice of exclusion.

The language of the CBAs in this case is very similar to the CBAs in *Anderson*. Like Plaintiffs here, the employees in *Anderson* were to be paid according to a "line-time method that calculates compensable time based on when the chicken to be processed reaches the production line." *Anderson*, 488 F.3d at 949. The plaintiffs in *Anderson* argued that the absence of negotiations related to compensation for clothes changing time when executing the CBA meant that the CBA could not be used to create a "custom or policy" under § 203(o). The Eleventh Circuit rejected this argument, stating, "a policy concerning compensation (or noncompensation, as the case may be) for clothes changing, written or unwritten, in force or effect at the time a CBA was executed satisfies § 203(o)'s requirement of a 'custom or practice under a bona fide' CBA." *Id.* at 958-59. In addition, the Circuit noted that the plaintiffs "do not contend that they lacked notice of the relevant compensation policy when executing the [CBAs]." *Id.* at 959.

16

In this case, there is no dispute that Equity had a policy in force or effect at the time the CBAs relevant to this case were executed that Plaintiffs would not be compensated for pre- and post-shift donning and doffing of protective clothing. Nor is there any dispute that Plaintiffs were aware of this policy. Plaintiffs argue that the fact that their Chief Union Steward had filed a lawsuit in court in 1999 challenging the legality of the noncompensation practice demonstrates the absence of a "custom or practice." However, this fact only proves that there was a policy in force or effect at that time, and that Plaintiffs had notice of the policy. Consequently, this Court finds that the pre- and post-shift donning and doffing of protective clothing is properly excluded under § 203(o) pursuant to a custom or practice under a bona fide collective bargaining agreement, and Equity is entitled to summary judgment on this issue.

### 2.    "Work" and the Portal-to-Portal Act

#### a.    Principal Activities

This Court has determined that the pre- and post-shift cleaning and sanitizing activities are not excludable from hours worked under § 203(o). However, Equity is still entitled to summary judgment on this issue if these activities can be excluded under 29 U.S.C. § 254(a)(2), which excludes from coverage under the FLSA all "activities which are preliminary to or postliminary to [the principal activity or activities which the employee is employed to perform]." As discussed above, the term "principal activity or activities" in § 254 embraces all activities which are "integral and indispensable" to the employee's principal

17

activities. *See Alvarez*, 546 U.S. at 29-30. If, on the other hand, the cleaning and sanitizing activities are "integral and indispensable" to Plaintiffs' principal activities, then they are themselves principal activities that begin the "continuous workday" and are compensable "work" under the FLSA. *See id.* at 33 ("[I]n *Steiner*, we made it clear that § 4 of the Portal-to-Portal Act does not remove activities which are "integral and indispensable" to "principal activities" from FLSA coverage precisely because such activities are themselves "principal activities." (internal quotation marks omitted)); *see also Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1342 (11th Cir. 2007).

This Court must consider the following factors in order to determine whether an activity is "integral and indispensable" to the employee's principal activities: (1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer. *Bonilla*, 487 F.3d at 1344.

There is certainly no dispute in this case that the cleaning and sanitizing activities are required by Equity; therefore, the first factor is met. Furthermore, Equity does not present any argument directed towards whether the cleaning and sanitizing activities are necessary for Plaintiffs to perform their duties, or primarily benefit the employer. Rather, Equity simply cites a number of cases that do not address cleaning or sanitizing clothing.[3]

---

[3]     The one relevant case cited by Equity is *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 562-63 (E.D. Tex. 2001), which held that sanitizing clothing was not "integral and indispensable" because it primarily benefitted the employee. However, as

18

The evidence presented to this Court establishes that the cleaning and sanitizing activities in this case are required by Equity because they are necessary for Plaintiffs to perform their duties, and because they are primarily for Equity's benefit. Equity has promulgated Good Manufacturing Practices ("GMP") that state the GMPs "were established to minimize the introduction of bacteria, contaminants, or foreign material into our manufacturing environment and must be adhered to by all team members." Among the enumerated GMPs are requirements that various articles of protective clothing must be maintained in "clean" or "sanitary" condition. Also, the applicable government regulations regarding the handling of food products require employees to "conform to hygienic practices while on duty to the extent necessary to protect against contamination of food." 21 C.F.R. § 110.10(b). That provision lists specific, non-exhaustive examples of methods to maintain cleanliness, including:

> (1) Wearing outer garments suitable to the operation in a manner that protects against the contamination of food, food-contact surfaces, or food-packaging materials.
> . . . .
> (3) Washing hands thoroughly . . . .
> . . . .
> (5) Maintaining gloves, if they are used in food handling, in an intact, clean, and sanitary condition. The gloves should be of an impermeable material.

*Id.*; *see also Davis v. Charoen Pokphand (USA), Inc.*, 302 F. Supp. 2d 1314, 1322 (M.D. Ala. 2004) (Thompson, J.) (citing 21 C.F.R. § 110.10(b) as evidence that donning and doffing

---

noted above, the weight of the authority is heavily against Equity on this issue.

activities are integral and indispensable to employees' principal activities in poultry processing facility).

Moreover, courts have typically found that cleaning and sanitizing protective clothing, like the clothing involved in this case, is "integral and indispensable" to the employee's principal activities. *See Alvarez*, 339 F.3d at 903 (washing protective clothing is "integral and indispensable" to employees at meat processing facility); *Reich*, 38 F.3d at 1126 (cleaning special protective clothing was integral and indispensable to knife workers at meat processing facility); *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 363, 373 (3d Cir. 2007) (washing work gear at chicken processing facility is work as a matter of law).

Accordingly, this Court finds that the cleaning and sanitizing activities are integral and indispensable to Plaintiffs' principal activities. Therefore, these activities are compensable under the FLSA.

### b. *De Minimis* Doctrine

Equity's final argument for summary judgment on Plaintiffs' pre- and post-shift cleaning and sanitizing activities is that they can be excluded under the *de minimis* doctrine. When a claim under § 207 of the FLSA "concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the [FLSA]. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Anderson v. Mt. Clemens Pottery*

20

*Co.*, 328 U.S. 680, 692 (1946); *see also Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir. 1976) (remanding case for district court to determine whether activities ordinarily compensable under § 207 as principal activities were still properly excluded as *de minimis*). When determining whether otherwise compensable time is *de minimis*, courts will consider (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work. *See Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984). Most courts have found daily periods of approximately 10 minutes to be *de minimis*. *See id.* at 1062.

This Court finds that summary judgment on the cleaning and sanitizing activities is not appropriate because there is a genuine issue of material fact as to whether these activities are properly excluded by Equity as *de minimis*. The Court finds that there are genuine issues of material fact as to: (1) the practical administrative difficulty of recording the additional time, and (2) the aggregate amount of daily compensable time. While there is no dispute regarding the regularity of the work (six times per day), the disputes regarding the other two factors are sufficient to preclude a holding on this issue at this time.

**C.    Meal/Rest Breaks**

Equity has moved for summary judgment on Plaintiffs' claim that they are entitled to compensation for the two unpaid thirty-minute "meal/rest breaks" required by Equity each shift. Equity argues these periods are properly excluded pursuant to §§ 203(o) and 254(a). However, by their terms these sections do not apply to activities performed during the

21

continuous work day. *See* 29 U.S.C. § 203(o) (limiting exclusion to activities performed "at the beginning or end of each workday"), § 254(a) (limiting exclusion to activities prior to the first principal activity or subsequent to the last); *see also Alvarez*, 546 U.S. at 37 (holding that walking time performed after an employee performs the first principal activity and before the end of the last principal activity is not excluded by § 254).

The Secretary of Labor has promulgated two regulations pertaining to meal and rest periods. The first, entitled "Rest", states:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

29 C.F.R. § 785.18. This regulation is particularly relevant, not only for what it says, but also for what it does not say. While the regulation states that rest periods "running from 5 minutes to about 20 minutes" are common in industry and must be counted as hours worked, the regulation does *not* say that rest periods of more than 20 minutes can automatically be excluded from hours worked.

The second regulation is entitled "Meal" and states:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. *The employee must be completely relieved from duty for the purposes of eating regular meals.* Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.

22

29 C.F.R. § 785.19 (emphasis added). The first key phrase in this regulation is that the employee must be completely relieved from duty during the meal period. The second key phrase is that the purpose of the meal period must be to eat a *regular meal*.

Courts have held entire meal breaks to be compensable under the FLSA when employees continue to have job responsibilities during their breaks. *See Kohlheim v. Glynn County*, 915 F.2d 1473, 1477 (11th Cir. 1990) ("[T]he essential consideration in determining whether a meal period is a bona fide meal period or a compensable rest period is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal."); *see also Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 64-65 (2d Cir. 1997) (holding meal periods compensable "work" under FLSA if employees perform duties predominantly for the benefit of the employer); *Henson v. Pulaski County Sheriff Dep't*, 6 F.3d 531, 534-35 (8th Cir. 1993) (same).

First, there is no dispute in this case that Plaintiffs are required by Equity to spend part of their thirty-minute "meal/rest periods" doffing and sanitizing, then donning and sanitizing their protective clothing. Second, this Court is not convinced that *two* thirty minute "meal/rest periods" in one nine-hour day are for the purpose of eating a "regularly scheduled meal." *Kohlheim*, 915 F.2d at 1477.[4] Consequently, Plaintiffs' have presented sufficient

---

[4]     Even if Plaintiffs are completely relieved from duty, there is scant authority to support a position that a rest period can be unpaid when it is not for the purpose of eating a regular meal. Almost every case that has held that a break period could be excluded from hours worked has done so in the context of a bona fide meal period. *See, e.g., Bernard v. IBP, Inc.*, 154 F.3d 259 (5th Cir. 1998); *Reich v. S. New England Telecomm. Corp.*, 121 F.3d

evidence to create a genuine issue of material fact regarding whether the two thirty-minute "meal/rest periods" are compensable under the FLSA. Therefore, Equity is not entitled to summary judgment on this issue.

## V. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Defendant Equity's Motion for Summary Judgment (Doc. # 83) is GRANTED IN PART AND DENIED IN PART. Summary judgment is granted with respect to Plaintiffs' pre-shift and post-shift donning and doffing claims. Summary judgment is denied in all other respects.

DONE this the 7th day of August, 2008.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

---

58 (2d Cir. 1997); *Bates v. Dep't of Corrections*, 81 F.3d 1008 (10th Cir. 1996); *Henson v. Pulaski County Sheriff Dep't*, 6 F.3d 531 (8th Cir. 1993); *Alexander v. City of Chicago*, 994 F.2d 333 (7th Cir. 1993); *Kohlheim v. Glynn County*, 915 F.2d 1473 (11th Cir. 1990); *Brennan v. Elmer's Disposal Serv., Inc.*, 510 F.2d 84 (9th Cir. 1975). This Court has only found two cases involving rest periods outside of the bona fide meal period exclusion. One involved a special exception pertaining to law enforcement employees. *See Lee v. Coahoma County*, 937 F.2d 220 (5th Cir. 1991) (holding that two hour rest breaks were compensable sleep time for law enforcement employees that were subject to the exemption under § 207(k)). The other held that Bus drivers' "split shift periods" (time between shifts) of *three to five hours* where employees were "free to do anything they chose except drink alcohol," knowing they would not have to commence work until a definitely specified hour had arrived, was properly excluded from hours worked because employees could "use the time effectively for their own purposes without restrictions." *See United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1117-18 (10th Cir. 1999).

24