IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DARRYL ANDERSON, *et al.*,       )
                                 )
Plaintiffs,                      )
                                 )       CASE NO. 1:06-cv-01000-MEF-WC
v.                               )
                                 )       (WO—Recommended for Publication)
PERDUE FARMS, INC.,              )
                                 )
Defendant.                       )

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

Plaintiffs in this collective action seek to vindicate rights protected by the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA").  They allege that defendant Perdue Farms, Inc. ("Perdue") failed to compensate them and others similarly situated for all compensable time including (1) time spent clearing security and walking from security to time clock areas, (2) time spent donning and doffing required equipment "integral and indispensable" to principal work activities, (3) time spent walking to and from break areas to designated time clock areas, (4) time spent waiting to clock in, and (5) for two unpaid meal breaks.  Perdue claims that it designed its timekeeping system pursuant to a groundbreaking consent judgment with the Department of Labor and that its pay practices compensate Plaintiffs for all compensable time.

Perdue filed a Motion for Summary Judgment (Doc. # 78), and Plaintiffs filed a

1

Cross-Motion for Partial Summary Judgment (Doc. # 91).  Both Motions are now under submission and ripe for disposition.  For the reasons set forth in this Memorandum Opinion and Order, Perdue's Motion is due to be GRANTED in part and DENIED in part.  Plaintiffs' Motion is due to be DENIED.

## II. JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs claims are pursuant to 29 U.S.C. §§ 201 *et seq.*  The parties do not contest venue and personal jurisdiction, and the Court finds a sufficient basis for each.

## III. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.   An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## IV. FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the Motions. The Court has also considered the

stipulations by and between the parties contained in this Court's Order on Pretrial Hearing.

(Doc. # 160.)  Because there are cross-motions for summary judgment in this case, the Court

will consider the facts and reasonable inferences to be drawn from the facts in the light most

favorable to the non-moving party as the Court considers each of the Motions.  With this

caveat, the submissions of the parties, viewed in the light most favorable to the nonmoving

party, establish the following relevant facts:

### A. The Plant

Perdue operates a chicken processing plant in Dothan, Alabama.  The plant operates

five days per week, three shifts per day.  Only the night (third) shift and the day (first) shift

employees process poultry.  First Processing is the area of the plant where employees

introduce live chickens into the plant and hang them on hooks or shackles for killing,

cleaning, eviscerating, and chilling.  Second Processing is the area of the plant where

employees cut up, marinate, debone, weigh, size, and pack chickens.  A conveyor system

moves the chickens through First Processing and into and through Second Processing.

Plaintiffs are current and former First and Second Processing employees at the plant.

### B. Kronos Timekeeping System

One of several Kronos time system clocks captures each employee's time.  The time

system captures all principal work activities as defined by a consent judgment between the

Department of Labor and Perdue, which is discussed more fully below.  Perdue issues each

employee an electronic card that the employee swipes through the Kronos time system clock,

4

and the Kronos system records each employee's time and stores the data electronically at Perdue's headquarters.  There are two clocks in First Processing and six clocks in Second Processing.  Perdue pays its hourly employees for all time captured by the Kronos system, which is not all the time employees spend at the plant.

Hourly employees at the plant are scheduled to work 37.5 hours per week, but they often work forty or more hours in a week when product demand so requires.  Perdue pays employees time and one half of their regular rate of pay for hours recorded by the Kronos system in excess of forty hours per week.

### C. A Typical Day at the Plant

Prior to the start of their shift, Processing employees park their cars in the parking lot on the facility complex.  Employees walk through a gate in a chain link fence and display their Perdue identification cards to a third-party security guard on their way to the facility entrance. Employees do not normally stop at the security checkpoint, but they are subject to having their belongings searched.  Also, employees who do not have their identification cards must wait for identification by the plant office.  Employees then proceed to their designated entrance to the plant building where there are locker rooms, rest rooms, and break rooms for their use.  Employees then await the beginning of their shift.

Perdue requires employees to don and doff numerous accoutrements, which the Court divides into two categories for convenience: Personal Protective Equipment ("PPE") and

Departmental Equipment.[1]  PPE consists of bump caps, hair nets, beard nets, safety glasses, ear plugs, and boots.  Departmental Equipment may include gloves, hand or arm guards, aprons or smocks, and cutting equipment, depending on the employee's department.[2]

Before the start of their shift, employees walk from the break area and through a pair of double doors that lead to the production area.  Federal regulations require that employees don PPE before entering the production area.  These items may be obtained from the supply room or from supervisors prior to clocking in if employees do not have the items with them. Employees sanitize their boots upon entering the production area and proceed some distance to their designated time clock.[3]  Sometimes employees must wait in line to clock in.  They don and sanitize Departmental Equipment after clocking in.

Employees then proceed to their work station and begin to work.  After working for approximately two hours, their supervisor informs them that it is time for their first of two thirty-minute unpaid meal breaks.  Employees sanitize and doff Departmental Equipment while on the clock.  Employees proceed to their department Kronos time clock and swipe out to begin their break.  They then walk to the double doors that lead out of the production area

---

[1]Plaintiffs consider this an "arbitrary distinction." (Doc. # 85 ¶ 13.)  The Court nevertheless adopts these labels for ease of use, subject to the understanding that the distinction carries with it no independent legal significance.

[2]The time employees spend donning and doffing Departmental Equipment is not a subject of this lawsuit.

[3]Sanitization of boots involves walking through a sanitizing foam, and does not add time to the employees walk from their break room to the Kronos clock.

and sanitize their boots.  Employees must continue to wear PPE until the exit the production area, when they may doff PPE.

As the end of the first thirty-minute meal break approaches, employees walk through the double doors and to their assigned Kronos clock near their workstation.  Employees must don PPE prior to entering the production area to the extent they doffed PPE during their meal break. Once the meal period has elapsed, employees swipe in at their assigned Kronos clock, and the Kronos clocks will not record a swipe until thirty minutes have elapsed.  Employees swipe in and then don and sanitize Departmental Equipment.  Sometimes employees must wait in line to clock in after meal breaks.

This whole process happens again, later in the shift, incident to the second unpaid meal break.  The meal breaks for the morning shift occur at approximately 10:20 a.m. and 1:20 p.m.  The night shift meal breaks occur at approximately 1:00 a.m. and 4:00 a.m.

When the supervisor notifies employees that their shift has ended, employees doff their Departmental Equipment then clock out.  They must then proceed out of the production area, and they doff PPE once they have left that area.  Processing employees may then place their PPE in their lockers or take the items home with them.  Employees then exit the facility and return to the employee parking lot.

### D. The Consent Judgment

Prior to 2002, virtually all poultry companies, including Perdue, used a timekeeping system known as "line time," "master time," or "gang time."  This system did not compensate

employees for time spent donning and doffing PPE and Departmental Equipment.  In 1997 and 2000, the U.S. Department of Labor ("DOL") conducted an investigation of the nation's poultry processing plants in order to ensure compliance with the FLSA and to improve employee working conditions.  The investigation uncovered what the DOL considered wage and hour violations.

On May 9, 2002, after negotiations following these investigations and a lawsuit filed by the Secretary of Labor against Perdue in the Middle District of Tennessee, Perdue and the DOL entered into a consent judgment regarding Perdue's timekeeping and pay practices. The consent judgment created a departure from line time, and required instead that Perdue pay its hourly poultry processing employees for all hours worked from their first principal activity of the work day until the end of the last principal activity of the work day, except for time taken for bona fide unpaid meal breaks or other bona fide off-duty time.  The consent judgment further stated that a principal activity is any activity that is integral or indispensable to the employee's work and includes such activities as donning, doffing, and sanitizing of any clothing or equipment, except items the employee is free to put on at home, such as hair nets, bump caps, ear plugs, glasses, and boots.  Time employees spend sanitizing themselves and their equipment and time spent walking or waiting after they have performed the first principal activity are included in the definition of principal activity.  Time spent donning and doffing items the employee is not free to take home before and after unpaid meal breaks is also to be compensated under the consent judgment.

Perdue and the DOL designed the Kronos system to capture all compensable time from the first principal activity to the last principal activity as defined in the consent judgment.  The DOL subsequently confirmed that Perdue's plants, including the Dothan plant, were in compliance with the consent judgment, and that all poultry processing employees were trained to comply with the consent judgment.  Additionally, since 2005, Perdue has given all new poultry processing employees an orientation and training brochure that describes in detail Perdue's donning and doffing procedures.

### E. Procedural History

Plaintiffs filed a complaint against Perdue on November 3, 2006, (Doc. # 1) claiming that these timekeeping and pay practices violate the FLSA.  In particular, Plaintiffs allege Perdue failed to compensate Plaintiffs and others similarly situated for all compensable time including: (1) time spent clearing security and walking from security to time clock areas, (2) time spent donning and doffing required equipment integral and indispensable to principal work activities (i.e. PPE), (3) time spent walking to and from break areas to designated time clock areas, (4) time spent waiting to clock in, and (5) for two unpaid meal breaks.  Plaintiffs amended the Complaint on July 5, 2007 (Doc. # 42) and sought collective treatment under the FLSA opt-in provisions on November 5, 2007 (Doc. # 49).  This Court permitted court supervised notice on February 25, 2008, and required that notice be sent to all potential opt-in plaintiffs by May 9, 2008. (Doc. # 65.)  Perdue then filed a Motion for Summary Judgment (Doc. # 78) in which it seeks to have the Court dismiss all

named and opt-in plaintiffs' claims because Perdue pays Plaintiffs for all compensable time.[4]

Plaintiffs filed a Cross-Motion for Partial Summary Judgment (Doc. # 91) in which they ask

the Court to hold that donning and doffing of PPE is integral and indispensable to a principal

activity under the FLSA.  Both the Motion and Cross-Motion are currently under submission

and ripe for disposition.

Finally, the Secretary of Labor sought leave to file a brief as amicus curae (Doc. #

135), which this Court granted (Doc. # 139).  The Secretary filed her brief on December 5,

2008 (Doc. # 141), and the parties responded.

## V. DISCUSSION

### A. The Fair Labor Standards Act

Congress passed the FLSA in order that workers in the United States could enjoy

working conditions that would ensure a "minimum standard of living necessary for health,

efficiency, and general well-being . . . ."  29 U.S.C. § 202(a).  Among the numerous

provisions designed to further this end are those that make it unlawful for an employer to

"employ" someone who is an employee for a workweek longer than forty hours unless the

employee receives compensation for "employment" in excess of forty hours at a rate of at

---

[4]A portion of the Motion carries the heading "Plaintiffs Cannot Create a Genuine Issue of Material Fact by Relying on Documents not Based on Personal Knowledge."  The Court has construed this part of the Motion as a Motion to Strike.  Because Perdue disputes the veracity of the declarations at issue, calling them "erroneous[]" and "inaccurate[]," rather than challenging their admissibility for purposes of considering these Motions, the Court, without making any determination about the ultimate admissibility of the documents, finds that Perdue's Motion to Strike is due to be denied.

least on and one-half times the regular hourly wage. *See* 29 U.S.C. §§ 207(a)(1), 215(a)(2). The FLSA defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). The statute does not contain a definition of "work," so the task of giving that term meaning has fallen to the courts.

The Supreme Court has interpreted "work" or "employment" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005). Whether time is spent predominantly for the employer's benefit or for the employees' depends on the circumstances of the case. *See Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).

The Supreme Court initially held that "the statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises on duty or at a prescribed workplace." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946). Congress legislatively overturned this holding, however, with the Portal-to-Portal Act. Under the terms of that Act, employers are not required to compensate their employees for time spent walking, riding, or traveling to and from the actual place where they perform their principal work activities. 29 U.S.C. § 254(a)(1). Principal activities are defined as those "which the employee is employed to perform." 29 C.F.R. § 790.8(a). The Act also excludes from the definition of work activities that are "preliminary or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which

11

such employee commences, or subsequent to the time on any particular workday, at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a)(2). Together, these provisions remove from the definition of work all activities that are not principal activities and all activities that are preliminary and postliminary to a workday.

Thus, the Supreme Court has stated that "'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005) (quoting 29 C.F.R. § 790.6(b)). This concept is known as the "continuous workday rule." *Id.* Moreover,

> the term principal activity or activities in Section 4 [of the Portal-to-Portal Act] embraces all activities that are an integral and indispensable part of the principal activities . . . . Thus, under *Steiner*, activities, such as the donning and doffing of specialized protective gear, that are performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1).

*Id.* at 29-30 (internal quotation marks omitted). Section 4(a)(1) (as codified at 29 U.S.C. § 254) provides that no employer can be liable under the FLSA for failing to compensate for

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at

12

which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).  By its terms, § 254(a) des not apply to activities that occur during the

continuous workday.  *See* 29 U.S.C. § 254(a) (limiting exclusion to activities "prior to the

time on any particular workday when such employee commences, or subsequent to the time

on any particular workday at which he ceases, such principal activity or activities"); *see also*

*Alvarez*, 546 U.S. at 37 (holding that walking time performed after an employee performs the

first principal activity and before the end of the last principal activity is not excluded by §

254(a)).  Finally, "the fact that certain preshift activities are necessary for employees to

engage in their principal activities does not mean that those preshift activities are 'integral

and indispensable' to a 'principal activity' . . . ." *Alvarez,* 546 U.S. at 40-41.

### B. Whether Donning and Doffing PPE is Integral and Indispensable
### to a Principal Activity[5]

---

[5]Plaintiffs claim this Court answered this question once before.  They cite a portion of
this Court's Memorandum Opinion and Order that granted Plaintiff's Motion for an Order
Permitting Court Supervised Notice. (Doc. # 65.)  This argument lacks merit, however.  The
prior statement of the Court was made in the course of determining whether there was a
"reasonable basis" for why collective action status is appropriate. *Grayson v. K Mart Corp.*, 79
F.3d 1086, 1097 (11th Cir. 1996).  Moreover, the Court noted in the course of its earlier decision
that the requisite determinations should be "made using a fairly lenient standard *when the Court
has minimal evidence, as is the case here.*" (Doc. # 65 1-2) (emphasis added).  The summary
judgment standard, on the other hand, requires that there be "no genuine issue as to any material
fact," and that the Court view the evidence in the light most favorable to the non-moving party.
*Celotex*, 477 U.S. at 322.  Such was not the case when this Court made its prior statement.
       The Court in its earlier decision did not purport to make authoritative rulings on either
matters of fact or matters of law.  Quite to the contrary, the only question was whether there was
a reasonable basis to support Plaintiffs' claims.  There was, but that determination has little
significance for purposes of these Motions, where the case has advanced significantly and the
facts are not "minimal" but are instead well-developed.  Therefore, the Court finds little merit to

Plaintiffs argue in their Cross-Motion for Partial Summary Judgment that the donning, doffing, and sanitizing of PPE is integral and indispensable to the principal activity of processing uncontaminated poultry and is therefore itself a compensable principal activity under the Portal-to-Portal Act, even though it is preliminary and postliminary. Plaintiffs ask the Court to rule that such donning, doffing, and sanitizing is integral and indispensable as a matter of law. Perdue argues in its Motion for Summary Judgment that, to the contrary, donning and doffing PPE is preliminary and postliminary to the principal activity of processing poultry and is not compensable under the Portal-to-Portal Act because it is not integral and indispensable to that principal activity. For the reasons set forth below, the Court has determined that Perdue's Motion is due to be denied in part and Plaintiffs' Cross-Motion is also due to be denied.

### 1. Legal Framework

The Supreme Court has established that "activities performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the [FLSA] if those activities are an integral and indispensable part of the principal activities for which the covered workmen are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). Further, "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under § 4(a) of the Portal-to-Portal Act." *Alvarez*, 546 U.S. at 37. Such an activity commences the continuous workday and marks the

---

Plaintiff's arguments that this issue was previously determined.

beginning of compensable time. *Id.*

A court in the Eleventh Circuit must consider three factors to determine whether some preliminary or postliminary activity is integral and indispensable to a principal activity and is therefore itself a principal activity:

> (1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer.

*Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007) (citing *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398-401 (5th Cir. 1976));[6] *see also Alvarez*, 546 U.S. at 25 (defining "work" and "employment" as "physical or mental exertion . . . controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business").  Whether a particular activity is integral and indispensable under the FLSA is a question of law, *Birdwell v. City of Gadsden*, 970 F.2d 802, 807 (11th Cir.1992)), though there is no clean analytical distinction between activities that are integral and indispensable and those that are not.  *Bonilla*, 487 F.3d at 1344.  The nature of the employees' duties, however, is a question of fact.  *Id.* at 808 ("Certain sets of facts, if found by a fact finder, will give rise to liability under the FLSA while other sets of facts will not. It is for the court to determine if a set of facts gives rise to liability; it is for the jury to determine if those facts exist.").  Specifically, whether time is spent predominantly for the

---

[6]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

employer's benefit or for the employees' depends on the circumstances of the case. *See Armour & Co.*, 323 U.S. at 133.[7]

Plaintiffs argue that "after *Alvarez* there can be little doubt that donning and doffing protective gear at the beginning and end of the workday are principal activities." (Doc. # 91 2.)[8]  They rely on *Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860 (W.D. Wis. 2007), *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790 (M.D. Tenn. 2008), and *Garcia v. Tyson Foods, Inc.*, 474 F. Supp. 2d 1240 (D. Kann. 2007).  Perdue argues that "[i]t does not follow

---

[7]There is some question in the Court's mind about whether the determination of the primary beneficiary is a question of law or a question of fact.  There has been some confusion on the issue in the Fifth Circuit. *See Bright v. Houston NW Med. Ctr. Survivor, Inc.*, 888 F.2d 1059 (5th Cir. 1989), *vacated* 934 F.2d 671, 674 (*en banc*).  For instance, one panel, apparently unsure about how to treat a district court's conclusion that on-call time was primarily for the benefit of the employer, found the district court's "holding, if one of fact, clearly erroneous and, if one of law, plainly in error."  *Halferty v. Pulse Drug Co., Inc.*, 864 F.2d 1185, 1189 (5th Cir. 1989).  The Supreme Court has also given conflicting signals, saying in one case that "whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court," *Skidmore v. Swift & Co.*, 323 U.S. 134, 136-37 (1944).  The Court has made a determination that whether an activity is primarily for the benefit of the employer is a question of fact.  This determination is based on the following dicta from the Eleventh Circuit: "Of course, *a jury may decide* that the plaintiffs' off-duty time was *not spent primarily for the benefit of the employer*." *Birdwell* 970 F.2d at 808 n.4; *see also Allen v. Atlantic Richfield Co.*, 724 F.2d 1131, 1137 (5th Cir. 1984) ("Such evidence was sufficient to raise a fact question as to whether all the guards' free time, including sleeping and eating time, was spent primarily for the employer's benefit.").  The issue can, of course, still be determined by a district court as a matter of law. *See Birdwell*, 970 F.2d at 808.

[8] The Court in *Alvarez* did not address the question of whether the donning and doffing of particular types of gear were compensable, instead premising its holding on the fact that the lower court had already made that determination.  *Id.* at 30 ("The principal question presented by these consolidated cases-both of which involve required protective gear that the courts below found integral and indispensable to the employees' work-is whether postdonning and predoffing walking time is specifically excluded by [the Portal-to-Portal Act].");  *see also Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 802 n.14 (M.D. Tenn. 2008).

that simply because Perdue and governmental agencies require poultry processing employees to wear certain items that the time spend donning or doffing this equipment is compensable." (Doc. # 108 1.)

### 2. Whether the Activity is Required by the Employer

There is no dispute that donning, doffing, and sanitizing PPE are required by Perdue. Perdue said it best: "There is no dispute that Perdue requires its employees to wear hair nets, beard nets, ear plugs, and safety boots." (Doc. # 78 21.)  Perdue's Dothan plant is subject to company-wide "good manufacturing practices" ("GMP").  Perdue's GMP require employees to wear PPE during the performance of their jobs, and employees are required to confirm receipt of the GMP policy documents.  Furthermore, employees are subject to discipline for violations of Perdue's GMP.[9]  In light of these undisputed facts, it is clear that the donning and doffing of PPE is "required by the employer." *See Jordan*, 542 F. Supp. 2d at 805-806 (holding that donning and doffing of protective equipment was required by the employer where the employer employed a similar system to ensure compliance with its procedures); *Fox v. Tyson Foods, Inc.*, 2002 WL 32987224, No. CV-99-BE-1612-M, at *10 (N.D. Ala. Feb. 4, 2002).

Perdue argues that "simply having a requirement to wear [PPE] does not automatically render the required activity 'integral and indispensable' to the employees' principal jobs." (Doc. # 108 4.)  They rely on *Alvarez*, which held in part that activities that are necessary are

---

[9]Violations include failure to wear hair nets, beard nets, earplugs, bump caps, boots, and safety glasses.

not therefore integral and indispensable.[10]  Perdue's statement of the law is correct, as far as

it goes.  It does not go so far, however, as to resolve the issue currently under consideration.

In particular, Perdue's argument fails to recognize that the law in the Eleventh Circuit that

determines whether an activity is integral and indispensable requires this Court to consider

three factors, not just one.  Perdue's argument refuses to grapple with this reality by arguing

that an activity that only meets the first factor is not integral and indispensable.  Of course

it is  not.  Satisfaction of the first factor is necessary but is not sufficient.  The cases set out

three factors, and Courts must consider all three before making a determination[11]

 Perdue also relies on *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 592-93 (2d Cir.

2007).  In that case, the Second Circuit held that the terms "integral" and "indispensable" had

---

[10]Perdue also relies on *Bonilla* and *Dunlop*, the cases that supply the three factors.

[11]Perdue relies heavily on the following passage from *Alvarez*:

> We thus do not agree with [the employees] that the predonning waiting time at
> issue in this case is a "principal activity" under § 4(a). As [the employer] points
> out, the fact that certain preshift activities are necessary for employees to engage
> in their principal activities does not mean that those preshift activities are "integral
> and indispensable" to a "principal activity" under *Steiner*.

546 U.S. at 40. The most relevant portion, however, is the Supreme Court's footnote to the first
sentence quoted above: "our analysis would be different if [the employer] required its employees
to arrive at a particular time in order to begin waiting."  *Id.* at 40 n.8.  This footnote clearly draws
a distinction between those activities that are merely necessary and those that are both necessary
and required by the employer.  These two distinct requirements form two factors a Court in the
Eleventh Circuit must consider when determining whether an activity is integral and
indispensable, and it is no surprise that the Supreme Court held an activity that did not meet the
"required by the employer" factor to be not integral and indispensable.

separate meanings, and that both needed to be satisfied in order for plaintiffs' activities to be compensable. *Id.* The Second Circuit created a test for whether an activity is integral and indispensable that rests on separate definitions for integral and indispensable, and set out in significant detail what those two terms mean (indispensable means necessary; integral means "'essential to completeness'; 'organically joined or linked'; 'composed of constituent parts making a whole'"). 488 F.3d at 592. The Eleventh Circuit jurisprudence is different. Instead of focusing on distinct meanings of the two words, it offers one set of three factors for determining whether an activity is integral and indispensable and does not divide the phrase into two separate units. It is not for this Court to determine the relative merits of the two approaches. Decisions of the Eleventh Circuit are binding on this court; decisions of the Second Circuit are not.

Finally, Perdue relies on two district court cases: *Alford v. Perdue Farms, Inc.*, 2007 WL 879413, No. 5:07-cv-87 (M.D. Ga. Mar. 28, 2008) and *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556 (E.D. Tex. 2001). *Anderson* is not helpful for purposes of determining whether donning, doffing, and sanitizing PPE is integral and indispensable. In fact, that case stands only for the proposition that was shown to be unpersuasive above: "that donning and doffing sanitary clothing is [not] a compensable, principal activity *merely* because both the employer and the USDA require the sanitary clothing to be worn." *Anderson*, 147 F. Supp. 2d at 563 (emphasis added).[12] The Middle District of Georgia in

---

[12]The *Anderson* court held that the equipment in issue did not satisfy the third Eleventh Circuit factor: "In the instant case, the wearing of clean outergarments benefits the employees

*Alford* relied heavily on the distinction drawn by the DOL between non-unique personal gear that employees may put on at home and unique specialized equipment that employees must put on and take off on site.  The Secretary of Labor has made this argument in this case, and the import of her position is discussed below.  Moreover, *Alford* is not persuasive because the court failed to either cite to or rely upon *Bonilla*, 487 F.3d at 1344, and *Dunlop*, 527 F.2d, at 398-401, the two cases that supply the three factors Courts in this Circuit must consider when determining whether an activity is integral and indispensable.

### 3. Whether the Activity is Necessary for the Employee to Perform His or Her Duties

Donning and doffing PPE is necessary for the employees to perform their duties.  The question of whether an activity is "necessary" for the employee to perform his or her duties is closely tied to the question of whether the employer requires the activity.  In fact, another Judge of this Court has previously collapsed the two inquiries into one. *See Davis v. Charoen Pokphand (USA), Inc.*, 302 F. Supp. 2d 1314 (M.D. Ala. 2004) (Thompson, J.).  Moreover, the parties addressed the issues together in their briefs.  Plaintiffs argue that donning and doffing of PPE is necessary to their work.  Perdue seems to agree.[13]

Federal regulations require poultry processing employees to wear PPE when

_____

because it protects their street clothes from becoming soiled." 147 F. Supp. 2d at 563.

[13]Perdue appears to have abandoned argument regarding the necessity of donning, doffing, and sanitizing PPE in favor of exclusive focus on the argument dismissed in the last section (the fact that PPE is required does not make it compensable).  Nowhere in its response does Perdue argue PPE is unnecessary to the employees' principal activities. (Doc. # 108 4-7.)

processing poultry. *See* 21 C.F.R. § 110.10(b)(6) (hair nets and beard nets); 9 C.F.R. § 416.5(b), 29 C.F.R. § 1910.136 & 21 C.F.R. § 110.10(b)(1) (boots); 21 C.F.R. § 110.10(b)(6) & 29 C.F.R. §1910.134 (bump caps); 29 C.F.R. § 1910.95 (earplugs); 29 C.F.R. § 1910.133 (safety glasses).[14]  One meaning of "necessary" is "[r]equired by obligation, compulsion, or convention." *The American Heritage Dictionary of the English Language* (4th ed. 2006). Under this definition, these regulations, no doubt obligatory and compulsory, clearly render donning, doffing, and sanitizing of PPE "necessary." *See Fox*, 2002 WL 32987224 at *9-10 (noting that another chicken processing company could not continue its operations if it failed to follow OSHA and USDA regulations, particularly those requiring the use of hair nets, smocks, boots, earplugs, arm guards, etc.).

Additionally, as discussed in the previous section, Perdue requires employees to wear PPE and maintains a rigorous system of ensuring compliance with this requirement.  The requirement that employees don and doff PPE is evidence that such activity is necessary to

---

[14]Notable language in 21 C.F.R. § 110.10(b), which purports to require all PPE except glasses, states:

> All persons working in direct contact with food, food contact surfaces, and food-packaging materials shall conform to hygienic practices while on duty *to the extent necessary* to protect against contamination of food . . . . The methods for maintaining cleanliness include, but are not limited to:
>
> > (1) Wearing outer garments suitable to the operation in a manner that protects against the contamination of food, food-contact surfaces, or food-packaging materials.
> > ***
> > (6) Wearing, where appropriate, in an effective manner, hair nets, headbands, caps, beard covers, or other effective hair restraints.

the employees' principal activities.  *See Davis*, 302 F. Supp. 2d at 1322 ("[t]hat an activity is required by an employer is evidence of its necessity").  The Court is satisfied, therefore, that donning and doffing of PPE is necessary to the employees' principal activities.

### 4. Whether the Activity Primarily Benefits the Employer

Plaintiffs' final hurdle is showing that donning, doffing, and sanitizing of PPE primarily benefits Perdue.  Plaintiffs claim that, while they may incidentally benefit from these activities, Perdue is the primary beneficiary.  Perdue argues that it is not the primary beneficiary because the fact that protective equipment promotes safety does not mean it is for the benefit of the company.  Perdue relies on the stated purposes of some of the pertinent regulations, specifically 29 C.F.R. § 1910.132, and *Anderson v. Pilgrim's Pride, Corp.*, 147 F. Supp. 2d at 561.[15]  According to Perdue, the Court may not presume that, simply because it requires the donning and doffing at issue, it is the primary beneficiary.  Ultimately, the primary beneficiary of donning, doffing, and sanitizing PPE is a disputed issue of material

---

[15]The Court is not persuaded by *Anderson* because numerous points distinguish the cases. First, *Anderson* followed a bench trial, so the trial judge was able to use findings such as "the various processing employees complete the [sanitization] process in a matter of seconds" and "it is not uncommon to find employees putting on their apron, gloves, hairnet, and hearing protection as they walk to their individual work station." 147 F. Supp. 2d at 559.  The Court also viewed a videotape of the process.   Here, the court cannot find any such facts, and it was these facts that led the court to hold that donning, doffing, and sanitizing protective equipment "d[id] not involve 'physical or mental exertion,' and, therefore, d[id] not qualify as work within the meaning of the FLSA." *Id.*  Whether donning, doffing, and sanitizing requires exertion is not presently before the Court.  In fact, Perdue does not appear to contest this conclusion.  Instead, the issue is whether donning, doffing, and sanitizing is integral and indispensable, and *Anderson*'s reasoning about exertion is unhelpful.  Moreover, *Anderson* fails to recognize that the proper focus is on whether the activity was "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Alvarez*, 546 U.S. at 25 (quoting *Armour & Co. V. Wantock*, 323 U.S. 126, 133 (1944)).

fact.

*Chao v. Tyson Foods*, 568 F. Supp. 2d 1300, 1315 (N.D. Ala. 2008), is instructive. In that case, Tyson Foods required employees to wear a smock, hairnet, beard net, earplugs and, depending on the department, safety vest, safety goggles, earplugs, cutting gloves, arm guards, rubber boots, and rubber or latex gloves. The court reasoned that "[t]he fact that Defendant may derive *some* benefit from its employees' use of protective outer gear, and from the washing of these items at the end of the compensable work day, does not necessarily render Defendant the *primary* beneficiary thereof." *Id.* at 1315.

Perdue points out that the stated purposes of some of the pertinent regulations, specifically 29 C.F.R. § 1910.132, is to "protect employees from contamination, possible disease, and injury." (Doc. # 108 8 n.2.) Perdue cites 29 C.F.R. § 1910.132(a), which states: "[p]ersonal protective equipment is required for first and second poultry processing employees to do their job safely to comply with OSHA standards." However, Perdue ignores 21 C.F.R. §§ 110.10(b)(1), 110.10(b)(6) and 9 C.F.R. § 416.5(b). These regulations require various pieces of PPE and are drawn from the Food and Drug Administration ("FDA") regulations and the Food Safety Inspection Service regulations. They provide as their purpose "disease control . . .[and] cleanliness, . . . ," 21 C.F.R. § 110.10, and "to ensure each processing plant is "operated in a manner sufficient to prevent the creation of insanitary conditions and to ensure that product is not adulterated," 9 C.F.R. § 416.1. Moreover, pursuant to 21 C.F.R. § 110.10, the OSHA regulation, "[a]ll persons working in direct

23

contact with food, food-contact surfaces, and food-packaging materials shall conform to hygienic practices while on duty to the extent necessary to protect against contamination of food."   In light of the disparate purposes of the overlapping OSHA and FDA regulations, it is clear that there is a reasonable dispute concerning the material fact of who primarily benefits from the employees donning and doffing these items.   The benefit Perdue derives from ensuring employees don and doff PPE (as evinced by the FDA regulations and the OSHA regulations to a lesser extent) is set against benefits that inure to Plaintiff (as evinced by the OSHA regulations).   Moreover, in our free-market economy, the sale of fresh, uncontaminated poultry results in significant benefits to the employer, just as the sale of stale or contaminated poultry would result in significant harm to the company.   The Court also notes that the chicken-consuming public is also a significant beneficiary.

Therefore, while Perdue does receive some benefit from the activity in issue, a question of material fact remains as to who is the primary beneficiary.   Because disputed questions of material fact remain, Plaintiffs' Cross-Motion for Partial Summary Judgment is due to be denied and Perdue's Motion for Summary Judgment is due to be denied in part.

### 5. The Position of the Secretary of Labor

The Secretary of Labor filed a brief as amicus curiae in support of Perdue in this case. In her brief, she takes the position that "the donning and doffing of items that employees may put on and take off at home are not integral or indispensable to the employees' principal work activities." (Doc. # 141 1.)  She points to a regulation that provides: "[i]f an employee

24

in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes <u>on the employer's premises</u> at the beginning and end of the workday would be in integral part of the employee's principal activity." 29 C.F.R. § 790.8(c) (emphasis supplied by the Secretary).[16]

The Wage and Hour Division of the Employment Standards Administration, United States Department of Labor, which administers the FLSA, has long taken the position that "[e]mployees who dress to go to work in the morning are not working while dressing even though the uniforms they put on at home are required to be used at the plant during working hours." (Doc. # 141 Ex. A.)  The Wage and Hour Administrator reiterated this position following *Alvarez* in 2006, stating in a Wage and Hour Memorandum that "donning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises.  It is our longstanding position that if employees have the option and ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant." (Doc. # 141 Ex. B.)  Where donning and doffing may be carried out at home, it is the position of the Secretary that such activity is not compensable.

The position of the Secretary of Labor "constitute[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore*

---

[16]The regulation also provides that "[s]uch a situation may exist where the changing of clothes <u>on the employer's premises</u> is required by law, by rules of the employer, or by the nature of the work." 29 C.F.R. § 790.8 n.65 (emphasis supplied by the Secretary).

*v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also Burton v. Hillsborough County, Fla.*, 181 Fed. Appx. 829, 834 n.4 (11th Cir. 2006).[17]   However, the Court is not convinced that the Secretary's distinction is the law in this Circuit.   The only binding case provided to the Court (the Court has been unable to locate others) in support of the Secretary's argument is *Dunlop*, 527 F.2d at 398, which does not in any way rely on whether donning and doffing takes place at home or on the employer's premises.   To the contrary, this binding case creates a problem for the Secretary's position, as it established that there are three factors a Court in this Circuit must consider to determine whether an activity is integral and indispensable.

Additionally, the Secretary claims that "courts have consistently recognized the bright line drawn between the compensable changing into uniforms when the change is required to be performed on the employer's premises, and non-compensable changing at home." (Doc. # 141 7.)   However, the Secretary provides examples from the Court of Claims, the Ninth Circuit, the Eastern District of Virginia, the Southern and Northern Districts of California, the District of Maryland, and the Western District of Wisconsin.   The Secretary cites no Eleventh Circuit cases and no cases decided under Eleventh Circuit law that rely on her distinction.   There is one such case from the Middle District of Georgia, *Alford v. Perdue Farms*, 2008 WL 879413.   There are two problems with *Alford* as support for the Secretary's

---

[17]The position of the Secretary is entitled only to the less deferential *Skidmore* deference, rather than the more deferential *Chevron* deference, because the position of the secretary is "not a promulgated regulation because Congress did not authorize the Secretary of Labor to issue regulations regarding the scope of exceptions to [the Portal to Portal Act.]" *Bonilla*, 487 F.3d at 1342-43; *see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S.837 (1984); *Skidmore*, 323 U.S. at 134.

position.   First, that case simply relies on the Secretary's position on this issue, and is therefore not persuasive authority to support the Secretary's position.   Moreover, as discussed above, the persuasive power of *Alford* is severely undercut by the court's failure to either cite to or rely upon *Bonilla*, 487 F.3d at 1344, and *Dunlop*, 527 F.2d, at  398-401, the two cases that provide the three factors a Court in this Circuit must consider when determining whether an activity is integral and indispensable.[18]  In fact, with the single exception of *Alford,* courts in this Circuit have uniformly ignored or dismissed the distinction between donning at home and donning on the employer's premises when equipment like PPE was in issue. *See, e.g.*, *Chao*, 568 F. Supp. 2d at 1311-15; *Fox*, 2002 WL 32987224 at * 7-8;[19] *Burks*, 571 F. Supp. 2d at 1240-46; *Davis*, 302 F. Supp. 2d at 1320-23.

The uniformity of the cases in this Circuit is not surprising because there is not a requirement in this Circuit that integral and indispensable activities take place on the employer's premises. *See Bonilla*, 487 F.3d at 1344; *Dunlop*, 527 F.2d, at  398-401; *see also Lemmon v. City of San Laredo*, 538 F. Supp. 2d 1200 (N.D. Cal. 2007) (refusing to "inject a location limitation into the analysis for finding compensability under the FLSA" in light of the fact that there is no requirement in the Ninth Circuit that integral and indispensable activities take place on the employers's premises).  In fact, as discussed extensively above,

---

[18]Additionally, *Alford* relied upon a distinction between "generic" and "specialized" gear. This distinction is not sound, as it is inconsistent with *Alvarez*, 546 U.S. at 30-32, 41 n.8, and the Secretary has noted this problem with the analysis of the *Alford* court. (Doc. # 141 10 n.3.)

[19]This case also, appropriately, calls into doubt the Secretary's assertion that donning and doffing PPE is "changing clothes." *See Fox*, 2002 WL 32987224 at *7-8.

a Court in this Circuit must consider three factors to determine whether an activity is integral and indispensable, and none of those factors involves the location (at home or at the workplace) of the activity. Therefore, the Court is convinced that the home/work distinction has no power to trump the three factors set out in *Dunlop* and *Bonilla*.[20]

## C. Walking

Perdue also argues that the time Plaintiffs spend walking is not compensable. Plaintiffs claim there are six periods of uncompensated, compensable walking that occur during each shift. They claim that they are to be compensated each time they must walk from where the Kronos clocks are located, through the production area, and to the break area, and for the times they walk the same path in the other direction. Plaintiffs must walk this path once prior to the start of their shift, four times incident to meal breaks (i.e. once at the beginning of each break, and once at the end of each break), and once following the end of their shift. The compensability of this walk time depends wholly on whether donning and doffing PPE is integral and indispensable to a principal activity. Because this question requires the resolution of disputed issues of material fact, Perdue's Motion for Summary

---

[20]The Court also notes that, assuming the correctness of the Secretary's distinction, if "employees have the *option and ability* to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant." (Doc. # 141 7) (emphasis added). Or, in another of the Secretary's articulations, "where it [is] *safe to do so*, an employee who changes his work clothes at home is not entitled to be compensated for changing." (*Id.*) (citing *Apperson v. Exxon Corp.* 24 WH Cases 364, 370 (E.D. Cal. 1979)). Plaintiffs have submitted the declarations of fifteen plaintiffs who claim that it is unsafe to wear PPE to or from home.

Judgment is due to be denied with respect to walk time.

As discussed more fully above, the "'workday' is . . . 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *Alvarez*, 546 U.S. at 29 (quoting 29 C.F.R. § 790.6(b)). This concept is known as the "continuous workday rule." *Id.* "[D]uring a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [Section 254(a)], and as a result is covered by the FLSA." *Alvarez*, 546 U.S. at 37; *see Abbe v. City of San Diego*, Nos. 05cv1629, 06cv0538, 2007 WL 4146696 at *9 (S.D. Cal. Nov. 9, 2007) ("Walking and travel time is compensable if it takes the employee from one principal activity to another. It is not compensable if it takes the employee between preliminary activities, or between a preliminary activity and principal activities at the workplace.").

Under Plaintiffs version of the facts and law in this case, the time they spend walking is part of the continuous workday and is therefore compensable. The walking is part of the continuous workday because the workday begins with the donning of PPE prior to entering the production floor. Because, they claim, donning PPE is integral and indispensable to a principal activity, and is therefore itself a principal activity, the donning of PPE serves to commence the workday. Perdue, on the other hand, as discussed more fully above, argues that donning PPE is *not* integral and indispensable to a principal activity, and therefore does not mark the start of the workday. Perdue claims that the workday begins with the donning

of Departmental Equipment, which occurs after walking and clocking in.  Likewise, the

parties disagree about whether the last principal activity is doffing Departmental Equipment

or doffing PPE.  Similarly, these disputes are determinative of the Motion with respect to

walking incident to meal periods, because whether that walking is a compensable activity

depends on answers to these disputed questions.  Because a resolution of the underlying

factual issue is necessary to make a determination regarding the compensability of the walk

time in issue, Perdue's Motion for Summary Judgment is due to be denied with respect to

walk time.[21]

### D. Waiting

Perdue argues that the time Plaintiffs spend waiting to clock in is not compensable.

As a general matter, time spent waiting to clock in or out is not compensable.  *See* 29 C.F.R.

§ 790.8(c) ("activities such as checking in and out and waiting in line to do so would not

ordinarily be regarded as integral parts of the principal activity or activities"); *id.* § 790.7(g)

("checking in and out and waiting in line to do so, changing clothes, washing up or

showering, and waiting in line to receive pay checks are not normally compensable");

*Alvarez*, 546 U.S. at 40-42 (holding that waiting to don protective gear or waiting to clock

---

[21]To the extent Plaintiffs seek compensation for time spent walking from where they clear security to the break area or locker room, the Court finds that Perdue is entitled to summary judgment on their claim.  As discussed below in Section V.F., clearing security is not compensable, and so cannot serve to start the continuous workday.  Walking between where Plaintiffs clear security to where they don PPE therefore occurs prior to the start of the continuous workday and is not compensable.  Perdue is entitled to summary judgment to the extent Plaintiffs claim the time spent walking from where they clear security to the employee rest area or locker room. *See Alvarez*, 546 U.S. at 37; *Abbe*, 2007 WL 4146696 at *9.

in was comfortably a preliminary activity); *see also Vega ex rel. Trevino v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994) ("Wait time is compensable when it is part of a principal activity of the employee, but not if it is a preliminary or postliminary activity.").   However, under *Alvarez*, the same rule that applies to walking applies to waiting: if it occurs between the first and last principal activities, it is compensable. *See* 546 U.S. at 40; *see also Jordan*, 542 F. Supp. 2d at 805-06 (noting that activities like walking and waiting that occurred between what the plaintiffs claimed was the first and last principal activities would be compensable under plaintiffs' facts, regardless of other factual disputes surrounding those interstitial activities); *Vega*, 36 F.3d at 425.   Plaintiffs claim they suffer three periods of uncompensated, compensable wait time: once waiting to clock in at the start of the shift and twice waiting to clock in at the end of each meal period.   The same unresolved factual question that precluded a grant of summary judgment as to walking in the last section prevents a grant here. Therefore, Perdue's motion for summary judgment is due to be denied as to both categories of wait time.

### E.  Meal Breaks

Perdue also moved for summary judgment on Plaintiffs' claims that they are entitled to compensation for the two unpaid thirty-minute meal breaks required by Perdue each shift. Perdue claims that, because there is no genuine issue of material fact that the employees do not engage in compensable activities during their unpaid meal periods, they are not entitled to compensation for those periods.   Plaintiffs counter that they do in fact perform

compensable activities during their thirty-minute meal breaks.  In particular, they claim they walk from where they clock out to the break area, doff PPE, don PPE, and walk to where they clock in (and that sometimes they wait to clock in).  Moreover, Plaintiffs argue that the two thirty-minute periods are not appropriately timed for regularly scheduled meals.  Perdue counters that Plaintiffs undertake no compensable activity during the meal periods.

This Court recently outlined the law applicable to this dispute:

The Secretary of Labor has promulgated two regulations pertaining to meal and rest periods. The first, entitled "Rest", states:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

29 C.F.R. § 785.18. This regulation is particularly relevant, not only for what it says, but also for what it does not say. While the regulation states that rest periods "running from 5 minutes to about 20 minutes" are common in industry and must be counted as hours worked, the regulation does not say that rest periods of more than 20 minutes can automatically be excluded from hours worked.

The second regulation is entitled "Meal" and states:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. *The employee must be completely relieved from duty for the purposes of eating regular meals.* Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.

29 C.F.R. § 785.19 (emphasis added). The first key phrase in this regulation is that the employee must be completely relieved from duty during the meal period. The second key phrase is that the purpose of the meal period must be to eat a regular meal.

Courts have held entire meal breaks to be compensable under the FLSA when employees continue to have job responsibilities during their breaks. *See Kohlheim v. Glynn County*, 915 F.2d 1473, 1477 (11th Cir.1990) ("[T]he essential consideration in determining whether a meal period is a bona fide meal period or a compensable rest period is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal."); *see also Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 64-65 (2d Cir.1997) (holding meal periods compensable "work" under FLSA if employees perform duties predominantly for the benefit of the employer); *Henson v. Pulaski County Sheriff Dep't*, 6 F.3d 531, 534-35 (8th Cir.1993) (same).

*Burks*, 571 F. Supp. 2d at 1247-48; *see also Davis*, 302 F. Supp. 2d at 1326.

Here, there is a disputed issue of fact that will ultimately determine the compensability of the meal periods. Specifically, as discussed in the two prior sections, there is a dispute about whether donning and doffing PPE is primarily for the benefit of the employer. Therefore, whether that activity is integral and indispensable to a principal activity cannot be resolved at this point. If donning and doffing is not integral and indispensable, then neither the donning and doffing nor the walking (and waiting) is compensable. Under this scenario, there would be no compensable activity taking place during the meal period and the meal period would therefore not be compensable (subject to the caveat in the next paragraph below). This disputed issue of fact precludes a determination either that donning and doffing, walking, and waiting are compensable, and,

33

therefore, also precludes a determination about whether the meal periods are compensable.

Plaintiffs also point to the timing of the meal periods and claim that they are not for the purpose of eating regularly scheduled meals. As this Court has said before: "th[e] Court is not convinced that *two* thirty minute "meal/rest periods" in one nine-hour day are for the purpose of eating a 'regularly scheduled meal.'" *Burks*, 571 F. Supp. 2d at 1248.[22] Hence, Perdue's motion is due to be denied with respect to this issue.

## F. Time Spent Clearing Security

Plaintiffs claim they are entitled to compensation for "the time it takes security to clear them and allow them into the facility and the compensable time afterwards prior to the commencement of processing work." (Doc. # 42 ¶ 15.) As discussed above, on their way to the facility entrance, employees walk through a gate in a chain link fence and display their Perdue identification cards to a security guard. While employees do not normally have to stop at the security checkpoint, they are subject to having their belongings searched. Also, employees who do not have their identification cards must wait for identification by the plant office. Perdue argues it is entitled to summary judgment on the issue of compensability of this time because clearing security is preliminary to a principal activity. The law is clear that Plaintiffs are not entitled to compensation for this time. *See Bonilla*, 487 F.3d at 1344-45 (holding that time spent passing through security was not compensable under the FLSA because the screening was not integral and indispensable to a principal

---

[22]The meal breaks for the morning shift occur at approximately 10:20 AM and 1:20 PM. The night shift meal breaks occur at approximately 1:00 AM and 4:00 AM.

activity); *Gorman*, 488 F.3d at 593. Therefore, Perdue's Motion is due to be granted with respect to the compensability of time spent clearing security.

### G. *De Minimis* Doctrine

Perdue's final argument is that Plaintiffs' uncompensated activity is *de minimis* as a matter of law.  When a claim under the FLSA "concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the [FLSA]. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Mt. Clemens Pottery Co.*, 328 U.S. at 680; 29 C.F.R. § 785.47; *see also Dunlop*, 527 F.2d at 401 (remanding case for district court to determine whether activities ordinarily compensable as principal activities were still properly excluded as *de minimis*). When determining whether otherwise compensable time is *de minimis*, courts will consider (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work. *Burks*, 571 F. Supp. 2d at 1247; *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir.1984).[23] While courts have found daily periods of approximately ten minutes or less to be *de minimis* as a matter of law, *Burks,* 571 F. Supp. 2d at 1247, whether a

---

[23]From the facts as presented, the Court finds that the practical administrative difficulty of recording the additional time in issue is negligible, as it would simply require a relocation of the Kronos clocks.  The Court also finds that the additional work is regular, as Plaintiffs present evidence that the disputed tasks occur every shift.  Therefore, the balance of this section will deal only with the aggregate amount of compensable time, the element on which courts focus unless the other two present problems. *See Burks,* 571 F. Supp. 2d at 1246-48.

quantum of work is *de minimis* is generally a question of fact to be determined by a jury. *Mt. Clemens Pottery*, 328 U.S. at 692 (noting that the precise amount of time that can be considered *de minimis* is a question for the trier of fact); *see Chao*, 568 F. Supp. 2d at 1318-19; *see also Fox*, 2002 WL 32987224 at *2 (holding that plaintiffs' alleged eight minutes of time spent donning and doffing was not *de minimis* as a matter of law).

The Court finds that summary judgment is not appropriate as to this issue because there is a genuine issue of material fact as to whether these activities are properly excluded by the *de minimis* doctrine. Perdue relies on several cases in support of this argument, including *Alford v. Perdue Farms*, 2008 WL 879413, *Alvarez v. IBP, Inc.*, 339 F.3d at 903, and *Pilgrim's Pride Corp.*, 147 F. Supp. 2d at 564. These cases are distinguishable from the present one, however. The primary and most significant point of difference is the amount of time in issue: in *Alford*, mere seconds or a few minutes of work was in issue; in *Alvarez* the time in issue was only "a few seconds or minutes"; and in *Pilgrim's Pride*, the court was concerned with one to two minutes of activity.

Here, Plaintiffs have adduced evidence that they work between eighteen and forty-one uncompensated minutes per day. Even the low end of this range is well in excess of the "few seconds or minutes" at issue in *Alford, Alvarez*, and *Pilgrim's Pride*. In fact, it is well in excess of the eight and ten minutes held *not* to be *de minimis* as a matter of law in *Chao* and *Fox*. It is, of course, possible that Plaintiffs have exagerated the time it takes to perform the tasks they claim are compensable and that the *de minimis* rule will ultimately bar

recovery at trial.  For present purposes, however, the Court finds that Perdue's Motion for Summary Judgment is due to be denied as to the applicability of the  *de minimis* rule.

## VI. CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that:

1. The portion of Defendant's Motion (Doc. # 78) that the Court construed as a Motion to Strike is DENIED;

2. Defendant's Motion for Summary Judgment (Doc. # 78) is GRANTED in part and DENIED in part.  The Motion is granted with respect to time spent clearing security and time spent walking from where Plaintiffs clear security to the employee lounge or locker rooms; the Motion is denied in all other respects; and

3. Plaintiffs' Cross-Motion for Partial Summary Judgment (Doc. # 91) is DENIED.

Done this the 10th day of March, 2009.

_____
        /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

37